**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| ALEXANDRA DAVIS,<br>　　*Plaintiff,*<br><br>VS.<br><br>JERRAL W. JONES, DALLAS COWBOYS<br>FOOTBALL CLUB, LTD., JAMES<br>WILKINSON, TRAILRUNNER<br>INTERNATIONAL, LLC, and DONALD JACK,<br>JR.<br>　　*Defendants.* | CIVIL ACTION NO. _____<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR DEFAMATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Alexandra Davis, ("Plaintiff"), and complains of Jerral W. Jones, ("Defendant Jones"), Dallas Cowboys Football Club, LTD., ("Defendant Dallas Cowboys"), James Wilkinson ("Defendant Wilkinson"), Trailrunner International, LLC ("Defendant Trailrunner"), and Donald Jack, Jr. ("Defendant Jack") for cause of action would respectfully show the Court the following:

### PARTIES

1. Plaintiff is a resident of the District of Columbia.

2. Upon information and belief, Defendant Jerral W. Jones is an individual residing in Dallas County, Texas, and may be served at his residence located at 4400 Preston Road, Highland Park, Dallas County, Texas 75205.

3. Upon information and belief, Defendant Dallas Cowboys is a Texas limited partnership with its principal place of business located at One Cowboys Way, Frisco, Texas 75034, and may

be served by serving its Registered Agent, CT Corporation, at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

4.     Upon information and belief, Defendant James Wilkinson is an individual residing in Tarrant County, Texas, and may be served at his residence located at 2005 White Wing Cove, Westlake, Texas 76262.

5.     Upon information and belief, Defendant Trailrunner is a Texas limited liability company having its principal place of business at 1900 W. Kirkwood Blvd. Unit 1400B, Southlake, Texas 76092-2241, and may be served by serving its Registered Agent, Andrew Wambsganss, at 600 N. Carroll Ave., Suite 100, Southlake, Texas 76092. At all times during the complained of acts, Defendant Trailrunner employed Defendant Wilkinson.

6.     Upon information and belief, Defendant Donald Jack, Jr. is an individual residing in Pulaski County, Arkansas, and may be served at his place of business at 1 Allied Drive, Suite 1110, Little Rock, Arkansas 72202-2043.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 USC 1332(a) because there is diversity among the parties. Plaintiff is a citizen of the District of Columbia, and her residency is diverse from all of the Defendants. The amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

8.     Plaintiff was born in Arkansas on December 16, 1996. Approximately one year previous to Plaintiff's birth, Plaintiff's mother, Cynthia Davis Spencer ("Cynthia"), was married but was estranged and living apart from her husband.

9.     Around this time, Cynthia met and was pursued romantically by Defendant Jones, the well-known Arkansas native owner and general manager of the Dallas Cowboys' football NFL

franchise. After being pursued by Defendant Jones, Cynthia and Defendant Jones began a romantic relationship, which included sexual relations.

10.     After her relationship with Defendant Jones began, Cynthia briefly reunited with her estranged husband. During the brief attempted reconciliation with her husband, Cynthia was unaware that she was pregnant with Plaintiff from the relationship with Defendant Jones.

11.     Shortly after Plaintiff was born, Cynthia and her husband began divorce proceedings in Arkansas. During the divorce proceedings, Cynthia's husband legally challenged whether he was the biological father of Plaintiff.

12.     After genetic tests were conducted in accordance with the divorce court's procedures, it was scientifically determined that Cynthia's husband was not Plaintiff's biological father. In June 1998, the divorce court entered a Decree of Divorce, which included a judicial finding and adjudication that Cynthia's husband was not Plaintiff's biological or legal father. As a result, Cynthia's husband was not ordered to pay child support, and Plaintiff did not have a legal father.

13.     As soon as the genetic testing results came back, Cynthia informed Defendant Jones of the results knowing that Defendant Jones was Plaintiff's biological father. At this time, Defendant Jones unequivocally and adamantly stated two things to Cynthia. The first was that he "never was going to take a paternity test." The second thing he vehemently asserted to Cynthia was that he would "never meet or have any relationship with the child."

14.     Faced with a potential public scandal, and certainly private problems being a married man with an existing family with grown children, Defendant Jones wanted to ensure that he would not be publicly or privately identified and/or legally declared as Plaintiff's father. As he stated unequivocally to Cynthia, Defendant Jones had no intention of meeting or having any kind of relationship with Plaintiff.

15.     Defendant Jones, knowing that Cynthia was now a single mother with an infant child, no financial resources, and an uncertain financial future at best, immediately set out to negotiate an agreement with Cynthia that would exchange money for silence. This was the only way he could stay anonymous and achieve his stated objective of never taking a paternity test. Accordingly, with the help of his long-time Arkansas friend and lawyer, Defendant Jack, Defendant Jones sought to reach a "hush money" deal with Plaintiff's mother Cynthia.

16.     A "hush money" deal was struck.  The essence of the deal was that Defendant Jones would provide, through indirect means and with his personal identity hidden, ongoing monthly support for Cynthia with monies earmarked as "child support" conditioned on Cynthia remaining silent about the fact that Defendant Jones was Plaintiff's father. If Cynthia failed to maintain such silence, the support would end at Defendant Jones' discretion, and Cynthia would be subject to being sued by Defendant Jones, resulting not only in the end of future monthly support but also the return of support previously provided.

17.     The primary purpose of the arrangement was designed for Defendant Jones to maintain leverage and intimidation over Cynthia to not disclose Defendant Jones' identity, and to compel Cynthia to train Plaintiff from ever disclosing and/or identifying who her father was.

18.     The final deal was memorialized in two written documents (the "Settlement Documents"). In addition to binding Cynthia, the Settlement Documents purported to bind Plaintiff, then a one-year-old child, to confidentiality *via* her mother's signature. The Settlement Documents also attempt to prevent Plaintiff from ever seeking a legal adjudication that Defendant Jones was her father. In essence two adults, with their own motivations and interests, entered into an agreement that purportedly would relieve Defendant Jones of support obligations if Cynthia or Plaintiff ever revealed, legally asserted, or even mentioned that Defendant Jones was Plaintiff's father to anyone

at any time. The Settlement Documents were entered into without court approval. Further, at no time was Plaintiff's interest represented by any disinterested party without a conflict of interest.

19.     Defendant Jones has continued to have contact with Cynthia over the years, but has declined her requests to establish a relationship with, or even meet with, Plaintiff who he knows to be his daughter.

20.     Plaintiff is now a twenty-six-year-old woman. She has lived her life fatherless and in secret. Her life has revolved around constant fear that if she should tell anyone who her father was, she and her mother would lose financial support or worse. Plaintiff grew up in the Dallas area. and went to college and graduated from Southern Methodist University in Dallas, a distance less than two miles from Defendant Jones' residence. Plaintiff has had to endure the endless public profiles of her father and siblings while forced to remain secret to everyone, including her closest confidants.

21.     Despite the emotional obstacles of being abandoned and shunned by her father and forced to live in secrecy, Plaintiff excelled academically and professionally. She presently works for a United States Congressman from Texas in Washington, D.C., after serving in the White House for fourteen months.

*A. Negotiations Prior to Declaratory Judgment Action*

22.     Plaintiff decided to seek legal guidance as to her rights for the first time as they related to Defendant Jones, parentage, and the so-called Settlement Documents. After meeting counsel regarding these issues that had dominated her entire life, she decided to seek her legal right to confirm biologically who her father was and establish her parentage.

23.     Accordingly, on or about January 4, 2022, Plaintiff's counsel sent an email to general counsel of the Defendant Dallas Cowboys, Jason Cohen. The email stated as follows:

I hope this email finds you well in this New Year.

I am about to send Mr. Jones (senior) a letter regarding a claim involving what he may perceive to be a sensitive and personal legal matter. I do not want to unnecessarily publish the existence of this to other people who might deal with his mail and at the same time I need to make sure that Mr. Jones receives and gives due consideration to the matter set forth in my letter. To accomplish these goals, I thought I might reach out to you and see if you want to accept this letter on behalf of Mr. Jones.

Please let me know that you received this email and whether or not you want to accept this letter on his behalf. If you want to talk, please feel free to contact me on my cell xxx xxx-xxxx. Thank you.

24.     After Mr. Cohen responded that he would accept the letter on Defendant Jones' behalf, Plaintiff's counsel sent the letter dated January 5, 2021 (actually the year should have been 2022) to Mr. Cohen. The letter was addressed to Defendant Jones in care of Mr. Cohen. *See* Ex. 1, Letter to Defendant Jones.

25.     The letter explains that Plaintiff believes she is Defendant Jones' biological daughter and that counsel was hired to represent her in determining whether Defendant Jones was her biological and legal father. The letter advises Defendant Jones that Plaintiff was not trying to harass or embarrass him in any way and offered an easy private resolution in accordance with Texas law. No money was demanded nor was there any threat to make the matter public. In fact, as set forth above, counsel reached out to Mr. Cohen to avoid any staff member or member of Defendant Jones' family from inadvertently seeing the letter's contents.  Plaintiff suggested that she was willing to undergo genetic testing to confirm to Defendant Jones whether she was his daughter.

26.     Plaintiff sought Defendant Jones' participation without the necessity of filing a lawsuit to avoid potential publicity that the filing of a paternity lawsuit could attract. Plaintiff, neither personally nor through her legal counsel, ever threatened to make the matter public nor sought any financial compensation.

27.     In response to receiving the email and letter, Plaintiff's counsel was notified by Mr. Cohen that Defendant Jones' counsel would be in contact shortly. On March 1, 2022, after not receiving any contact from Defendant Jones' counsel, Plaintiff's counsel reached out to Defendant Jones' counsel and forwarded a copy of the lawsuit that Plaintiff intended to file if Defendant Jones would not agree that Plaintiff was not bound by the Settlement Documents entered into when she was one year old. Once again, no monetary compensation was sought, much less demanded.

28.     The draft of the lawsuit forwarded to Defendant Jones was a declaratory action, which sought a declaration from the court that Plaintiff was not bound by the Settlement Documents that Defendant Jones had tried to bind her to since she was an infant. The declaratory action would clear the way for Plaintiff to be able to request a Court to require that Defendant Jones be ordered to submit to genetic testing. This action would alleviate the concern that Defendant Jones would take overwhelmingly expensive and oppressive actions against Plaintiff or her mother for any alleged breach of the Settlement Documents as neither had the resources to fight and/or compete against the billionaire Defendant Jones.

29.     Plaintiff hoped that the lawsuit would not be required, and this last resort could be avoided if Defendant Jones just agreed to submit to genetic testing in private. Plaintiff never demanded any money as part of the resolution. Plaintiff only sought to establish her parentage and an agreement that Plaintiff was not bound by the Settlement Documents entered into when she was one year old.

30.     Defendant Jones was not agreeable to resolving these issues without litigation. Disappointed and disheartened, Plaintiff filed a declaratory judgment action (the "Lawsuit"). Plaintiff did not provide the Lawsuit to the press or contact the media in any way to alert the media as to the Lawsuit's existence. Again, the Lawsuit did not seek money damages.

31.     After filing the Lawsuit, Defendant Jones' counsel contacted Plaintiff's counsel asking if Plaintiff would agree to have the Lawsuit sealed to avoid public media and private disclosure. Consistent with Plaintiff's desire to keep the matter private, Plaintiff immediately agreed to Defendant Jones' request. Unfortunately, before the sealing could be accomplished, the filing of the Lawsuit was apparently picked up by the Dallas Morning News, who immediately published a story about it.

32.     After the Dallas Morning News published its story, the Lawsuit immediately attracted local, national, and international attention. At this point, Defendant Jones' rescinded his request to seal the record.

### B. Scheme to Publicly Defame Plaintiff

33.      Plaintiff never made a demand for money to Defendant Jones in any way associated with the request for parentage or filing of the Lawsuit. Regardless, Defendant Jones, with his team of lawyers, marketing and media professionals, initiated a deliberate plan and scheme to publicly defame Plaintiff. This plan, as set forth below, centered upon attacking his own daughter in the world-wide public domain as an "extortionist" and a "shakedown artist" whose motivation was money and greed and who was "conspiring" in concert with other "extortionists" to exact money from Defendant Jones and his family. This designed campaign was based knowingly on false statements and accusations alleged by Defendant Jones and his agents to be truthful facts both in court filings and in public statements to the media. The purpose of the false statements was to discredit Plaintiff's character in the public eye.

34.     Defendant Jones' first step in the false and purposeful character assassination attack of Plaintiff was the filing of his initial response to the Lawsuit of a document titled "Plea to The Jurisdiction and Subject Thereto Original Answer" (the "Plea to the Jurisdiction"). The Plea to the

Jurisdiction, filed on March 28, 2022, falsely asserted that Plaintiff sought money from Jones in exchange for keeping the matter private.

35.     Although completely unrelated to the matters asserted in the Lawsuit and inappropriate in a responsive pleading, Defendant Jones falsely stated the following in what was labeled "Introduction":

> Plaintiff, a twenty-five-year-old woman currently employed by a United States Congressman in Washington D.C., claims that Defendant [Jones] is her unacknowledged father. But before making these allegations [Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' [] When Defendant declined to pay, this lawsuit followed.

> Plaintiff's 'let's make a deal' overtures were made at the same time Defendant [Jones] and the Dallas Cowboys were the targets of multiple extortion attempts. The potential source(s) of those attempted extortions, including without limitation, the Plaintiff [Alexandra Davis] and her agents, will be the subject of other litigation which has been filed or will be instituted shortly.

36.     Upon information and belief, the Defendants provided this pleading to media outlets, as they customarily do, to ensure that the accusations were picked up by the media. Of course, the highly public profile of Defendant Jones with his immense public relations resources, these wholly false accusations were quoted by innumerable media outlets worldwide. The substance of these pleadings was also affirmed by the Defendants when questioned by the media. Article after news article ran with some form of headline that referenced Plaintiff as being accused of being an "extortionist" by the famous Defendant Jones.

37.     Around this same time, Defendant Jones' daughter, Charlotte Jones Anderson was going through a contentious divorce with her husband, Shy Anderson. On March 10, 2022, counsel for Defendant Jones wrote a so-called "Preservation Letter" to Shy Anderson's divorce attorney, wherein Defendant Jones accused Mr. Anderson of working with "others" to extort money from

the Jones family. Plaintiff was specifically named in the letter. This letter was provided to the media to be used by the media to further propagate the extortion narrative and to tie Plaintiff to other supposed bad actors who were alleged to have been wrongfully seeking money from Defendant Jones and/or his organizations. Upon information and belief, this letter was again provided directly to the media by Defendant Jones and his team.

38.    As a result of the slander campaign by Defendant Jones and his camp, Plaintiff was depicted as an extortionist that was in "conspiracy" with others supposedly attempting to extort money from the Jones family. These "others" apparently included the Dallas Cowboys Cheerleaders, who were allegedly video recorded by the Dallas Cowboys' longtime chief media head while the they were undressing. This scandal, which occurred several years earlier, was the subject of media disclosure around the same time as Plaintiff's existence was being made public, and it was reported that the Cowboys paid money to the cheerleader complainants in exchange for nondisclosure.

39.    On March 30, 2022, in an interview published by ESPN, Defendant Wilkinson furthered the public smear campaign against Plaintiff. Defendant Wilkinson, as spokesperson for Defendant Jones and the Dallas Cowboys, stated, "This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money."

40.    This statement was patently false. At no time did Plaintiff attempt to "shake down" Defendant Jones, nor did Plaintiff coordinate with any other party or person in seeking her legal right to determine her legal father. Defendant Wilkinson's comments were totally lacking any factual basis and were false.

41.     On March 31, 2022, just days after the Plea to the Jurisdiction pleading accusing Plaintiff of being an "extortionist" was filed, Defendant Wilkinson, acting as a spokesperson for Defendants Jones and the Dallas Cowboys, was quoted as reaffirming the allegations in that Pleading that Plaintiff was an "extortionist."

42.     Not only did Defendant Wilkinson, on behalf of Defendants Jones and the Dallas Cowboys publicly affirm the "extortionist" allegations, but in this interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones, accused Plaintiff of being an extortionist and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt. Rather than showing the so-called letter, Defendants Jack and Wilkinson conveniently misrepresented its contents in a distorted and self-serving manner to further the Plaintiff is an extortionist narrative they intentionally created.

43.      Upon information and belief, Defendants Jack and Wilkinson were referring to something written at least five years earlier by Plaintiff as a therapeutic exercise at the direction of her therapist. Upon information and belief, this letter was never provided to Defendant Jones but rather was read to Defendant Jack at a dinner years before Plaintiff ever met with any attorneys concerning the current lawsuit. The purpose and content of this writing was an attempt by Plaintiff to share her anguish about the lack of relationship with her father and plead with Defendant Jones for a simple meeting of any kind.

44.     Defendant Jack portrayed the therapeutic writing as Plaintiff being unsatisfied with what she received financially from Defendant Jones. In truth and in fact, the therapy assisted letter, was a plea by a shunned daughter to her father. Defendant Jack knew his characterization to the media

was false as did Defendant Jones and Wilkinson. It was falsely characterized as a monetary demand to support their objective to discredit Plaintiff by painting her as an extortionist.

45.     Nevertheless, Defendants Wilkinson and Jack used this plea for attention by an abandoned child made years before any type of litigation was contemplated to distort and misrepresent to ESPN in a nationally published article as support for the pleading which accused Plaintiff of being an "extortionist" in effect adopting the false allegation that Plaintiff's lawsuit was an extortion attempt when in fact the lawsuit did not seek an economic award.

46.     In addition to adopting the "extortionist" claim, Defendant Wilkinson further stated that the statement by Defendant Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a broader calculated and concerted effort that has been going on for some time by multiple people with various different agendas." Once again, Defendants accuse Plaintiff of not only being about money, but also making the unsupported accusation that Plaintiff was working in concert with other people to extort Defendant Jones.

47.     In the same ESPN article, Defendant Wilkinson also stated publicly to the media that Plaintiff's Counsel had previously met with Defendant Jones' counsel and had demanded money. Again, this is a false statement made with the intent to continue the scheme of defaming Plaintiff. No such demand for money was ever made by Plaintiff's counsel.

48.     Defendant Wilkinson also added "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal." Again, a categorically false statement made by Defendant Wilkinson, who was never part of any discussions with Plaintiff or her counsel, to intentionally and maliciously further spin the false narrative that Plaintiff demanded money and was an "extortionist."

49.     Defendant Wilkinson's final quote in the ESPN article was "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish." Again, Defendant Wilkinson totally creates a false narrative by first suggesting that Plaintiff had changed her story and second stating, "Now it is about money," when no story had changed and there had not been any demand or lawsuit for money.

50.     Defendant Jack also used this media platform to falsely state that Plaintiff's motivation in the lawsuit was money. Defendant Jack stated that he got "a far different impression of Davis' motives." Defendant Jack deceptively based this statement about Plaintiff's "motives" upon writing by Plaintiff years earlier at her therapist's recommendation. Of course, instead of simply producing the letter for the media and the public to interpret its meaning, Defendant Jack falsely characterized its contents to buttress the public smear campaign that Plaintiff was "extorting" or "shaking down" Defendant Jones.

## AGENCY

51.     At all times during the complained of acts, Defendant Wilkinson was acting as the agent and/or public spokesperson for Defendants Jones and Dallas Cowboys. Defendant Wilkinson's defamatory comments were made within his general authority as an agent for Defendant Jones and Defendant Dallas Cowboys.

52.     At all times during the complained of acts, Defendant Wilkinson was in the course and scope of his employment with Defendant Trailrunner. Defendant Wilkinson's defamatory comments were made within his general authority as an employee for Defendant Trailrunner.

53.     With Defendant Wilkinson as his and the Dallas Cowboys' spokesperson, Defendants Jones and Dallas Cowboys knew they retained a very prominent and notoriously known person in

the world of public relations and world-wide media. Defendant Wilkinson has a successful, but highly controversial, history in the world of media. With his background in political and government related public relations and media work, Defendant Wilkinson has been publicly criticized for his role in various controversial and criticized media campaigns, notably in promoting the Iraq War and the story of Jessica Lynch. Perhaps his most controversial public relations work involved the original government narrative around the tragic death of Pat Tillman, the former NFL player who left the NFL to volunteer in the Army after 9-11 who was initially portrayed as a martyr for war killed in battle when in fact he was killed by friendly fire, a hugely embarrassing event for the Bush White House and the Pentagon at the time.

54.     Ron Suskind of the Washington Post wrote that Defendant Wilkinson was the "spinmeister of the Iraq War."  Likewise, in the book *Where Men Win Glory: the Odyssey of Pat Tillman*, the legendary award-winning journalist and author Jon Krakauer referred to Defendant Wilkinson as a "major propagandist." In the use of Defendant Wilkinson, Defendants Jones and Dallas Cowboys knew that that he would effectively spread the false narrative that gives rise to this lawsuit.

## CAUSES OF ACTION

### A. Count One-Defamation Per Se

55.     Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

56.     The false and defamatory statements set forth in detail above that were published by Defendants constitute statutory libel in that they tend to injure the reputation of Plaintiff and expose Plaintiff to public hatred, contempt, or ridicule, tend to expose Plaintiff to financial injury, and tend to impeach the Plaintiff's honesty, integrity, virtue, or reputation, exposing Plaintiff to public hatred, ridicule, and financial injury.

57.     Defendants set forth with a scheme of a planned false public smear campaign of Plaintiff to paint her as an "extortionist" "shake down artist" who was solely motivated by money. This scheme to defame Defendant Jones' own daughter was set in force with the knowledge of its falsity for the sole purpose of avoiding the simple truth: that Defendant Jones had an extramarital affair and that Plaintiff is Defendant Jones' daughter.

58.     In addition, as described in more detail above, the Defendants made the following false statements:

a. Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer falsely and maliciously stated "[Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' When Defendant declined to pay, this lawsuit followed;"

b. Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer also falsely and maliciously accused Plaintiff of being in some sort of conspiracy with other "extortionist" attempting to extort money from Defendant Dallas Cowboys and Defendant Jones;

c. On March 10, 2022, Defendant Jones wrote a "Preservation Letter" to Shy Anderson's divorce attorney wherein Defendant Jones accused Mr. Anderson of working with "others" to extort money from the Jones family. He identified Plaintiff as one of such persons;

d. On March 30, 2022, in an interview with ESPN, Defendant Wilkinson, as spokesperson for Defendant Jones and Defendant Dallas Cowboys, stated: "This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money;"

e. On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist;"

f. On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt;

g. In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist;"

h. In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas;"

i. In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money;

j. In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal;"

k. In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish;" and,

l. In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based this statement about Plaintiff's "motives" upon the therapeutic letter written by Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist."

59.    The above statements were published by Defendants without privilege or authorization.

60.    The above statements were all false and made with malicious intent to paint Plaintiff as an "extortionist" and "shake down artist." Such statements are defamation *per se.*

61.    Not once did Defendant Jones or any of his agents ever deny that Plaintiff was Defendant Jones' daughter. Instead, Defendant Jones chose the avenue of calling his own daughter an "extortionist" merely to make his own public image less despicable by attempting to discredit Plaintiff's reputation and character in the public eye.

62.     Defendants started by using a court pleading to falsely plant this image of Plaintiff as an "extortionist" who was conspiring with others in multiple extortion attempts. Then upon information and belief, Defendants provided this defamatory and frivolous pleading to the press. Next Defendants adopted this defamatory pleading in a national press interview. Defendants flat out falsely stated that Plaintiff's motives were money and referred to Plaintiff as being part of a "shake down" and conspiring with other alleged bad and illegal actors.

63.     Plaintiff is not a public official or a public figure.

64.     Defendants, in making the false and defamatory statements, acted not only negligently but also acted with malice.

***B. Count Two-Common Law Defamation***

65.     Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

66.     Plaintiff further alleges that Defendants published the above statements of fact that referred to Plaintiff. The statements as set forth above were false and defamatory.

67.     In addition, as described in more detail above, Defendants made the following false statements:

   a.   Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer falsely and maliciously stated "[Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' When Defendant declined to pay, this lawsuit followed;"

   b.   Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer also falsely and maliciously accused Plaintiff of being in some sort of conspiracy with other "extortionist" attempting to extort money from Defendant Dallas Cowboys and Defendant Jones;

   c.   On March 10, 2022, Defendant Jones wrote a "Preservation Letter" to Shy Anderson's divorce attorney wherein Defendant Jones accused Mr. Anderson of working with

"others" to extort money from the Jones family. He identified Plaintiff as one of such persons;

d.  On March 30, 2022, in an interview with ESPN, Defendant Wilkinson, as spokesperson for Defendant Jones and Defendant Dallas Cowboys, stated: "This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money;"

e.  On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist;"

f.  On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt;

g.  In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist;"

h.  In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas;"

i.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's Counsel had previously met with Defendant Jones' counsel and had demanded money;

j.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal;"

k.  In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish;" and,

l.  In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based

this statement about Plaintiff's "motives" upon the therapeutic letter written by Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist."

68.    The above statements were published by Defendants without privilege or authorization.

69.    The above statements were all false and made with malicious intent to paint Plaintiff as an "extortionist" and "shake down artist."

70.    Defendants set forth with a scheme of a planned false public smear campaign of Plaintiff to paint her as an "extortionist" "shake down artist" who was solely motivated by money. This scheme to defame Defendant Jones' own daughter was set in force with the knowledge of its falsity for the sole purpose of avoiding the simple truth: that Defendant Jones had an extramarital affair and that Plaintiff is Defendant Jones' daughter. Plaintiff did not demand money or seek monetary damages in the Lawsuit nor in connection with any communications by herself or her lawyers relating to the Lawsuit or her seeking her right to establish parentage.

71.    Defendants started by using a court pleading to falsely plant this image of Plaintiff as an "extortionist." Then upon information and belief, Defendants provided this defamatory and frivolous pleading to the press. Next, Defendants adopted this defamatory pleading in a national press interview. Finally, Defendants flat out falsely stated that Plaintiff's motives were money and referred to Plaintiff as being part of a "shake down."

72.    Plaintiff is not a public official or a public figure.

73.    Defendants in making the false and defamatory statements acted not only negligently but also acted with malice.

## <u>DAMAGES</u>

74.    As a direct and proximate result of Defendants' false and defamatory statements published, Plaintiff has endured shame, embarrassment, humiliation, and mental pain and anguish. Additionally, Plaintiff has and will in the future be seriously injured in her business reputation, good name, and

standing in the community, and will be exposed to the hatred, contempt, and ridicule of the public in general as well as of her business associates, clients, friends, and relatives. Consequently, Plaintiff seeks actual and special damages in a sum within the jurisdictional limits of this Court.

75.     Plaintiff is in the occupation of politics. Her career path began in college where she interned in Washington D.C. Plaintiff served in the Whitehouse for fourteen months which required a high security clearance. Plaintiff currently is a congressional aide. Defendants' public attack on Plaintiff as an "extortionist" and "shake down artist" has injured her reputation not only in the public arena of politics but has damaged her ability to work in the future in her occupation.

76.     By their false statements of fact and character assignation, Defendants have been successful in their smear campaign to destroy the reputation of Plaintiff. The first thing any prospective employer does today is Google search a prospective employee. The Google search "Alexandra Davis extortionist" results in over 4,000,000 hits alone. The Google search "Alexandra Davis shakedown artist" results in over 2,000,000 results. This does not take into account the other search engines, numerous print publications of the same nature, nor television broadcasts. Many of the referenced articles resulting from these searches display a headline in some form or another referring to Plaintiff to be claimed by Defendant Jones as extorting him.

77.     Defendant Jones is probably the most well-known, most powerful team owner in the NFL. He certainly is the most public. The Dallas Cowboys franchise is estimated to be perhaps the most valuable sports franchise in the world, and certainly in the NFL. Defendant Jones has been lauded by many experts as a marketing genius, and his vast fortune and power attests to that. The Dallas Cowboys have a marketing division that is headed by Defendant Jones' namesake son.

78.     Defendants Jones and Dallas Cowboys publicity profile and associations extend gigantically to the corporate world and include corporate and charitable partnerships. Defendant Jones' influence

also extends into politics, Plaintiff's chosen career. Defendant Jones is a huge benefactor and contributor to mostly Republican candidates nationally and in Texas. In November 2022, Defendant Jones was reported to have made $900,000 in "last minute" donations to the top three Republican candidates in Texas alone. The effects of Defendant Jones characterizing Plaintiff as an "extortionist," a "shakedown artist," and someone who is "conspiring" with others he claims are extorting him, are permanently and indelibly deleterious to Plaintiff's reputation in her chosen occupation in the political arena.

79.     Plaintiff's current employer has received defamatory communications referring to Plaintiff as an "extortionist." For example, as recent as December 24, 2022, Plaintiff's employer received the following message on Twitter: "You may want to get rid of your congressional aid Alexandra Davis because extortion seems to be her thing." This is just one example of the obvious damage to Plaintiff's career in the political arena where public opinion dictates your employment.

## PUNITIVE DAMAGES

80.     The above-described defamatory statements were published maliciously by the Defendants for the reason that Defendants acted with the specific intent to cause injury to Plaintiff or they were made with the knowledge that they were false or with such utter recklessness as to indicate a conscious indifference to the rights, safety, or welfare of Plaintiff with actual, subjective awareness that his conduct involved an extreme degree of risk of harm to Plaintiff.  Thus, the award of exemplary damages in an amount in excess of the minimal jurisdictional limits of this court is justified.

WHEREFORE, upon final trial Plaintiff requests the following relief:

1.     Actual damages;

2.     Special damages;

2.     Punitive damages;

3.     Costs of suit; and

4.     Any other and further relief, both general and special, at law or in equity, to which

Plaintiff may be justly entitled.

Respectfully submitted,

**BERGMANGRAY LLP**

*/s/ Jay K. Gray*_____
Jay K. Gray
State Bar No. 08324050
Andrew A. Bergman
State Bar No. 02196300
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444
214-599-0602 [fax]
gray@bergmangray.com
bergman@bergmangray.com
**LEAD COUNSEL**


**KEIL LAW FIRM, PLLC**
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

BY: */s/ Matt Keil*_____
Matt Keil, TX Bar No. 11181750
mkeil@kglawfirm.com
Erin Keil, TX Bar No. 24120462
ekeil@kglawfirm.com
Hailee M. Golden Amox, TX Bar No.
24085176
hamox@kglawfirm.com


**ATTORNEYS FOR PLAINTIFF**