## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| ALEXANDRA DAVIS,<br>    *Plaintiff,*<br><br>vs.<br><br>JERRAL W. JONES, DALLAS COWBOYS<br>FOOTBALL CLUB, LTD., JAMES<br>WILKINSON, TRAILRUNNER<br>INTERNATIONAL, LLC, and DONALD<br>JACK, JR.<br>    *Defendants.* | CIVIL ACTION No. 5:23-cv-00032-RWS<br><br>JURY TRIAL DEMANDED<br><br>ORAL HEARING REQUESTED |

**DEFENDANTS' JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC AND DONALD JACK, JR. MOTION TO DISMISS UNDER RULE 12 (b)(6) AND BRIEF IN SUPPORT THEREOF**

Respectfully submitted by:

**FOLSOM ADR PLLC**

David Folsom
State Bar No. 07210800
david@folsomadr.com
6002-B Summerfield Dr.
Texarkana, TX 75503
(903) 277-7303

**JACKSON WALKER LLP**

Charles L. Babcock
State Bar No. 01479500
cbabcock@jw.com
Nancy W. Hamilton
State Bar No. 11587925
nhamilton@jw.com
1401 McKinney Street
Suite 1900
Houston, TX 77010
(713) 752-4210
(713) 752-4221 - Fax

David T. Moran
State Bar No.
14419400
dmoran@jw.com
Edwin Buffmire
State Bar No.
24078283
ebuffmire@jw.com
Cody Martinez
State Bar No.
24102146
cmartinez@jw.com
2323 Ross Avenue
Suite 600
Dallas, TX 75201
(214) 953-6000
(214) 953-5822 – Fax

**ATTORNEYS FOR DEFENDANTS**
**JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC AND DONALD JACK, JR.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... i

I.     INTRODUCTION .................................................................................1

II.    GROUNDS IN SUPPORT OF DISMISSAL ....................................5

III.   ISSUES TO BE DECIDED ..................................................................6

IV.   STATEMENT OF UNDISPUTED FACTS .......................................7

V.    MOTION TO DISMISS STANDARD...............................................12

VI.   ARGUMENT ........................................................................................13

      A.    ONE OR MORE ELEMENTS OF PLAINTIFF'S DEFAMATION
          CLAIMS ARE NEGATED AS A MATTER OF LAW ......................................13

           1.    The Plea ....................................................................15

           2.    The Preservation Letter..........................................21

           3.    The Jack Affidavit....................................................22

           4.    Jack's Purported Comments to ESPN....................23

           5.    Wilkinson's Purported Comments to ESPN ..........24

      B.    PUBLIC FIGURE AND ACTUAL MALICE......................................26

      C.    NO CONSPIRACY WHEN NO UNDERLYING CLAIM.................28

      D.    THE PRINCIPAL CAN NOT BE RESPONSIBLE WHEN THE AGENT
          IS IMMUNE .........................................................................................28

      E.    THE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
          COMPLY WITH THE DMA .................................................................28

      F.    THE PUNITIVE DAMAGES CLAIM SHOULD BE DISMISSED ...................30

VII.   CONCLUSION.....................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Matter of 3 Star Props., L.L.C.*,
  6 F.4th 595 (5th Cir. 2021) ...................................................................28

*Agar Corp. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019)..................................................................28

*Agate v. IMG Worldwide, Inc.*,
  No. B243636, 2013 WL 6087414 (Cal. App. Nov. 20, 2013) (unpublished)..........................25

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......................................13

*Atkinson v. Netflix, Inc.*,
  No. 5:21-CV-00079, 2022 WL 2899275 (E.D. Tex. May 18, 2022).....................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...............................12, 13

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015)............................27

*Bowlby v. City of Aberdeen*,
  681 F.3d 215 (5th Cir. 2012) ...............................................................13

*Cantey Hanger, LLP v. Byrd*,
  467 S.W.3d 477 (Tex. 2015)..................................................................22

*D Magazine Partners, L.P. v. Rosenthal*,
  529 S.W.3d 429 (Tex. 2017)..................................................................13

*Dallas Morning News, Inc. v. Tatum*,
  554 S.W.3d 614 (Tex. 2018).................................................6, 11, 13, 15, 17

*E.G.E. By Next Friend Kayla Ellenwood v. Leon*,
  205 N.E.3d 232 (Ind. 2023) ..................................................................1

*Fasi v. Gannett, Co.*,
  930 F. Supp. 1403 (D. Haw. 1995).............................................................19

*G & H Towing Co. v. Magee*,
  347 S.W.3d 293 (Tex. 2011)..................................................................28

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)..................................................................................26, 30

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009)....................................................................13

*Green Belt Co-op Pub. Ass'n v. Bresler*,
398 U.S. 6 (1970)......................................................................................19

*Hancock v. Variyam*,
400 S.W.3d 59 (Tex. 2013).......................................................................30

*Haynes & Boone, LLP v. NFTD LLC*,
631 S.W.3d 65 (Tex. 2021).......................................................................28

*Hogan v. Winder*,
762 F.3d 1096 (10th Cir. 2014) ............................................................19, 20

*Hogan v. Zoanni*,
627 S.W.3d 163 (Tex. 2021).....................................................................29

*James v. Brown*,
637 S.W.2d 914 (Tex. 1982).....................................................................21

*Janklow v. Newsweek, Inc.*,
788 F.2d 1300 (8th Cir. 1985) ..................................................................15

*Lilith Fund for Reprod. Equity v. Dickson*,
662 S.W.3d 355 (Tex. 2023).........................................................6, 14, 15, 21

*In re Lipsky*,
460 S.W.3d 579 (Tex. 2015).....................................................................14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ...................................................................13

*Masson v. New Yorker Mag. Inc.*,
501 U.S. 496 (1991)..................................................................................14

*McIlvain v. Jacobs*,
794 S.W.2d 14 (Tex. 1990)........................................................................17

*McNamee v. Clemens*,
762 F. Supp. 2d 584 (E.D.N.Y. 2011) ......................................................25

*Miller v. Transamerican Press*,
621 F.2d 721 (5th Cir. 1980), *mod. on reh*, 628 F.2d 932 (5th Cir. 1980), *cert.
den.*, 450 U.S. 1041 (1981)......................................................................14

*Musser v. Smith Protective Servs., Inc.*,
    723 S.W.2d 653 (Tex. 1987)........................................................................17

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5th Cir. 2007) ....................................................................22

*Neely v Wilson*,
    418 S.W.3d 52 (Tex. 2013)........................................................................17

*New York Times v Sullivan*,
    376 U.S. 254 (1964)..................................................................................26

*Novecon Ltd. v. Bulgarian-Am. Enter. Fund*,
    190 F.3d 556 (D.C. Cir. 1999) ..................................................................20

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001) ....................................................................20

*Shell Oil Co. v. Writt*,
    464 S.W.3d 650 (Tex. 2015)......................................................................22

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)............................................................................14, 26

*Trotter v. Jack Anderson Enters., Inc.*,
    818 F.2d 431 (5th Cir. 1987) ..................................................6, 14, 26, 27

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir, 2018) ..............................................................27

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ..........................................................6, 7, 8

*WFAA-TV, Inc. v. McLemore*,
    978 S.W.2d 568 (Tex. 1998)......................................................................21

*WickFire, L.L.C. v. Woodruff*,
    989 F.3d 343 (5th Cir. 2021) ....................................................................28

**Statutes**

Tex. Civ. Prac. & Rem. Code Section 16.002(a),........................................................22

Tex. Civ. Prac. & Rem. Code Section 73.051 *et seq.*, ....................5, 6, 7, 12, 28, 29

Tex. Civ. Prac. & Rem. Code Section 73.054 ..............................................................28

Tex. Civ. Prac. & Rem. Code Section 73.055 ......................................................28, 29, 30

Tex. Civ. Prac. & Rem. Code Section 73.058 ................................................................29

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)......................................................................1

Fed. R. Civ. P. 8(a)(2)...........................................................................................13

Fed. R. Civ. P. 12(b)(6)..............................................................................7, 12, 19

https://www.thesaurus.com/browse/blackmail ........................................................19, 20

Texas Const., art. I, § 8 ..........................................................................................13

U.S. Const., amend. I .....................................................................................13, 15, 19

TO THE HONORABLE COURT:

Jerral W. Jones ("Jones"), Dallas Cowboys Football Club Ltd. ("Cowboys"), James Wilkinson ("Wilkinson"), Trailrunner International LLC ("Trailrunner") and Donald Jack, Jr. ("Jack") (collectively "Defendants") move to dismiss Plaintiff Alexandra Davis' ("Plaintiff" or "Davis") Complaint ("Complaint" or "Dkt. 1") for failure to state a claim ("Motion") as follows:

## I.      INTRODUCTION

1.      Plaintiff alleges that Defendants called her an "extortionist" and a "shakedown artist" thereby defaming her because, Davis says, she never "sought any financial compensation" from Jones.[1] As we shall see, this is demonstrably (and conceded by her to be) untrue but, in any event, irrelevant because, as her Complaint admits, she sought something of value, to which she had no right, by threatening Jones with exposure of private embarrassing facts unless he complied with her demands.

2.      First, even if she didn't seek **money** (which she did), extortion can be, and often is, about "money or *anything of value*".[2] At the very least Plaintiff demanded, as the Complaint alleges, that Jones "submit to genetic testing in private"[3] in order "to avoid potential publicity that the filing of a paternity lawsuit could attract."[4] "Genetic Testing" is apparently of "value" to Plaintiff who is interested in proving that Jones is her father even though she contractually relinquished the right to establish his parentage in exchange for over a million dollars.

---

[1] Dkt. 1 ¶¶ 26, 33, 55-73, pp. 6, 8, 14-19. All page cites are to the ECF page.

[2] *See* Black's Law Dictionary (11th ed. 2019) (Bryan Gardner Ed.)("Black's") defines "extort" as "To gain by wrongful methods; to obtain in an unlawful manner; to exact wrongfully by threat or intimidation". An earlier edition of Black's (5th edition) defines extortion as obtaining "money or other valuable thing". *See also E.G.E. By Next Friend Kayla Ellenwood v. Leon,* 205 N.E.3d 232 (Ind. 2023) (unpublished) ("We find that the trial court used the term "extortion" to mean that Mother was trying to extract Father's consent to the adoption using disingenuous promises [allowing him to see the child if he consented to the adoption] … We therefore do not find the trial court's use of this word (extortion) erroneous.").

[3] Dkt. 1 ¶ 29, p. 7.

[4] *Id.* at ¶ 26, p. 6.

3.      Second, Plaintiff admits she **did** seek **money** when she demanded that Jones pay her $20 million, writing that "if I get that I will be out of his (Jones') life".[5] Furthermore, in the first of three lawsuits she filed against Jones, Davis demanded monetary attorney's fees and "other and further relief" including the right to continue to receive money under her agreements with Jones even as she breached them. In the second lawsuit she sought monetary "attorney's fees, expenses, costs and interest [and] general relief [and] all other relief" and in this case she seeks damages.[6] So she has concededly sought both non-monetary and monetary "compensation" from Jones, that is, **money and/or something of value**, in a variety of ways over a lengthy period of time (the additional $20 million demand was in 2017)[7] in exchange for getting "out of his life" and not exposing him to "potential publicity".

4.      The alleged defamations ("Complained of Statements") are, according to Plaintiff, found in five publications ("Publications"): (i) a Plea to the Jurisdiction and Answer Subject Thereto Original Answer ("Plea")[8] which Jones filed in response to the first of Davis' three lawsuits against him ("First Davis Lawsuit"); (ii) an Affidavit by Jack filed in response to the next Davis lawsuit ("Second Davis Lawsuit")[9]; (iii) a letter from counsel for a third party witness (Jones) to counsel in a divorce case, where Plaintiff was **not** a party and not copied, asking that specified documents be preserved ("Preservation Letter")[10]; and (iv and v) comments allegedly made by Defendants Jack and Wilkinson and subsequently published by ESPN in two separate

---

[5] Ex. 1(A), APP 004.
[6] *See* Ex. 2(3), APP 079; Ex. 7, APP 155.
[7] Dkt. 1 at ¶ 43 p. 11; Ex. 1 APP 001; Ex. 1(A), APP 004.
[8] Ex. 4, APP 123-133.
[9] Ex. 2(1), APP 026-031.
[10] Ex. 10, APP 294-295.

written articles, one on March 30, 2022 ("First ESPN Article")[11] and the other on March 31, 2022 ("Second ESPN Article").[12]

5.       This dispute dates to Davis' childhood when, starting in 1998, Jones began financially supporting her through various agreements (collectively "The Agreements" also referred to in the Complaint as the "Settlement Agreements") executed by her mother ("Cynthia" or "Mrs. Spencer") as "sole legal guardian" and "parent" and "on behalf of [Plaintiff]"[13] and payments administered by Jack, an attorney for Jones, with whom Davis later (in 2017) claimed to have a "special relationship", referring to him as a "father figure" and describing him as "a solid and reliable person".[14]

6.       Over the years, Jones provided more than a million dollars in ongoing monthly support[15] to Davis in exchange for two things: 1) the agreement that Davis and Cynthia would not "make any future disclosures or statement regarding Mother's belief that [Jones] is father of [Plaintiff]"[16] and 2) that the Agreements, which released all claims regarding Davis' parentage, "may forever be treated as a complete defense and bar to any action that Mother or [Plaintiff] may commence, bring, or institute against [Jones] in any way related to [Plaintiff]".[17]

7.       The First Davis Lawsuit, filed in violation of those provisions, "related to" Plaintiff who sought a judicial declaration that she was not bound by the Agreements.[18] It was publicly filed and accompanied by a press statement from Plaintiff's lawyers[19] thus materially breaching both of

---

[11] Ex. 11, APP 296-297.
[12] Ex. 12, APP 298-300.
[13] Ex. 2(2), APP 032.
[14] Ex. 1(A), APP 002, 004.
[15] Ex. 2(1), APP 029.
[16] Ex. 2(2) ¶ 5, APP 035.
[17] *Id.* ¶¶ 4-5, APP 034-035.
[18] Ex. 2(3) ¶¶ 21-28, APP 078-079.
[19] Ex. 3A "Davis' lawyers, Andrew A. Bergman and Jay K. Gray of Dallas [said] in a statement released to ESPN [on or about March 9, 2022]", APP 121.

Plaintiff's promises (Confidentiality and a "bar to any action…in any way related to [Davis]"). The Second Davis Lawsuit (attempting to obtain a parentage order that Jones is her father by forcing him to take a paternity test) did as well. Jones has separately counterclaimed in this case to recover damages for those breaches.[20]

8.      The "monthly support payments" ended on Davis' twenty-first birthday, December 16, 2017[21] although additional lump sum payments were to be made when Plaintiff "attained the ages of 24 (2020), 26 (2022) and 28 (2024)".[22] Recognizing that "it is a month away from my 21st [birthday]"[23] and the end of the monthly support payments, Davis sought a new monetary deal with Jones at a dinner with Jack.[24] "The agreement I want," she explained in a letter ("Plaintiff's Letter"), which she both read and gave to Jack, "is a separation agreement [and] what I want is what I think is fair. I already have a figure in mind and if I get that I will be out of his [Jones'] life … I will never reach out asking for money again. I will not speak about who he is".[25] After hearing Davis recite the letter, Jack asked how much money Davis thought was "fair". She quoted, "an additional $20 million".[26] Jones "never agreed to that request".[27]

9.      Then in early 2022 (after the December 2020 lump sum payment had been made) Plaintiff demanded that Jones take a paternity test even though, as Plaintiff admits, "Defendant

---

[20] Plaintiff claimed in the First Davis Lawsuit that the Agreements were not binding because they were entered into when she was a minor. But, whether or not that position is supported by the law (it is not), Davis ratified/affirmed the Agreements by accepting more than a hundred payments in benefits under them after she reached the age of majority. Davis never took action to timely disaffirm the Agreements. Indeed, the First Davis Lawsuit acknowledged that she might be bound by the Agreements but sought a judicial declaration that she was not. Rather than wait for and abide by a decision, Davis non-suited the case shortly before Jones' Plea was to be ruled upon. *See* Exs. 4, 6, APP 123-133. APP 148-152.

[21] Ex. 2(2a) ¶ 2(M) ("the twentieth Trust Year shall end on December 16, 2017".), APP 045.

[22] Ex. 2(2), APP 033; Ex. 2(2b), APP 054.

[23] Ex. 1(A), APP 004; Dkt. 1 ¶¶ 43-44 pp. 11-12.

[24] Ex. 2(1) ¶¶ 19-20, APP 030; Dkt. 1 ¶¶ 43-44 pp. 11-12.

[25] Ex. 1(A), APP 004.

[26] Ex. 2(1) ¶ 19, APP 030.

[27] *Id.*

Jones unequivocally and adamantly stated … to Cynthia (shortly after Plaintiff was born) … that he never was going to take a paternity test"[28] and the Agreements expressly bar a paternity action and released claims "in any way related to [Davis'] paternity".[29]

10.    In 2017 the coin of the realm was **money**; in 2022 it was so she could breach the Agreements and still receive her **money** and then it was for a paternity test and **money** in the form of attorney's fees, costs, and interest, "general relief" and "other relief"[30]. This case, the third one ("Third Davis Lawsuit"), also seeks **money** in the form of damages including punitive damages.

## II.    GROUNDS IN SUPPORT OF DISMISSAL

11.    The grounds presented by this Motion all involve questions of law under well-established Texas and federal precedent that dictate dismissal for failure to state a claim because (i) the reasonable reader would not attribute the alleged **defamatory meaning** Plaintiff attaches to the Complained of Statements when each Publication containing Complained of Language (viewed separately) is taken as a whole; (ii) based on the undisputed facts the Complained of Statements are either literally or substantially **true statements of fact** (i.e., not materially false) whether one disregards or not protected opinion, hyperbole or rhetoric which are not actionable; (iii) there is no plausible pleading of Constitutional **"actual malice"** which is the fault standard[31] since Plaintiff is a public figure; (iv) the Plea, Jack Affidavit and Preservation Letter are all absolutely privileged under the judicial proceedings privilege; (v) the Plea and Preservation Letter were prepared by Jones' agent attorneys who are absolutely immune from suit and when there is no liability for the agent there is none for the principal; (vi) there can be no conspiracy claim in the absence of an actionable underlying cause of action; (vii) the action is barred by the Texas

---

[28] Dkt. 1 at ¶ 13 p. 3.
[29] Ex. 2(2) ¶¶ 4-5, APP 034-035.
[30] Ex. 7, APP 155.
[31] Even if the fault standard is negligence there is no plausible pleading of that either.

Defamation Mitigation Act ("DMA") and (viii) punitive damages are barred under either (a) the DMA or (b) for failure to plausibly plead any entitlement to punitive damages or (c) for failure to plausibly plead "actual malice".

### III.    ISSUES TO BE DECIDED

12.    Whether the Complained of Statements have defamatory meaning (an essential element) as measured by a reader or listener of ordinary intelligence[32] when considering the entirety of each separate Publication, a question of law.

13.    Whether the Complained of Statements in the Publications are false statements of fact (an essential element) whether or not they are protected opinion, rhetoric or hyperbole, a question of law.[33]

14.    Whether, as a limited purpose public figure (a question of law), Plaintiff has plausibly alleged facts of Constitutional "actual malice" (knowledge of falsity or reckless disregard of the truth, that is, that the Defendants in fact entertained serious doubt about the truth of the complained of statements), an essential element of her claim and, even if not a public figure, whether there is a plausible pleading of negligence.[34]

15.    Whether the Plea, Preservation Letter and Jack Affidavit are absolutely privileged under the Judicial Proceedings Privilege.

16.    Whether the principal can be liable for the Plea and Preservation Letter when his agents are absolutely immune from suit regarding the Plea and the Preservation Letter.

---

[32] *See Dallas Morning News, Inc. v. Tatum,* 554 S.W.3d 614, 624-25, 629-30 (Tex. 2018) (*"Tatum"*) ("In a defamation case, the threshold question is whether the words used 'are reasonably capable of a defamatory meaning'. In answering the question the inquiry is objective not subjective [and] "[M]eaning is a question of law." (Citations omitted)).

[33] *See Lilith Fund for Reprod. Equity v. Dickson,* 662 S.W.3d 355, 363, 367 (Tex. 2023) (*"Lilith Fund"*) ("Whether an alleged defamatory statement constitutes an opinion rather than a verifiable falsity is a question of law.").

[34] *See Trotter v. Jack Anderson Enters., Inc.,* 818 F.2d 431, 433 (5th Cir. 1987) ("Whether an individual is a public figure is a matter of law for the court to decide."); *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724,735, 745 (5th Cir. 2019) ("[W]e agree with the district court that the deficiency of Appellants' "actual malice" allegations provides an independent, standalone basis for dismissal of Walker's defamation claims.").

17.     Whether the Preservation Letter ("Letter") is, on its face, "Of and Concerning" Plaintiff (an essential element), "Defamatory" (another element), contains materially false statement of fact(s) (element) and is, in any event, absolutely privileged or barred by the one-year statute of limitations.

18.     Whether Plaintiff's failure to make a timely or sufficient demand for correction, clarification or retraction requires dismissal under the DMA, Section 73.051 *et seq.,* Tex. Civ. Prac. & Rem. Code.

19.     Whether Plaintiff states a conspiracy claim in the absence of an underlying cause of action.

20.     Whether Plaintiff is precluded as a matter of law from recovering punitive damages under the DMA or, alternatively, in the absence of any pleading showing eligibility for punitive damages or a plausible pleading of facts of "actual malice".

### IV.     STATEMENT OF UNDISPUTED FACTS

21.     The undisputed facts are drawn from Plaintiff's Complaint and documents attached to the Motion which are referenced in the Complaint and are central to Plaintiff's claims ("Attachments").[35] Defendants accept Plaintiff's allegations **solely for the purpose of this Motion** even though many will be disputed if the case continues. The uncontested material facts are as follows:

22.     Davis was born on December 16, 1996.[36]

---

[35] The attachments are properly considered in deciding the Motion under Fed. R. Civ. P. 12(b)(6). *See Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 735 ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents. In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit and the court in making the elementary determination whether a claim has been stated [under Rule 12(b)(6)]").

[36] Dkt. 1 at ¶ 8 p. 2.

23.     At that time her mother, Cynthia "Cindy" Davis Spencer, was married but "[s]hortly after Plaintiff was born, [Mrs. Spencer] and her husband began divorce proceedings in Arkansas".[37]

24.     The Spencers were granted a divorce in June 1998.[38]

25.     While the divorce was pending Mrs. Spencer informed Jones that her husband had taken a paternity test which showed that [Mr. Spencer] was not Plaintiff's father.[39]

26.     Mrs. Spencer claims she knew "that Jones was Plaintiff's biological father."[40]

27.     Jones then, according to Mrs. Spencer, "immediately set out to negotiate an agreement with Cynthia that would exchange money for silence."[41]

28.     To facilitate the negotiations of a "hush money deal" he sought the help of his "long time Arkansas friend and lawyer, defendant Jack."[42]

29.     "A 'hush money' deal was struck" which in "essence" provided for ongoing monthly support "… conditioned on Cynthia and Plaintiff remaining silent" about the claim that Jones was Plaintiff's father.[43]

30.     The so-called hush money deal was memorialized in two written documents ("The Settlement Documents" also referred to as "The Agreements").[44] The Settlement Documents, in

---

[37] *Id.* at ¶¶ 8, 11 pp. 2-3.

[38] *Id.* at ¶ 12 p. 3.

[39] *Id.* at ¶ 13 p. 3.

[40] *Id.*

[41] *Id.* at ¶ 15 p. 4.

[42] *Id.*

[43] *Id.* at ¶ 16 p. 4.

[44] *Id.* at ¶ 18 p. 4. *See* Ex. 2 to this Motion, which attaches as Exhibit 2(1) the Affidavit ("Jack Affidavit") filed in the Second Davis Lawsuit which attaches the Settlement Documents as Exhibits (2), (2a) and (2b), and Exhibit 1(A), the Plaintiff's Letter APP 032-071, APP 002-004. These documents may be considered because they are extensively referenced in the Complaint and are central to the Plaintiff's claims and, in fact, are one of the five allegedly defamatory publications. Dkt. 1 at ¶ 42 p. 11. As such, it may be considered by the Court. *See Walker,* 938 F.3d at 735.

addition to providing for confidentiality also barred "Plaintiff from ever seeking a legal adjudication that Defendant Jones was her father".[45]

31.     After reaching the age of majority on December 16, 2014 Plaintiff demanded and accepted over a million dollars from Jones consisting of 140 separate payments under the Agreements and "numerous other payments" outside the Agreements.[46]

32.     But not all of Plaintiff's monetary demands were met. A month before her twenty-first birthday "at a dinner" with Jack, Plaintiff "read to [him]" a letter ("Plaintiff's Letter") "written … by Plaintiff as a therapeutic exercise at the direction of her therapist".[47] "In truth and in fact," Plaintiff alleges, "the therapy assisted letter was a plea by a shunned daughter to her father".[48] Plaintiff's Letter is attached to the Jack Declaration as (Ex. 1(A)).

33.     Plaintiff's Letter states that "I want us to have an agreement" which would pay Plaintiff "what I think is fair. I already have a figure in mind … ". Plaintiff wrote that if she was paid her figure she promised "if I get that I will be out of his life. I will sign something that says I will never reach out asking for money again. I will not speak about who he is."[49]

34.     Plaintiff's Letter is in her own handwriting and was written by her as an adult, almost three years after Davis reached the age of majority (18).[50] At some point, after she received her 2020 payment and the $20 million demand was ignored, "Plaintiff decided to seek legal guidance as to her rights for the first time as they related to Defendant Jones' parentage, and the so-called Settlement Documents."[51]

---

[45] Dkt. 1 at ¶ 18 p. 4
[46] Ex. 2(1) ¶ 17, APP 029-030.
[47] Dkt. 1 at ¶ 43 p. 11.
[48] *Id.* at ¶ 44 p. 11.
[49] Ex. 1(A), APP 003-004.
[50] Ex. 2(1) at ¶19, APP 030.
[51] Dkt. 1 at ¶ 22 p. 5.

35.     On January 5, 2022 her attorney Andrew A. Bergman ("Bergman") sent a letter to Jones stating that his firm "has been retained to represent [Plaintiff] in establishing parentage of you as her biological and legal father … [and if] you have no interest in cooperating…we will proceed with the legal process."[52]

36.     Plaintiff alleges that she sought Jones' "participation without the necessity of filing a lawsuit to avoid potential publicity that the filing of a paternity lawsuit could attract".[53] The lawsuit was a "last resort", she alleged, unless "Defendant Jones just agreed to submit to genetic testing in private."[54]

37.     On March 1, 2022, "after not receiving any contact from Defendant Jones' counsel" Bergman "reached out to [Jones'] counsel and forwarded a copy of the lawsuit Plaintiff intended to file."[55]

38.     When no agreement was reached, Bergman filed the First Davis Lawsuit *in the public record* (in violation of the Agreements). It sought a declaration that "[Davis] is not bound by" the Settlement Agreement which permitted the trusts they established to be terminated if [Plaintiff] or any person on behalf of [Plaintiff] "brings or commences any kind of legal proceeding to establish paternity of the Child". It further sought a declaration that the Settlement Agreement provisions that required her confidentiality were unenforceable[56] and demanded attorney's fees, costs and "any other and further relief … to which Plaintiff may be justly entitled."[57]

---

[52] Dkt. 1-2 p. 1.

[53] Dkt. 1 at ¶ 26 p. 6.

[54] *Id.* at ¶ 29 p. 7.

[55] Dkt. 1 at ¶ 27 p. 7.

[56] *See* Ex. 2(3) attached hereto and incorporated herein (Certified Copy of Plaintiff's Original Petition in *Alexandra Davis v. Jerald W. Jones*, No. DC-22-02476 (Dallas Co. Dist. Ct., Texas). One of the allegedly defamatory publications (the "Plea") responded to this Petition. *See* Dkt. 1 ¶¶ 34-35 *Id.* at ¶¶ 21-28, APP 078-079.

[57] *Id.* at ¶ 29, APP 079.

39.     An article about Plaintiff's publicly filed lawsuit was "immediately published" by the *Dallas Morning News* and "after the [*Morning News*] published its story, the Lawsuit immediately attracted local, national and international attention."[58] Plaintiff's counsel also issued a statement to the press which was published, in part, by ESPN.[59] Plaintiff herself issued a written statement to WFAA-TV, a Dallas television station.[60]

40.     Jones' lawyers countered the lawsuit with a Plea to the Jurisdiction and Answer subject thereto ("Plea").[61] Plaintiff responded ("Response").[62] But shortly before the Plea was to be decided, Plaintiff nonsuited the First Davis Lawsuit and it was dismissed by the Court without prejudice.[63]

41.     Then, Davis immediately filed a second suit against Jones in Dallas County Family District Court ("Second Davis Lawsuit") this time to "adjudicate parentage" and seeking "general relief" and monetary "attorney's fees."[64] Jack's affidavit was filed in support of Jones' motion for summary judgment in that case.[65] The summary judgment was denied and the lawsuit is still pending.

42.     "Around this same time" Jones' daughter (Charlotte) was going through a contentious divorce with her husband, Shy Anderson, [and] on March 10, 2022 one of Jones'

---

[58] Dkt. 1 at ¶¶ 31-32 p. 8. The *Dallas Morning News* article is attached hereto and incorporated herein as Exhibit 3 APP 114-120. A national publication subsequently published an article which noted that "lawyers for [Davis] released a statement Thursday". This article (from ESPN) is attached hereto and incorporated herein as Exhibit 3A, APP 121-122.

[59] *See* Ex. 3A, APP 121.

[60] *See* Ex. 9(P), APP 287-293.

[61] *See* Ex. 4 [Plea] attached hereto and incorporated herein APP 123-133.

[62] *See* Ex. 5 [Plaintiff's Response to the Plea] attached hereto and incorporated herein APP 134-147.

[63] *See* Ex. 6 [Plaintiff's Motion for Non-Suit and Order Granting] attached hereto and incorporated herein APP 148-152.

[64] *See* Ex. 7 [Petition to Adjudicate Parentage] attached hereto and incorporated herein APP 153-162.

[65] *See* Ex. 2 [Motion for Summary Judgment] attached hereto and incorporated herein (APP 005-113)and Ex. 8 [Davis' Response to Jones' Motion for Summary Judgment] (APP 163-193) attached hereto and incorporated herein.

lawyers (Babcock) "wrote so-called document [p]reservation [l]etter to Shy Anderson's [counsel]"[66], ("Preservation Letter").

43.     Plaintiff sues for defamation regarding three written publications (the Plea, the Jack Affidavit, and the Preservation Letter) and oral statements purportedly made by Defendants Jack and Wilkinson to ESPN which published The First ESPN Article on March 30, 2022[67] and The Second ESPN Article on March 31, 2022.[68]

44.     Plaintiff does not plead that she served Defendants with a request for correction, clarification or retraction of the allegedly Complained of Statements in the Publications as required by the DMA. She could not so plead in good faith because no such request was ever made.

45.     This lawsuit was filed more than one year after the Document Preservation Letter. For purposes of the DMA (which requires a request to be served before limitations run in order to be timely) no demand for clarification, correction or retraction was made before the expiration of the statute of limitations for the other publications. Limitations ran for all the Publications shortly after this suit was filed.

## V.     MOTION TO DISMISS STANDARD

46.     The motion to dismiss standard for failure to state a claim under Fed. R. Civ. P. 12(b)(6), is, of course, familiar to the Court and is as follows:

> Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.* A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6)*.* When considering a motion to dismiss under Rule 12(b)(6)*,* the court must accept as true all well-

---

[66] Dkt. 1 at ¶ 37 p. 9. This letter is one of the allegedly defamatory publications and is attached hereto and incorporated herein as Ex. 10, APP 294-295.

[67] Dkt. 1 at ¶ 39. [The First ESPN Article] attached hereto and incorporated herein as Exhibit 12, APP 296-297.

[68] *Id.* at ¶ 58 (e) through (l). The Second ESPN Article is attached hereto and incorporated herein as Exhibit 12, APP 298-300.

pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010). The court must then determine whether the complaint states a claim for relief that is plausible on its face.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009*) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show(n)' – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570).

*Atkinson v. Netflix, Inc.*, No. 5:21-CV-00079, 2022 WL 2899275, at *6 (E.D. Tex. May 18, 2022) (Schroeder, J.).

## VI.   ARGUMENT

### A.   ONE OR MORE ELEMENTS OF PLAINTIFF'S DEFAMATION CLAIMS ARE NEGATED AS A MATTER OF LAW

47.     Both the First Amendment to the United States Constitution and Article I, Section 8 of the Texas Constitution "robustly protect freedom of speech"[69] and "impose substantive limits on defamation law".[70] As the Texas Supreme Court has explained, "to avoid the threat to free speech that unrestrained defamation liability poses, the U.S. Constitution imposes a special duty on judges whenever it is claimed that a particular communication is defamatory".[71]

---

[69] *D Magazine Partners, L.P. v. Rosenthal,* 529 S.W.3d 429, 431 (Tex. 2017).

[70] *Dallas Morning News, Inc. v. Tatum,* 554 S.W.3d 614, 624 (Tex. 2018) ("*Tatum*").

[71] *Tatum,* 554 S.W.3d at 624.

48.     As a result of these protections the trial judge is charged in the first instance with determining, as a matter of law: 1) whether the speech is protected opinion, rhetoric or hyperbole, 2) whether it is defamatory and 3) whether the Plaintiff is a public figure which would require pleading and proof by clear and convincing evidence of Constitutional "actual malice". Constitutional actual malice is defined by the United States Supreme Court as knowledge of falsity by the person responsible for the publication or reckless disregard for the truth that is, the speaker in fact entertained serious doubt about the truth of the statement.[72] "Whether an individual is a public figure is a matter of law for the court to decide"[73] and "[i]n a defamation case, the question of public figure is pervasive and it should be answered as soon as possible."[74] As in *Miller* the public figure question is easily resolved on the undisputed record based, primarily, on Plaintiff's admitted conduct and her own allegations.

49.     Under Texas law, as informed by the Constitutions, to prevail on a claim of defamation a plaintiff must allege and prove: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault [negligence for private figures and "actual malice" for public figures and public officials], and (4) damages, in some cases".[75] The allegedly false statement of fact must be material.[76]

50.     "Whether an alleged defamatory statement constitutes an opinion rather than a verifiable falsity is a question of law".[77] The publication is viewed from "the perspective of a reasonable person's perception of the entirety of the communication [and] not from isolated

---

[72] *See St. Amant v. Thompson,* 390 U.S. 727, 731 (1968) ("*St. Amant*").

[73] *See Trotter v Jack Anderson Enter., Inc.* 818 F.2d 431, 433 (5th Cir. 1987).

[74] *See Miller v. Transamerican Press*, 621 F.2d 721,724 (5th Cir. 1980), *mod. on reh*, 628 F.2d 932 (5th Cir. 1980), *cert. den.*, 450 U.S. 1041 (1981).

[75] *See In re Lipsky,* 460 S.W.3d 579, 593 (Tex. 2015).

[76] *See Masson v. New Yorker Mag. Inc.,* 501 U.S. 496, 517 (1991).

[77] *See Lilith Fund for Reprod. Equity v. Dickson,* 662 S.W.3d 355, 363, 367 (Tex. 2023).

statements."[78] "In considering the entire communication, a reasonable person is also cognizant of the speaker's method and style of dissemination."[79] As Judge Richard Arnold wrote for the en banc Eighth Circuit upholding the dismissal of a defamation claim: "Because the disputed statement in this case is imprecise, unverifiable, presented in a forum where spirited writing is expected, and involves criticism of the motive and intentions of a public official [public figure here] we affirm the holding of the District Court that it is opinion protected by the First Amendment."[80]

51.     In deciding the threshold matter of defamatory meaning (a question of law) the Court first determines "whether the meaning the plaintiff alleges is reasonably capable of arising from the text of which the plaintiff complains. The second step is to answer whether the meaning—if it is reasonably capable of arising from the text—is reasonably capable of defaming the plaintiff."[81]

52.     We discuss each of the Complained of Statements in the Publications below:

### 1.     The Plea

53.     As the Complaint states, the Plea was "the filing of his [Jones'] initial response to the [First Davis] Lawsuit"[82] which sought a declaration that Davis was not bound to the Agreements regarding confidentiality or her parentage[83]. The Plea is a nine page pleading challenging the Court's jurisdiction.[84] The Plea's two paragraph Introduction, which contains the

---

[78] *Id.*

[79] *Id.* at 364.

[80] *Janklow v. Newsweek, Inc.,* 788 F.2d 1300, 1305 (8th Cir. 1985) (*en banc*).

[81] *Tatum*, 554 S.W.3d at 625.

[82] Dkt. 1 ¶ 34 p. 8.

[83] Ex. 2(3), APP 072-082.

[84] Ex. 4 at p. 1, APP 123.

allegedly defamatory language, responds to some of Davis' allegations employing the same rhetoric from paragraph nine of Plaintiff's Petition (*i.e.,* "let's make a deal").[85]

54.    The first paragraph states:

> Plaintiff, a twenty-five-year-old woman currently employed by a United States Congressman [Representative Ronny Jackson] in Washington D.C., claims that Defendant [Jones] is her unacknowledged father. But before making these allegations [Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father'.[86] (Pet. ¶ 9) When Defendant declined to pay, this lawsuit followed.

55.    As Plaintiff's Complaint concedes there is nothing either literally or materially false about this paragraph. The Plaintiff is, as the Plea alleged, indisputably a 25-year-old (now 26) woman working in Washington, D.C. for a Congressman.[87]

56.    Davis certainly claims that Jones is her unacknowledged father ("Jones … has declined … requests to establish a relationship with [Davis] who he knows to be his daughter.")[88] and her lawyer delivered a draft of a potential lawsuit to Jones "Plaintiff's counsel reached out to Defendant Jones' counsel and forwarded a copy of the lawsuit that Plaintiff intended to file if Defendant Jones would not agree …."[89] and demanded that Jones agree to her demands to avoid publicity ("Plaintiff sought Defendant Jones' participation without the necessity of filing a lawsuit to avoid potential publicity that the filing of a paternity lawsuit could attract.").[90]

---

[85] *Id.* At pp. 1-2, APP 123-124.

[86] The "make a deal" phrase and the following quote comes directly out of the Plaintiff's Original Petition to which the Plea responded. *See* Ex. 2(3) ¶ 9 p. 3, APP 074.

[87] Dkt. 1 at ¶¶ 1, 20, 21 pp. 1, 5.

[88] Dkt. 1 ¶ 19 p. 5.

[89] Dkt. 1 ¶ 27 p. 7.

[90] Dkt. 1 at ¶ 26 p. 6.

57.     There is also no dispute that Jones "declined to pay" including the demand for attorney's fees and other relief in the First Davis Lawsuit (which the Plea addressed) and the $20,000,000 demand in 2017 ("Defendant Jones was not agreeable to resolving these issues without litigation")[91] or that the First Davis Lawsuit "followed" ("Disappointed and disheartened Plaintiff filed a declaratory judgment action").[92] Furthermore, this paragraph expressly quoted language *taken directly from* Plaintiff's Original Petition and cited where it could be found (Pet. ¶ 9).[93]

58.     So the facts in paragraph one of the Plea are either literally or substantially true (not materially false).[94] Substantial truth can be determined as a matter of law if the underlying facts are undisputed as here.[95]

59.     And certainly, no reasonable reader would conclude that the statements are defamatory of Plaintiff.[96]

60.     The second paragraph of the Plea reads as follows:

> Plaintiff's 'let's make a deal' overtures were made at the same time Defendant [Jones] and the Dallas Cowboys were the targets of multiple extortion attempts. The potential source(s) of these attempted extortions, including without limitation the Plaintiff [Alexandra Davis] and her agents, will be the subject of other litigation which has been filed or will be filed shortly. She is not entitled to the relief she requests, and the Court does not have jurisdiction to grant it. For the reasons set out below this case should be dismissed for lack of jurisdiction or, in the alternative, all relief should be denied.

---

[91] *Id.* at ¶ 30 p. 7.

[92] *Id*.

[93] The Complaint omits this citation back to the Original Petition when setting out the paragraph which are in the Complaint. *See* Dkt.1 at ¶ 35 p. 9.

[94] *See Neely v Wilson,* 418 S.W.3d 52, 64 (Tex. 2013) (A fact need not be literally true—substantial truth is sufficient if it would not affect the mind of an ordinary reader or listener any differently).

[95] *See McIlvain v. Jacobs,* 794 S.W.2d 14, 15-16 (Tex. 1990).

[96] *See Tatum* 554 S.W.3d at 629-630; *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex. 1987).

61.     Plaintiff's Complaint acknowledges that "[a]round the same time" Jones' daughter Charlotte Jones Anderson was going through a contentious divorce with her husband, Shy Anderson.[97] Davis also acknowledges that the Preservation Letter was sent to Anderson's counsel demanding documents be preserved while Jones' counsel conducted an investigation regarding multiple attempted extortions. The private Preservation Letter did **not** accuse Anderson of working with others to extort money from the Jones family nor was any such accusation made against Davis.[98] It is fair to say, however, (as does Davis) that "[a]round the same time"[99] as **her** overtures, Jones and the Dallas Cowboys believed they were the targets of multiple monetary extortion attempts[100] and that, as the Preservation Letter indicated, there was a reasonable chance of litigation.[101]

62.     But as the Plea states the "**potential sources**" will be the subject of other litigation. Plaintiff does not challenge the remainder of the paragraph but it must be considered for context because the paragraph, indeed the Plea as a whole, was responding to the allegations Plaintiff publicly made and must be viewed in that light.

63.     The use of the phrase "extortion" was merely an opinion subject to future confirmation as to both the "**potential sources**" of the threats and their contours which would be explored in "**other litigation**" which was "**to be instituted**". No reasonable reader could view these two paragraphs as defamatory of Plaintiff and certainly not when the Plea is taken as a whole, which the settled law requires. The Plea is a legal pleading responding to a lawsuit Davis herself

---

[97] Dkt. 1 at ¶ 37 p. 9.

[98] Ex. 10. Rather, the letter advised that Jackson Walker had been retained by Jones "to investigate whether [Jones] has potential claims against you [Anderson] and others for conversion (extortion) and other torts and to determine whether a conspiracy exists among yourself and others including, without limitation, certain of your lawyers." APP 294.

[99] Dkt. 1 at ¶ 37 p. 9.

[100] Ex. 10 at p. 1, APP 294.

[101] *Id.*

filed. It states the Defendant's legal position in a court of law, and the reasonable reader knows that its resolution will await a judicial decision in some "**other**" court.

64.     As to the use of the term "extortion", many cases, including from the United States Supreme Court and the Courts of Appeals, hold that this is an opinion-derived word especially when the facts are accurately set forth. Plaintiff and her lawyers did try to obtain something in exchange for keeping her bargained for promise about Davis' parentage (agree to a parentage test or suffer, as Plaintiff pleads, the "potential publicity that the filing of a paternity lawsuit could attract".)[102] Whether that is extortion is a matter of opinion, rhetoric or hyperbole which are all protected speech and thus not actionable as defamation.[103] The *Hogan* case is instructive.[104]

65.     In affirming the District Court's Rule 12(b)(6) dismissal of defamation claims similar to Plaintiff's here, the Tenth Circuit in *Hogan* wrote: "[A]ccusations of extortion are a familiar rhetorical device.[105] We all know the colloquial or hyperbolic use of the term. Although the term has a derogatory meaning when used either way, we cannot assume that the term always refers to a crime or similarly heinous conduct. Like with other words, context matters."[106]

66.     *Hogan* followed a line of United States Supreme Court cases which protect opinion, rhetoric and hyperbole. In *Green Belt Co-op Pub. Ass'n v. Bresler,* 398 U.S. 6, 13 (1970) the Court reversed, on First Amendment grounds, defamation liability regarding the word "blackmail" (a synonym for "extortion")[107] which was stated in a meeting and then subsequently published by the

---

[102] Dkt. 1 at ¶ 26 p. 6.

[103] *See Hogan v. Winder,* 762 F.3d 1096, 1108 (10th Cir. 2014) (*"Hogan"*).

[104] *See also Fasi v. Gannett, Co.,* 930 F. Supp. 1403, 1410 (D. Haw. 1995) (use of language like "Blackmail Incorporated" and "Frank 'The Extortionist' Fasi" is "rhetorical hyperbole" and "imaginative expression").

[105] Plaintiff is no stranger to rhetoric, hyperbolic and opinionated pleadings. After all, for example, she repeatedly refers to the Agreements as "hush money" even though they also supported her lifestyle for 25 years.

[106] *Id.*

[107] https://www.thesaurus.com/browse/blackmail (Thesaurus.com, *Synonyms: 29 Synonyms & Antonyms for BLACKMAIL).*

media. "[W]e hold," the unanimous Court (with one concurrence) wrote, "that as a matter of constitutional law, the word 'blackmail' in these circumstances was not slander when spoken, and not libel when reported in the Greenbelt News Review."[108]

67.    The same result was reached by the D.C. Circuit in *Novecon Ltd. v. Bulgarian-Am. Enter. Fund,* 190 F.3d 556, 568 (D.C. Cir. 1999) (finding it unlikely that a reader would interpret the use of "extortion" in the context of a reference to a civil lawsuit "as literally charging [the plaintiff] with a crime.") In *Remick v. Manfredy,* 238 F.3d 248, 262-63 (3d Cir. 2001), the Third Circuit held that use of the term "extort" was not actionable. In both *Remick* and *Novecon,* the fact that the phrase was used in an adversary setting with lawyers was important. So too here the reasonable reader would only believe that the Plea was part of the thrust and parry of litigation.[109]

68.    So the defamation based upon the Plea fails for lack of defamatory meaning, and the absence of a false statement of fact. Rather it is merely protected opinion, rhetoric or hyperbole. But even if the phrase, as used, can (somehow) have a defamatory meaning, it is either literally or substantially true. Davis demanded $20,000,000 in exchange for getting "out of his life [and] never reach out asking for money again".[110] She undisputedly demanded that Jones agree to a paternity test and pay monetary attorney's fees (when she had released any such claim) or else face publicity about something Plaintiff and her mother agreed not to publicize. And, of course, she was after the trust money when she filed the declaratory judgment action attempting to obtain judicial blessing for her breach of the Agreements without jeopardizing the trust payments and sought monetary attorney's fees and further relief.

---

[108] *Id.*

[109] *See Hogan,* 762 F.3d at 1107 ("no reasonable reader would take the statement … at face value because the context makes clear that the reason for Hogan's termination is the subject of an ongoing, obviously nasty, employment dispute.").

[110] Ex. 1(A), APP 004.

69. In the very unlikely event that the Court reaches the "actual malice" element, as a limited purpose public figure, Plaintiff must plausibly plead that the Defendants either knew the complained of statements were false or in fact entertained serious doubt as to the truth. Plaintiff has not even attempted to make those allegations as we demonstrate below.

70. Finally, the Plea is absolutely privileged under the judicial proceedings privilege.[111]

### 2. The Preservation Letter

71. "[A] statement must concern the plaintiff to be defamatory."[112] And the Preservation Letter did not. It was not directed to Davis (nor sent to her), but rather to the counsel for Jones' then son-in-law, Shy Anderson. It made no accusations at all, and certainly none as to Davis, but instead stated that the Jackson Walker law firm on behalf of Jones was investigating whether their client had "potential claims against you and others for conversion (extortion)".[113] It is elementary that to be defamatory the statement must be of and concerning the plaintiff.[114] The Preservation Letter listed ten preservation topics, only one of which referenced Plaintiff and merely asked for preservation of all "communications with Alexandra Davis or her current or former employer".[115] The letter cannot be reasonably be read as accusing Davis or her former employer (President Trump) or current employer (United States Congressman Ronny Jackson of Amarillo) of extortion because it is not "of and concerning" her and only asked Anderson to preserve communications relating to her and many others. For the same reasons that the Plea is not

---

[111] *See James v. Brown,* 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made.").
[112] *See Lilith,* 662 S.W.3d at 367.
[113] *See* Ex. 10, APP 294.
[114] *See WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998) ("*McLemore*").
[115] Ex. 10, APP 295.

defamatory or, in the alternative, true or substantially true, and where there is no allegation of actual malice the claim regarding the Preservation Letter should be dismissed.

72.     Further the Preservation Letter is barred by the statute of limitations. Plaintiff alleges that on March 10, 2022 counsel for Defendant Jones wrote a so-called "Preservation Letter" to Shy Anderson's divorce attorney. This lawsuit, ("Third Davis Lawsuit"), was filed on March 27, 2023, more than one year after the Preservation Letter. It is thus barred by the statute of limitations which, for defamation, is one year.[116]

73.     The Preservation Letter is also absolutely privileged under the judicial proceedings privilege because, as the letter recited, "[Y]ou and your counsel can reasonably anticipate litigation even though our investigation is not yet complete".[117] The privilege applies to documents prepared "in serious contemplation" of litigation.[118] The Preservation Letter on its face so states here.

### 3.     The Jack Affidavit

74.     Plaintiff barely mentions the Jack Affidavit in her Complaint referring to it only in a laundry list of allegedly "false statements" cited in paragraphs 58(f) and 67(f). But the Jack Affidavit recites only the detailed history of hundreds of payments to Plaintiff and does not make any defamatory statements, never mentioning the words "extortion" or "shake down". The Complaint does not plausibly allege any defamatory meaning or falsity (both essential elements) which could be derived from the Jack Affidavit, and for each of the same reasons that the Plea and Preservation Letter are not actionable, so too the claims based on the Jack Affidavit should be dismissed. In other words, it is absolutely privileged, has no defamatory meaning, is true or

---

[116] *See* Section 16.002(a), Tex. Civ. Prac. & Rem. Code; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.,* 512 F.3d 137, 141-42 (5th Cir. 2007).
[117] *See* Ex. 10 at 1, APP 294.
[118] *See Shell Oil Co. v. Writt,* 464 S.W.3d 650, 654 (Tex. 2015); *Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477, 485 n.12 (Tex. 2015).

substantially true (not materially false), and the purported statements were made without actual malice and there is no plausible pleading to suggest they were.

### 4. Jack's Purported Comments to ESPN

#### (A) The First ESPN Article

75.     The First ESPN article does not quote or even mention Jack but rather publishes Davis' lawyer's attacks on and disparaging comments about Jones.[119]

#### (B) The Second ESPN Article

76.     The Second ESPN article reports that Jack made several statements and quoted him regarding the history of payments to Davis over the years. Taken separately, or when viewing the article as a whole, there is no defamatory meaning which can reasonably be attributed to Jack's alleged comments. He does not use the words extortion or shakedown at all and the closest he comes to disagreeing with Plaintiff's contention that "she is not seeking money" is his recitation of the acknowledged Dallas restaurant meeting "several years ago" where he got what the ESPN reporter characterized as a "far different impression" when Davis asked for $20 million from Jones.

77.      Plaintiff does not contest that the meeting occurred (in fact the Complaint confirms it) or that Davis read the letter to Jack (the Complaint admits that too). That Jack got a "different impression" from the theory Plaintiff now advances is not defamatory especially given the undisputed facts. His belief that she was asking for money in exchange for getting "out of [Jones'] life" and never "asking for money again" is simply not actionable defamation.

---

[119] Ex 11, APP 296-297. Davis' lawyers called Jones "malicious", "distasteful", "stoop[ing] so low" and a man with "many scandals".

5.      **Wilkinson's Purported Comments to ESPN**

78.     As we said, the First ESPN article consists mainly of Plaintiff's lawyers attacking Jones who, the article reported, "has declined to publicly discuss the allegations."[120] Wilkinson issued a statement which ESPN repeated as follows:

> This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money. Their own filing references the divorce case so it's clear for all to see what is really going on here.[121]

79.     It is undisputed that Plaintiff's Complaint references the divorce action and not only references but sues upon the Preservation Letter which accurately recited that Jones and his family had retained a law firm to investigate "potential claims" against Shy Anderson (party to the divorce action) and (unnamed) others. Based upon these true facts, the Wilkinson statement is not defamatory because in commenting it is a protected opinion and utilizes rhetoric and hyperbole.

80.     The Second ESPN article quotes Wilkinson as saying the dinner with Jack and Plaintiff was "three or four years ago" and that the Plaintiff's Letter establishes that she demanded more money from Jones. Whether it supports the allegation or not is a matter of opinion. The material facts are not in doubt. Plaintiff's Letter was written and demanded additional money the Plaintiff, an adult, had no legal right to receive in exchange for continued confidentiality Then her lawyer threatened a publicly embarrassing lawsuit if Jones did not submit to a paternity test and pay Plaintiff's attorney's fees. Wilkinson then is quoted as saying:

> This clearly demonstrates that money has always been the ultimate goal here. And sadly this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas.[122]

---

[120] Ex. 11, APP 297.

[121] *Id.* at p. 1, APP 296.

[122] Ex. 12, APP 298-300.

81.     Whether the undisputed facts demonstrate that the ultimate goal was money is a matter of opinion. But, in any event, the $20 million demand was made and Wilkinson's factual statement is true. For these reasons it is not actionable.

82.     Finally, Wilkinson is quoted as saying:

> The facts clearly show that millions of dollars have been paid and on top of that, a $20 million shakedown attempt was made. I think this speaks for itself as to motives.

83.     The phrase "shakedown" like the word "extortion" is rhetoric and hyperbole and not stating a fact.[123] The Court in *McNamee v. Clemens,* 762 F. Supp. 2d 584, 603-04 (E.D.N.Y. 2011) made that very point, holding that statements that plaintiff wanted to shake down the defendant "sound in opinion not fact [and] are hyperbolic [and] are 'loose' statements that don't reasonably convey the specificity that would suggest that [defendant] or his agents were seriously accusing [plaintiff] of committing the crime of extortion."

84.     The undisputed fact (supported by Jack's testimony under oath and confirmed by Plaintiff's Complaint here) is that Davis did demand an additional $20,000,000 when she was not legally entitled to **any** additional funds and the reasonable reader would not view Wilkinson's characterization as asserting a statement of fact although they might agree with his opinion.

85.     Finally, Wilkinson is quoted as saying:

> Now they've changed their story yet again. First it wasn't about money. Now it's about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish.

---

[123] *See Agate v. IMG Worldwide, Inc.,* No. B243636, 2013 WL 6087414, at *7 (Cal. App. Nov. 20, 2013) (unpublished) (defendant called plaintiff a "shakedown artist" and an "extortionist" but in dismissing a defamation claim the court held that plaintiff "failed to establish that the challenged statements are provable factual assertions rather than rhetorical hyperbole or vigorous epithets.").

86.     This comment is not about Plaintiff but her lawyers and therefore not "of and concerning" her (an element). In any event it is pure opinion and rhetoric which the reasonable reader would discern given that Wilkinson is a "spokesperson" for Jones.

### B.     PUBLIC FIGURE AND ACTUAL MALICE

87.     In 1964 the United States Supreme Court decided the seminal case of *New York Times v Sullivan,* 376 U.S. 254, 283-84 (1964), which established the "actual malice" federal rule for public officials in a libel case and was followed by *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 324, 339-48, 351 (1974), which applied the actual malice element to a public figure plaintiff. Pleading and proof of actual malice is an essential element of a defamation case involving public figures. The term means that the person making the defamatory statement does so with either (1) knowledge of the falsity or (2) reckless disregard of the truth that is, the speaker in fact entertains serious doubt about the truth.[124]

88.     *Gertz* defined two types of public figures: (1) the all-purpose public figure who achieves such fame and notoriety that she is a public figure for all purposes and (2) the limited purpose public figure.[125] Plaintiff is a public figure of the second type and in deciding this question of law, the Fifth Circuit applies a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of the resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.[126]

---

[124] *See St. Amant v. Thompson,* 390 U.S., at 731.
[125] *Gertz,* 418 U.S. at 351.
[126] *See Trotter,* 818 F.2d at 433-34.

89.     Plaintiff easily satisfies these elements. Davis alone thrust herself into the public limelight by breaching her agreement with Jones and publicly filing the First Davis Lawsuit which, according to her Complaint, "attracted local, national and international attention" and revealed the controversy.[127] Davis, through her lawyers, further injected Davis into the controversy by immediately writing a statement "released to ESPN"[128], an additional breach of the Agreements.

90.     Plaintiff admits that the controversy extends beyond the immediate participants when she pleads that "[t]he [Defendant] Dallas Cowboys franchise is estimated to be perhaps the most valuable sports franchise in the world and certainly the NFL. [The] Cowboys publicity profile and associations extend gigantically to the corporate world and include corporate and charitable partnerships. Jones' influence also extends into politics".[129] Plaintiff charges that the comments will have an effect in "the political arena" and that her Congressman employer has "received defamatory communications referring to Plaintiff as an "extortionist".[130]

91.     Plaintiff plays more than a trivial or tangential role in the controversy (the second *Trotter* element) and the alleged defamation relates to her role in the controversy (the third *Trotter* element). As a result, she is a public figure and the actual malice standard applies. As Davis does not even try to plausibly demonstrate "actual malice", this additional element fails as a matter of law.

---

[127] Dkt. 1 at ¶ 32 p. 8.

[128] Ex. 3A, APP 121-122.

[129] *Id* at ¶¶ 77-78 pp. 20-21.

[130] *Id* at ¶¶ 78-79 p. 21. *See also* Ex. 9 [Public Figure Exhibit] (APP 194-293) which collects many of the news articles and posts relating to the public nature of the controversy and the Plaintiff's role in it. *See Turner v. Wells,* 879 F.3d 1254, 1272 n.5 (11th Cir, 2018) ("In determining [Plaintiff's] public figure status, we take judicial notice of the existence of videos produced or articles written about [Plaintiff] that were filed by Defendants"); *Biro v. Condé Nast,* 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015) and *aff'd,* 622 Fed. App'x 67 (2d Cir.2015) ("The Court can take judicial notice of the existence of articles written by and about [Plaintiff], though not for the truth of the matter asserted in the documents themselves. Courts in this Circuit have employed judicial notice in making determinations about whether plaintiffs are public figures at the motion to dismiss stage.").

### C. NO CONSPIRACY WHEN NO UNDERLYING CLAIM

92. Plaintiff asserts a conspiracy claim but there can be no actionable conspiracy where there is no underlying tort.[131]

### D. THE PRINCIPAL CAN NOT BE RESPONSIBLE WHEN THE AGENT IS IMMUNE

93. Jones' attorneys prepared the Plea and the Preservation Letter and are immune from suit.[132] When the agents are not liable neither is the principal.[133]

### E. THE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH THE DMA

94. The DMA[134] applies to "all publications" regarding a claim "arising out of harm to personal reputation caused by the false content of a publication" [Section 73.054(a) (b)]. The DMA states that "A person may maintain an action for defamation *only if*: (1) the person has made a timely and sufficient request for a correction or retraction from defendant." Section 73.055(a)(1). The Act states further that: "A request for a correction, clarification, or retraction is timely if made during the period of limitation for commencement of an action for defamation." Section 73.055(b). To be sure the Act has an abatement feature when a demand (any demand) has been made prior to the expiration of limitations. But the majority of the Texas Supreme Court agreed that under the

---

[131] *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("We have repeatedly called civil conspiracy a 'derivative tort,' meaning that it depends on some underlying tort or other illegal act. Our use of the word 'derivative' in this context means a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." (citations omitted)); *Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021) ("Under Texas law, civil conspiracy is not an independent tort but rather a 'derivative' one that 'depends on some underlying tort or other illegal act.'" (quoting *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019); *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 358 (5th Cir. 2021) (reversing judgment on a civil conspiracy claim because each of the underlying tort claims failed).

[132] *See Haynes & Boone, LLP v. NFTD LLC*, 631 S.W.3d 65, 67, 78 (Tex. 2021).

[133] *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 295–98 (Tex. 2011) (a principal cannot be held liable for the actions of its agent when the agent did not commit a tort).

[134] All references are to Chapter 73 of the Texas Civil Practices and Remedies Code.

text of the statute "an action may be maintained **only if** a demand is made within limitations". Here there has been **no demand whatsoever** prior to limitations expiring.[135]

95.     The Plaintiff does not plead that she has complied with the essential statutory requirements to maintain an action for defamation nor could she in good faith because no such demand (which must be in writing, signed by Plaintiff or her lawyer, state with particularity the statement alleged to be false, allege the defamatory meaning of the statement and specify the circumstances if it arises from something other than the express language of the publication). Section 73.055(d). No such demand was ever "served" on (or sent in any manner to) the alleged publishers Defendants Jones, Cowboys, Wilkinson, Trailrunner and Jack. Nor does her Complaint suffice as a demand as a matter of law.[136]

96.     In this case a timely request cannot be made because the one year limitations period has expired for all of the Publications. Defendants therefore give notice to Plaintiff and the Court that they intend to challenge the sufficiency (because no request was made in compliance with the statute) or timeliness of a request for a correction, clarification or retraction (because it has not been made and to do so now would be futile as limitations has expired). This notice is provided pursuant to section 73.058(c) of the DMA.

97.     "If the court agrees that the Request was insufficient or untimely then under Section 73.055(a) the plaintiff cannot "maintain the action" and it must be dismissed."[137]

---

[135] *See Hogan v. Zoanni,* 627 S.W.3d 163, 179, 185, 190 (Tex. 2021) (Hecht, C.J. Dissenting) ("The Court is evenly divided on the meaning of maintain *only if.* The concurrence agrees with my analysis that noncompliance requires dismissal.").
[136] *See Id.* at 179 ("The Texas legislature … chose to omit the [model act's] provision that expressly allows the Plaintiff's pleading to constitute a [r]equest.") (Boyd, J., concurring).
[137] *See Id.* at 185 (Boyd, J. concurring).

### F.    THE PUNITIVE DAMAGES CLAIM SHOULD BE DISMISSED

98.    The DMA requires a compliant request be made within 90 days of the publication or else the Plaintiff forfeits the right to punitive damages. DMA Section 73.055(c) ("If not later than the 90th day after receiving knowledge of the publication the person does not request a correction, clarification or retraction the person may not recover exemplary damages.") No such request was made and Plaintiff does not plead any such statutory compliance and, accordingly, Plaintiff may not recover punitive damages.

99.    Furthermore, to recover punitive damages the Plaintiff must allege a factual basis for them, which is absent here, and in a defamation case the Plaintiff must plausibly plead and prove "actual malice".[138] No such pleading has been made in this case and any such attempt would be futile.

## VII.    CONCLUSION

100.    Even though Jones has disputed from the beginning that he is Plaintiff's father he provided for her through childhood and well into adulthood. He kept his promises. He sought in return only confidentiality and an agreement that no paternity action be filed. Plaintiff agreed to and abided by these contractual limitations while accepting millions of dollars (even after achieving the age of majority); that is until the money was about to run out. After demanding $20,000,000 and a judicial order that would require the last two payments to be made even as she breached the agreement, and after she sought monetary attorney's fees and after she demanded *the very thing that Jones did not want and said he would never do* (a paternity test) she brought not one but three lawsuits. When Jones defended himself in the litigation that ***Plaintiff herself brought,*** she now twists his words into defamation for which she wants, how did we guess, **money.**

---

[138] *See, Gertz, supra,* 418 U.S. at 334; *Hancock v. Variyam,* 400 S.W.3d 59, 66-67 (Tex. 2013).

Her claims should be dismissed. And Davis should, perhaps, reflect on lessons learned while she was educated at SMU in Dallas (at Jones' expense). She claims that the Agreements that supported her in style all her life were a "hush money deal". However she characterizes it, in Texas, a deal is still a deal. Jones lived up to his promises. Plaintiff has not honored hers.

Respectfully submitted,

FOLSOM ADR PLLC                    JACKSON WALKER LLP


*/s/:David Folsom*                  */s/:Charles L. Babcock*
David Folsom                        Charles L. Babcock
State Bar No. 07210800              State Bar No. 01479500
david@folsomadr.com                 cbabcock@jw.com
6002-B Summerfield Dr.              Nancy W. Hamilton
Texarkana, TX 75503                 State Bar No. 11587925
(903) 277-7303                      nhamilton@jw.com
                                    1401 McKinney Street
                                    Suite 1900
                                    Houston, TX 77010
                                    (713) 752-4210
                                    (713) 752-4221 - Fax

                                    David T. Moran
                                    State Bar No. 14419400
                                    dmoran@jw.com
                                    Edwin Buffmire
                                    State Bar No. 24078283
                                    ebuffmire@jw.com
                                    Cody Martinez
                                    State Bar No. 24102146
                                    cmartinez@jw.com
                                    2323 Ross Avenue
                                    Suite 600
                                    Dallas, TX 75201
                                    (214) 953-6000
                                    (214) 953-5822 – Fax

**ATTORNEYS FOR DEFENDANTS JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC AND DONALD JACK, JR.**

**CERTIFICATE OF SERVICE**

On May 26th, 2023, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  I hereby certify that I will serve all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Charles L. Babcock*
Charles L. Babcock