IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ALEXANDRA DAVIS,<br>    *Plaintiff/Counter-Defendant,*<br><br>vs.<br><br>JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC, and DONALD JACK, JR.,<br>    *Defendants,*<br><br>vs.<br><br>CYNTHIA DAVIS-SPENCER,<br>    *Third-Party Defendant.* | CIVIL ACTION No. 5:23-cv-00032-RWS<br><br>JURY TRIAL DEMANDED |

## DEFENDANT JERRAL W. JONES'S COUNTERCLAIMS AGAINST PLAINTIFF ALEXANDRA DAVIS AND THIRD-PARTY COMPLAINT AGAINST CYNTHIA DAVIS-SPENCER

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant/Counter-Plaintiff Jerral W. Jones ("Jones") files this Counterclaim against Plaintiff/Counter-Defendant Alexandra Davis ("Plaintiff") and Third-Party Complaint against Third-Party-Defendant Cynthia Davis-Spencer ("Mrs. Spencer") and would respectfully show the Court:

### I.    BACKGROUND

1.    This Counterclaim and Third-Party Complaint arise from the material breaches of a binding Settlement, Release and Covenant Not to Sue (the "Settlement Agreement") between Plaintiff, Mrs. Spencer, and Jones. That Settlement Agreement barred Plaintiff from suing Jones to establish paternity and obligated the parties to maintain confidentiality regarding the facts and terms of the Settlement Agreement. In exchange, Plaintiff received as consideration millions of dollars from early childhood through adulthood.

2.      Jones has abided by and performed his obligations under the Settlement Agreement. Plaintiff and Mrs. Spencer, however, want more than they were entitled to receive. To that end, beginning in late 2021, Plaintiff and Mrs. Spencer began a campaign directed at and against Jones. Their strategy centered on threatening to publicly disclose—and actually disclosing—confidential information regarding the Settlement Agreement to various third parties, including journalists. As the direct—and intended—result of their disclosures, articles discussing the Settlement Agreement and allegations about Jones's private life flooded the Internet. Plaintiff's and Mrs. Spencer's actions constitute material breaches of the Settlement Agreement, which necessitated the filing of these counterclaims and third-party claims and entitle Jones to substantial relief and actual and other damages.

## II.     PARTIES

3.      Defendant/Counter-Plaintiff Jerral W. Jones is an individual residing in Dallas County, Texas and is a citizen of the State of Texas.

4.      Upon information contained in Plaintiff's Original Complaint, Counter-Defendant Alexandra Davis is a resident and citizen of the District of Columbia.

5.      Upon information and belief, Third-Party Defendant Cynthia Davis-Spencer is a resident of Denton County, Texas, the Eastern District of Texas, and is a citizen of the State of Texas.  Upon information and belief, Mrs. Spencer can be served at 6777 Parker Creek Place, Frisco, Texas, 75034-0774.

## III.    JURISDICTION

6.      This Court has jurisdiction pursuant to 28 USC § 1332(a) because there is complete diversity between Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff. The amount in controversy exceeds $75,000.00, exclusive of interests and costs. The Court also has supplemental

jurisdiction over Jones's third-party claims against Mrs. Spencer, because they are derived from the same nucleus of operative facts as Plaintiff's claims. *See* 28 U.S.C. § 1367.

## IV. FACTS

### A. The paternity dispute.

7. On December 16, 1996, Mrs. Spencer gave birth to Plaintiff in North Little Rock, Arkansas. Plaintiff was thus more than 26 years old when she filed the Complaint. Dkt. No. 1 at ¶ 8.

8. At the time of Plaintiff's birth, Mrs. Spencer was married to Norman James Spencer, Jr. ("Husband"). *See* Dkt. No. 1 at ¶ 8. After Plaintiff's birth, Mrs. Spencer and Husband were involved in divorce proceedings in Arkansas state court. *Id.* at ¶ 11.

9. During the divorce proceedings, Mrs. Spencer and Husband stated under oath that Husband was Plaintiff's biological father. Eventually, however, both Mrs. Spencer and Husband began claiming that Husband was not Plaintiff's father. Mrs. Spencer also began contending that Jones was Plaintiff's biological father—an allegation Jones denied and continues to deny.

### B. Plaintiff, Mrs. Spencer, and Jones execute the Settlement Agreement.

10. On August 14, 1998, Mrs. Spencer, "individually, and on behalf of [Plaintiff], as [Plaintiff's] parent and sole legal guardian," and Jones (as the Putative Father), entered a binding contract to resolve the paternity dispute—the Settlement Agreement.

11. In entering into the Settlement Agreement, the parties, all of whom were represented by independent legal counsel, sought to "act fairly, equitably, appropriately, and in [Plaintiff's] best interest." They further understood that, while they could seek to establish paternity through legal action, litigation was uncertain and could result in Jones having no obligation to Plaintiff. The parties therefore concluded that it was in the best interest of Mrs.

Spencer, Plaintiff, and Jones to forego any legal action, settle the matter, and maintain confidentiality.

12. As a result of examining applicable state laws and other relevant factors through independent counsel, Mrs. Spencer and Jones determined that the terms of the Settlement Agreement provided adequate financial support to Plaintiff and said payments were "just, fair, and in [Plaintiff's] best interest."

13. The security and benefits that Plaintiff received from Jones pursuant to the Settlement Agreement were substantial and included future support, maintenance, and education for Plaintiff.

14. Specifically, to reimburse Mrs. Spencer for medical expenses incurred during and after her pregnancy (including the birth and support of Plaintiff), to ensure that Plaintiff had shelter, and to provide for Plaintiff's well-being, a lump-sum payment of $375,000 was made to Mrs. Spencer upon execution of the Settlement Agreement.

15. In addition to this $375,000 payment, Jones established two trusts for Plaintiff's care and benefit—the Funding Trust and the Distribution Trust (collectively, the "Trusts"). The Funding Trust provided monthly, annual, and special contributions to the Distribution Trust, which Trust in turn provided the same payment and funding to Plaintiff from childhood until she attained 21 years of age. The Settlement Agreement also provided that Plaintiff would continue to receive financial support into adulthood when she attained the ages of 24, 26, and 28, provided there was not a material breach of the agreement.

16. During Plaintiff's childhood, Plaintiff received approximately 230 separate payments from Jones totaling approximately $1.9 million. While this amount included monthly, annual, and special trust payments, it also included payments that were separate from the Trusts.

For instance, Plaintiff also received $70,457 for a new Range Rover automobile and $33,714.11 for a "Sweet 16" birthday party. Jones also frequently paid for expenses that Mrs. Spencer incurred for Plaintiff's benefit, including expenses associated with Plaintiff's extracurricular activities, clothing, medical care, and education.

17. From the time Plaintiff attained the age of majority, that is, 18 years of age, until March 2022 when she filed a lawsuit that materially breached the Settlement Agreement, *see infra* Part IV.C, Plaintiff received approximately 140 separate, additional payments from Jones totaling approximately $1.2 million. This amount includes the aforementioned monthly, annual, and special trust payments between the ages of 18 and 21, as well as numerous other payments for Plaintiff's education and benefit that were separate from the Trusts. For instance, Plaintiff received approximately: $18,000 for a trip to Paris, France; $270,000 for four full years of undergraduate tuition and expenses at Southern Methodist University; $6,500 for a college graduation party; and $24,000 for a post-college graduation trip to Hong Kong, China, and Japan, among others. Additionally, since at least 2015, at Mrs. Spencer's and Plaintiff's requests, Jones has paid various charges on Plaintiff's and Mrs. Spencer's American Express credit card account. Since at least 2015, Jones has also paid for Plaintiff's apartment rent. To date, pursuant to the Settlement Agreement, Plaintiff has received approximately $3.2 million from Jones.

18. The financial support Plaintiff received was explicitly negotiated and contracted for "in consideration of" various obligations. These obligations included settlement and release provisions preventing Plaintiff, as "Child" and Mrs. Spencer, as "Mother," from instituting any lawsuits against Jones related to, *inter alia*, Plaintiff's parentage:

> Mother, individually, and on behalf of Child, as Child's parent and sole guardian, accepts the above stated payment and funding of the Funding Trust and the Distribution Trust ***in full compromise, settlement, and satisfaction*** of all claims,

causes of action, suits, payments, damages and demands of whatever kind that now exists, or hereafter may accrue, in Mother's or Child's favor against Putative Father in any way related to Child, ***Child's paternity***, or Child's support, and ***releases Putative Father from all such claims and causes of action***.

\* \* \*

Mother agrees and covenants to refrain from making any claim or demand, or commencing any action in law or equity relating to Child, against Putative Father, and further, to use her best efforts ***to prevent Child or any person on behalf of Child from making any claim or demand or commencing any action in law or equity relating to Child against Putative Father***.

\* \* \*

Except for an action for breach of the Agreement, Mother, individually, and on behalf of Child, as Child's parent and sole legal guardian, expressly agrees that the Agreement may forever be treated as a ***complete defense and bar to any action*** that Mother or Child may commence, bring, or institute against Putative Father in any way related to Child.

\* \* \*

If Mother or Child, or any person on behalf of Child, brings or commences ***any kind of legal proceeding seeking to establish the paternity of Child*** . . . , Putative Father may, in his sole discretion, elect to terminate the Agreement and the Funding Trust and the Distribution Trust, or either of them, and enforce any and all remedies available to him at law or in equity. ***A breach of this provision shall be considered a breach of the entire Agreement***.

\* \* \*

The parties acknowledge that they fully understand the terms of the Agreement and that they have entered into the Agreement with the intention that it be a ***full and final compromise and settlement of all claims*** by Mother and Child against Putative Father.

Ex. A, Settlement Agreement at ¶¶ 4, 5, 17 (emphasis added).

19. The Settlement Agreement also included confidentiality obligations whereby the parties promised to refrain from disclosing the facts and terms of the settlement:

> ***The parties agree and covenant not to disclose the terms of the Agreement, or make any future disclosures or statement regarding Mother's belief that Putative***

> ***Father is father of Child*** . . . . The parties agree further that neither Mother, Child nor Putative Father will act in any manner that might jeopardize the confidentiality of the Agreement and will protect and safeguard with utmost care the privacy of Child, Mother, and Putative Father.

*Id.* at ¶ 5.

20. For about two decades, the parties complied with these terms. Jones paid Plaintiff millions of dollars, and Plaintiff and Mrs. Spencer maintained the confidentiality of the agreements, payments, and any allegations that Jones was Plaintiff's father, including refraining from filing any lawsuits related to the issues addressed in the agreements. Later, however, it became clear that Plaintiff wanted more money.

21. Under the Settlement Agreement, Plaintiff's monthly trust distributions were scheduled to cease on her 21st birthday—December 16, 2017. One month before that date, Plaintiff met with the Grantor of the Trusts (and attorney-in-fact for Jones), Defendant Donald T. Jack, Jr. At that in-person meeting, Plaintiff acknowledged that under the Settlement Agreement she could not establish a paternal relationship with Jones. However, she wanted Jones to pay her additional money that Jones was not obligated to pay. Jones did not accede to Plaintiff's wrongful demand for additional money. Following this discussion, it is undisputed that Plaintiff continued to fulfill her obligations under the existing Settlement Agreement and accepted further support as an adult.

**C.   Plaintiff and Mrs. Spencer repeatedly breach the Settlement Agreement.**

22. In or around late 2021, it was discovered that Mrs. Spencer and/or her agents disclosed confidential information and documents regarding the Settlement Agreement to a third party. This disclosure was an attempt to provide leverage to that third party in an unrelated lawsuit brought against a member of Jones's family. These actions, disclosure, and statements constitute material breaches of Mrs. Spencer's confidentiality obligations under the Settlement Agreement.

23. In March 2022, more than seven years after reaching the age of majority, Plaintiff breached the Settlement Agreement by filing a public lawsuit against Jones (the "First Lawsuit"). Therein, Plaintiff contended that she was not bound by certain portions of the Settlement Agreement that imposed obligations on her (including confidentiality obligations and release of paternity claims), and yet sought declarations that she was entitled to the benefits conferred upon her by the Settlement Agreement, *e.g.* the two remaining trust payments. In doing so, Plaintiff publicly alleged that Jones is her father and disclosed numerous facts regarding the Settlement Agreement, including its terms, each of which is a material breach.

24. Shortly after filing the First Lawsuit, Plaintiff—through her agents and representatives—released numerous statements to the media wherein she disclosed the confidential facts and terms of the Settlement Agreement and alleged that Jones is her father. These statements were subsequently published in numerous news articles, as Plaintiff intended, and Jones was bombarded with negative media attention.[1] This was Plaintiff's goal and it was also a breach

---

[1] *See*, *e.g.*, Don Van Natta, Jr., *Lawyers for woman suing Dallas Cowboys owner Jerry Jones: Client isn't motivated by money*, ESPN (Mar. 10, 2022), *available at* https://www.espn.com/nfl/story?id=33471398&_slug_=lawyers-woman-suing-dallas-cowboys-owner-jerry-jones-client-motivated-money; Nataly Keomoungkhoun, *Lawyers for woman suing Dallas Cowboys owner Jerry Jones say she isn't looking for money*, The Dallas Morning News (Mar. 11, 2022), *available at* https://www.dallasnews.com/news/courts/2022/03/11/lawyers-for-woman-suing-dallas-cowboys-owner-jerry-jones-say-she-isnt-looking-for-money/; Don Van Natta, Jr., *Dallas Cowboys owner Jerry Jones asks judge to dismiss paternity lawsuit, alleges extortion attempts*, ESPN (Mar. 28, 2022); Nataly Keomoungkhoun, *Lawyer for woman suing Jerry Jones denies she tried to extort money from Dallas Cowboys owner*, ESPN (Mar. 29, 2022), *available at* https://www.dallasnews.com/news/courts/2022/03/29/lawyer-for-woman-suing-jerry-jones-denies-she-tried-to-extort-money-from-dallas-cowboys-owner/; Don Van Natta, Jr., *Lawyers for woman who says Dallas Cowboys owner Jerry Jones is her biological father deny 'conspiracy,'* ESPN (Mar. 30, 2022), *available at* https://www.espn.com/nfl/story/_/id/33632161/lawyers-woman-claims-dallas-cowboys-owner-jerry-jones-biological-father-deny-conspiracy; Don Van Natta, Jr., *Dallas Cowboys owner Jerry Jones paid millions to woman who filed paternity lawsuit, lawyer says*, ESPN (Mar. 31, 2022), *available at* https://www.espn.com/nfl/story/_/id/33640873/dallas-cowboys-owner-jerry-jones-gave-millions-woman-filed-paternity-lawsuit-lawyer-says; Nataly Keomoungkhoun, *Dallas Cowboys owner Jerry Jones paid millions to woman who says he is her father, lawyer says*, The Dallas Morning News (Mar. 31, 2022), *available at* https://www.dallasnews.com/news/2022/03/31/dallas-cowboys-owner-jerry-jones-paid-millions-to-woman-who-says-he-is-her-father-lawyer-says/.

of the Settlement Agreement. Rather than press her claims, Plaintiff dismissed the First Lawsuit less than two months after its filing.

25. In April 2022, Plaintiff filed a second lawsuit against Jones allegedly for the sole purpose of establishing "the parent-child relationship" (the "Second Lawsuit"), despite the fact that she released this claim. Again, following the filing of the Second Lawsuit, Plaintiff—through her agents and representatives—disseminated to the media statements regarding the Settlement Agreement and Jones's alleged paternity.[2] These disclosures and actions were material breaches of the Settlement Agreement.

26. In the course of the Second Lawsuit, Mrs. Spencer also provided an affidavit and publicly alleged that Jones is Plaintiff's father, and disclosed some terms of the Settlement Agreement, thereby further breaching the Settlement Agreement.

27. In March 2023, Plaintiff filed the instant action (the "Third Lawsuit") and once more materially breached the Settlement Agreements by publicly alleging that Jones is her biological father and disclosing confidential details regarding the Settlement Agreement. In connection with this lawsuit, Plaintiff again used her agents and representatives to release statements to the press that disclosed details related to the Settlement Agreement and Jones's alleged paternity.[3]

---

[2] *See, e.g.*, Nataly Keomoungkhoun, *Woman suing Dallas Cowboys owner Jerry Jones drops lawsuit, wants to establish parentage*, The Dallas Morning News (Apr. 20, 2022), *available at* https://www.dallasnews.com/news/courts/2022/04/20/woman-suing-dallas-cowboys-owner-jerry-jones-drops-lawsuit-wants-to-establish-parentage/; Nataly Keomoungkhoun, *Dallas Cowboys owner Jerry Jones asks judge to toss paternity suit against him*, The Dallas Morning News (June 9, 2022), *available at* https://www.dallasnews.com/news/courts/2022/06/09/dallas-cowboys-owner-jerry-jones-asks-judge-to-toss-paternity-suit-against-him/; Nataly Keomoungkhoun, *A judge orders Jerry Jones to take a paternity test, but the lawsuit is far from over*, D Magazine (Dec. 23, 2022), *available at* https://www.dmagazine.com/sports/2022/12/a-judge-orders-jerry-jones-to-take-a-paternity-test-but-the-lawsuit-is-far-from-over/;

[3] *See, e.g.*, Don Van Natta, Jr., *Woman who says Cowboys owner Jerry Jones is her father now accuses him of defamation*, ESPN (Mar. 27, 2023), *available at* https://www.espn.com/nfl/story/_/id/35973302/woman-says-cowboys-owner-jerry-jones-father-now-accuses-defamation; Lana Ferguson, *Woman suing Cowboys owner Jerry*

## V. COUNTERCLAIMS AGAINST PLAINTIFF ALEXANDRA DAVIS

**A.  Breach of contract.**

28. Jones incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

29. Plaintiff and Jones entered into a valid and binding Settlement Agreement.

30. By executing, ratifying, and/or failing to timely disaffirm the Settlement Agreement, Plaintiff: released any claims she had against Jones related to her parentage; agreed that the Settlement Agreement is a complete defense and bars any claims she may have against Jones; and promised to keep confidential the terms of the Settlement Agreement, including Mrs. Spencer's belief that Jones is Plaintiff's biological father.

31. Although Jones performed his obligations under the Settlement Agreement, including paying Plaintiff millions of dollars over her lifetime (including well into her adulthood), Plaintiff materially breached her obligations above, including by disclosing confidential information regarding the facts and terms of the Settlement Agreement to various third parties, including media members, with the aim of generating publicity or embarrassing Jones, and/or to obtain additional money or things of value.

32. As a direct and proximate cause of these material breaches, Jones has suffered actual and other damages, including the payment of attorneys' fees and expenses to defend himself against claims that Plaintiff and Mrs. Spencer settled and released over two decades ago.

---

*Jones alleges 'character assassination attack,'* The Dallas Morning News (Mar. 28, 2023), *available at* https://www.dallasnews.com/news/courts/2023/03/28/woman-suing-cowboys-owner-jerry-jones-alleges-character-assassination-attack/; Paul Livengood, *Texas woman claiming Jerry Jones is her father sues him for defamation*, WFAA (Mar. 28, 2023), *available at* https://www.wfaa.com/article/sports/nfl/cowboys/dallas-cowboys-owner-jerry-jones-paternity-lawsuit-alexandra-davis/287-0ff148eb-ee5b-4809-ae60-640e38238afe.

B.  **Request for declaratory relief.**

33. Jones incorporates by reference the allegation contained in the paragraphs above, as if fully set forth herein.

34. As described herein, Plaintiff has repeatedly violated her contractual obligations under the Settlement Agreement. Thus, in an effort to clarify Plaintiff's rights and obligations and resolve ongoing and future foreseeable controversies between the parties, Jones asserts a claim for declaratory relief under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

35. Specifically, Jones seeks a declaration by this Court that Plaintiff has a continuing duty to perform under and abide by the terms of the Settlement Agreement.

## VI.  THIRD-PARTY CLAIMS AGAINST THIRD-PARTY DEFENDANT CYNTHIA DAVIS-SPENCER

A.  **Breach of contract.**

36. Jones incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

37. Mrs. Spencer and Jones entered into a valid and binding Settlement Agreement.

38. In doing so, Mrs. Spencer agreed that she would keep confidential the terms of the Settlement Agreement, including her belief that Jones is Plaintiff's biological father, and use her best efforts to prevent Plaintiff from making any claim or demand on Jones.

39. Although Jones performed his obligations under the Settlement Agreement, Mrs. Spencer materially breached her obligations by disclosing confidential documents and information relating to the facts and terms of the Settlement Agreement, and by assisting Plaintiff in her prosecution of lawsuits against Jones.

40. As a direct and proximate cause of these material breaches, Jones has suffered actual and other damages, including the payment of attorneys' fees and expenses to defend himself against claims that Plaintiff and Mrs. Spencer settled and released over two decades ago.

**B.    Request for declaratory relief.**

41. Jones incorporates by reference the allegation contained in the paragraphs above, as if fully set forth herein.

42. As described herein, Mrs. Spencer has repeatedly violated her contractual obligations under the Settlement Agreement. Thus, in an effort to clarify Mrs. Spencer's rights and obligations and resolve ongoing and future foreseeable controversies between the parties, Jones asserts a claim for declaratory relief under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

43. Specifically, Jones seeks a declaration by this Court that Mrs. Spencer has a continuing duty to perform under and abide by the terms of the Settlement Agreement.

### VII.    ATTORNEYS' FEES & SANCTIONS

44. Plaintiff's and Mrs. Spencer's conduct described in this complaint and the resulting damages and loss have necessitated the retention of the attorneys identified below. Pursuant to paragraph 18 of the Settlement Agreement, as well as section 38.001 of the Texas Civil Practice and Remedies Code, Jones is entitled to recover his costs, reasonable and necessary attorneys' fees, and expenses incurred in prosecuting these claims against Plaintiff and Mrs. Spencer, jointly and severally.

45. Pursuant to the Texas Citizens Participation Act, Jones further is entitled to an award of all of his allowable court costs, reasonable and necessary attorneys' fees, and other expenses incurred defending Plaintiff's defamation claims. *See* Tex. Civ. Prac. & Rem. Code §

27.009(a)(1). Additionally, Jones is entitled to an award of sanctions sufficient to deter against Plaintiff from bringing similar actions. *Id.* at § 27.009(a)(2).

## VIII.  CONDITIONS PRECEDENT

46. All conditions precedent have been performed or have occurred. *See* Fed. R. Civ. P. 9(c).

## IX.  JURY DEMAND

47. Jones demand a trial by jury on all claims subject to a jury trial.

## PRAYER

Accordingly, Jerral W. Jones respectfully requests that Alexandria Davis and Cynthia Davis-Spencer be cited to answer and appear, and that upon final trial, Jones have:

a. Judgment against Plaintiff and Mrs. Spencer for actual, special, consequential, and other damages, together with prejudgment interest, as provided by law;

b. Declarations that Plaintiff and Mrs. Spencer have continuing duties to perform under and abide by the terms of the Settlement Agreement.

c. Postjudgment interest, as provided by law;

d. Costs of suit;

e. Reasonable and necessary attorneys' fees;

f. Sanctions against Plaintiff; and

g. Such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

| FOLSOM ADR PLLC | JACKSON WALKER LLP |
|---|---|
| */s/ David Folsom* | */s/ Charles L. Babcock* |
| David Folsom | Charles L. Babcock |
| State Bar No. 07210800 | State Bar No. 01479500 |
| david@folsomadr.com | cbabcock@jw.com |
| 6002-B Summerfield Dr. | Nancy W. Hamilton |
| Texarkana, TX 75503 | State Bar No. 11587925 |
| (903) 277-7303 | nhamilton@jw.com |
| | 1401 McKinney Street |
| | Suite 1900 |
| | Houston, TX 77010 |
| | (713) 752-4210 |
| | (713) 752-4221 - Fax |
| | |
| | David T. Moran |
| | State Bar No. 14419400 |
| | dmoran@jw.com |
| | Edwin Buffmire |
| | State Bar No. 24078283 |
| | ebuffmire@jw.com |
| | Cody Martinez |
| | State Bar No. 24102146 |
| | cmartinez@jw.com |
| | 2323 Ross Avenue |
| | Suite 600 |
| | Dallas, TX 75201 |
| | (214) 953-6000 |
| | (214) 953-5822 – Fax |

**ATTORNEYS FOR DEFENDANT/COUNTE-PLAINTIFF JERRAL W. JONES**

## CERTIFICATE OF SERVICE

On May 26, 2023, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the CM/ECF system. I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rules of Civil Procedure. Third Party Defendant Cynthia Davis-Spencer will be separately served pursuant to Fed. R. Civ. P. 4

*/s/ Charles L. Babcock*
Charles L. Babcock