# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | |
|---|---|
| **ALEXANDRA DAVIS,**<br>  *Plaintiff,* | |
| **VS.** | **CIVIL ACTION NO. 5:23-CV-00032-RWS** |
| **JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC, and DONALD JACK, JR.**<br>  *Defendants.* | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S RESPONSE AND BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12 (b)(6) AND BRIEF IN SUPPORT THEREOF

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

TABLE OF AUTHORITIES ............................................................................................ iv

I.      PRELIMINARY STATEMENT ...............................................................1

II.     RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES........................1

III.    RESPONSE TO DEFENDANTS' "UNDISPUTED FACTS" ..................................2

IV.    CHOICE OF LAW ISSUE ........................................................................2

V.     FACTUAL BACKGROUND.....................................................................3

VI.    STANDARD OF REVIEW .......................................................................4

        A.  Rule 12(b)(6) Motion to Dismiss ....................................................4

        B.  Objections to Documents Attached to Defendants' Motion ...................................5

        C.  Summary Judgment Standard .........................................................6

        D.  Analysis.................................................................................6

VII.   ARGUMENT ........................................................................................6

        A.  Under D.C. or Texas Law, Davis' defamation claims survive the motion to dismiss................................................................................7

           1.  D.C. Defamation law. ............................................................7

           2.  Texas Defamation law. ...........................................................8

           3.  All defamatory statements are false............................................11

           4.  Analysis of Defamatory Statements under D.C. Law.....................................12

           5.  Analysis of Defamatory Statements under Texas Law.....................................13

               a.  Plea to the Jurisdiction ..............................................13

               b.  Plea to the Jurisdiction (Paragraph 2) .......................................14

               c.  The Preservation Letter..............................................18

               d.  The Jack Affidavit (and Jack's publication of said affidavit to ESPN).....18

   e. Wilkinson's Comments to ESPN..............................................................19

  6. Viewing the facts in the light most favorable to Davis, Defendants fail to demonstrate that Davis is a public figure of any kind. ....................................21

 B. Conspiracy ...........................................................................................................24

 C. The judicial privilege does not insulate the defamatory statements. ....................24

 D. Jones' attorneys are not immune from suit, and Jones can be held liable for his agent's actions.......................................................................................................25

 E. Should Texas law apply, the DMA does not require dismissal or prohibit punitive damages..................................................................................................................26

  1. The DMA does not require dismissal. ..........................................................26

  2. Consideration of dismissal or a limitation of damages under the DMA is inappropriate on a motion to dismiss..............................................................28

  3. Defendants waived any argument based on the DMA due to their failure to file a separate motion challenging the sufficiency or timeliness of Davis' request for retraction or correction. ...............................................................28

  4. Davis requested a sufficient clarification under the DMA .............................29

 F. Alternatively, amendment, not dismissal, is the correct procedural step should the Court find any allegation lacking.........................................................................30

VIII. CONCLUSION.........................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Durant*,
    550 S.W.3d 605 (Tex. 2018) ..................................................................................9

*Arneja v. Gildar*,
    541 A.2d 621 (D.C. 1988) ...................................................................................25

*Armenian Assembly of Am., Inc. v. Cafesjia*n,
    597 F. Supp. 2d 128 (D.D.C. 2009) .....................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)) ............................................................................................5

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) ...................................................................................2

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002) .................................................................................10

*Butowsky v. Folkenflik*,
    2019 U.S. Dist. LEXIS 104297, *134 (E.D. Tex. Apr. 17, 2019) ..................27, 28

*Cantey Hanger, LLP v. Byrd*,
    467 S.W.3d 477 (Tex. 2015) ...............................................................................26

*Cantu v. Guerra*,
    2021 U.S. Dist. LEXIS 119681 at *38 (W.D. Tex. June 28, 2021) ......................28

*Carey v. Piphus*,
    435 U.S. 247, 262 n.18, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ..........................8

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..............................................................................................6

*Cummins v. Lollar*,
    No. 07-16-00337-CV, 2018 Tex. App. LEXIS 3155, 2018 WL 2074636, at *8 (Tex.
    App.—Amarillo May 3, 2018, pet. denied) ..........................................................27

*Cunningham v. Waymire*,
    No. 14-17-00883-CV, 2019 Tex. App. LEXIS 9253, (Tex. App.—Houston [14th Dist.]
    Oct. 22, 2019, no pet. h.)......................................................................................27

*Dallas Morning News v. Tatum*,
    554 S.W.3d 614 (Tex. 2018)..................................................................................9

*Dexon Comput. Inc. v. Cisco Sys., Inc.*,
  2023 U.S. Dist. LEXIS 56773, *16 (E.D. Tex. March 31, 2023)............................5

*Duncan v. Cessna Aircraft Co.*,
  665 S.W.2d 414 (Tex. 1984).....................................................................2

*Einhorn v. LaChance*,
  823 S.W.2d 405 (Tex. App. 1992)...........................................................21

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.C. Cir. 2013) ..................................................................7

*Green Beret Found. v. Paquette*,
  2019 U.S. Dist. LEXIS 200030, *6 (W.D. Tex. August 20, 2019) ........................28

*Greenbelt Cooperative Pub. Ass'n v. Bresler*,
  398 U.S. 6 (1970)...................................................................................16

*Gertz v. Robert Welch*,
  418 U.S. 323 (1974)................................................................................21

*Hardy v. Commun. Workers of Am. Local 6215*,
  536 S.W.3d 38 (Tex. App.—Dallas 2017, pet. denied)........................................27

*Harrison v. Aztec Well Servicing Co.*,
  2021 U.S. Dist. LEXIS 244798, *1, 2021 WL 6073164 (N.D. Tex. 2021) ..........................28

*Hogan v. Winder*,
  762 F. 3d 1096 (10th Cir. 2014) .............................................................16

*Hogan v. Zoanni*,
  S.W.3d 163 (Tex. 2021)................................................................26, 27, 29

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ....................................................................5

*James v. Brown*,
  637 S.W.2d 914 (Tex. 1982)......................................................................24

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
  313 U.S. 487 (1941)..................................................................................2

*Klentzman v. Brady*,
  312 S.W.3d 886 (Tex. App.—Houston [1st Dist.] 2009) .......................................10

*Landry's, Inc. v. Animal Legal Def. Fund*,
  631 S.W.3d 40 (Tex. 2021)..............................................................................24, 25, 26

*Levine v. CMP Publications, Inc.*,
738 F.2d 660 (5th Cir. 1984) ............................................................................3

*Levy v. American Mut. Ins. Co.*,
  196 A.2d 475 (D.C. 1964) ............................................................................8

*Lilith Fund for Reprod. Equity v. Dickson*,
  662 S.W.3d 355 (Tex. 2023)............................................................................10

*Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ............................................................................5

*Lopez v. Kendall*,
  2023 U.S. App. LEXIS 5677, *3 (5th Cir. March 9, 2023)....................................5

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)............................................................................10

*Musser v. Smith Protective Serv., Inc.*,
  723 S.W.2d 653 (Tex. 1987)............................................................................20

*Novecon Ltd. v. Bulgarian-American Enter. Fund*,
  190 F.3d 556 (D.C. Cir. Sept. 3, 1999)............................................................................16

*NRA of Am. v. Ackerman McQueen, Inc.*
  2021 U.S. Dist. LEXIS 153421, *31 (N.D. Tex. August 16, 2021) ................................10, 17

*Ritzmann v. Weekly World News, Inc.*,
  614 F. Supp. 1336 (N.D. Tex. May 24, 1985) ......................................................3

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ............................................................................5

*Smith v. Clinton*,
  253 F. Supp. 3d 222 (D.D.C. 2017)............................................................................7, 8

*State Farm Mut. Auto. Ins. Co. v. Misra*,
  2023 U.S. Dist. LEXIS 30778, *11 (S.D. Tex. February 24, 2023)......................................5

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
  219 S.W.3d 563 (Tex. App.—Austin April 3, 2007, pet. denied) ..........................................10

*Trotter v. Jack Anderson Enterprises, Inc.*,
  818 F.2d 431 (5th Cir. 1987) ............................................................................22

*Tu Nguyen v. Duy Tu Hoang*,
  318 F. Supp. 3d 983 (S.D. Tex. 2018) ...................................................................27

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000) .................................................................................9

*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021) .................................................................8, 13

*Waldbaum v. Fairchild Publications, Inc.*,
  627 F.2d 1287, 201 U.S. App. D.C. 301 (D.C. Cir. 1980) ...................................22

*Walker v. Beaumont Indep. Sch. Dist.*,
  No. 1:15-CV-379, 2016 U.S. Dist. LEXIS 41408 (E.D. Tex. Mar. 11, 2016) .......30

*Warner Bros. Entm't v. Jones*,
  538 S.W.3d 781 (Tex. App.—Austin 2017).........................................................27

*Weyrich v. New Republic, Inc.*
  235 F.3d 617 (D.C. Cir. 2001) .........................................................................7, 8

*WFAA-TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998)..........................................................................21, 22

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990) ...........................................................................8

**Statutes**

18 U.S.C. § 875(d) ...............................................................................................15

28 U.S.C. § 1332 ...................................................................................................2

D.C. Code § 22-3251 ............................................................................................15

**Other Authority**

https://www.dictionary.com/browse/shakedownwn ...............................................19

Fed. R. Civ. P. 12(d) .............................................................................................6

Fed. R. Civ. P. 56 .................................................................................................6

Tex. Civ. Prac. & Rem. Code § 73.058(c) ........................................................29, 30

Tex. Pen. Code Ann. § 31.02 ............................................................................................15

TO THE HONORABLE JUDGE OF SAID COURT:

Alexandra Davis ("Davis") files her Response and Brief in Support of Response to Defendants' Jerral W. Jones ("Jones"), Dallas Cowboys Football Club Ltd. ("Cowboys"), James Wilinson ("Wilkinson"), Trailrunner International LLC ("Trailrrunner") and Donald Jack Jr. ("Jack") (collectively "Defendants") and Motion to Dismiss (Docket No. 12) and respectfully shows as follows:

## I.   PRELIMINARY STATEMENT

Defendants request an unwarranted exit from this litigation with their Rule 12(b)(6) motion to dismiss. Defendants' arguments are based on mischaracterizations of Davis' allegations, misapplications of applicable legal principles, unsubstantiated facts, and impermissible evidence. Said motion should be denied in its entirety as Davis included detailed factual allegations in her Complaint, setting forth all essential elements of her defamation claims, and Defendants failed to carry their burden to show entitlement to dismissal as a matter of law.

## II.   RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES

Underlying Defendants' motion is the appropriate standard of review. The issue at this stage of the proceeding, prior to any discovery, is whether the allegations contained in Davis' well-pleaded complaint, accepted as true, state plausible claims for defamation *per se* and common law defamation. Defendants' Statement of the Issues inappropriately shifts the burden of proof to Davis to establish the elements of her claims based on outside evidence, which is impermissible under the 12(b)(6) standard. Whether the statements at issue are defamatory statements of verifiable fact are issues to consider after discovery has occurred.

Thus, taking all facts in the Davis Complaint as true, Davis stated a plausible claim for relief for defamation. As alleged, the communications are defamatory false statements of verifiable

fact, made with the requisite intent, unprotected by privilege, and not barred by the Defamation Mitigation Act ("DMA").

## III. RESPONSE TO DEFENDANTS' "UNDISPUTED FACTS"

Davis objects to Defendants' "undisputed facts" and requests the Court reject them. First, the entire motion ignores the applicable standard of review on a Rule 12(b)(6) motion to dismiss, which requires the factual allegations contained in the Complaint be accepted as true. As Davis will later show, Defendants attempt to buttress their facts with irrelevant documents that should not be considered at this stage of the case. This is improper. "Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint." *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996).

Second, the facts suggested by Defendants are either wholly unsupported, even with their cited evidence, or completely out of context. Facts are not arguments, but Defendants' presentation of the same only offers the Court a kaleidoscope view of self-serving snippets that are further distorted out of context by Defendants' unnecessary commentary and untrue arrangement of what occurred. Accordingly, Davis offers her own undisputed facts and requests the Court consider only those facts contained in the Complaint or properly admitted as evidence.

## IV. CHOICE OF LAW ISSUE

Because the case is brought in diversity pursuant to 28 U.S.C. 1332, this Court must determine which state's substantive law applies. Federal courts apply the forum state's choice of law rules, which in this case is Texas. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas courts follow the Restatement's "most significant relationship" test in tort cases. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). In defamation cases, the state

with the most significant relationship will usually be the state where the plaintiff was domiciled at the time of the publication provided the publication was also published in that state. *See Levine v. CMP Publications, Inc.*, 738 F.2d 660 (5th Cir. 1984); *See also Ritzmann v. Weekly World News, Inc.*, 614 F. Supp. 1336, 1338 (N.D. Tex. May 24, 1985).

Defendants do not raise the choice of law issue, but throughout their motion, they use Texas substantive law. However, District of Columbia ("D.C.") law applies. Davis was domiciled in Washington D.C. at the time of the publication, and the defamatory statements were published nationwide, including D.C. Based on Texas choice of law test, D.C. has the most significant relationship.

## V.    FACTUAL BACKGROUND[1]

For purposes of responding to Defendants' Motion to Dismiss, Davis reiterates the following facts from the Complaint for the convenience of the Court.

Davis believes her biological father is Jones. Prior to Davis' birth, Cynthia Davis Spencer ("Cynthia"), Davis' mother, engaged in a sexual relationship with Jones. In 1998, Cynthia and Jones entered into a written agreement ("the Agreement"). Jones agreed to pay a certain amount of money, and Cynthia agreed not to reveal Jones fathered Davis. Although she was only a year old at the time the Agreement was executed, the Agreement purported to bind Davis to its terms as well. The parties never sought court approval of the Agreement, nor did they appoint an *ad litem* to protect Davis' interests as a minor. Jack represented Jones in this legal arrangement, and Jack was responsible for overseeing the money paid.

Throughout her childhood, Davis never acknowledged Jones as her father. However, the uncertainty led her to seek help. At the direction of her therapist, Davis engaged in a therapeutic

---

[1] Davis incorporates by reference the facts alleged in the Complaint as if set forth fully herein. *See* Docket No. 1.

exercise that involved writing her thoughts ("Therapeutic Letter"), specifically detailing how not being able to publicly acknowledge her father impacted her life. In 2017, Davis shared the contents of this Therapeutic Letter with Jack. The contents of the Therapeutic Letter were never shared by Davis with Jones.

After five more years of uncertainty, Davis sought the advice of an attorney and decided to pursue her legal right to confirm her parentage. Through her attorney, Davis initially attempted to contact Jones' counsel and handle the parentage matter privately. After Jones refused, Davis had no recourse available outside of filing a declaratory action to declare she was not bound to the Agreement ("First Davis Lawsuit").

Following the filing of the First Davis Lawsuit on March 3, 2022, Jones commenced a smear campaign against Davis, aiming to defame his daughter as an "extortionist" and a "shake-down artist." Defendants started by using a court pleading ("Plea") to falsely plant this image of Davis as an "extortionist." Upon information and belief, Defendants provided this defamatory and frivolous pleading to the press.

Defendants continued their attack on Davis by manufacturing numerous false and defamatory statements and providing documents to the national media, framing Davis as an "extortionist" and a "shake down artist" who was solely motivated by money. Wilkinson and Jack distorted and misrepresented statements from Davis' Therapeutic Letter to ESPN in a nationally published article as support for the pleading which accused Davis of being an "extortionist." Significantly, Defendants stated to ESPN that this letter affirmed the allegation that Davis was an "extortionist." Such a statement was false, malicious, and defamatory.

## VI.    STANDARD OF REVIEW

### A.  Rule 12(b)(6) Motion to Dismiss

In analyzing a Rule 12(b)(6) motion, courts must "accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff." *Dexon Comput., Inc. v. Cisco Sys., Inc.*, 2023 U.S. Dist. LEXIS 56773, *16 (E.D. Tex. March 31, 2023). A court properly denies a Rule 12(b)(6) motion to dismiss where the complaint contains sufficient factual matters to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The movant carries the burden of proof and must establish a right to dismissal. *State Farm Mut. Auto. Ins. Co. v. Misra*, 2023 U.S. Dist. LEXIS 30778, *11 (S.D. Tex. February 24, 2023).

Courts may only consider "the complaint, and any documents attached to the motion to dismiss that are central to the claim and *referenced by the complaint*." *See Lopez v. Kendall*, 2023 U.S. App. LEXIS 5677, *3 (5th Cir. March 9, 2023)(citing to *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)(emphasis added)). Documents are considered central to the claim if they are necessary to establish an element of a plaintiff's cause of action. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A document attached to a motion to dismiss is not central to a claim and cannot be considered by a court where it is merely evidence of an element of the pleaded cause of action. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536-37 (5th Cir. 2003). If an element of a cause of action can be proven with other evidence, the document is not considered central to the claim. *Id.* at 537. This analysis considers only whether documents are central to the claims of the complaint, not whether the documents are necessary to the alleged defenses or privileges of the defendant. *Id.*

A. **Objections to Documents Attached to Defendants' Motion**

Despite claiming they are filing a Rule 12(b)(6) Motion to Dismiss, Defendants attach 45 exhibits to their motion. In a footnote, Defendants state without support or analysis all 45 exhibits

are referenced in the Complaint and central to Davis' claims. (Docket No. 12, ¶ 21, p. 7.)  This is incorrect. The *only* documents referenced by Davis in the Complaint *and* central to her claims are the publications containing the defamatory statements (to wit, Defendants' Exhibits 2(1), 4, 10, 11, 12).   Davis objects to all other exhibits attached to the motion as the documents are either not referenced in the Complaint and/or not central to Davis' claims: Defendants' Exhibits 1, 1(a), 2, 2(2), 2(2a), 2(2b), 2(3), 2(4), 2(5), 2(6), 2(7), 2(8), 2(9), 2(10), 3, 3A, 5, 6, 7, 8, 9, 9A, 9B, 9C, 9D, 9E, 9F, 9G, 9H, 9I, 9J, 9K, 9L, 9M, 9N, 9O, 9P.

**B.    Summary Judgment Standard**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Summary judgment should only be entered by a court after *adequate time for discovery* has passed. *See* FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)(emphasis added).

**C.    Analysis**

Should this Court choose to consider all documents attached by Defendants, the Court must analyze the motion under the summary judgment standard. Suit was filed on March 27, 2023, and the parties have not yet initiated discovery as the case is in the earliest stages of litigation. (Docket No. 1.) A motion for summary judgment is inappropriate at this stage of the litigation without first giving Davis an opportunity to conduct discovery. Accordingly, if analyzing as a summary judgment motion, Davis requests the motion be denied or, at a minimum, stayed until discovery has concluded.[2]

**VII.    ARGUMENT**

---

[2] Alternatively, if this Court converts the motion to a summary judgment motion and chooses not to deny/stay Defendants' motion, Davis requests an opportunity to brief the motion under the summary judgment standard.

**A.      Under D.C. or Texas law, Davis' defamation claims survive the motion to dismiss.**

Defendants attack Davis' defamation claims with three arguments: (1) the statements are not capable of a defamatory meaning; (2) the statements are opinion; and (3) if the statements are facts, they are true. Considering all facts in the complaint and any properly attached documents, Davis shows a plausible claim for relief with her defamation claims under either D.C. or Texas law. Alternatively, even if this Court considers outside evidence under the motion to dismiss standard, Defendants fail to carry their burden of negating Davis' claim as a matter of law or proving she is not entitled to relief.

**1.      D.C. Defamation law.**

To state a claim for defamation under D.C. law, a plaintiff must allege (1) she was the subject of a false and defamatory statement; (2) the statement was published to a third party; (3) publishing the statement was at least negligent; and (4) the plaintiff suffered either actual or legal harm. *Farah v. Esquire Magazine*, 736 F.3d 528, 533-34 (D.C. Cir. 2013). "When confronted with a motion to dismiss [a defamation claim], a court must evaluate '[w]hether a statement is capable of defamatory meaning,'" which is a threshold "question of law." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001). Courts use the following two-step analysis to determine whether a statement is capable of defamatory meaning: (a) whether a communication is capable of bearing a particular meaning, and (b) whether that meaning is defamatory. If the meaning is defamatory, the jury determines "whether the communication was in fact so understood by its recipient." *Smith v. Clinton*, 253 F. Supp. 3d 222, 239 (D.D.C. 2017). A defamatory statement is one that tends to injure plaintiff in her trade, profession or community standing, or lower her in the estimation of the community. *Weyrich*, 235 F.3d at 627. Whether a statement is capable of defamatory meaning is a question of law, but "it is only when the court can say that the publication

is not reasonably capable of ***any*** defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not libelous." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (quoting *Levy v. American Mut. Ins. Co.*, 196 A.2d 475, 476 (D.C. 1964)). Additionally, courts must determine whether the statement is false. *Smith v. Clinton*, 253 F. Supp. 3d 222, 239 (D.D.C. 2017). On a motion to dismiss, courts must assume falsity of any verifiable statement. *Weyrich*, 235 F.3d at 627.

A statement is actionable as a matter of law when it "tend[s] to injure a person's reputation," such as when a speaker "imput[es] to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct." *Carey v. Piphus*, 435 U.S. 247, 262 n.18 (1978). D.C. law also recognizes defamation by implication, which is defamation implied from the statement. Implied defamation is based not on the text of the actual words as stated, but from what is implied. *White* states the following about defamation by implication: "[i]f the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference, the communication will be deemed capable of bearing that meaning." 909 F.2d at 518 (D.C. Cir. 1990).

Lastly, defamatory statements must express or imply verifiable facts. Statements of opinion can be actionable as defamation where the statement implies a provably false fact or relies on stated facts that are provably false. *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 57 (D.C. August 11, 2021).

## 2. Texas Defamation law.

Like D.C. law, a plaintiff must show the following to establish defamation under Texas law: (1) the defendant published a false statement of fact; (2) the statement defamed the plaintiff;

(3) the defendant acted with the required intent (either actual malice for a public figure or negligence for a private figure); and (4) the statement proximately caused damages. *Anderson v. Durant*, 550 S.W.3d 605, 617-18 (Tex. 2018).

The threshold question in any defamation case is whether the alleged statements are reasonably capable of a defamatory meaning. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 625 (Tex. 2018). To answer that issue, courts must first determine what the statements mean, followed by whether the meaning is defamatory. *Id.* Texas divides defamation claims into four categories: (1) textual *per se*; (2) textual *per quod*; (3) extrinsic *per se*; and (4) extrinsic *per quod*. *Id.* at 625-627. Textual defamation is defamation that arises from the statement's text without the need for any extrinsic evidence.[3] *Id.*

Textual defamation is further divided into three sub-categories: (1) explicit textual defamation *per se*; (2) implicit textual defamation by gist; and (3) implicit textual defamation by specific section. *Id.* Explicit defamation looks only at the statement to determine defamation. The defamatory meaning is evident from reading the text. Implicit textual defamation determines whether a statement is capable of defamatory meaning by examining the surrounding context of the statement, either a specific section of the publication or the entire publication as a whole. Defamation by implication (both gist and specific section) can occur where "discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* (citing *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 113 (Tex. 2000)).

If a court concludes a statement is only capable of a defamatory meaning (i.e. it is unambiguous), the jury never answers the question of what the statement means. *Id.* at 632. Where

---

[3] Extrinsic defamation is not an issue in this motion.

a court finds a statement is capable of both defamatory meaning and a non-defamatory meaning, the proper course of action is to send the question to the jury. *Id.* Statements accusing a person of committing a crime are textual defamatory *per se*. *NRA of Am. v. Ackerman McQueen, Inc.*, 2021 U.S. Dist. LEXIS 153421, *31 (N.D. Tex. August 16, 2021); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin April 3, 2007, pet. denied). Extortion and conspiracy are crimes under Texas, D.C., and federal law. *See* Tex. Pen. Code Ann. § 31.02; 18 U.S.C. § 875(d); D.C. Code § 22-3251.

Statements must also be verifiable statements of fact, not opinion. Statements must expressly or impliedly assert facts that are objectively verifiable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). To distinguish between fact and opinion, courts look at statements "from the perspective of a reasonable person's perception of the entirety of the communication, not from isolated statements." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 364 (Tex. 2023). Opinions can constitute defamation in certain circumstances. Under the *Milkovich* standard, "an opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002)(adopting the *Milkovich* standard in Texas).

If the statement is capable of defamatory meaning, courts next ensure the statements are false. Falsity is presumed under common law, and the burden falls on a defendant to prove the statement is actually true. *Klentzman v. Brady*, 312 S.W.3d 886, 898 (Tex. App.—Houston [1st Dist.] 2009) ("Klentzman I") (citations omitted).[4]

---

[4] Defendants argue substantial truth of a fact is sufficient. To support this position, Defendants cite to *Neely v. Wilson,* 418 S.W.3d 52, 63-64 (Tex. 2013). (Docket Entry #12, p. 17, fn. 94). However, *Neely* is distinguishable from this case. *Neely* dealt specifically with defamatory statements made in a broadcast by a media defendant. *Neely*, 418 S.W.3d at 63-64. The focus of the Court in this case was on the defendant's classification as a media defendant, a fact missing in the case at hand. *Id.* The substantial truth doctrine promulgated by this case is specific to determining the truth or falsity *of a broadcast*. *Id.*

### 3. All defamatory statements are false.

Defendants claim even if the documents are defamatory statements, rather than opinion, dismissal is still appropriate because the statements painting Davis as an "extortionist" and "shake-down artist" are true. For this conclusion, Defendants rely on impermissible evidence, facts taken out of context, and conclusory allegations unsupported in the record.

The main document Defendants cite, to support their contention that the defamatory statements are true, is the Therapeutic Letter Davis allegedly wrote during a therapy session, years before any litigation. Davis again reiterates her objection to this evidence as it is not central to the claims of defamation. The Therapeutic Letter was written long before the defamatory statements were published or Davis brought suit. Logistically, the Therapeutic Letter cannot be central to Davis' claims and should be excluded.

However, even if the Court considers the Therapeutic Letter, the defamation statements are still false. Defendants take random sentences from the Therapeutic Letter to support their contention that Davis wanted money in exchange for silence. First and foremost, the Therapeutic Letter never states Davis is demanding money from Jones. Defendants take a daughter's therapeutic exercise to assist her in working through her feelings toward her nonexistent father and distort the actual language. Throughout the motion, Defendants state as fact for the Court that Davis demanded $20 million from Jones in the Therapeutic Letter. Defendants even mix different sections from the letter, citing they have evidence of their alleged fact Davis requested $20 million. Here is a comparison of what was actually written and what Defendants have represented to the Court:

| Defendants' statement(s): | Actual Language from the Davis Letter: |
|---|---|
| Davis admits she did seek money when she demanded that Jones pay her $20 million, | "I know his son also has an illegitimate kid but gave that kid 20 million dollars. |

writing that "if I get that I will be out of his (Jones') life".

Is there a difference between illegitimate children? Is one worth more than the other?

The actual phrase "$20 million" is mentioned once, and the exact context and language is included above for the Court's reference. Her inclusion of this dollar figure was merely part of a writing exercise at the bequest of her therapist. Davis never refers to $20 million again. However, Defendants take language from a completely separate section and combine it with her mention of $20 million dollars, in a wholly separate context, to state as fact to this Court that she demanded that amount of money. As this Court can plainly read, Davis never requested $20 million dollars. She never requested anything. She never wrote, "Give me $20 million." She never wrote, "Can I have $20 million?" Considering this bullet point list was written during a therapy session, the plain language of the letter and the context surrounding its authorship demonstrate Davis was not demanding money. Rather, she was trying to heal from the damage Jones continuously inflicted upon her by insisting her worth was valued monetarily.

Defendants also argue because Davis requested Jones submit to a paternity test and requested attorney's fees throughout the current litigation, she is extorting Jones, making the statements true. Prior to the First Davis Lawsuit, Davis' counsel sent an email to Jones' counsel. The email never stated if Jones did not submit to a paternity test, Davis would file suit and publicly announce him as her father. The email was simply an attempt by an attorney to handle a matter with discretion prior to litigation. If requesting money, a paternity test, etc. prior to litigation is extortion, as proposed by Defendants, every attorney and client attempting to judiciously handle disputes without litigation through the use of demand letters would be extortionists, including every litigator to set foot in this Court. The same argument applies to the request of attorney's fees.

**4. Analysis of Defamatory Statements under D.C. Law**

Under D.C. law, Davis satisfies the Rule 12(b)(6) standard. Looking at every statement alleged to be defamatory, Defendants have not shown the publications are not capable of *any* defamatory meaning, meaning the Court cannot rule as a matter of law.

Additionally, the statements are either verifiable fact or based on false facts provided by Defendant. The D.C. Court in *US Dominion, Inc. v. Powell* found on a motion to dismiss, if a plaintiff alleges the underlying facts given by a defendant are false, a court must take that as true. 554 F. Supp. at 57. Therefore, any statements of alleged opinion by Defendants are actionable because the statements imply a provably false fact (*e.g.* she demanded $20 million from Jones in the past) or they relied on stated facts that are provably false. Simply asserting facts are false, the Court must also assume they are false on this motion. Under this standard, all the defamatory statements are actionable.

### 5. Analysis of Defamatory Statements under Texas Law[5]

***Plea to the Jurisdiction***

Defendants argue the statements found in the Plea are not defamatory, true, or alternatively statements of opinion. (*See* Docket Entry No. 12, p. 16-18.) The alleged defamatory statements from the plea include two separate paragraphs. The first defamatory statement in the Plea states as follows:

> But before making these allegations [Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father'. (Pet. ¶ 9) When Defendant declined to pay, this lawsuit followed.

(Docket No. 1, ¶ 35, p. 9.) This statement does not explicitly state Davis is an extortionist, which means the statement must be analyzed as implicit defamation. The first step is considering the

---

[5] Based on precedent, it is easier to survive a motion to dismiss in D.C. than under Texas law. As shown above, Davis meets the more stringent defamation standards of Texas, meaning her allegations survive the more lenient standards of D.C.

meaning of the statement. While Davis contends the above statement constitutes explicit textual defamation (*i.e.* the statement is defamatory on its face), at a minimum, the statement's meaning is implied from the gist of the entire publication. A person of ordinary intelligence would perceive the statement as meaning Davis asked Jones to pay her money or she would file suit, publicly identifying Jones as her father, thus attempting to extort him. The gist of the publication supports this perception, as the Plea later explicitly accuses Davis of extortion and conspiracy, going so far as to state future litigation would be brought due to these actions. *See id.*

Defendants state "Plaintiff's Complaint concedes there is nothing either literally or materially false about this paragraph." (Docket No. 12, ¶ 55, p. 16.) However, this conclusory statement is unsupported by analysis or the pleadings. Neither Davis nor her lawyers ever asked Jones to "make a deal," requested money, or threatened Jones with publicity. In the Plea, Jones states Davis specifically asked Jones to "make a deal" to ensure the paternity issue stayed private. (Docket No. 1, ¶ 35, p. 9.) Jones even falsely cites Davis' Petition as the source for that statement. *Id.* Looking at the cited section, though, it is evident Defendants distorted the language, context, and the facts to fit their argument. The statement cited from the Davis' Petition was stated in the context of the agreement between Jones and Cynthia from 1998, in which Jones contracted to pay Cynthia money in exchange for her silence on Davis' paternity. Defendants attempt to use the statements from this context to apply to the situation at hand.

Defendants' last argument regarding this first paragraph of the Plea is that the statements constitute an opinion. Whether Davis asked Jones to "make a deal" in exchange for her silence, as alleged in the Plea, is a fact that can be verified, making that statement not an opinion.

### Defendant Jones' Plea to the Jurisdiction (Paragraph 2)

The second paragraph from the Plea containing defamatory statements reads as follows:

Plaintiff's 'let's make a deal' overtures were made at the same time Defendant [Jones] and the Dallas Cowboys were the targets of multiple extortion attempts. The potential source(s) of these attempted extortions, including without limitation the Plaintiff [Alexandra Davis] and her agents, will be the subject of other litigation which has been filed or will be filed shortly.

Defendants argue the above statement is not capable of a defamatory meaning, an opinion or alternatively, a true statement. (Docket No. 12, ps. 15-21.) All arguments fail. First, use of the word "extortion" places the defamatory statement into explicit textual defamation, which is inherently capable of a defamatory meaning. Alternatively, even if this Court finds the text is not explicit defamation, the gist of the publication establishes a defamatory meaning. This is supported by precedent from within this Circuit. Additionally, the statements above are verifiable and not opinion, as supported by case law.

The Plea states Davis is a potential source of extortion attempts. (Docket No. 1, ¶ 35, p. 9.) Accusing another person of a crime is textual defamation *per se*. Extortion is a crime under Texas, D.C., and federal law. *See* Tex. Pen. Code Ann. § 31.02; 18 U.S.C. § 875(d); D.C. Code § 22-3251. Moreover, the defamatory meaning is explicit here. Because it is explicit, Defendants fail to analyze the statement under the correct standard. They state, "No reasonable reader could view these two paragraphs as defamatory of Plaintiff and certainly not when the Plea is taken as a whole, which the settled law requires." (Docket No. 12, ¶ 63, p. 18.) This is wrong. Davis sets out the correct settled law on defamation in the previous section.[6] With explicit textual defamation, courts do not ask what a reasonable reader would think. Explicit textual defamation never examines a publication as a whole nor does it allow courts to consider extrinsic evidence. The statement on its face is defamatory, which is what the statement in the Plea accusing Davis of being a source of

---

[6] Defendants never acknowledge the different analyses required for each of the different types of defamation.

extortion constitutes.[7] To support their position that using the term extortion constitutes constitutionally protected opinion language, Defendants mainly rely on three distinguishable cases, none from the Fifth Circuit or Texas.[8]

- *Greenbelt Cooperative Pub. Ass'n v. Bresler*, 398 U.S. 6, 13 (1970): This case involved a public figure plaintiff and a media defendant. The media defendant simply published what others stated during a community debate. The Court found the publisher accurately reported what occurred at the meeting, thus *in this context only*, use of the word blackmail was not defamatory.

- *Novecon Ltd. v. Bulgarian-American Enter. Fund*, 190 F.3d 556, 568 (D.C. Cir. Sept. 3, 1999)[9]: This case was decided on summary judgment, not a motion to dismiss, meaning an entirely different standard applied. The Court of Appeals did not hold accusations of extortion were considered an opinion. Rather, the Court decided the case on another issue. Accusations of extortion could not meet the actual malice standard required under the court's analysis.

- *Hogan v. Winder,* 762 F. 3d 1096, 1108 (10th Cir. 2014): The facts in this case and the context in which the term "extortion" is used make this case distinguishable. In a response to a settlement demand, an attorney made the comment that the plaintiff's proposed settlement, "at least as he frames the matter and perceives Utopia's interests and vulnerabilities, go [six][sic] by the names of 'blackmail' and 'extortion.'" The lawyer does not state the plaintiff has engaged in acts constituting extortion, nor does the lawyer unequivocally state the plaintiff was a source of extortion attempts. No future litigation is threatened by the lawyer based on the plaintiff's alleged extortion attempts. These facts present a far different picture than the case at hand. Interestingly, the Court states, "a publisher may be liable when it takes words out of context and uses them to convey a false representation of fact." While that did not happen in Hogan, it did happen in the Plea. Jones used multiple statements, taken completely out of context, to convey Davis was extorting or had extorted Jones.

---

[7] While Davis asserts the statement is explicit textual defamation *per se*, the statement is also capable of a defamatory meaning under the standard for implicit defamation looking at the entire gist of the article. Jones accuses Davis of a crime, then goes further to state he intends to bring litigation against her for her wrongful acts. Reading the statement as a whole only supports Davis' argument the statement is capable of defamatory meaning.

[8] Defendants actually cite to five cases, but really emphasize three in their analyses. Regardless, none of the cases are within this circuit or involve the same or similar facts as this case. Additionally, Defendants state, "[m]any cases, including from the United States Supreme Court and the Courts of Appeals, hold this is an opinion-derived word especially when the facts are accurately set forth." Five distinguishable cases do not constitute "many" courts. While Davis agrees analyses must occur "when the facts are accurately set forth," that certainly did not occur with Defendants' motion.

[9] Defendants claim the courts in *Remick* and *Novecon* place great emphasis on the fact the defamation was stated in the context of litigation. While Davis admits the Court noted that fact, she disagrees the fact controlled the holding in either case.

A case from the Northern District of Texas is more persuasive and directly on point with the facts of this case. In *NRA of Am. v. Ackerman McQueen, Inc.*, Ackerman McQueen, Inc. (AMc) acted as a public relations firm for NRA. 2021 U.S. Dist. LEXIS 153421 *31. Tensions rose between the parties during legal negotiations. *Id.* The NRA president issued a letter to the NRA board, stating AMc had engaged in an extortion attempt by threatening to release sensitive information unless he resigned. *Id.* NRA filed suit, and AMc counterclaimed, including an action for defamation. *Id.* at 18. NRA moved to dismiss, arguing use of the term extortion was only an opinion or, alternatively, the statement was true. *Id.*

The Northern District concluded NRA's use of the word "extortion" and a description of the acts constituting extortion amounted to textual defamation *per se* and was reasonably capable of defamatory meaning, as the Court saw no reason to depart from "the general rule that false allegations of the commission of a crime [extortion] constitutes such a claim." *Id.* at 32. The Court analyzed the letter as an implicit textual defamation, and it found the defamatory meaning by examining the gist of the entire publication. *Id.* at 32-33.[10] The Court assumed the truth of AMc's pleadings, as is appropriate at the motion to dismiss stage, and concluded the gist of the letter was false. *Id.* at 34. This Court found the words actionable, not merely rhetoric.[11] The case at hand is very similar to NRA. Defendants continuously painted Davis as an extortionist and shake-down artist, both with explicit words and implied in the publications as a whole. Under *NRA*, this is sufficient to show defamation.

---

[10] *NRA* viewed the language in its case as falling short of explicit textual defamation. Davis asserts Jones' language in the Plea satisfies the explicit textual defamation analysis. However, even if this Court finds the defamatory language is not explicit, Davis still establishes the Plea document contains statements reasonably capable of defamation and not an opinion, as shown below.

[11] Davis objects to Defendants' underhanded attempts at continuing to besmirch her character as was done in footnote 105.

Defendants' last argument that the statements were true was addressed previously.

***The Preservation Letter***

Defendants challenge the Preservation Letter, arguing it does not concern Davis, is barred by the statute of limitations, and is protected by the judicial proceedings privilege.[12] As stated in the Complaint, Defendants publicly defamed Davis by painting her as an extortionist conspiring with others against Jones. While the Preservation Letter does not explicitly state "Davis is an extortionist," the context of the letter and the overall context of the controversy demonstrate the Preservation Letter continues the defamatory attacks on Davis' character.

The Preservation Letter was drafted on March 10, 2022, which is more than a year before suit was filed. However, it was not published in ESPN until March 31, 2022. Suit was filed within a year from Defendants' "publishing" the defamatory statements in the Preservation Letter to ESPN, meaning the claim is not barred by the statute.

***The Jack Affidavit (and Jack's publication of said affidavit to ESPN)***

Defendants argue the Jack Affidavit is not defamatory and not false. The first step in the defamation analysis reveals Jack's affidavit falls under implicit textual defamation, meaning the Court must look at the publication as a whole to determine if the specific words are capable of defamatory meaning. The alleged defamatory meaning of Jack's statement regarding Davis demanding $20 million from Jones is that Davis was attempting to extort money from Jones. The gist of the entire affidavit is that Davis was paid to keep her mouth shut about Jones' paternity, and when the payments were about to expire, she chose to extort him for more. Given the gist of the publication, a reasonable person could find Jack's statements capable of supporting the defamatory meaning (*i.e.* Davis is an extortionist). Additionally, as already shown, statements

---

[12] The analysis on the judicial proceedings privilege is in a separate section of this Response.

made in the Jack Affidavit to support this are false. For example, in paragraph 19, Jack states Davis requested Jones pay her an additional $20 million. Accordingly, Jack's affidavit survives the challenges issued by Defendants.

***Wilkinson's Comments to ESPN***

Defendants again argue Wilkinson's comments to ESPN are not capable of defamatory meaning, protected opinion, and true. The statements are reasonably capable of a defamatory meaning, either by examining the text itself or looking at the gist of the publication. Wilkinson first stated the following to ESPN:

> This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money. Their own filing references the divorce case so it's clear for all to see what is really going on here.

(Docket No. 1, ¶ 67, p. 18.) In the U.S., the term "shake-down" is slang meaning to extort money from. *See* https://www.dictionary.com/browse/shakedown#:~:text=noun%20shakedown,swindle %20or%20act%20of%20extortion. As discussed above, extortion is considered textual defamation *per se*, and it is not considered an opinion. Looking at the first sentence above or the entire published statement, the defamatory meaning is undeniable. The gist of the published statement is that Davis tried to extort Jones, which supports the alleged defamatory meaning of the statement. The language also supports an interpretation that the publication is implying Davis acted in concert with others in her alleged criminal activity (i.e. conspiracy). The second Wilkinson published statement to ESPN reads:

> This clearly demonstrates that money has always been the ultimate goal here. And sadly this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas.

(Docket No. 1, ¶ 67, p. 18.) Again, the above statement taken as a whole presents the view Davis is an extortionist in conspiracy with other criminal actors, which is defamatory. The statement is

also a verifiable fact. Wilkinson is not professing his ultimate goal or stating his opinion on the ultimate goal. He represents that Davis' ultimate goal was money, a fact which can be verified by looking at the actions and statements of the parties. The second Wilkinson statement is also defamatory and a verifiable fact.

The last challenged statement included in Defendants' motion quotes Wilkinson saying the following to ESPN: "The facts clearly show that millions of dollars have been paid and on top of that, a $20 million shakedown attempt was made. I think this speaks for itself as to motives." *Id.* Like Wilkinson's first statement referring to Davis' acts as an attempt to shake-down Jones, this statement's defamatory meaning is evident on its face. Even looking at the gist of the publication, a reasonable person would conclude Wilkinson was referring to Davis as being guilty of extortion. Whether Davis requested $20 million is a verifiable fact, not opinion. Accordingly, this last statement is also capable of a defamatory meaning and actionable.

Davis analyzed each statement above, demonstrating why the statements are defamatory and survive the motion to dismiss. However, Davis is not required to show every communication identified in the Complaint was defamatory. Even one defamatory statement is sufficient for the claims to survive a motion to dismiss. This standard has been satisfied. Davis stands by her position, though, that *all* statements were defamatory communications and false statements of fact. Additionally, as the movant, Defendants failed to carry their burden to negate the elements of Davis' defamation claims as a matter of law, meaning dismissal should be denied. At best, Defendants only pointed out the ambiguity of the statements based on the context and surrounding facts. "But if a statement's meaning is ambiguous, the question whether it is defamatory is one for the jury." *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). Defendants are not entitled to dismissal, and the issues are ones best saved for the trier of fact.

6.	**Viewing the facts in the light most favorable to Davis, Defendants fail to demonstrate Davis is a public figure of any kind.**

Defendants allege Davis classifies as a limited-purpose public figure, which would require her to show the defamatory statements were published with actual malice. Accordingly, the burden lies on Defendants to establish this classification. They fail to do so. Defendants offer no analysis of their own facts to show Davis is a limited-purpose public figure. More specifically, Defendants cannot and did not show Davis has more than a trivial or tangential role in the controversy. Davis is a private figure, and the requisite intent of negligence was satisfactorily pleaded in the Complaint. Alternatively, considering all facts in favor of Davis, the Complaint adequately sets out actual malice.

Defamation requires a plaintiff to show defamatory statements were published with the requisite degree of fault. If a plaintiff is considered a private figure, only negligence must be shown. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Where a plaintiff qualifies as a public figure, actual malice is required. *Id.* Courts divide public figures into two separate categories: (1) general-purpose public figures; and (2) limited-purpose public figures. *Id.* at 571. "Limited-purpose public figures…are only public figures for a limited range of issues surrounding a particular public controversy." *Id.* A person must "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved," to qualify as a limited-purpose public figure. *Einhorn v. LaChance*, 823 S.W.2d 405 (Tex. App. 1992) (quoting *Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974)).

To determine if an individual is a limited-purpose public figure, the Fifth Circuit requires the following three elements be satisfied: (1) the controversy  at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a

trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987). To be considered a public controversy, people must be discussing a specific question. Neither a general concern nor newsworthiness alone is sufficient to make an issue public. *McLemore*, 978 S.W.2d at 572 (quoting *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297, 201 U.S. App. D.C. 301 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898, 101 S. Ct. 266, 66 L. Ed. 2d 128 (1980)). In determining whether a plaintiff has more than a trivial role in the controversy under the second element above, courts ask the following: (1) whether the plaintiff actually sought publicity surrounding the controversy; (2) whether the plaintiff had access to the media; and (3) whether the plaintiff voluntarily engag[ed] in activities that necessarily involve[d] the risk of increased exposure and injury to reputation," such as "publishing [its] views" and inviting "public criticism and rebuttal." *McLemore*, 978 S.W.2d at 573.

Under this analysis, Defendants fail to satisfy their burden. Defendants provide no case law showing the filing of a lawsuit is sufficient to create a public controversy under *Trotter*. Even if this Court assumes Defendants have satisfactorily shown the matter at hand to be a public controversy, Defendants lack evidence establishing Davis has more than a trivial role in the controversy using the test identified above.[13] In three paragraphs, Defendants state only five facts to definitively establish Davis is a public figure as a matter of law.[14] Defendants fall far short of establishing Davis is a limited purpose public figure:

- *Davis breached her agreement with Jones.* Allegedly breaching an agreement does not show Davis sought publicity, had access to the media, and engaged in an activity to increase risk of

---

[13] Davis does not concede Defendants established evidence of the other two required elements to show she is a limited-purpose public figure. However, as the second element is definitively negated and not established by Defendant, there is no need to analyze the other two elements.

exposure. Additionally, this is a heavily contested question of fact and is unsupported in Davis' pleadings and Defendants' permissible attachments.

- *Davis filed the First Davis lawsuit.* Filing a lawsuit prior to any defamatory statements being published does not show Davis sought publicity, had access to the media, and engaged in an activity to increase risk of exposure. To hold otherwise would mean every plaintiff in every suit would satisfy this element simply by filing a lawsuit. Additionally, Davis attempted to address the issue with Jones *in private* prior to filing the First Davis lawsuit, to no avail.

- *Davis' attorneys released a single written statement to ESPN.* A single written statement to one news source (as alleged by Defendants) does not show Davis sought publicity, had access to the media, and engaged in an activity to increase risk of exposure. Multiple other facts show Davis and her attorneys attempted to limit media exposure: Davis' attorneys declined to answer questions beyond the written statement; Davis agreed to seal all records in the First Davis lawsuit to avoid publicity; and Davis was hopeful the lawsuit could be resolved without publicity. Additionally, Davis's press release was filed a month after the First Davis Lawsuit was filed and after Defendants had released their extortion claims to ESPN. Most importantly, though, this fact is not in Davis' Complaint, and it should not be considered under a Rule 12(b)(6) motion. If anything, this press release was a request for a retraction or clarification.

- *The Cowboys franchise is the most valuable sports franchise in the world, making it well-known in the corporate and charitable realms.* The popularity of one of the Defendants does not show Davis sought publicity, had access to the media, and engaged in an activity to increase risk of exposure.

- *Davis states Defendants' defamatory statements will affect politics, as shown by her employer receiving defamatory communications about her already.* The fact that Davis believes the defamatory statements will hurt her reputation and career in politics does not show Davis sought publicity, had access to the media, and engaged in an activity to increase risk of exposure.

Defendants never recite the correct analysis and never analyze the five facts under the correct standard. Instead, in a footnote, Defendants include a mass collection of news articles "relating to the public nature of the controversy and the Plaintiff's role in it." Not only are these documents impermissible on a motion to dismiss (see objections stated above), but additionally Defendants provide no case law or analysis on why these exhibits establish Davis is a public figure. Again, this conclusory statement and a collection of articles do not meet the test to determine whether a plaintiff plays more than a trivial role in the controversy. Defendants offer nothing more

than a conclusory statement that the articles show "[Davis'] role." They do not specify how the articles show Davis has played a role in furthering the controversy. This is insufficient. Defendants then cite case law claiming a court can take judicial notice of Davis' public figure status. While this might be true in particular cases, it is not true where a defendant has failed to establish a plaintiff's status as a public figure, as we have here.[15]

## B. Conspiracy

Defendants' sole argument regarding conspiracy is that the tort fails because it is dependent on an underlying tort. Because Davis has satisfactorily shown why her defamation claims should not be dismissed, the conspiracy claim stands.[16]

## C. The judicial proceedings privilege does not insulate the defamatory statements.

Defendants claim the Plea, Jack Affidavit, and Preservation Letter are all absolutely privileged under the judicial proceedings privilege. (Docket No. 12, p. 5, ¶ 11.) These communications fall outside the privilege under either Texas or D.C. law.

In Texas, the judicial proceedings privilege is defined as follows: "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). However, this privilege is limited in its protection. In *Landry*, the defendant published a notice of intent to sue letter online along with a press release criticizing the plaintiff's treatment of tigers at one of the plaintiff's aquariums. *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 51 (Tex. 2021). Copies of the press release and the notice letter were also

---

[15] All cases cited by Defendants showing a court taking judicial notice of a plaintiff's public figure status occurred outside this jurisdiction.

[16] Davis notes for the Court she does not plead a separate cause of action for conspiracy, as alleged by Defendants. Rather, Davis notes the defamation was a coordinated scheme or effort amongst many different players.

forwarded by the defendant to multiple media outlets across the country. *Id.* The plaintiff sued the defendant for defamation, and the defendant countered that the statements made were protected by the judicial-proceedings privilege. *Id.* The Texas Supreme Court held the judicial-proceedings privilege did not protect the defendant's publication or dissemination of defamatory allegations to the media, even though the statements were made in anticipation of litigation. *Id.* The court concluded the judicial-proceedings privilege does not extend to attorneys or parties who publicize defamatory allegations raised in a lawsuit to the media or public. *Id.* at 48.

D.C. law is substantially similar. "To find the judicial proceedings privilege applicable to a statement, two requirements must be met: (1) the statement must have been made in the course of, or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding. *Armenian Assembly of Am., Inc. v. Cafesjia*n, 597 F. Supp. 2d 128, 139 (D.D.C. 2009)(*quoting Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988)). If the statements are published to a person with no interest in or connection to the litigation, the privilege does not apply. *Cafesjian*, 597 F. Supp. 2d at 139.

In the Complaint, Davis states the following: "Upon information and belief, the Defendants provided this pleading to media outlets, as they customarily do, to ensure that the accusations were picked up by the media." (Docket No. 1, ¶ 36, p. 9.) Defendants disseminated defamatory allegations to the media. *Id.* Taking this statement as true, the Complaint states sufficient facts to fall within the *Landry* exception to the judicial-proceedings privilege. Under D.C. law, the result is the same. Defendants published defamatory statements not made in the course of the litigation and are not related to the underlying proceeding. Additionally, ESPN and other media outlets have no interest in or connection to the litigation, meaning the privilege does not apply.

**D.      Jones' attorneys are not immune from suit, and Jones can be held liable for his agent's actions.**

Defendants argue attorney immunity bars liability against Jones' attorneys.[17] Without liability against the agents (the attorneys), Defendants assert no liability can attach to Jones (the principal). Attorney immunity provides a shield when "attorneys act on behalf of their clients in the uniquely lawyerly capacity of one who possesses "the office, professional training, skill, and authority of an attorney."" *Landry's*, 631 S.W.3d at 51 (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 482 (Tex. 2015)). However, the Texas Supreme Court recently held that attorney immunity does not protect attorneys "sending out press releases or disseminating potentially defamatory allegations through the media." *Id.* at 52.

Defendants disseminated defamatory allegations to the media. (Docket No. 1, ¶ 36, p. 9.) Attorney immunity offers no protection for Defendants' attorneys for disseminating allegations to the media. Accordingly, because the lawyers as agents do not have immunity, the Court does not have to consider issues of agency. Binding precedent negates any argument for immunity for Jones' attorneys, and Defendants failed to meet their burden on the issue.

E.    **Should Texas law apply, the DMA does not require dismissal or prohibit punitive damages.**

Davis stands by her position D.C. law applies. Under D.C. law, the DMA does not apply. Out of an abundance of caution, in the unlikely event the Court determines Texas law has the most significant relationship, Davis presents defenses to Defendants' arguments regarding the DMA.

1.    **The DMA does not require dismissal.**

Defendants' interpretations and conclusions based on the DMA statute and case law are incorrect. Defendants quote as law a concurring opinion of only Justice Boyd in *Hogan v. Zoanni*,

---

[17] Defendants do not state in the motion exactly which immunity bar suits against Jones' attorneys. However, the citation included by Defendants after the conclusory statement discusses attorney immunity.

stating, "If the court agrees that the Request was insufficient or untimely then under Section 73.055(a) the plaintiff cannot "maintain the action" and it must be dismissed." (Docket Entry #12, p. 29, ¶97.) Defendants' erroneous statement of the law conflicts with a majority of the Texas Courts of Appeals that have considered the issue, the majority of the Texas Supreme Court, the Northern District of Texas, the Western District of Texas, the Southern District of Texas, and, most importantly here, the Eastern District of Texas:

- *Hogan v. Zoanni*, 627 S.W.3d 163 (Tex. 2021)(majority): "Implying a right to dismissal for failure to provide notice before limitations has expired is not apparent from the statute's text and serves only to undermine the statute's expressly stated purpose of mitigating damages by providing an opportunity for the correction, clarification, or retraction of a defamatory statement."

- *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 812 (Tex. App.—Austin 2017), aff'd on other grounds, 611 S.W.3d 1 (Tex. 2020): "[T]he consequence for failing to timely make a request is not dismissal…."

- *Hardy v. Commun. Workers of Am. Local 6215*, 536 S.W.3d 38, 40 (Tex. App.—Dallas 2017, pet. denied): "[W]e conclude that dismissal of the plaintiff's claim is not the consequence authorized by the DMA for a plaintiff's failure to make the required request."

- *Cummins v. Lollar*, No. 07-16-00337-CV, 2018 Tex. App. LEXIS 3155, 2018 WL 2074636, at *8 (Tex. App.—Amarillo May 3, 2018, pet. denied): "[T]he only consequence for failing to make a request for retraction within ninety days is preclusion of recovery of exemplary damages, not dismissal."

- *Cunningham v. Waymire*, No. 14-17-00883-CV, 2019 Tex. App. LEXIS 9253, (Tex. App.—Houston [14th Dist.] Oct. 22, 2019, no pet. h.): "[W]e cannot conclude that the Waymires' failure to comply with the DMA…requires dismissal."

- *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1019 (S.D. Tex. 2018): "The Corut agrees…and finds that the Texas legislature meant for section 73.055 to limit damages if a plaintiff fails to request a correction, clarification, or retraction within ninety days; it does not require dismissal."

- *Butowsky v. Folkenflik*, 2019 U.S. Dist. LEXIS 104297, *134 (E.D. Tex. Apr. 17, 2019), *adopted by* 2019 U.S. Dist. LEXIS 132268 (E.D. Tex. Aug. 7, 2019): "[T]he

Court is not convinced, as urged by Defendants, that Plaintiff's failure to follow § 73.055(a)(1) requires dismissal for failure to state a claim."[18]

- *Harrison v. Aztec Well Servicing Co.*, 2021 U.S. Dist. LEXIS 244798, *1, 2021 WL 6073164 (N.D. Tex. 2021): "[T]he remedy available to a defendant who does not receive any retraction demand under the DMA is not dismissal…That is the rule this Court will apply."

Defendants state Davis's defamation claim must be dismissed under the DMA. Eight other judges in eight other courts disagree, including Magistrate Judge Caroline Craven and District Judge Amos Mazzant in the Eastern District of Texas. Dismissal is not required under the DMA in this case.

## 2. Consideration of dismissal or a limitation of damages under the DMA is inappropriate on a motion to dismiss.

For the Court to consider Davis' compliance with the DMA requirements, it would necessarily have to examine matters outside the pleadings, which is impermissible on a Rule 12(b)(6) motion to dismiss. Other federal courts, including the Eastern District of Texas, have agreed the appropriate stage of litigation in which to consider DMA issues (both dismissal and damages) is on a motion for summary judgment. *See Cantu v. Guerra*, 2021 U.S. Dist. LEXIS 119681 at *38; *see also Butowsky*, 2019 U.S. Dist. LEXIS 104297, at *134; *see also Green Beret Found. v. Paquette*, 2019 U.S. Dist. LEXIS 200030, *6 (W.D. Tex. August 20, 2019). Accordingly, Defendants' arguments for dismissal or limitation of damages based on the DMA are premature at best.

## 3. Defendants waived any argument based on the DMA due to their failure to file a separate motion challenging the sufficiency or timeliness of Davis' request for retraction or correction.

---

[18] While *Butowsky* was prior to the *Hogan* decision, the Court's ruling follows the rationale presented by the majority of the Texas Supreme Court.

Alternatively, Defendants waived any argument under the DMA by failing to file a separate motion specifically challenging Davis' alleged failure to request a correction, retraction, or clarification. Section 73.058(c) of the DMA states, "If a defendant intends to challenge the sufficiency or timeliness of a request for a correction, clarification, or retraction, the defendant must state the challenge in a **motion to declare the request insufficient or untimely** served not later than the 60th day after the date of service of the citation." (emphasis added). "[T]he Legislature does not hide elephants in mouseholes," and the plain language of the statute requires a "motion to declare the request insufficient or untimely." *Hogan*, 627 S.W.3d at 174 ("[I]f a defendant elects to challenge the request, it may file a "motion to declare the request insufficient or untimely.")(majority); *see also* Tex. Civ. Prac. & Rem. Code § 73.058(c).

Defendants state the following: "[T]hey **intend to challenge** the sufficiency (because no request was made in compliance with the statute) or timeliness of a request for a correction, clarification or retraction…This **notice** is provided pursuant to section 73.058(c) of the DMA." (Docket Entry #12, p. 29, ¶96)(emphasis added). In the law, language matters. Intending to challenge and challenging are two very different actions. Additionally, a notice and a motion are two different legal pleadings. The DMA requires an actual challenge via a motion within 60 days after Defendants are served. Defendants did not file any motion to declare within 60 days of being served. Rather, Defendants incorporated a notice into their motion to dismiss. An intent to challenge and a notice is insufficient under the DMA.

4. **Davis requested a sufficient clarification under the DMA**.

On March 30, 2022, after Defendants began their campaign to destroy Davis' reputation, Davis' attorneys sent a letter to ESPN about the defamatory statements published in their articles. In this letter, Davis' attorneys state, "[w]e challenge Mr. Jones to publicly deny that Alexandra is

his daughter. We challenge Mr. Jones to produce any evidence that Alexandra has attempted to extort him…" The DMA does not require specific language for a request for clarification to satisfy the statutory requirements. *See* § 73.055. Rather, the statute says a request is sufficient if (1) it is served on the publisher; (2) is made in writing, identifies the person making the request, and is signed by the defamed individual or her lawyer; (3) states the defamatory statement with particularity; (4) alleges the defamatory meaning of the statement; and (5) specifies the circumstances causing the defamatory meaning. All the elements are met with Davis' attorneys' letter to ESPN.

**F.      Alternatively, amendment, not dismissal, is the correct procedural step should the Court find any allegation lacking.**

Should this Court conclude Davis' allegations fail to state a plausible claim for relief, she requests an opportunity to amend prior to dismissal. *See Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 U.S. Dist. LEXIS 41408 (E.D. Tex. Mar. 11, 2016), report and recommendation adopted, No. 1:15-CV-379, 2016 U.S. Dist. LEXIS 101704 (E.D. Tex. Mar. 24, 2016).

## VIII.   CONCLUSION

Defendants list a multitude of different issues for this Court to consider, but their motion can be condensed to a single question: Taking all Davis' facts as true and finding all inferences in Davis' favor, did she include sufficient factual allegations to plausibly state a claim for defamation? The resounding answer under either D.C. or Texas law is yes. Because Davis satisfies the Rule 12(b)(6) standard for stating a claim, the motion to dismiss must be denied.

Respectfully submitted,

BY: */s/ Matt Keil*_____          */s/ Jay K. Gray*_____
**KEIL LAW FIRM, PLLC**          **BERGMANGRAY LLP**
Matt Keil                         Jay K. Gray
TX State Bar No.                  TX State Bar No. 08324050
mkeil@kglawfirm.com               gray@bergmangray.com
Erin Keil                         Andrew A. Bergman
TX State Bar No.                  TX State Bar No. 02196300
ekeil@kglawfirm.com               bergman@bergmangray.com
Hailee Amox                       4514 Travis Street
TX State Bar No. 24085176         Travis Walk, Suite 300
hamox@kglawfirm.com               Dallas, Texas 75205
406 Walnut Street                 Telephone: (214) 528-2444
Texarkana, Arkansas 71854         Facsimile: (214) 599-0602
Telephone: (870) 772-4113         **LEAD COUNSEL**
Facsimile: (870) 773-2967

**ATTORNEYS FOR PLAINTIFF ALEXANDRA DAVIS**

## <u>CERTIFICATE OF SERVICE</u>

On June 9th, 2023, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court, which will send notice of electronic filing to all counsel of record.

*/s/ Matt Keil*_____
Matt Keil