**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| ALEXANDRA DAVIS,<br>      *Plaintiff*, | |
| VS. | CIVIL ACTION NO. 5:23-CV-00032 |
| JERRAL W. JONES, DALLAS COWBOYS<br>FOOTBALL CLUB, LTD., JAMES<br>WILKINSON, TRAILRUNNER<br>INTERNATIONAL, LLC, and DONALD JACK,<br>JR.<br>      *Defendants*. | JURY TRIAL DEMANDED |

## PLAINTIFF'S AMENDED COMPLAINT FOR DEFAMATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Alexandra Davis, ("Plaintiff"), and complains of Jerral W. Jones, ("Defendant Jones"), Dallas Cowboys, Football Club, LTD., ("Defendant Dallas Cowboys"), James Wilkinson ("Defendant Wilkinson"), Trailrunner International, LLC ("Defendant Trailrunner"), and Donald Jack, Jr. ("Defendant Jack") for cause of action would respectfully show the Court the following:

## PARTIES

1.      Plaintiff is a resident of the District of Columbia.

2.      Upon information and belief, Defendant Jerral W. Jones is an individual residing in Dallas County, Texas, and is before the Court for all purposes.

3.      Upon information and belief, Defendant Dallas Cowboys is a Texas limited partnership with its principal place of business located at One Cowboys Way, Frisco, Texas 75034, and is before the Court for all purposes.

4.      Upon information and belief, Defendant James Wilkinson is an individual residing in Tarrant County, Texas, and is before the Court for all purposes.

5.      Upon information and belief, Defendant Trailrunner is a Texas limited liability company having its principal place of business at 1900 W. Kirkwood Blvd. Unit 1400B, Southlake, Texas 76092-2241, and is before the Court for all purposes. At all times during the complained of acts, Defendant Trailrunner employed Defendant Wilkinson.

6.      Upon information and belief, Defendant Donald Jack is an individual residing in Pulaski County, Arkansas, and is before the Court for all purposes.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 USC 1332(a) because there is diversity among the parties. Plaintiff is a citizen of the District of Columbia, and her residency is diverse from all of the Defendants. The amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

8.      Plaintiff was born in Arkansas on December 16, 1996. Approximately one year previous to Plaintiff's birth, Plaintiff's mother, Cynthia Davis Spencer ("Cynthia"), was married but was estranged and living apart from her husband.

9.      Around this time, Cynthia met and was pursued romantically by Defendant Jones, the well-known Arkansas native owner and general manager of the Dallas Cowboys' football NFL franchise. After being pursued by Defendant Jones, Cynthia and Defendant Jones began a romantic relationship, which included sexual relations.

10.      After her relationship with Defendant Jones began, Cynthia briefly reunited with her estranged husband. During the brief attempted reconciliation with her husband, Cynthia was unaware that she was pregnant with Plaintiff from the relationship with Defendant Jones.

11.      Shortly after Plaintiff was born, Cynthia and her husband began divorce proceedings in Arkansas. During the divorce proceedings, Cynthia's husband legally challenged whether he was the biological father of Plaintiff.

12.     After genetic tests were conducted in accordance with the divorce court's procedures, it was scientifically determined that Cynthia's husband was not Plaintiff's biological father. In June 1998, the divorce court entered a Decree of Divorce, which included a judicial finding and adjudication that Cynthia's husband was not Plaintiff's biological or legal father. As a result, Cynthia's husband was not ordered to pay child support, and Plaintiff did not have a legal father.

13.     As soon as the genetic testing results came back, Cynthia informed Defendant Jones of the results knowing that Defendant Jones was Plaintiff's biological father. At this time, Defendant Jones unequivocally and adamantly stated two things to Cynthia. The first was that he "never was going to take a paternity test." The second thing he vehemently asserted to Cynthia was that he would "never meet or have any relationship with the child."

14.     Faced with a potential public scandal, and certainly private problems being a married man with an existing family with grown children, Defendant Jones wanted to assure that he would not be publicly or privately identified and/or legally declared as Plaintiff's father. As he stated unequivocally to Cynthia, Defendant Jones had no intention of meeting or having any kind of relationship with Plaintiff.

15.     Defendant Jones, knowing that Cynthia was now a single mother with an infant child, no financial resources, and an uncertain financial future at best, immediately set out to negotiate an agreement with Cynthia that would exchange money for silence. This was the only way he could stay anonymous and achieve his stated objective of never taking a paternity test. Accordingly, with the help of his long-time Arkansas friend and lawyer, Defendant Jack, Defendant Jones sought to reach a "hush money" deal with Plaintiff's mother Cynthia.

16.     A "hush money" deal was struck.  The essence of the deal was that Defendant Jones would provide, through indirect means and with his personal identity hidden, ongoing monthly support for Cynthia with monies earmarked as "child support" conditioned on Cynthia remaining silent

about the fact that Defendant Jones was Plaintiff's father. If Cynthia failed to maintain such silence, the support would end at Defendant Jones' discretion, and Cynthia would be subject to being sued by Defendant Jones, resulting not only in the end of future monthly support but also the return of support previously provided.

17.     The primary purpose of the arrangement was designed for Defendant Jones to maintain leverage and intimidation over Cynthia to not disclose Defendant Jones' identity, and to compel Cynthia to train Plaintiff from ever disclosing and/or identifying who her father was.

18.     The final deal was memorialized in two written documents (the "Settlement Documents"). In addition to binding Cynthia, the Settlement Documents purported to bind Plaintiff, then a one-year-old child, to confidentiality *via* her mother's signature. The Settlement Documents also attempt to prevent Plaintiff from ever seeking a legal adjudication that Defendant Jones was her father.

19.     In essence two adults, with their own motivations and interests, entered into an agreement that purportedly would relieve Defendant Jones of support obligations if Cynthia or Plaintiff ever revealed, legally asserted, or even mentioned that Defendant Jones was Plaintiff's father to anyone at any time.

20.     The Settlement Documents were entered into without court approval. Further, at no time was Plaintiff's interest represented by any disinterested party without a conflict of interest.

21.     Defendant Jones has continued to have contact with Cynthia over the years, but has declined her requests to establish a relationship with, or even meet with, Plaintiff who he knows to be his daughter.

22.     Plaintiff is now a twenty-six-year-old woman. She has lived her life fatherless and in secret. Her life has revolved around constant fear that if she should tell anyone who her father was, she and her mother would lose financial support or worse. Plaintiff grew up in the Dallas area. She

went to college and graduated from Southern Methodist University in Dallas, a distance less than two miles from Defendant Jones' residence. Plaintiff has had to endure the endless public profiles of her father and siblings while forced to remain secret to everyone, including her closest confidants.

23.     Despite the emotional obstacles of being abandoned and shunned by her father and forced to live in secrecy, Plaintiff excelled academically and professionally. She presently works for a United States Congressman from Texas in Washington, D.C., after serving in the White House for fourteen months.

A.   *Negotiations Prior to Declaratory Judgment Action*

24.     Plaintiff decided to seek legal guidance as to her rights for the first time as they related to Defendant Jones, parentage, and the so-called Settlement Documents. After meeting counsel regarding these issues that had dominated her entire life, she decided to seek her legal right to confirm biologically who her father was and establish her parentage.

25.     Accordingly, on or about January 4, 2022, Plaintiff's counsel sent an email to general counsel of the Defendant Dallas Cowboys, Jason Cohen. The email stated as follows:

I hope this email finds you well in this New Year.

I am about to send Mr. Jones (senior) a letter regarding a claim involving what he may perceive to be a sensitive and personal legal matter. I do not want to unnecessarily publish the existence of this to other people who might deal with his mail and at the same time I need to make sure that Mr. Jones receives and gives due consideration to the matter set forth in my letter. To accomplish these goals, I thought I might reach out to you and see if you want to accept this letter on behalf of Mr. Jones.

Please let me know that you received this email and whether or not you want to accept this letter on his behalf. If you want to talk, please feel free to contact me on my cell xxx xxx-xxxx. Thank you.

26.     After Mr. Cohen responded that he would accept the letter on Defendant Jones' behalf, Plaintiff's counsel sent the letter dated January 5, 2021 (actually the year should have been 2022)

to Mr. Cohen. The letter was addressed to Defendant Jones in care of Mr. Cohen. *See* Exhibit 1, Letter to Defendant Jones.

27.     The letter explains that Plaintiff believes she is Defendant Jones' biological daughter and that counsel was hired to represent her in determining whether Defendant Jones was her biological and legal father. The letter advises Defendant Jones that Plaintiff was not trying to harass or embarrass him in any way and offered an easy private resolution in accordance with Texas law. No money was demanded nor was there any threat to make the matter public. In fact, as set forth above, counsel reached out to Mr. Cohen to avoid any staff member or member of Defendant Jones' family from inadvertently seeing the letter's contents.  Plaintiff suggested that she was willing to undergo genetic testing to confirm to Defendant Jones whether she was his daughter.

28.     Plaintiff sought Defendant Jones' participation without the necessity of filing a lawsuit to avoid potential publicity that the filing of a paternity lawsuit could attract. Plaintiff, neither personally nor through her legal counsel, ever threatened to make the matter public nor sought any financial compensation.

29.     In response to receiving the email and letter, Plaintiff's counsel was notified by Mr. Cohen that Defendant Jones' counsel would be in contact shortly. On March 1, 2022, after not receiving any contact from Defendant Jones' counsel, Plaintiff's counsel reached out to Defendant Jones' counsel and forwarded a copy of the lawsuit that Plaintiff intended to file if Defendant Jones would not agree that Plaintiff was not bound by the Settlement Documents entered into when she was one year old. Once again, no monetary compensation was sought, much less demanded.

30.     The draft of the lawsuit forwarded to Defendant Jones was a declaratory action, which sought a declaration from the court that Plaintiff was not bound by the Settlement Documents that Defendant Jones had tried to bind her to since she was an infant. The declaratory action would clear the way for Plaintiff to be able to request a Court to require that Defendant Jones be ordered

to submit to genetic testing. This action would alleviate the concern that Defendant Jones would take overwhelmingly expensive and oppressive actions against Plaintiff or her mother for any alleged breach of the SettlementDocuments as neither had the resources to fight and/or compete against the billionaire Defendant Jones.

31.     Plaintiff hoped that the lawsuit would not be required, and this last resort could be avoided by Defendant Jones submitting to genetic testing. Plaintiff never demanded any money as part of the resolution. Plaintiff only sought to establish her parentage and an agreement that Plaintiff was not bound by the Settlement Documents entered into when she was one year old.

32.     Defendant Jones was not agreeable to resolving these issues without litigation. Disappointed and disheartened, Plaintiff filed a declaratory judgment action (the "First Lawsuit").[1] Plaintiff did not provide any pleadings or documents from the First Lawsuit to the press or contact the media in any way to alert the media as to the First Lawsuit's existence. Again, the First Lawsuit did not seek money damages.

33.     After filing the First Lawsuit, Defendant Jones' counsel contacted Plaintiff's counsel asking if Plaintiff would agree to have the First Lawsuit sealed to avoid public media and private disclosure. Consistent with Plaintiff's desire to keep the matter private, Plaintiff immediately agreed to Defendant Jones' request. Unfortunately, before the sealing could be accomplished, the filing of the First Lawsuit was apparently picked up by the Dallas Morning News, who immediately published a story about it.

34.     After the Dallas Morning News published its story, the First Lawsuit immediately attracted local, national, and international attention. At this point, Defendant Jones' rescinded his request to seal the record.

---

[1] Plaintiff eventually nonsuited the declaratory judgment action and brought a paternity suit in Dallas County Family District Court (the "Second Lawsuit"). The Second Lawsuit is still pending after a continuance was granted.

*B.  Scheme to Publicly Defame Plaintiff*

35.      Plaintiff never made a demand for money to Defendant Jones in any way associated with the request for parentage or filing of the Lawsuit. Regardless, Defendant Jones, with his team of lawyers, marketing and media professionals, initiated a deliberate plan and scheme to publicly defame Plaintiff. This plan, as set forth below, centered upon attacking his own daughter in the world-wide public domain as an "extortionist" and a "shakedown artist" whose motivation was money and greed and who was "conspiring" in concert with other "extortionists" to exact money from Defendant Jones and his family. This designed campaign was based knowingly on false statements and accusations alleged by Defendant Jones and his agents to be truthful facts both in court filings and in public statements to the media. The purpose of the false statements were to discredit Plaintiff's character in the public eye.

36.      Defendant Jones' first step in the false and purposeful character assassination attack of Plaintiff was the filing of his initial response to the First Lawsuit of a document titled "Plea to The Jurisdiction and Subject Thereto Original Answer" (the "Plea to the Jurisdiction"). The Plea to the Jurisdiction, filed on March 28, 2022, falsely asserted that Plaintiff sought money from Jones in exchange for keeping the matter private.

37.      Although completely unrelated to the matters asserted in the Lawsuit and inappropriate in a responsive pleading, Defendant Jones falsely stated the following in what was labeled "Introduction":

> Plaintiff, a twenty-five-year-old woman currently employed by a United States Congressman in Washington D.C., claims that Defendant [Jones] is her unacknowledged father. But before making these allegations [Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' (Pet. ¶ 9) When Defendant declined to pay, this lawsuit followed.

> Plaintiff's 'let's make a deal' overtures were made at the same time Defendant [Jones] and the Dallas Cowboys were the targets of multiple extortion attempts.

The potential source(s) of those attempted extortions, including without limitation, the Plaintiff [Alexandra Davis] and her agents, will be the subject of other litigation which has been filed or will be instituted shortly.

38.     Defendants admittedly provided this pleading to media outlets, as they customarily do, to ensure that the accusations were picked up by the media. The highly public profile of Defendant Jones with his immense public relations resources ensured these wholly false accusations were quoted by innumerable media outlets worldwide. The substance of these pleadings was also affirmed by Defendants when questioned by the media. Article after article ran with some form of headline that referenced Plaintiff as being accused of being an "extortionist" by the famous Defendant Jones.

39.     Around this same time, Defendant Jones' daughter, Charlotte Jones Anderson was going through a contentious divorce with her husband, Shy Anderson. On March 10, 2022, counsel for Defendant Jones wrote a so-called "Preservation Letter" to Shy Anderson's divorce attorney, wherein Defendant Jones accused Mr. Anderson of working with "others" to extort money from the Jones family. Plaintiff was specifically named in the letter. Upon information and belief, this letter was again provided directly to the media by Defendant Jones and his team to further propagate the extortion narrative and to tie Plaintiff to other supposed bad actors who were alleged to have been wrongfully seeking money from Defendant Jones and/or his organizations.

40.     As a result of the slander campaign by Defendant Jones and his camp, Plaintiff was depicted as an extortionist that was in "conspiracy" with others supposedly attempting to extort money from the Jones family. These "others" apparently included the Dallas Cowboys Cheerleaders, who were allegedly video recorded by the Dallas Cowboys' longtime chief media head while the they were undressing. This scandal, which occurred several years earlier, was the subject of media disclosure around the same time as Plaintiff's existence was being made public,

and it was reported that the Cowboys paid money to the cheerleader complainants in exchange for nondisclosure.

**41.**     On March 30, 2022, in an interview published by ESPN, Defendant Wilkinson furthered the public smear campaign against Plaintiff. Defendant Wilkinson, as spokesperson for Defendant Jones and the Dallas Cowboys, stated: "This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money."

42.     This statement was patently false. At no time did Plaintiff attempt to "shake down" Defendant Jones, nor did Plaintiff coordinate with any other party or person in seeking her legal right to determine her legal father. Defendant Wilkinson's comments completely lacked any factual basis and were false.

43.     On March 31, 2022, just days after the Plea to the Jurisdiction pleading accusing Plaintiff of being an "extortionist" was filed and provided to the media by Defendants, Defendant Wilkinson, acting as a spokesperson for Defendants Jones and the Dallas Cowboys, was quoted as reaffirming the allegations in that Pleading that Plaintiff was an "extortionist."

44.     Not only did Defendant Wilkinson publicly affirm the "extortionist" allegations on behalf of himself and all Defendants, but in this interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones, accused Plaintiff of being an extortionist and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt. Rather than showing the so-called letter, Defendants Jack and Wilkinson conveniently misrepresented its contents in a distorted and self-serving manner to further the "Plaintiff is an extortionist" narrative they intentionally created.

45.      Defendants Jack and Wilkinson were referring to a letter written at least five years earlier by Plaintiff as a therapeutic exercise at the direction of her therapist. This writing was addressed to Defendant Jack, not Defendant Jones, wherein Plaintiff was seeking advice from Defendant Jack as a friend and father figure. Upon information and belief, this letter was never provided to Defendant Jones but rather was read to Defendant Jack at a dinner years before Plaintiff ever met with any attorneys concerning the current lawsuit. The purpose and content of this writing was an attempt by Plaintiff to share her anguish about the lack of relationship with her father and plead with Defendant Jones for a simple meeting of any kind.

46.      Defendant Jack portrayed the therapeutic writing as Plaintiff being unsatisfied with what she received financially from Defendant Jones. In truth and in fact, the therapy assisted letter, was a plea by a shunned daughter to her father. Defendant Jack knew his characterization to the media was false as did Defendant Jones and Wilkinson. It was falsely characterized as a monetary demand to support their objective to discredit Plaintiff by painting her as an extortionist.

47.      Nevertheless, Defendants Wilkinson and Jack used this plea for attention by an abandoned child made years before any type of litigation was contemplated to distort and misrepresent to ESPN in a nationally published article as support for the pleading which accused Plaintiff of being an "extortionist" in effect adopting the false allegation that Plaintiff's lawsuit was an extortion attempt when in fact the lawsuit did not seek an economic award.

48.      In addition to adopting the "extortionist" claim, Defendant Wilkinson further stated that the statement by Defendant Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a broader calculated and concerted effort that has been going on for some time by multiple people with various different agendas." Despite knowing that the years earlier letter to Defendant Jack had nothing to do with the lawsuit, Defendants, once again, not only falsely accused Plaintiff

of making a $20 Million dollar demand in connection with the First Lawsuit, but also made the unsupported accusation that Plaintiff was working in concert with other people to extort Defendant Jones.

49.     In the same ESPN article, Defendant Wilkinson also stated publicly to the media that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money. Again, this is a false statement made with the intent to continue the scheme of defaming Plaintiff. No such demand for money was ever made by Plaintiff's counsel.

50.     Defendant Wilkinson also added "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal." Again, a categorically false statement made by Defendant Wilkinson, who was never part of any discussions with Plaintiff or her counsel, to intentionally and maliciously further spin the false narrative that Plaintiff demanded money and was an "extortionist."

51.     Defendant Wilkinson's final quote in the ESPN article was "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish." Again, Defendant Wilkinson knowingly created a false narrative by first suggesting that Plaintiff had changed her story and second stating "Now it is about money," when no story had changed and there had not been any demand or lawsuit for money.

52.     Defendant Jack also used this media platform to falsely state that Plaintiff's motivation in the lawsuit was money. Defendant Jack stated that he got "a far different impression of Davis' motives." Defendant Jack deceptively and knowingly based this statement about Plaintiff's "motives" upon a letter written by Plaintiff years earlier at her therapist's recommendation. Instead of simply producing the letter for the media and the public to interpret its meaning, Defendant Jack

knowingly and falsely characterized its contents to buttress the public smear campaign that Plaintiff was "extorting" or "shaking down" Defendant Jones.

53.      Throughout their smear campaign against Plaintiff, Defendants either knew the statements being made by them were false or they knew enough facts such that they should have entertained serious doubts as to the truth of their defamatory statements.

54.      All Defendants in this suit are closely intertwined with Defendant Jones. Defendant Jones and all the Defendants were involved in continuing and contentious litigation with Plaintiff Alexandra Davis in the early months of 2022 when the defamatory statements were published.

55.      On information and belief, Defendants were additionally closely working with Van Natta, the author of the defamatory ESPN articles. ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

56.      On information and belief, Defendant Wilkinson conceived a story line in advance even though the evidence and facts did not support it. He told Van Natta ███████████ once Van Natta reported the story. More than once, Defendant Wilkinson knowing that the storyline was false, told Van Natta ████████████████████████████████████████████████████ ████████████████████████████████ He told Van Natta that Defendant Jones ████ ██████████████████████████████████████████████████████.

57.      On information and belief, Defendant Wilkinson was even concerned about the veracity of the publication himself. ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ Defendant Wilkinson anticipated litigation over his statements because he knew from the beginning they were false or, at a minimum, he entertained serious doubts as to their truth.

58.     On information and belief, Defendants Wilkinson and Trailrunner did not stop at spreading lies to Van Natta. Part of their strategy was to ensure all news outlets reported the statements Defendant Wilkinson had given to Van Natta. ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ For example, an article in Bleacher Report on March 31, 2022, did not contain the statements made by Defendants Wilkinson and Jack. ████████████████████████████████████████████████ ████████████████████████████████████████████████. Bleacher Report then updated the article to include defamatory statements in its article as well.

59.     On information and belief, Defendants Wilkinson and Trailrunner only concern was furthering their smear campaign against Plaintiff. For example, ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████

60.     On information and belief, Defendant Wilkinson, on behalf of Defendant Jones, wanted the image of Plaintiff as an extortionist to appear in the ESPN March 31st article. Defendant Wilkinson advised Van Natta ████████████████████████████████████████ ████████████████

61.     On information and belief, Wilkinson and the other Defendants had copies of all pleadings. They had copies of all communications between Davis and Defendant Jones regarding the parentage and declaratory judgment action (as evidenced by Defendants leaking those documents to the press). Nowhere in those communications or court documents does it state Plaintiff was seeking any money at all. Defendant Wilkinson ignored all of this to portray to the press that

Plaintiff was a "shakedown artist" and an "extortionist" In relation to her lawsuit Again, at a minimum, Defendant Wilkinson and the other Defendants had enough facts such that they would and/or should entertain serious doubts as to the truth of Defendants Wilkinson, Jack, and Trailrunner's statements.

## AGENCY

62.     At all times during the complained of acts, Defendant Wilkinson was acting as the agent and/or public spokesperson for Defendants Jones and Dallas Cowboys. Defendant Wilkinson's defamatory comments were made within his general authority as an agent for Defendant Jones and Defendant Dallas Cowboys.

63.     At all times during the complained of acts, Defendant Wilkinson was in the course and scope of his employment with Defendant Trailrunner. Defendant Wilkinson's defamatory comments were made within his general authority as an employee for Defendant Trailrunner.

64.     With Defendant Wilkinson as his and the Dallas Cowboys' spokesperson, Defendants Jones and Dallas Cowboys knew they retained a very prominent and notoriously known person in the world of public relations and world-wide media. Defendant Wilkinson has a successful, but highly controversial, history in the world of media. With his background in political and government related public relations and media work, Defendant Wilkinson has been publicly criticized for his role in various controversial and criticized media campaigns, notably in promoting the Iraq War and the story of Jessica Lynch. Perhaps his most controversial public relations work involved the original government narrative around the tragic death of Pat Tillman, the former NFL player who left the NFL to volunteer in the Army after 9-11 who was initially portrayed as a martyr for war killed in battle when in fact he was killed by friendly fire, a hugely embarrassing event for the Bush White House and the Pentagon at the time.

65.     Ron Suskind of the Washington Post wrote that Defendant Wilkinson was the "spinmeister of the Iraq War."  Likewise, in the book *Where Men Win Glory: the Odyssey of Pat Tillman*, the legendary award-winning journalist and author Jon Krakauer referred to Defendant Wilkinson as a "major propagandist." By using Defendant Wilkinson for public relations on this matter, Defendants Jones and Dallas Cowboys knew that that he would effectively spread the false narrative that gives rise to this lawsuit.

## CAUSE OF ACTION

A.  *Count One-Statutory Defamation*

66.     Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

67.     Defendants made and published numerous false factual statements to third parties, including but not limited to mainstream and print media.

68.     In addition, as described in more detail above, Defendants made the following false verifiable statement of fact, including but not limited to:

a.  Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer falsely and maliciously stated "[Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to 'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' When Defendant declined to pay, this lawsuit followed;"

b.  Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer also falsely and maliciously accused Plaintiff of being in some sort of conspiracy with other "extortionist" attempting to extort money from Defendant Dallas Cowboys and Defendant Jones;

c.  On March 10, 2022, Defendant Jones wrote a "Preservation Letter" to Shy Anderson's divorce attorney wherein Defendant Jones accused Mr. Anderson of working with "others" to extort money from the Jones family. He identified Plaintiff as one of such persons;

d.  On March 30, 2022, in an interview with ESPN, Defendant Wilkinson, as spokesperson for Defendant Jones and Defendant Dallas Cowboys, stated: "This whole saga and

series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money;"

e.  On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist;"

f.  On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt;

g.  In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist;"

h.  In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas;"

i.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money;

j.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal;"

k.  In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish;" and,

l.  In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based this statement about Plaintiff's "motives" upon the therapeutic letter written by Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist."

m.  ██████████████████████████████████████████████████████████████

.

69.     The above statements were published by Defendants without privilege or authorization.

70.     Additionally, as described in more detail below, Defendants made the following false verifiable statement of fact with knowledge that the statements were false or with reckless disregard for their truth when communicating them:

    a.   On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist." Defendant Wilkinson knew that this "dinner meeting" that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit.

    b.   On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt or a "shakedown" of Defendant Jones. Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange or "shakedown" Defendant Jones relating to her 2022 lawsuit. Defendant Wilkinson knew that this "dinner meeting" that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a "shakedown" related to the 2022 Lawsuit.

c.  In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist." Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist." Defendant Wilkinson knew that this "dinner meeting that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit.

d.  In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas. Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson knew that this "dinner meeting that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit. Defendants knew that Plaintiff's goal was not money in the 2022. Defendants were told by Plaintiff that Plaintiff was not seeking money but only a declaration of parentage from Defendant Jones. Defendants had been told by Plaintiff that in regard to her 2022 lawsuit that Plaintiff only sought a Declaration of Parentage from Defendant Jones and money was not even an issue. Despite being told this, Defendants dug up a "dinner meeting" with Defendant Jack where Plaintiff has sought paternal advice from Defendant Jack and mentioned that Defendant Jones' son had paid $20 Million dollars to his illegitimate son and turned this into a demand for $20 Million dollars on Defendant Jones in connection with Plaintiff seeking parentage in 2022. Defendants further used this "dinner meeting" from years earlier to portray Plaintiff as part of a concerted effort in 2022 with "others" to get money from Defendant Jones. Defendants knew that Plaintiff was not working in concert with any "others." Before the Defendants falsely stated that Plaintiff was working in concert with "others," Defendants had been told by Plaintiff that she was not working in concert with any "others."

e.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money. Defendants were aware that when they made this statement to ESPN that no demand for money had been made by Plaintiff's counsel. Prior to

Defendants making this statement, Plaintiff's counsel had specifically informed Defendants that money was not even part of the discussion. The only matters discussed between Plaintiff's counsel and Defendant Jones' counsel for the Parentage Action was that Defendant Jones enter into a Declaration of Parentage. Defendant Wilkinson had been informed when he made the statement that money had never been demanded from Plaintiff's counsel which is why Defendants had to dig up the years earlier "dinner meeting" with Defendant Jack and state that the "dinner meeting" with Defendant Jack was a $20 Million dollar demand related to the 2022 lawsuit. Defendants knew this was false and there had never been a demand for money made by Plaintiff's counsel.

f.   In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal." Defendants were aware that when they made this statement to ESPN that no demand for money had been made by Plaintiff's counsel. Prior to Defendants making this statement, Plaintiff's counsel had specifically informed Defendants that money was not even part of the discussion. The only matters discussed between Plaintiff's counsel and Defendant Jones' counsel for the Parentage Action was that Defendant Jones enter into a Declaration of Parentage. Defendant Wilkinson had been informed when he made the statement that money had never been demanded from Plaintiff's counsel which is why Defendants had to dig up the years earlier "dinner meeting" with Defendant Jack and state that the "dinner meeting" with Defendant Jack was a $20 Million dollar demand related to the 2022 lawsuit. Defendants knew this was false and that the only discussions related to the 2022 lawsuit was the nonmonetary resolution of Defendant Jones entering into a Declaration of Parentage.

g.   In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish." Defendants knew when they made this statement that the 2022 lawsuit had never been about money. Defendants knew that the story had not changed. Defendants knew the "story" was still not about money. In fact, nothing had changed. Defendants just falsely made this statement to make people think something with Plaintiff's 2022 lawsuit had changed. Defendant uses the "dinner meeting" with Defendant Jack that occurred years earlier to falsely convey the impression to the public that Plaintiff's current action of seeking parentage was related that "dinner meeting." Defendants knew when making this statement that the 2022 lawsuit had no connection to the many years earlier "dinner meeting" with Defendant Jack. Defendants knew when they made this statement that Plaintiff had not demanded money or $20 Million dollars from Defendant Jones years earlier. Defendants knew when they made this statement that the "dinner meeting" had absolutely nothing to do with the 2022 lawsuit.   and,

h.   In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based this statement about Plaintiff's "motives" upon the therapeutic letter written by

Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist." When Defendant Jack made these false statements, Defendant Jack knew that the years earlier "dinner meeting" had nothing to do with the 2022 lawsuit and that Plaintiff's motive in her 2022 lawsuit was not money. Defendant Jack when making these statements knew that Plaintiff's motives at the time were to merely seek parentage and not money of any sort. Defendant Jack had been told that 2022 lawsuit was not about money but Plaintiff seeking her parentage from her father. Yet despite this knowledge, Defendant Jack still falsely stated that Plaintiff's motive in her 2022 lawsuit was money. Defendant Jack was instructed by Defendants to make this false statements so Defendants could falsely claim that Plaintiff's 2022 lawsuit was about money. Defendants prepared the statement by Defendant Jack to be presented to the press so they could create this false narrative that Plaintiff was just somebody trying to "shakedown" or "extort" money from Defendant Jones rather than just a daughter seeking parentage. Defendant knowing this was a false narrative about Plaintiff agreed to make these statements to the media to assist his long-time friend Defendant Jones' public image by attacking Plaintiff with what he knew were lies about Plaintiff

71.     Defendants' false statements were defamatory. The statements accuse directly and impute to Plaintiff the commission of crimes for which Plaintiff could be punished and imprisoned. Such statements are defamation *per se*/statutory defamation. The statements accuse directly and impute to Plaintiff a lack of integrity and an unfitness to perform her duties in the political realm of her career, as well as other injurious and disparaging character implications. These statements prejudice Plaintiff in her career in politics where reputation is everything.

72.     The specific text of the statements communicated by Defendants are explicitly defamatory. The statements say she is an "extortionist" and a "shakedown artist," and that the statements communicate that meaning as well. The defamatory statements also imply defamation in both the gists of the entire publications and the specific sections of the publications with the defamatory statements.

73.     Plaintiff is not a public official or a public figure. However, should this Court construe Plaintiff as a limited public figure, the facts demonstrate Defendants acted with actual malice.[2]

---

[2] Plaintiff in no way concedes in any way that she is a public figure in any capacity by pleading and establishing actual malice. She maintains she is a private figure. However, for the purposes of this Amended Complaint, Plaintiff amends her pleadings to show facts establishing actual malice in compliance with the Court's Order.

74.     Defendants acted with actual malice and reckless disregard for the truth in saying and communicating these false, defamatory, factual statements:

a.   Defendants Wilkinson, Trailrunner, and Jack abandoned all ethical and professional standards in their communications and publications of the defamatory statements at issue.

b.   Acting in concert with Defendants Jones, Dallas Cowboys, and Jack, Defendants Wilkinson and Trailrunner conceived a storyline in direct contrast to the evidence and facts in Defendants' possession and then deliberately sought to make the evidence conform to the preconceived story by false portraying those facts and lying. Defendants intentionally created a verifiably false narrative they knew was false (*i.e.* Plaintiff's lawsuit was part of a concerted effort among Plaintiff and others to extort and shake down the Jones family for money; Plaintiff demanded $20 million in association with the First Lawsuit; etc.). Defendants Wilkinson and Trailrunner spoon-fed the defamatory narrative to a writer with ESPN, who then regurgitated the preconceived narrative throughout the country. Additionally, ██████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████

c.   Defendants Wilkinson and Trailrunner possessed all communications between Davis and Jones, as well as copies of the pleadings and other relevant documents. The specific evidence possessed by Defendants prior to their defamatory statements establish not only that the statements issued by Defendants were false, but also that Defendants knew the statements were false. Defendants had a copy of the Petition from the First Lawsuit specifically stating the relief requested by Plaintiff. That relief was not a request or demand for money at all, and especially not a demand for $20 million dollars. Defendants

consciously and intentionally ignored this known and available evidence and proceeded to defame Plaintiff with the preconceived narrative that she was an extortionist.

d. Defendants intentionally created a verifiably false narrative with ESPN that Plaintiff's lawsuit was part of a concerted effort among Plaintiff and others to extort and shake down the Jones family for money. To accomplish this goal Defendants falsely stated that Plaintiff had demanded $20 Million dollars related to her lawsuit. Additionally, Defendants knew that Plaintiff was not working in concert or in any way with any other people in seeking parentage from Defendant Jones.

e. Defendants provided the Preservation Letter, the Plea to Jurisdiction, and the Affidavit of Donald Jack to the media, all of which contained knowingly false statements that Plaintiff was an extortionist, seeking money from the Jones family, and working in concert with others to extort money from the Jones Family. Defendants then furthered this false narrative by making knowingly false statements to ESPN to paint Plaintiff in a false light in the media as a shake down artist and extortionist. When Defendants made these statements to ESPN and created this knowingly false defamatory image of Plaintiff, Defendants knew that Plaintiff was not seeking money from the Jones family or acting in concert with any others to shake down the Jones family.

f. Not once did Defendant Jones or any of his agents ever deny that Plaintiff was Defendant Jones' daughter. Instead, Defendant Jones chose the avenue of calling his own daughter an "extortionist" merely to make his own public image less despicable by attempting to discredit Plaintiff's reputation and character in the public eye. These statements and documents were all provided to ESPN in an attempt to better Defendant Jones' PR image in the media at the expense of his own daughter.

g.  At all times, Defendants knew that the statements in the documents and the statements made by the Defendants in speaking to the media were false. Despite this knowledge, Defendants provided these documents to ESPN, made statements for the ESPN articles and actively intended to defame Plaintiff in the public. Defendants knew that the claimed Letter that Plaintiff had allegedly read to Defendant Jack years earlier had absolutely nothing to do with the First Lawsuit or Parentage Action. Yet Defendants falsely stated that the Letter showed money had always been the motivation behind the First Lawsuit and that a $20 Million shakedown attempt had been made in relation to the First Lawsuit. Defendants knew these statements were false, and Defendants knew there had not been any $20 Million shake down attempt in relationship to Plaintiff seeking Parentage in 2022.

h.  Surprisingly, Defendants worked with ESPN to the extent of even coordinating that the story portray Plaintiff has an extortionist and shake down artist demanding $20 Million dollars in association with her 2022 lawsuit. Defendants knew that it was false that Plaintiff had never demanded any money much less $20 Million dollars in relationship to her lawsuit. Yet with the knowledge that it was false that Plaintiff had demanded money in relation to her Lawsuit set forth to provide ESPN the Plea to Jurisdiction, the Preservation Letter, the Jack Affidavit regarding a 2017 dinner with Plaintiff, and quotes that Plaintiff was currently shaking down the Jones' family all to create a false impression of Plaintiff's 2022 lawsuit that they knew had nothing to do with the 2017 writing to Defendant Jack wherein Plaintiff sought Defendant Jack's advice on how to address her relationship with her Father, Defendant Jones.

i.  Upon information and belief, Defendants discussed among themselves that they knew that the statements they were making to ESPN were false and that Defendants were creating a

false narrative with the March 31, 2022 article and decided to make the statements to ESPN despite knowing they were false.

j.   Defendants had a contentious relationship with Plaintiff, even before she officially filed the First Lawsuit. All Defendants had a strong motive to lie about Davis as well as a motive to fabricate a narrative to negatively portray and defame her.

k.   The author of the ESPN article (Van Natta) and Defendant Wilkinson worked closely together to ensure Defendant Wilkinson's promoted false narrative was portrayed.

l.   The veracity of the statements was not Defendants Wilkinson or Trailrunner's concern. Rather, the story line Defendants conceived in advance to discredit Plaintiff to the media was the only motivation Defendants considered.

m.   ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████ because he knew the statements he made were false or, at a minimum, he entertained serious doubts as to the truth of what he was saying.

n.   Defendant Wilkinson and the other Defendants had copies of all pleadings. They had copies of all communications between Davis and Defendant Jones (as evidenced by Defendants leaking those documents to the press). Nowhere in those communications or court documents does it state Plaintiff was seeking any money at all, much less $20 million. Defendants ignored all of the actual facts to portray to the press that Plaintiff was a "shakedown artist" and an "extortionist." Again, at a minimum, Defendant Wilkinson and the other Defendants had enough facts such that they would entertain serious doubts as to the truth of their statements.

o. Defendants started by using a court pleading to falsely plant this image of Plaintiff as an "extortionist" who was conspiring with others in multiple extortion attempts. Then, Defendants provided this defamatory and frivolous pleading to the press. Next Defendants adopted this defamatory pleading in a national press interview. Defendants knowingly and falsely stated that Plaintiff's motive for the lawsuit in 2022 was money and referred to Plaintiff as being part of a "shake down" and conspiring with other alleged bad and illegal actors.

p. As shown above, Defendants, in making the false and defamatory statements acted not only negligently but also acted with malice, *i.e* Defendants acted with the knowledge that their statements were false at the time and knowingly made all the false statements about Plaintiff despite knowing such statements were false or, at a minimum, acted with reckless disregard for whether the statements were true or false.

75. As a direct result of Defendants' defamatory statements, Plaintiff's reputation was injured and she was exposed to public hatred, contempt, and ridicule. The statements also exposed Plaintiff to financial injury by impeaching Plaintiff's honesty, integrity, virtue, and reputation.

*B.  Count Two-Common Law Defamation*

76. Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

77. Defendants made and published numerous false factual statements to third parties, including but not limited to mainstream and print media.

78. In addition, as described in more detail above, Defendants made the following false verifiable statement of fact, including but not limited to:

a. Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer falsely and maliciously stated "[Plaintiff] delivered a draft of her lawsuit to Defendant and, to borrow her phrase, asked whether he would like to 'make a deal' to

'assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.' When Defendant declined to pay, this lawsuit followed;"

b.  Defendant Jones in Defendant's Plea To The Jurisdiction And Subject Thereto Original Answer also falsely and maliciously accused Plaintiff of being in some sort of conspiracy with other "extortionist" attempting to extort money from Defendant Dallas Cowboys and Defendant Jones;

c.  On March 10, 2022, Defendant Jones wrote a "Preservation Letter" to Shy Anderson's divorce attorney wherein Defendant Jones accused Mr. Anderson of working with "others" to extort money from the Jones family. He identified Plaintiff as one of such persons;

d.  On March 30, 2022, in an interview with ESPN, Defendant Wilkinson, as spokesperson for Defendant Jones and Defendant Dallas Cowboys, stated: "This whole saga and series of recent attacks amounts to nothing more than an amateurish coordination among various parties to try to shake down the Jones family for money;"

e.  On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist;"

f.  On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt;

g.  In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist;"

h.  In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas;"

i.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money;

j.  In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal;"

k.  In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish;" and,

l.  In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based this statement about Plaintiff's "motives" upon the therapeutic letter written by Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist."

m.  

79.  The above statements were published by Defendants without privilege or authorization.

80.  Additionally, as described in more detail below, Defendants made the following false verifiable statement of fact with knowledge that the statements were false or with reckless disregard for their truth when communicating them:

a.  On March 31, 2022, Defendant Wilkinson, acting as spokesperson for Defendant Jones and Defendant Dallas Cowboys, was quoted in an ESPN article as reaffirming the allegation that Plaintiff was an "extortionist:" Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist." Defendant Wilkinson knew that this "dinner meeting" that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit.

b.  On March 31, 2022, in an interview with ESPN, Defendant Wilkinson and Defendant Jack, on behalf of Defendant Jones and Defendant Dallas Cowboys, accused Plaintiff of being an "extortionist" and portrayed Plaintiff as attempting to "shakedown" Defendant Jones. Defendant Jack provided an affidavit to ESPN claiming that Plaintiff had demanded money from Defendant Jones, three to four years earlier, and that this meant Plaintiff's recent lawsuit was an extortion attempt or a "shakedown" of Defendant Jones. Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange or "shakedown" Defendant Jones relating to her 2022 lawsuit. Defendant Wilkinson knew that this "dinner meeting" that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a "shakedown" related to the 2022 Lawsuit.

c.  In this same published article with ESPN on March 31, 2022, Defendant Wilkinson also used this years earlier plea for attention by Plaintiff as support for the pleading, which accused Plaintiff of being an "extortionist." Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson falsely stated that the "dinner meeting with Jack supports the allegation" that Plaintiff is an "extortionist." Defendant Wilkinson knew that this "dinner meeting that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit.

d.  In the March 31, 2022 ESPN article, Wilkinson further stated that the statement by Jack regarding the plea made by Plaintiff years earlier "clearly demonstrates that money has always been the ultimate goal here. And sadly, this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas. Defendants knew that Plaintiff was not an extortionist and had not attempted to extort any money or anything of value in exchange for her 2022 lawsuit. Defendant Wilkinson knew that this "dinner meeting that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the 2022 lawsuit. Defendants were not even aware of the "dinner meeting" with Defendant Jack when Plaintiff filed her 2022 lawsuit. Defendants did not discover about the dinner meeting until after the lawsuit was filed and then knowing that the "dinner meeting" had nothing to do with the 2022 lawsuit knowingly falsely stated that the "dinner meeting" was a demand related to the 2022 Lawsuit. Defendants knew that Plaintiff's goal was not money in the 2022. Defendants were told by Plaintiff that Plaintiff was not seeking money but only a declaration of parentage from Defendant Jones. Defendants had been told by Plaintiff that in regard to her 2022

lawsuit that Plaintiff only sought a Declaration of Parentage from Defendant Jones and money was not even an issue. Despite being told this, Defendants dug up a "dinner meeting" with Defendant Jack where Plaintiff has sought paternal advice from Defendant Jack and mentioned that Defendant Jones' son had paid $20 Million dollars to his illegitimate son and turned this into a demand for $20 Million dollars on Defendant Jones in connection with Plaintiff seeking parentage in 2022. Defendants further used this "dinner meeting" from years earlier to portray Plaintiff as part of a concerted effort in 2022 with "others" to get money from Defendant Jones. Defendants knew that Plaintiff was not working in concert with any "others." Before the Defendants falsely stated that Plaintiff was working in concert with "others," Defendants had been told by Plaintiff that she was not working in concert with any "others."

e. In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated that Plaintiff's counsel had previously met with Defendant Jones' counsel and had demanded money. Defendants were aware that when they made this statement to ESPN that no demand for money had been made by Plaintiff's counsel. Prior to Defendants making this statement, Plaintiff's counsel had specifically informed Defendants that money was not even part of the discussion. The only matters discussed between Plaintiff's counsel and Defendant Jones' counsel for the Parentage Action was that Defendant Jones enter into a Declaration of Parentage. Defendant Wilkinson had been informed when he made the statement that money had never been demanded from Plaintiff's counsel which is why Defendants had to dig up the years earlier "dinner meeting" with Defendant Jack and state that the "dinner meeting" with Defendant Jack was a $20 Million dollar demand related to the 2022 lawsuit. Defendants knew this was false and there had never been a demand for money made by Plaintiff's counsel.

f. In the March 31, 2022 ESPN article, Defendant Wilkinson also falsely stated "[t]here was never a discussion about a nonmonetary resolution. Money was always part of the deal." Defendants were aware that when they made this statement to ESPN that no demand for money had been made by Plaintiff's counsel. Prior to Defendants making this statement, Plaintiff's counsel had specifically informed Defendants that money was not even part of the discussion. The only matters discussed between Plaintiff's counsel and Defendant Jones' counsel for the Parentage Action was that Defendant Jones enter into a Declaration of Parentage. Defendant Wilkinson had been informed when he made the statement that money had never been demanded from Plaintiff's counsel which is why Defendants had to dig up the years earlier "dinner meeting" with Defendant Jack and state that the "dinner meeting" with Defendant Jack was a $20 Million dollar demand related to the 2022 lawsuit. Defendants knew this was false and that the only discussions related to the 2022 lawsuit was the nonmonetary resolution of Defendant Jones entering into a Declaration of Parentage.

g. In the March 31, 2022 ESPN article, Defendant Wilkinson's further falsely stated "[n]ow they've changed their story yet again.  First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish." Defendants knew when

they made this statement that the 2022 lawsuit had never been about money. Defendants knew that the story had not changed. Defendants knew the "story" was still not about money. In fact, nothing had changed. Defendants just falsely made this statement to make people think something with Plaintiff's 2022 lawsuit had changed. Defendant uses the "dinner meeting" with Defendant Jack that occurred years earlier to falsely convey the impression to the public that Plaintiff's current action of seeking parentage was related that "dinner meeting." Defendants knew when making this statement that the 2022 lawsuit had no connection to the many years earlier "dinner meeting" with Defendant Jack. Defendants knew when they made this statement that Plaintiff had not demanded money or $20 Million dollars from Defendant Jones years earlier. Defendants knew when they made this statement that the "dinner meeting" had absolutely nothing to do with the 2022 lawsuit.   and,

h. In the March 31, 2022 ESPN article, Defendant Jack falsely stated that Plaintiff's motives in the lawsuit against Defendant Jones was money. Defendant Jack falsely stated that he got "a far different impression of Davis' motives." Defendant Jack based this statement about Plaintiff's "motives" upon the therapeutic letter written by Plaintiff years earlier at her therapist's recommendation to align Plaintiff as an "extortionist." When Defendant Jack made these false statements, Defendant Jack knew that the years earlier "dinner meeting" had nothing to do with the 2022 lawsuit and that Plaintiff's motive in her 2022 lawsuit was not money. Defendant Jack when making these statements knew that Plaintiff's motives at the time were to merely seek parentage and not money of any sort. Defendant Jack had been told that 2022 lawsuit was not about money but Plaintiff seeking her parentage from her father. Yet despite this knowledge, Defendant Jack still falsely stated that Plaintiff's motive in her 2022 lawsuit was money. Defendant Jack was instructed by Defendants to make this false statements so Defendants could falsely claim that Plaintiff's 2022 lawsuit was about money. Defendants prepared the statement by Defendant Jack to be presented to the press so they could create this false narrative that Plaintiff was just somebody trying to "shakedown" or "extort" money from Defendant Jones rather than just a daughter seeking parentage. Defendant knowing this was a false narrative about Plaintiff agreed to make these statements to the media to assist his long-time friend Defendant Jones' public image by attacking Plaintiff with what he knew were lies about Plaintiff

81.    Defendants' false statements were defamatory. The statements accuse directly and impute to Plaintiff the commission of crimes for which Plaintiff could be punished and imprisoned. Such statements are defamation *per se.* The statements accuse directly and impute to Plaintiff a lack of integrity and an unfitness to perform her duties in the political realm of her career, as well as other injurious and disparaging character implications. These statements prejudice Plaintiff in her career in politics where reputation is everything.

82.     The specific text of the statements communicated by Defendants are explicitly defamatory. The statements say she is an "extortionist" and a "shakedown artist," and that the statements communicate that meaning as well. The defamatory statements also imply defamation in both the gists of the entire publications and the specific sections of the publications with the defamatory statements.

83.     Plaintiff is not a public official or a public figure. However, should this Court construe Plaintiff as a limited public figure, the facts demonstrate Defendants acted with actual malice.[3]

84.     Defendants acted with actual malice and reckless disregard for the truth in saying and communicating these false, defamatory, factual statements:

    a.  Defendants Wilkinson, Trailrunner, and Jack abandoned all ethical and professional standards in their communications and publications of the defamatory statements at issue.

    b.  Acting in concert with Defendants Jones, Dallas Cowboys, and Jack, Defendants Wilkinson and Trailrunner conceived a storyline in direct contrast to the evidence and facts in Defendants' possession and then deliberately sought to make the evidence conform to the preconceived story by false portraying those facts and lying. Defendants intentionally created a verifiably false narrative they knew was false (*i.e.* Plaintiff's lawsuit was part of a concerted effort among Plaintiff and other to extort and shake down the Jones family for money; Plaintiff demanded $20 million in association with the First Lawsuit; etc.). Defendants Wilkinson and Trailrunner spoon-fed the defamatory narrative to a writer with ESPN, who then regurgitated the preconceived narrative throughout the country. Additionally, ███████████████████████████████████

---

[3] Plaintiff in no way concedes in any way that she is a public figure in any capacity by pleading and establishing actual malice. She maintains she is a private figure. However, for the purposes of this Amended Complaint, Plaintiff amends her pleadings to show facts establishing actual malice in compliance with the Court's Order.

███████████████████████████████████████

████████████████████████

c.  Defendants Wilkinson and Trailrunner possessed all communications between Davis and Jones, as well as copies of the pleadings and other relevant documents. The specific evidence possessed by Defendants prior to their defamatory statements establish not only that the statements issued by Defendants were false, but also that Defendants knew the statements were false. Defendants had a copy of the Petition from the First Lawsuit specifically stating the relief requested by Plaintiff. That relief was not a request or demand for money at all, and especially not a demand for $20 million dollars. Defendants consciously and intentionally ignored this known and available evidence and proceeded to defame Plaintiff with the preconceived narrative that she was an extortionist.

d.  Defendants intentionally created a verifiably false narrative that Defendants knew was false with ESPN that Plaintiff's lawsuit was part of a concerted effort among Plaintiff and others to extort and shake down the Jones family for money. To accomplish this goal Defendants falsely stated that Plaintiff had demanded $20 Million dollars related to her lawsuit when Defendants knew this was false. Additionally, Defendants knew that Plaintiff was not working in concert or in any way with any other people in seeking parentage from Defendant Jones.

e.  Defendants provided the Preservation Letter, the Plea to Jurisdiction, and the Affidavit of Donald Jack to the media, all of which made the knowingly false statements that Plaintiff was an extortionist, seeking money from the Jones family, and working in concert with others to extort money from the Jones Family. Defendants then furthered this false narrative by making knowingly false statements to ESPN to paint Plaintiff in a false light in the media as a shake down artist and extortionist. When Defendants made these

statements to ESPN and created this knowingly false defamatory image of Plaintiff, Defendants knew that Plaintiff was not seeking money from the Jones family or acting in concert with any others to shake down the Jones family.

f.  Not once did Defendant Jones or any of his agents ever deny that Plaintiff was Defendant Jones' daughter. Instead, Defendant Jones chose the avenue of calling his own daughter an "extortionist" merely to make his own public image less despicable by attempting to discredit Plaintiff's reputation and character in the public eye. These statements and documents were all provided to ESPN in an attempt to better Defendant Jones' PR image in the media at the expense of his own daughter.

g.  At all times, Defendants knew that the statements in the documents and the statements made by the Defendants in speaking to the media were false. Despite this knowledge, Defendants provided these documents to ESPN, made statements for the ESPN articles and actively intended to defame Plaintiff in the public. Defendants knew that the claimed Letter that Plaintiff had allegedly read to Defendant Jack years earlier had absolutely nothing to do with the First Lawsuit or Parentage Action. Yet Defendants falsely stated that the Letter showed money had always been the motivation behind the First Lawsuit and that a $20 Million shakedown attempt had been made in relation to the First Lawsuit. Defendants knew these statements were false, and Defendants knew there had not been any $20 Million shake down attempt in relationship to Plaintiff seeking Parentage in 2022.

h.  Surprisingly, Defendants worked with ESPN to the extent of even coordinating that the story portray Plaintiff has an extortionist and shake down artist demanding $20 Million dollars in association with her 2022 lawsuit. Defendants knew that it was false that Plaintiff had never demanded any money much less $20 Million dollars in relationship to her lawsuit. Yet with the knowledge that it was false that Plaintiff had demanded money

in relation to her Lawsuit set forth to provide ESPN the Plea to Jurisdiction, the Preservation Letter, the Jack Affidavit regarding a 2017 dinner with Plaintiff, and quotes that Plaintiff was currently shaking down the Jones' family all to create a false impression of Plaintiff's 2022 lawsuit that they knew had nothing to do with the 2017 writing to Defendant Jack wherein Plaintiff sought Defendant Jack's advice on how to address her relationship with her Father, Defendant Jones.

i.  Upon information and belief, Defendants discussed among themselves that they knew that the statements they were making to ESPN were false and that Defendants were creating a false narrative with the March 31, 2022, article and decided to make the statements to ESPN despite knowing they were false.

j.  Defendants had a contentious relationship with Plaintiff, even before she officially filed the First Lawsuit. All Defendants had a strong motive to lie about Davis as well as a motive to fabricate a narrative to negatively portray and defame her.

k.  The author of the ESPN article (Van Natta) and Defendant Wilkinson worked closely together to ensure Defendant Wilkinson's promoted false narrative was portrayed.

l.  The veracity of the statements was not Defendants Wilkinson or Trailrunner's concern. Rather, the story line Defendants conceived in advance to discredit Plaintiff to the media was the only motivation Defendants considered.

m.  because he knew the statements he made were false or, at a minimum, he entertained serious doubts as to the truth of what he was saying.

n.  Defendant Wilkinson and the other Defendants had copies of all pleadings. They had copies of all communications between Davis and Defendant Jones (as evidenced by Defendants leaking those documents to the press). Nowhere in those communications or court documents does it state Plaintiff was seeking any money at all, much less $20 million. Defendants ignored all of the actual facts to portray to the press that Plaintiff was a "shakedown artist" and an "extortionist." Again, at a minimum, Defendant Wilkinson and the other Defendants had enough facts such that they would entertain serious doubts as to the truth of their statements.

o.  Defendants started by using a court pleading to falsely plant this image of Plaintiff as an "extortionist" who was conspiring with others in multiple extortion attempts. Then, Defendants provided this defamatory and frivolous pleading to the press. Next Defendants adopted this defamatory pleading in a national press interview. Defendants knowingly and falsely stated that Plaintiff's motive for the lawsuit in 2022 was money and referred to Plaintiff as being part of a "shake down" and conspiring with other alleged bad and illegal actors.

p.  As shown above, Defendants, in making the false and defamatory statements acted not only negligently but also acted with malice, *i.e.* Defendants acted with the knowledge that their statements were false at the time and knowingly made all the false statements about Plaintiff despite knowing such statements were false or, at a minimum, acted with reckless disregard for whether the statements were true or false.

85.  As a direct result of Defendants' defamatory statements, Plaintiff's reputation was injured and she was exposed to public hatred, contempt, and ridicule. The statements also exposed Plaintiff to financial injury by impeaching Plaintiff's honesty, integrity, virtue, and reputation.

## DAMAGES

86.     Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

87.     As a direct and proximate result of Defendants' false and defamatory statements published, Plaintiff has endured shame, embarrassment, humiliation, and mental pain and anguish. Additionally, Plaintiff has and will in the future be seriously injured in her business reputation, good name, and standing in the community, and will be exposed to the hatred, contempt, and ridicule of the public in general as well as of her business associates, clients, friends, and relatives. Consequently, Plaintiff seeks actual and special damages in a sum within the jurisdictional limits of this Court.

88.     Plaintiff is in the occupation of politics. Her career path began in college where she interned in Washington D.C. Plaintiff served in the Whitehouse for fourteen months which required a high security clearance. Plaintiff currently is a congressional aide. Defendants public attack on Plaintiff as an "extortionist" and "shake down artist" has injured her reputation not only in the public arena of politics but has damaged her ability to work in the future in her occupation.

89.     By their false statements of fact and character assignation, Defendants have been successful in their smear campaign to destroy the reputation of Plaintiff. The first thing any prospective employer does today is Google search of a prospective employee. The Google search "Alexandra Davis extortionist" results in over 4,000,000 hits alone. The Google search "Alexandra Davis shakedown artist" results in over 2,000,000 results. This does not take into account the other search engines, numerous print publications of the same nature, nor television broadcasts. Many of the referenced articles resulting from these searches display a headline in some form or another referring to Plaintiff to be claimed by Defendant Jones as extorting him.

90.     Defendant Jones is probably the most well-known, most powerful team owner in the NFL. He certainly is the most public. The Dallas Cowboys franchise is estimated to be perhaps the most

valuable sports franchise in the world, and certainly in the NFL. Defendant Jones has been lauded by many experts as a marketing genius, and his vast fortune and power attests to that. The Dallas Cowboys have a marketing division that is headed by Defendant Jones' namesake son.

91.    Defendants Jones and Dallas Cowboys publicity profile and associations extend gigantically to the corporate world and include corporate and charitable partnerships. Defendant Jones' influence also extends into politics, Plaintiff's chosen career. Defendant Jones is a huge benefactor and contributor to mostly Republican candidates nationally and in Texas. In November 2022, Defendant Jones was reported to have made $900,000 in "last minute" donation to the top three Republican candidates in Texas alone. The effects of Defendant Jones characterizing Plaintiff as an "extortionist", a "shakedown artist" and someone who is "conspiring" with others who he claims are extorting him is permanently and indelibly deleterious to Plaintiff's reputation in her chosen occupation in the political arena.

92.     Plaintiff's current employer has received defamatory communications referring to Plaintiff as an "extortionist." For example, as recent as December 24, 2022, Plaintiff's employer received the following message on Twitter: "You may want to get rid of your congressional aid Alexandra Davis because extortion seems to be her thing." This is just one example of the obvious damage to Plaintiff's career in the political arena where public opinion dictates your employment.

**PUNITIVE DAMAGES**

93.    Plaintiff incorporates the above paragraphs setting forth the factual basis for Plaintiff's causes of action and hereby incorporates such as if fully set forth herein.

94.    The above-described defamatory statements were published maliciously by the Defendants. Defendants specifically intended to injure Plaintiff with their actions. As shown above, Defendants either knew the statements about Plaintiff were false, or Defendants recklessly disregarded the truth of the statements. At a minimum, Defendants entertained serious doubts about the truth of their

statements.  In fact, the false statements were communicated with such utter recklessness as to indicate a conscious indifference to the rights, safety, or welfare of Plaintiff with actual, subjective awareness that their conduct involved an extreme degree of risk of harm to Plaintiff.  Thus, the award of exemplary damages in an amount in excess of the minimal jurisdictional limits of this court is justified.

WHEREFORE, upon final trial Plaintiff requests the following relief:

1.      Actual damages;

2.      Special damages;

2.      Punitive damages;

3.      Costs of suit; and

4.      Any other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**BERGMANGRAY LLP**

*/s/ Jay K. Gray*_____
Jay K. Gray
State Bar No. 08324050
Andrew A. Bergman
State Bar No. 02196300
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444
214-599-0602 [fax]
gray@bergmangray.com
bergman@bergmangray.com
**ATTORNEYS FOR PLAINTIFF**

**KEIL LAW FIRM, PLLC**
406 Walnut Street
Texarkana, Arkansas 71854
Telephone: (870) 772-4113
Facsimile: (870) 773-2967

BY: */s/ Matt Keil*
Matt Keil, TX Bar No. 11181750
mkeil@kglawfirm.com
Erin Keil, TX Bar No. 24120462
ekeil@kglawfirm.com
Hailee Amox, TX Bar No. 24085176
hamox@kglawfirm.com
**ATTORNEYS FOR PLAINTIFF**