**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| ALEXANDRA DAVIS, <br> *Plaintiff,* <br><br> vs. <br><br> JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC, and DONALD JACK, JR. <br> *Defendants.* | CIVIL ACTION No. 5:23-cv-00032-RWS <br><br> JURY TRIAL DEMANDED <br><br> ORAL HEARING REQUESTED |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT AND BRIEF IN SUPPORT**

Respectfully submitted by:

**FOLSOM ADR PLLC**

David Folsom
State Bar No. 07210800
david@folsomadr.com
6002-B Summerfield Dr.
Texarkana, TX 75503
(903) 277-7303

**JACKSON WALKER LLP**

Charles L. Babcock
State Bar No. 01479500
cbabcock@jw.com
Nancy W. Hamilton
State Bar No. 11587925
nhamilton@jw.com
1401 McKinney Street
Suite 1900
Houston, TX 77010
(713) 752-4210
(713) 752-4221 - Fax

David T. Moran
State Bar No. 14419400
dmoran@jw.com
Edwin Buffmire
State Bar No. 24078283
ebuffmire@jw.com
Cody Martinez
State Bar No. 24102146
cmartinez@jw.com
2323 Ross Avenue
Suite 600
Dallas, TX 75201
(214) 953-6000
(214) 953-5822 – Fax

*Attorneys for Defendants Jerral W. Jones, Dallas Cowboys Football Club, Ltd., James Wilkinson,
TrailRunner International, LLC, and Donald Jack, Jr.*

## TABLE OF CONTENTS

I.      SUMMARY ...................................................................................................1

II.     UNDISPUTED FACTS .................................................................................3

III.    LEGAL STANDARD .....................................................................................9

IV.     ARGUMENT .................................................................................................9

      A.      Because Plaintiff relies upon her communications to Jones to allege falsity
         and actual malice, those communications are central to her defamation
         claim and may thus be considered here ..................................................11

      B.      Plaintiff fails to plausibly allege facts that Defendants published any
         complained-of statement in the Second ESPN Article with constitutional
         actual malice ..........................................................................................12

      C.      The complained-of statements are not actionable and are true or
         substantially true. ..................................................................................16

      D.      The complained-of statements are protected opinion. ...........................21

V.      CONCLUSION............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021) ....................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................9, 16

*Berisha v. Lawson*,
    973 F.3d 1304 (11th Cir. 2020) ...........................................................................15

*Corsi v. Infowars, LLC*,
    No. A-20-CV-298-LY, 2021 WL 2115272 (W.D. Tex. May 25, 2021) ...............16

*Dougherty v. Capitol Cities Commc'ns, Inc.*,
    631 F. Supp. 1566 (E.D. Mich. 1986)...................................................................18

*Frakes v. Crete Carrier Corp.*,
    579 F.3d 426 (5th Cir. 2009) ...............................................................................14

*Green v. CBS Inc.*,
    286 F.3d 281 (5th Cir. 2002) ...........................................................................19, 20

*Immanuel v. Cable News Network, Inc.*,
    618 F. Supp. 3d 557 (S.D. Tex. 2022) .............................................................12, 13

*Immuno v. Moor-Jankowski*,
    497 U.S. 1021 (1990)............................................................................................23

*Liberty Lobby, Inc. v. Anderson*,
    746 F.2d 1563 (D.C. Cir. 1984)............................................................................20

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ............................................................................9, 11

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991).........................................................................................19, 20

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) ..................................................................21

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)...........................................................................23

*Moore v. Cecil*,
488 F. Supp. 3d 1144 (N.D. Ala. 2020)...........................................11

*Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*,
759 F. App'x 280 (5th Cir. 2019).....................................................15

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).........................................................................16

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020), *aff'd*, 850 F. App'x 827 (3d Cir. 2021).......................12

*Patton v. Fujitsu Tech. Sols., Inc.*,
No. 3:02-CV-1848-G, 2002 WL 31498996 (N.D. Tex. Nov. 7, 2002)...................................11

*Price v. Viking Penguin, Inc.*,
881 F.2d 1426 (8th Cir. 1989)..........................................................23

*St. Amant v. Thompson*,
390 U.S. 727 (1968).........................................................................12

*Tah v. Glob. Witness Publ'g, Inc.*,
991 F.3d 231 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021)...............................14, 16

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019)................................................... *passim*

*Wealtr Invs., Inc. v. WMC REI LLC*,
No. 4:19-CV-00111, 2019 WL 1984131 (E.D. Tex. Apr. 17, 2019)....................................11

*Wheeler v. Twenty-First Century Fox*,
322 F. Supp. 3d 445 (S.D.N.Y. 2018)...............................................13

*Wyoming Corporate Servs. v. CNBC, LLC*,
32 F. Supp. 3d 1177 (D. Wyo. 2014).................................................18

**State Cases**

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018)..........................................................22, 23

*Forbes Inc. v. Granada Biosciences, Inc.*,
124 S.W.3d 167 (Tex. 2003)..............................................................15

*Freedom Newspapers of Texas v. Cantu*,
168 S.W.3d 847 (Tex. 2005)..............................................................15

*Lilith Fund for Reprod. Equity v. Dickson*,
    662 S.W.3d 355 (Tex. 2023)...................................................................21

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*,
    416 S.W.3d 71 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).....................................23

*Scripps NP Operating, LLC v. Carter*,
    573 S.W.3d 781 (Tex. 2019)...................................................................19

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000)...................................................................14

*WFAA-TV, Inc. v. McLemore*,
    978 S.W.2d 568 (Tex. 1998)...................................................................18

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Jerral W. Jones, Dallas Cowboys Football Club, Ltd., James Wilkinson, TrailRunner International, LLC, and Donald Jack, Jr. move to dismiss Plaintiff Alexandra Davis' First Amended Complaint for failure to state a claim, and respectfully show:

## I.     SUMMARY

Plaintiff's demands for money and the "communications" she relies upon in her Amended Complaint doom her defamation claims, which cannot survive dismissal in any event because she wholly fails to allege facts sufficient to plead actual malice. Indeed, Plaintiff could never plausibly allege any Defendant subjectively believed comments about Plaintiff wanting money were false because Plaintiff repeatedly sent messages to Defendant Jones (through Defendant Jack), like the following asking for a portion of Jones's wealth:

feel towards you as a friend. This is a discussion about my future and what needs to happen. I need this dinner to be a response about what I said last year or there is no reason for me to come. I don't want to feel like I am being screwed by him. What I am asking is for my rightful position from a portion of my biological fathers wealth.
If you are prepared, look forward to seeing you at dinner. Please come ready

As this Court concluded in granting Defendants' Motion to Dismiss Plaintiff's Original Complaint, Plaintiff demanded money from Jones in 2017: "[I]t has been established that Plaintiff *did* ask for money in the [November 2017] Letter she gave to Jack."[1] Now, only one claim remains regarding a March 31, 2022 ESPN article (the "Second ESPN Article"). This claim was nearly dismissed with prejudice; indeed, the Court "struggle[d] to find" that any statement in the Second ESPN Article was "substantially false or defamatory."[2] Nonetheless, because Plaintiff alleged that the 2017 Letter was a one-off "plea by a shunned daughter,"[3] the Court credited these allegations and reasoned that the gist of the Second ESPN Article—that "Plaintiff is someone who continues

---

[1] Dkt. 50 at 28 (emphasis added). All cites are to ECF page numbers, unless stated otherwise.
[2] Dkt. 50 at 28.
[3] *See, e.g.*, Dkt. 1 at 44.

1

to ask Defendants for money"—could paint a defamatory picture.[4] This led the Court to consider whether Plaintiff was a limited-purpose public figure and, after concluding that she was, allowed Plaintiff to replead "actual malice," a necessary element of a public figure libel case.[5]

To do so, Plaintiff now alleges that "communications between [Plaintiff] and Jones" in Defendants' possession prove that Defendants knew that Plaintiff never asked for money after 2017.[6] But those years-worth of Plaintiff's communications to Jones's lawyer (Jack)—which Plaintiff alleges are central to the essential element of "actual malice"—are attached hereto and show precisely the opposite. These communications indisputably demonstrate that the 2017 Letter was not an isolated event; rather, Plaintiff continued to demand money year after year. Thus, far from showing actual malice, the communications demonstrate that the statements in Second ESPN Article were true and that Defendants could not have made such statements knowledge of falsity or serious doubt about the truth. For these reasons alone, Plaintiff's Amended Complaint should be dismissed.

For similar reasons, Plaintiff's Amended Complaint also should be dismissed because Plaintiff fails to establish that any complained-of statement is materially false. To the contrary, Plaintiff's numerous communications—which are referenced in her Amended Complaint and properly considered here—show Plaintiff repeatedly demanding money from Jones in 2017, 2018, 2019, 2020, and 2021. Finally, Plaintiff's claim is also subject to dismissal because the complained-of statements concern the speakers' (Wilkinson's and Jack's) subjective impression

---

[4] Dkt. 50 at 27–30.
[5] Dkt. 50 at 31–34.
[6] *See, e.g.*, Amended Compl. at ¶ 73(n) ("[Defendants] had copies of all communications between Davis and Defendant Jones . . . . Nowhere in those communications . . . does it state Plaintiff was seeking any money at all.").

of Plaintiff's motives in light of the undisputed facts, and thus constitute nonactionable opinions. For this independent reason as well, Plaintiff's claims should be dismissed with prejudice.

## II.  UNDISPUTED FACTS

Plaintiff characterizes the complained-of statements in the Second ESPN Article as false and defamatory because they "suggest Plaintiff is someone who continues to ask Defendants for money."[7] The Court admittedly "struggle[d]" to see how these statements were substantially false or defamatory. Nonetheless, by taking Plaintiff at her word at the Rule 12 stage, the Court noted that such statements "could paint a defamatory picture" based on Plaintiff's allegation that she never demanded money from Jones after November 2017.[8]

But Plaintiff's allegation that her monetary demands thereafter ceased should be withdrawn (and cannot ward off dismissal) because it is demonstrably false: Plaintiff sent no fewer than eleven letters and text messages to Jones, through Jack, over a five-year period leading up to her initiation of litigation against Jones.[9] As detailed below, those communications may be considered at the motion-to-dismiss stage.[10]

In truth, the 2017 Letter was merely Plaintiff's opening salvo in a consistent, years-long campaign by Plaintiff to be paid substantial additional money by Jones.[11] For example, on September 27, 2018—nearly one year after the 2017 Letter—Plaintiff sought another dinner with Jones's lawyer, Jack, to "revisit" the 2017 conversation in which she requested money:[12]

---

[7] Dkt. 50 at 29.

[8] Dkt. 50 at 28; *see id.* at 30 ("Taking Plaintiff's allegations as true, and considering the evidence from Defendants that are central to her claims, Plaintiff asked for money in 2017, but a $20 million demand was not made, and such a demand was not made in 2021 when Plaintiff initiated the controversy by sending a letter seeking cooperation in establishing parentage to Defendants' counsel.").

[9] *See* Ex. 2A.

[10] *See infra* Part IV.A; *see also* Dkt. 50 at 5–6.

[11] A true and correct copy of the Letter is attached hereto as Exhibit 1A. The Court previously held (and Plaintiff admitted) the Letter may be considered at the motion-to-dismiss stage. *See* Dkt. 50 at 6; Dkt. 42 at 52:12–24.

[12] Ex. 2A, App. 007.

3

> **Alexandra " Alex" Davis** <+█████>      9/27/2018, 9:13 AM
> Hi Don, I was thinking maybe we could have dinner soon. My mom and I can come there or you can come here. I would like to revisit our conversation from last year. I know it has been a rough year, I just don't want it to get pushed under the rug

The next month, on October 19, 2018, Plaintiff specified in great detail her monetary expectations for the meeting: she wanted Jack, on Jones's behalf, "to talk to [her] about" her November 2017 demand she "asked for last year;" she was "expecting" Jack to come to the meeting "with an offer that [Jones] is willing to do;" she needed the meeting "to be a response about what [she] said last year;" she reiterated that "[w]hat I am asking is for my rightful position from a portion of [Jones's] wealth;" and, finally, she instructed Jack to "[p]lease come ready:"[13]

> **Alexandra " Alex" Davis** <+█████>      10/19/2018, 10:48 AM
> Hi, look forward to seeing you tomorrow. I have been thinking about this dinner we are going to have and I have so many different feelings but I want to focus on what is important. I hope you are coming to dinner prepared to talk to me about what I asked for last year. I feel an urgency, I want to take care of things while everyone is healthy and before there is a crisis to take care of. I am coming ready, I am expecting you to come with an offer that my biological dad is willing to do. You have always been an amazing guy, a buffer, between us and him. This is not, in anyway, about how I feel towards you as a friend. This is a discussion about my future and what needs to happen. I need this dinner to be a response about what I said last year or there is no reason for me to come. I don't want to feel like I am being screwed by him. What I am asking is for my rightful position from a portion of my biological fathers wealth.
> If you are prepared, look forward to seeing you at dinner. Please come ready

In short, Plaintiff made an unmistakable demand for "a portion" of Jones's "wealth" that she had earlier quantified at $5 billion in the 2017 Letter.[14]

Plaintiff persisted shortly thereafter on December 20, 2018 by questioning Jack if he had talked with Jones "about what I have asked for" and "when it is going to happen":[15]

> **Alexandra " Alex" Davis** <+█████>      12/20/2018, 4:06 PM
> Secondly, I would just like an update about if you have talked to him about what I have asked for, what he has said, and when it is going to happen.

[13] *Id.*, App. 009.
[14] *See* Ex. 1A, App. 003.
[15] Ex. 2A, App. 011.

4

Six months later, in June 2019, Plaintiff again instructed Jack to speak with Jones; she acknowledged "he's done a lot to help us, but I think he could do more like we've talked about"; and she sought a "permanent" monetary resolution "once and for all":[16]



The next month, on July 2, 2019, Plaintiff again asked to "settle what is going on about the money I asked for from [Jones]" and stated that she "would really like to get this money thing figured out" and that Jones was "more than capable" of alleviating her concerns:[17]



The repeated requests for money continued thereafter. On December 30, 2019, Plaintiff again texted Jack about "getting us some [m]oney" and referred back to the 2017 Letter:[18]

---

[16] *Id.*, App. 012.
[17] *Id.*, App. 014.
[18] *Id.*, App. 017.

| Alexandra " Alex" Davis <+⬛⬛⬛> | 12/30/2019, 7:43 AM |
|---|---|
| Hey don! Just wanted to text you about you told my mom Last week about getting us some Money? I'm just curious if it is what we talked about 2 years ago? | |

In November 2020, Plaintiff re-urged her requests for money that she had "been talking about for the past couple of years":[19]

| Alexandra " Alex" Davis <+⬛⬛⬛> | 11/24/2020, 3:58 PM |
|---|---|
| Hey don! My mom just told me the news about the house, what a bummer! But can you and I talk tomorrow more about my situation and what we have been talking about for the past couple of years? | |

And two months later, in January 2021, Plaintiff once again raised "the letter I wrote to [Jones] that I gave to you":[20]

| Alexandra " Alex" Davis <+⬛⬛⬛> | 1/23/2021, 8:08 PM |
|---|---|
| I've been doing well. The new job has been a little hard but I'm adjusting. I've been thinking about the letter I wrote to my dad that I gave to you. I was hoping that you could get the letter to him and facilitate some form of conversation | |

And less than two months later, in March 2021, Plaintiff continued to press the monetary discussion:[21]

| Alexandra " Alex" Davis <+⬛⬛⬛> | 3/12/2021, 10:32 AM |
|---|---|
| Hey don! Would love to talk today when you have time | |
| Alexandra " Alex" Davis <+⬛⬛⬛> | 3/12/2021, 10:32 AM |
| Just about everything more on my end with what is happening | |

Approximately ten months later, Plaintiff's counsel sent an email to Jones's counsel regarding a "sensitive and personal" matter, wherein he attached a demand letter addressed to Jones.[22] In the letter, Plaintiff's counsel "offer[ed] to make a deal [with Jones] to 'participate in genetic determination' to keep the dispute confidential."[23] Notably, the letter neither disclaimed

---

[19] *Id.*, App. 019.
[20] *Id.*, App. 021.
[21] *Id.*, App. 023.
[22] Amended Compl. at ¶ 25. Although the Amended Complaint references the letter and refers to it as being attached as Exhibit 1, *see id.* at ¶ 26, it appears Plaintiff forgot to attach the letter. Defendants have attached a true and correct copy of the letter to this motion at Exhibit 12.
[23] Dkt. 50 at 18.

6

Plaintiff's previous demands for money (including those cited above), nor affirmatively renounced any interest in money.[24]

Plaintiff's counsel then followed up with Jones's counsel and sent "a copy of the lawsuit that Plaintiff intended to file if [Jones] would not agree that Plaintiff was not bound by the Settlement Documents."[25] And when that additional demand also went unanswered, Plaintiff, on March 3, 2022, filed her first state court lawsuit against Jones explicitly seeking to affirm her right to receive future payments from Jones under their settlement agreement and to recover attorneys' fees (the "First Davis Lawsuit").[26] Plaintiff's public suit also breached her confidentiality obligations and sought relief that the Settlement Agreement had explicitly barred. Jones's lawyers countered the First Davis Lawsuit by filing a plea to the jurisdiction (the "Plea").[27] Shortly thereafter, before the Plea was ruled upon, Plaintiff voluntarily dismissed the First Davis Lawsuit.[28]

During the First Davis Lawsuit, a series of articles concerning the dispute were published by an ESPN reporter on March 30, 2022 and March 31, 2022 (the "First ESPN Article" and the "Second ESPN Article," respectively).[29]

After Plaintiff dismissed the First Davis Lawsuit, she immediately filed a second public suit against Jones in Dallas County Family District Court seeking to "adjudicate parentage" and recover, among other relief, "attorneys' fees" (the "Second Davis Lawsuit").[30] During those

---

[24] *See* Ex. 12, App. 076.

[25] Amended Compl. at ¶ 29.

[26] *See* Ex. 3, App. 030 at ¶ 21 (requesting that the court prevent "the trusts from being terminated by Defendant Jones," which the Settlement Agreement provided Jones with a right to seek); *id.*, App. 030 at ¶ 24 ("Plaintiff seeks a declaration that she is not bound by the confidentiality provisions of the Settlement Agreement . . . with no legally adverse consequences including Defendant Jones' ability to terminate the trusts."); *id.*, App. 031 at ¶ 29 (seeking attorneys' fees and costs of suit).

[27] *See* Ex. 4, App. 035.

[28] *See* Ex. 5, App. 046; Ex. 6, App. 051.

[29] *See* Ex. 10, App. 071; Ex. 11, App. 073.

[30] *See* Ex. 7, App. 053–55.

proceedings, Jones moved for summary judgment supported by an attached affidavit by Jack describing in detail the millions in payments he made to Plaintiff on Jones's behalf over the years and the Letter (the "Jack Affidavit").[31]

Around this same time, Jones's daughter was in the process of divorcing her now ex-husband, Shy Anderson.[32] Given the timing, Plaintiff's reference to the divorce in the First Davis Lawsuit, the disclosure of the confidential Settlement Agreement, Plaintiff's mother providing a sworn videotaped statement, and Plaintiff's initiation of litigation, Jones's attorneys sent a preservation letter to Mr. Anderson's attorney citing an investigation into potential claims against "[Mr. Anderson] and others for conversion (extortion) and other torts" and requesting that Mr. Anderson preserve all communications with several people, including Plaintiff (the "Preservation Letter").[33]

In March 2023, Plaintiff filed this lawsuit for defamation based on three written publications (the Plea, the Jack Affidavit, and the Preservation Letter) and oral statements attributed to Jack and Wilkinson in the First and Second ESPN Articles.[34] On October 31, 2023, the Court dismissed Plaintiff's claims in their entirety and held that the Plea, the Jack Affidavit, the Preservation Letter, and the First ESPN Article were not defamatory.[35] Despite "struggl[ing]" to do so, the Court found the statements in the Second ESPN Article could paint a defamatory picture.[36] But because Plaintiff—a limited-purpose public figure—failed to "sufficiently plead actual malice," the Court dismissed her claim and granted her leave to replead the requisite fault

---

[31] *See* Ex. 9, App. 065.
[32] Amended Compl. at ¶ 39.
[33] *See* Ex. 8, App. 063–64.
[34] *See* Dkt. 1.
[35] *See* Dkt. 50.
[36] *Id.* at 28–30.

standard as to the statements in the article.[37] On November 20, 2023, Plaintiff filed her Amended Complaint.[38]

## III.    LEGAL STANDARD

The Court's previous Order granting Defendants' motion to dismiss Plaintiff's Original Complaint set forth the applicable standard of review for Rule 12(b)(6) motions:

> Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal where a plaintiff fails "to state a claim upon which relief may be granted." FED R. CIV. P. 12(b)(6). For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).
>
> * * *
>
> The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219. The complaint need not contain detailed factual allegations, but plaintiff must plead sufficient factual allegations to show that they are plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–570 (2007) ["*Twombly*"] ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) ["*Iqbal*"] (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 673 (quoting *Twombly*, 550 U.S. at 556).[39]

Critically, as the Court further recognized, a court reviewing a Rule 12(b)(6) motion "may consider the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[40]

## IV.    ARGUMENT

Despite having been granted a child's portion of a second bite at the apple, Plaintiff's Amended Complaint fares no better than her Original Complaint. Sifting through the single-spaced

---

[37] *Id.* at 33–34.
[38] *Id.* at 35; *see* Dkt. 52.
[39] Dkt. 50 at 4–5.
[40] Dkt. 50 at 4 (citing *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

morass of irrelevant allegations related to claims the Court already dismissed with prejudice,[41] reveals a single (although asserted under both a statute and the common law) flimsy defamation claim premised on two allegedly false and defamatory statements made *only* by Jack and Wilkinson in the Second ESPN Article. For at least three reasons, this claim fails.

First, Plaintiff fails to plausibly plead facts that any Defendant made any statement in the Second ESPN Article with constitutional actual malice. Instead, Plaintiff's allegations are replete with legal conclusions, formulaic recitations, and actual malice buzzwords that are insufficient to survive dismissal.[42] Second, the supposed factual predicate on which Plaintiffs claim is based (*i.e.*, that Plaintiff did not demand money from Jones after the November 2017 Letter) is conclusively negated by Plaintiff's own writings. Thus, a person of ordinary intelligence would perceive Jack's and Wilkinson's statements (which themselves are non-actionable rhetoric, opinion, or hyperbole) in the Second ESPN Article as not being materially false or defamatory. Third, the complained-of statements merely relay Wilkinson's subjective impression of Plaintiff's motives (based upon disclosed facts) and are nonactionable opinion.

Because Plaintiff fails to state a claim for relief and the only remaining defamation claim should be dismissed with prejudice.

---

[41] Despite the Court's Order that Plaintiff's defamation claims based on the Plea, the Jack Affidavit, the Preservation Letter, and the First ESPN Article were dismissed with prejudice, her Amended Complaint purports to revive these claims. *See, e.g.*, Amended Compl. at ¶¶ 68(a)–(d), ¶ 77(a)–(d) (asserting claim based, in part, on statements made in the Plea, Preservation Letter, Jack Affidavit, and First ESPN Article). Defendants assume these claims remain for appellate purposes only and are not being pursued contrary to the Court's Order. Defendants incorporate by reference and reassert the grounds for dismissal contained in their original motion to dismiss and supporting appendix, Dkts. 12; 12-1–44,  and add that "actual malice" is not plausibly shown. *See Zamora-Orduna Realty Grp., LLC v. BBVA USA*, No. SA-20-CV-0579-FB, 2021 WL 4338955, at *1 (W.D. Tex. Mar. 31, 2021) (permitting defendant to incorporate by reference into its motion to dismiss plaintiff's amended complaint arguments made in its motion to dismiss plaintiff's original complaint).

[42] *See* Dkt. 50 at 33–34.

**A.** **Plaintiff relies upon her communications to Jones to allege falsity and actual malice, so those communications are central to her claim and properly considered here.**

Plaintiff's remaining claim is based on her allegation that regardless of her 2017 demand, such a demand was not made in 2022 when she sent her letter to Jones's attorney.[43] Thus, Plaintiff alleges, the gist of the Second ESPN Article—that "Plaintiff is someone who continues to ask Defendants for money"—is false and defamatory.[44]

Specifically, Plaintiff relies on communication with Jones (including his agents) in her attempts to allege the requisite "knowledge of falsity" for the actual malice element. She alleges that Defendants "*possessed all communications between [Plaintiff] and Jones*"[45] and that "*[n]owhere in those communications* . . . does it state Plaintiff was seeking any money at all."[46] Plaintiff further alleges that Defendants "consciously and intentionally ignored" her communications to falsely suggest she wanted money.[47]

As this Court held, a court assessing a motion to dismiss may consider "any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint."[48] These pre-requisites are easily satisfied here. First, the communications are attached to this motion.[49] Second, they are central to Plaintiff's defamation claim. Indeed, in Plaintiff's futile efforts to allege falsity and actual malice, she references and relies  upon these communications in

---

[43] *See id.* at 30.
[44] *See id.* at 29.
[45] Amended Compl. at ¶¶  73(c), 82(c) (emphasis added).
[46] *Id.* at ¶¶ 73(n), 82(n) (emphasis added).
[47] *Id.* at ¶¶ 73(c), 82(c); *see also id.* at ¶¶ 73(n), 82(n).
[48] Dkt. 50 at 6 (citing *Lone Star*, 594 F.3d at 387); *see also Wealtr Invs., Inc. v. WMC REI LLC*, No. 4:19-CV-00111, 2019 WL 1984131, at *2 (E.D. Tex. Apr. 17, 2019), *adopted by*, 2019 WL 1983247 (E.D. Tex. May 3, 2019) ("[W]hen a plaintiff does not attach a pertinent document to the complaint and the document contradicts the complaint, a defendant may introduce the exhibit as part of his motion attacking the pleading.").
[49] *See* Ex. 2A, App. 006–23.

her Amended Complaint.[50] As a result, the Court may properly consider those communications in connection with this Motion.[51]

**B.    Plaintiff fails to plausibly allege facts that Defendants published any complained-of statement in the Second ESPN Article with constitutional actual malice.**

The Court has already concluded that pleading and proving actual malice is an essential element of a defamation claim involving a limited-purpose public figure, like Plaintiff.[52] Actual malice means "that the statement was made with knowledge of its falsity or with reckless disregard for its truth."[53] "The 'constitutional focus' of [actual malice] is 'on the defendant's attitude toward the truth, not his attitude towards the plaintiff.'"[54] "In the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task. And it is one that regularly results in early dismissal of an action."[55] To survive a motion to dismiss, a plaintiff must "allege clear and specific evidence of actual malice,"[56] as opposed to conclusory assertions without "the existence or contents of specific discussions, correspondence, or supporting documentation."[57]

Accordingly, Plaintiff was required to allege clear and specific facts showing that when Jack and Wilkinson made the statements in the Second ESPN Article concerning Plaintiff's

---

[50] *See* Amended Compl. at ¶¶ 73(c), 73(n), 82(c), 82(n).

[51] *Lone Star*, 594 F.3d at 387; *see also Patton v. Fujitsu Tech. Sols., Inc.*, No. 3:02-CV-1848-G, 2002 WL 31498996, at *4 (N.D. Tex. Nov. 7, 2002) (holding that documents may be referred to "directly or by implication"); *see, e.g.*, *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1150 (N.D. Ala. 2020) (finding that documents relating to plaintiff's efforts to prove actual malice were "central to his [defamation] claim" and thus considering said documents in resolving motion to dismiss).

[52] *See* Dkt. 50 at 12.

[53] *Id.* at 12–13 (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019)); *see also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (a defendant has acted recklessly if "the defendant in fact entertained serious doubts as to the truth of his publication" or acted "with a high degree of awareness of . . . probable falsity").

[54] Dkt. 50 at 12 (quoting *Walker*, 938 F.3d at 744).

[55] *See Pace v. Baker-White*, 432 F. Supp. 3d 495, 513 (E.D. Pa. 2020) (collecting cases), *aff'd*, 850 F. App'x 827 (3d Cir. 2021).

[56] *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 566 (S.D. Tex. 2022) (citing *Walker*, 938 F.3d at 744).

[57] *Walker*, 938 F.3d at 745.

demands for money, they knew that Plaintiff had not demanded money. Plaintiff has not—and cannot—come close to making this showing.

### 1.    Plaintiff's allegations are irreconcilable with her own statements.

To begin with, Plaintiff's allegations of actual malice are flatly refuted by her own written communications, and thus may be disregarded.[58] In an attempt to allege knowledge of falsity, Plaintiff generally alleges that "[n]owhere in [her] communications . . . does it state Plaintiff was seeking any money at all."[59] But Defendants' alleged failure to investigate these communications—which is all Plaintiff's allegations of actual malice amount to—does not "constitute[] actual malice" under federal Constitutional law.[60] Her claims can be dismissed on that basis alone.

More importantly, Plaintiff's communications actually refute her contention that she never asked for money after November 2017. As extensively detailed in Part II above, those communications show that in the years after the November 2017 Letter leading up to suing Jones, Plaintiff repeatedly demanded money from Jones, including her demand for an alleged "rightful position from a portion of [Jones's] wealth."[61] Because the complained-of statements are "consistent with information from other sources"—*i.e.*, Plaintiff's own messages—Plaintiff cannot plausibly allege that "Defendants did not act with actual malice."[62]

### 2.    Plaintiff's allegations are conclusory and otherwise legally inadequate.

---

[58] *See Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) ("Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits [or central] to the complaint, the court may properly disregard the allegations."); *see, e.g.*, *Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 792 (E.D. Tex. 2019) (claim dismissed where plaintiff's factual allegations were contradicted by a sworn affidavit that was central to plaintiff's claims and was included as an exhibit to defendant's motion to dismiss).

[59] Amended Compl. at ¶ 61; *see also id.* at ¶¶ 73(n), 82(n).

[60] *Walker*, 938 F.3d at 744.

[61] *See* Ex. 2A, App. 009.

[62] *Wheeler v. Twenty-First Century Fox,* 322 F. Supp. 3d 445, 456 (S.D.N.Y. 2018); *see also Immanuel*, 618 F. Supp. 3d at 566 (holding plaintiff's actual malice allegations were implausible where defendant, when making the companied-of statements, "used so many of [plaintiff's] own words").

Apart from the reasons discussed above, Plaintiff's claim also should be dismissed because her allegations regarding actual malice are conclusory and provide no factual detail as to each Defendant's knowledge or mental state. Rather than attempt to satisfy her pleading burden, Plaintiff merely recites that Defendants took various actions "with actual malice" or with "reckless disregard for the truth."[63] But this Court already correctly observed that these formulaic recitations and conclusory assertions are insufficient to pass scrutiny under Rule 12(b)(6).[64] And Plaintiff cannot salvage her deficient claim by further alleging that Defendants "should have" entertained doubts as to the truth of the allegedly defamatory statements,[65] acted with a bad motivation,[66] acted negligently,[67] and pushed a "preconceived" story.[68] These cursory allegation are equally inadequate as a matter of settled law under the stringent *New York Times* standard.[69]

### 3. Plaintiff's allegations shed no light on any individual Defendant's state of mind at the time the complained-of statements were published.

Attempting to cobble facts supporting her allegations of actual malice, Plaintiff points to various stray comments of Wilkinson and other TrailRunner employees—none are legally sufficient. For instance, Plaintiff alleges Wilkinson's knowledge of falsity by referencing comments that have nothing to do with any underlying facts, much less that any factual statements he is alleged to have made were somehow false.[70] That Wilkinson allegedly told an ESPN reporter

---

[63] *See* Amended Compl. at ¶¶ 36, 39, 41, 42, 44, 48, 49, 52, 56, 68, 69, 73, 77, 78, 82.

[64] *See* Dkt. 50 at 33–34; *see also Walker*, 938 F.3d at 744–45.

[65] Amended Compl. at ¶ 53; *see also id.* at ¶ 61 ("Defendants had enough facts such that they would and/or should entertain serious doubts as the truth of Defendants Wilkinson, Jack, and Trailrunner's [sic] statements.").

[66] *See, e.g., id.* at ¶ 82(j).

[67] *See, e.g., id.* at ¶ 73(p).

[68] *See, e.g., id.* at ¶ 73(b).

[69] *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 122 (Tex. 2000) ("[M]erely because an intelligent speaker should have realized that a statement is inaccurate is not clear and convincing evidence of actual malice.") (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984)); *Walker*, 938 F.3d at 744; *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 432 (5th Cir. 2009) (negligence is "insufficient to support a finding of actual malice"); *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 241 (D.C. Cir. 2021) ("'[P]reconceived notions' or 'suspicion[s]' usually do little to show actual malice"), *cert. denied*, 142 S. Ct. 427 (2021).

[70] *See* Amended Compl. at ¶ 56.

14

to "protect him," or not quote him as a source, or that he allegedly said Jones gave him permission to "fire missiles" in responding to Plaintiff's prior press releases are not factual allegations showing that Wilkinson's statements were false, much less knowingly so.[71] Plaintiff's naked assertion that these statements evidence knowledge of falsity is precisely the type of "unwarranted deduction of fact" that cannot survive a motion to dismiss.[72]

Equally unavailing are Plaintiff's efforts to direct the Court to various post-publication allegations about Wilkinson and other TrailRunner employees. Specifically, Plaintiff alleges that when a TrailRunner employee "congratulated Wilkinson," Wilkinson "responded for the [employee] to cover his legal fees" and that this response shows Wilkinson "anticipated litigation over his statements" and acted with actual malice.[73] Plaintiff also alleges that TrailRunner employees reached out to two other publishers to include allegedly defamatory statements in articles written about Plaintiff and Jones.[74]

But "[e]vidence concerning events *after* an article has been printed and distributed, has little, if any bearing on" the existence of actual malice at the time of publication.[75] Moreover, even if post-publication evidence were relevant, and even if that statement (clearly said in jest) is taken factually, the statement is true: Plaintiff is and was a very litigious person who, at the time Wilkinson made the statement, had *already* sued Jones. That Wilkinson allegedly mentioned litigation after the Second ESPN Article is agnostic as to his state of mind about the veracity of

---

[71] Furthermore, the Second ESPN Article actually mentions Wilkinson and Jack by name, purports to quote them, and then identifies them as named sources. *See* Ex. 11.

[72] *Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, 759 F. App'x 280, 286 (5th Cir. 2019).

[73] Amended Compl. at ¶ 57.

[74] *Id.* at ¶¶ 58–59.

[75] *Freedom Newspapers of Texas v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) (emphasis added); *see, e.g.*, *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 174 (Tex. 2003) (holding that conversations held after publication of the complained-of article "cannot constitute evidence of actual malice at the time of publication"); *Berisha v. Lawson*, 973 F.3d 1304, 1314 (11th Cir. 2020) (statements made by author of book "*after* he had done substantial work" on the book did "nothing to show that [the author] *began* with an unfounded plan to take down [the plaintiff]").

his alleged statements when he made them. And it falls far short of Plaintiff's obligation to "allege clear and specific evidence of actual malice."[76] Similarly, discussions by TrailRunner employees with different publishers about different articles do not speak to Wilkinson's state of mind as to the truth at the time he made the complained-of statements in the Second ESPN Article, much less show that he knew those statements were false or entertained serious doubt as to their truth.

Once the conclusory allegations in the Amended Complaint are cast aside, nothing remains. Accordingly, in the absence of any plausible factual allegations suggesting the contrary, there are no facts from which to plausibly believe that, at the time Jack and Wilkinson made the statements in the Second ESPN Article, they did so "with knowledge that [the statements] [were] false or with reckless disregard of whether [the statements] [were] false or not."[77] This is especially true because the Court has held the Jack Affidavit was true and the First ESPN Article was true or not actionable as well. In fact, Plaintiff's own correspondence underscores the truth (or substantial truth) of the statements and the implausibility of her actual malice allegations. Because Plaintiff has failed to "nudge[] [her] claims across the line from conceivable to plausible," her Amended Complaint must be dismissed with prejudice.[78]

## C.     The complained-of statements are not actionable and are true or substantially true.

Plaintiff did not clear the "famously daunting" Constitutional hurdle of pleading actual malice and the Court may dismiss on these grounds alone.[79] But even if she could, her claims

---

[76] *Walker*, 938 F.3d at 744; *see, e.g.*, *Coleman v. Grand*, 523 F. Supp. 3d 244, 261 (E.D.N.Y. 2021) (holding that the fact that a publisher feared litigation arising from an article was not "clear and convincing evidence" that she knowingly or recklessly made false statements, and noting it was equally plausible that the publisher "believed [the plaintiff] might sue regardless of whether she spoke truthfully").

[77] *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

[78] *Twombly*, 550 U.S. at 570; *see, e.g.*, *Corsi v. Infowars, LLC*, No. A-20-CV-298-LY, 2021 WL 2115272, at *1 (W.D. Tex. May 25, 2021) (granting a motion to dismiss when there were "no allegations that lead to a reasonable inference that the Defendants acted with malice or a reckless disregard for the truth with regard to the" alleged statements), *adopted by*, 2021 WL 4955914 (W.D. Tex. June 25, 2021).

[79] *Tah*, 991 F.3d at 240.

should still be dismissed because she cannot plausibly allege that the complained-of statements in the Second ESPN Article are materially false. Simply put, the communications referenced in the Amended Complaint (and central to Plaintiff's claims) conclusively establish that the complained-of statements are true (or substantially true) or otherwise not actionable.

### 1.      Statements attributed to Jack

Plaintiff's allegations regarding Jack's allegedly defamatory statements are baseless. Jack is only quoted in the article regarding (1) the history of payments he made to Plaintiff and her mother, on Jones's behalf, and (2) his recollection of the dinner at which Plaintiff first read the Letter. These were the same statements that Jack made in the affidavit that this Court already found were "substantially true and not defamatory."[80] Because, Jack's statements in the Second ESPN Article are likewise substantially true and not defamatory as a matter of law, the claims against Jack should be dismissed with prejudice.

### 2.      Statements attributed to Wilkinson

Plaintiff's contentions regarding Wilkinson's allegedly defamatory statements are still difficult to follow. Plaintiff appears to still take issue with Wilkinson's quoted statements that "suggest Plaintiff is someone who continues to ask Defendants for money":[81]

> This clearly demonstrates that money has always been the ultimate goal here[.] . . . And sadly this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas.

> * * *

> The facts clearly show that millions of dollars have been paid, . . . and on top of that, a $20 million shakedown attempt was made. I think this speaks for itself as to the motives.

> * * *

---

[80] Dkt. 50 at 23; *see also* Ex. 9, App. 065–70.
[81] Dkt. 50 at 29.

Now they've changed their story yet again, . . . . First it wasn't about money. Now it is about money. And now they are on three sides of a two-sided issue. They are all over the map here. Pick a story and stick with it. This is clownish.

The Court previously "struggle[d]" to find that any of these statements are substantially false or defamatory—and appropriately so.[82] Indeed, as the Court already observed, Plaintiff threatened to pursue public legal action against Jones if he did not respond to her January 2022 letter demanding genetic testing, demanded money in the 2017 Letter, and sought monetary relief in her state court lawsuit.[83] Additionally, Wilkinson's comments about "chang[ing] stories" and "clownish" behavior were responses to statements by Plaintiff's lawyers, are not "of and concerning Plaintiff," and thus not actionable.[84]

In a misguided effort to attach a defamatory meaning to these statements, Plaintiff now attempts to draw a temporal distinction between her monetary motives in writing the 2017 Letter and her supposed non-monetary motives in suing Jones and making numerous demands and claims in 2022.[85] In this context, Plaintiff essentially complains that Wilkinson allegedly omitted relevant information, namely, that the "dinner meeting" at which she read the Letter to Jack "had been years earlier and was not in any way related to the First [Davis] Lawsuit."[86]

But a statement is substantially true, and therefore not actionable, if the "gist" of the "allegedly defamatory statement is not more damaging to the plaintiff's reputation, in the mind of

---

[82] *Id.* at 28.

[83] *Id.* at 28–29.

[84] *See WFAA-TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998); *see, e.g., Wyoming Corporate Servs. v. CNBC, LLC,* 32 F. Supp. 3d 1177, 1188 (D. Wyo. 2014) (plaintiff lacked standing to assert defamation claims based on statements concerning other individuals); *Dougherty v. Capitol Cities Commc'ns, Inc.,* 631 F. Supp. 1566, 1574 (E.D. Mich. 1986) (statements about an attorney and liquidator were not "of and concerning plaintiff" and thus were not defamatory).

[85] *See, e.g.,* Amended Compl. at ¶ 68(n) ("Defendant Wilkinson knew that this 'dinner meeting' that Plaintiff had with Defendant Jack had been years earlier and was not in any way related to the First or Second Lawsuit."); *id.* at ¶ 68(o) (same); *id.* at ¶ 68(p) (same); *id.* at ¶ 68(q) (same); *id.* at ¶ 68(t) ("Defendants use the 'dinner meeting' with Defendant Jack that occurred years earlier to falsely convey the impression to the public that Plaintiff's action of seeking parentage was related to that 'dinner meeting.'"); *see also id.* at ¶ 77(n).

[86] *Id.* at ¶¶ 68(n)–(q); *see also id.* at ¶¶ 68(t)–(u).

the average person, than the truthful statement."[87] Stated differently, a "statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."[88] Here, there is no daylight between the gist of Wilkinson's alleged statements (Plaintiff is someone who demands money from Jones) and the established truth.

As recounted above, Plaintiff's own communications with Jones, through Jack, show that from November 2017 through 2021, Plaintiff continually demanded that Jones pay millions.[89] Plaintiff's counsel additionally sent a letter demanding that Jones submit to genetic testing (despite the fact that she had released any alleged entitlement to such testing) and expressly mentioning the possibility of going public with her allegations.[90] When that demand went unanswered Plaintiff filed the First Davis Lawsuit wherein she explicitly asked the court to affirm her right to receive additional monetary payments from Jones under their settlement agreement and to also award her attorneys' fees from Jones.[91] And it is undisputed, as the title of the Second ESPN Article provides, that Jones "paid millions to [Plaintiff] who filed [a] paternity lawsuit."[92]

In addition to these communications, the Second ESPN Article also must be read in the context of the series of publications about which Plaintiff complains: the Plea, the Jack Affidavit, the Preservation Letter, and the First ESPN Article.[93] As this Court already found, the statements in these other publications are either not defamatory, opinion, or substantially (if not literally) true.

---

[87] *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002).

[88] *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991).

[89] *See supra* Part II.

[90] Amended Compl. at ¶¶ 18, 25; *see also* Ex. 12, App. 076.

[91] *See* Ex. 3, App. 030 at ¶ 21 (requesting that the court prevent "the trusts from being terminated by Defendant Jones"); *id.*, App. 030 at ¶ 24 ("Plaintiff seeks a declaration that she is not bound by the confidentiality provisions of the Settlement Agreement . . . with no legally adverse consequences including Defendant Jones' ability to terminate the trusts."); *id.*, App. 031 at ¶ 29 (seeking attorneys' fees and costs of suit).

[92] Ex. 11, App. 076.

[93] *See Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 791 (Tex. 2019) (affirming district court's consideration of an "entire series of articles for the purpose of assessing their defamatory meaning" and holding that a "proper assessment" of the allegedly defamatory material in the case could not be made "without looking at the 'surrounding circumstances' encapsulated in [the] series").

Plaintiff attempts to parse Wilkinson's statements with a fine-toothed comb and nitpick minutiae in an effort to allege falsity. But, as the Supreme Court has held, "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."[94] In fact, "[e]ven greatly exaggerated accounts are substantially true if no more opprobrium would be attached to the plaintiff's actions merely because of such exaggeration."[95] In *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563 (D.C. Cir. 1984), *vacated on other grounds*, 477 U.S. 242 (1986), Justice (then Judge) Scalia provided an illustrative example of this point:

> If . . . an individual is said to have been convicted of 35 burglaries, when the correct number is 34, it is not likely that the statement is actionable. That is so, however, . . . because, since the essentially derogatory implication of the statement ("he is an habitual burglar") is correct, he has not been libeled.[96]

Here, the alleged "derogatory implication"—*i.e.*, the gist—of Wilkinson's statements is that "Plaintiff is someone who continues to ask Defendants for money."[97] But, as five-years-worth of Plaintiff's own correspondence shows, that implication is indisputably true. And while Plaintiff can quibble over certain minor omissions (*e.g.*, the lapse of time between the Letter and the First Davis Lawsuit) and allege that she never specifically demanded $20 million (but did in fact ask for money),[98] such facts—even if true—do not render Wilkinson's statements materially false.[99]

Thus, the gist of Wilkinson's statements regarding Plaintiff's continued demands for money are substantially—if not literally—true based upon Plaintiff's own words from communications referenced in the Amended Complaint.

---

[94] *Masson*, 501 U.S. at 517.
[95] *Walker*, 938 F.3d at 746 (quotation and alteration omitted).
[96] *Liberty Lobby*, 746 F.2d at 1568–69 n.6.
[97] Dkt. 50 at 29.
[98] *See, e.g.*, Amended Compl. at ¶ 48.
[99] *See, e.g.*, *Green*, 286 F.3d at 285 (finding broadcast's failure to include relevant information was not defamatory, while noting that "[a]lthough the inclusion of more facts may have resulted in a more balanced broadcast, the broadcast as a whole did not misrepresent" the gist of the story and thus "whether or not the story painted [plaintiff] in an attractive light is irrelevant").

**D.      The complained-of statements are protected opinion.**

Alternatively, Plaintiff's claims should be dismissed because the complained-of statements merely constitute Wilkinson's opinions regarding Plaintiff's motives. An opinion is constitutionally-protected speech.[100] "Whether an alleged defamatory statement constitutes an opinion rather than a verifiable falsity is a question of law."[101] To answer this question, the publication is viewed from "the perspective of a reasonable person[]" who reads the publication in its "entirety" and is "aware of relevant contemporary events."[102] "[S]tatements that are verifiably false are not legally defamatory if the context of those statements discloses that they reflect an opinion."[103]

Here, Wilkinson's complained-of statements concern Plaintiff's monetary motivations. Specifically, the Court previously focused on Wilkinson's statement that "[t]he facts clearly show that millions of dollars have been paid . . . and on top of that, a $20 million shakedown attempt was made. I think this speaks for itself as to the motives."[104] A reasonable person reading this statement would be well-acquainted with the dispute between Plaintiff and Jones, including the dueling allegations covered by myriad media outlets after she publicly filed her lawsuit. And the article itself places the dinner meeting and the $20 million demand in the context of occurring "several years ago," and Wilkinson is expressly quoted as saying "three or four years ago."[105] The alleged falsity Plaintiff's counsel focused on in the article itself was the money: "let's see the

---

[100] *See Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023).
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] Dkt. 50 at 29. Additionally, Wilkinson's use of the word "shakedown" is nonactionable rhetoric and hyperbole. *See, e.g., McNamee v. Clemens,* 762 F. Supp. 2d 584, 603-04 (E.D.N.Y. 2011) (holding that statements that plaintiff wanted to shake down the defendant "sound in opinion not fact," "are hyperbolic," and "are 'loose' statements that don't reasonably convey the specificity that would suggest that [defendant] or his agents were seriously accusing [plaintiff] of committing the crime of extortion").
[105] Ex. 11, App. 073.

evidence that more money was paid beyond those agreements," which is now undisputed.[106] Thus, any contrived dispute over the labelling of Plaintiff's motives is nonactionable as a matter of law.

A reasonable person also would be aware of the context in which Wilkinson's statements were made. Specifically, the First ESPN Article was "prompted" by a "428-word statement" Plaintiff's attorneys sent to ESPN in which they "insisted that [Plaintiff] is not motivated by money."[107] This article, as the Court recognized, "[told] [Plaintiff's] side of the story."[108] The Second ESPN Article was published the next day and included responses from Jones's agents about their impressions of Plaintiff's motivations that rebutted Plaintiff's "side of the story" conveyed in the First ESPN Article.[109] Thus, a reasonable person would read Wilkinson's statements in the Second ESPN Article as responding to the statements of Plaintiff's lawyers in the First ESPN Article. Even the titles of the articles underscore their point/counter-point nature: "*Lawyers for woman* who says Dallas Cowboys owner Jerry Jones is her biological father deny 'conspiracy,'"[110] and "Dallas Cowboys owner Jerry Jones paid millions to woman who filed paternity lawsuit, *lawyer [Jack] says*."[111]

In this context, considering Wilkinson's statements as a whole from the perspective of a reasonable person, his statements regarding what "[he] [thought]" Plaintiff's motivations were are precisely the type of non-defamatory opinions one would expect in the midst of, what Plaintiff admits was, "continuing and contentious litigation."[112] This "subjective assertion" regarding

---

[106] Ex. 11, App. 073.
[107] Dkt. 50 at 26–27; Ex. 10, App. 071.
[108] Dkt. 50 at 27.
[109] Ex. 11, App. 073–75.
[110] Ex. 10, App. 071 (emphasis added).
[111] Ex. 11, App. 073 (emphasis added).
[112] Amended Compl. at ¶ 54; *see Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639–40 (Tex. 2018) (finding statements made in article that used the "first-person, informal style [*e.g.*, "I think"] indicates that the format is subjective rather than objective" and thus that "the statement is an opinion").

Plaintiff's motives "cannot be verified" and is thus nonactionable, constitutionally protected opinion.[113]

## V.     CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court grant this motion, dismiss Plaintiff's remaining claims with prejudice, and award such other and further relief, at law or in equity, to which Defendants may be justly entitled.

---

[113] *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 22 (1990); *Tatum*, 554 S.W.3d at 639; *see also Immuno v. Moor-Jankowski*, 497 U.S. 1021 (1990) ("Speculations as to the motivations . . . are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel."); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 87 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that "a statement speculating about [a party's] motive for its decision [to end its business relationship with another party] is not defamatory as a matter of law"); *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1438 (8th Cir. 1989) (a "qualitative judgment about [another's] motivation" was "unverifiable" and thus an opinion).

Respectfully submitted,

**FOLSOM ADR PLLC**

David Folsom
State Bar No. 07210800
david@folsomadr.com
6002-B Summerfield Dr.
Texarkana, TX 75503
(903) 277-7303

**JACKSON WALKER LLP**

*/s/ Charles L. Babcock*
Charles L. Babcock
State Bar No. 01479500
cbabcock@jw.com
Nancy W. Hamilton
State Bar No. 11587925
nhamilton@jw.com
1401 McKinney Street
Suite 1900
Houston, TX 77010
(713) 752-4210
(713) 752-4221 – Fax

David T. Moran
State Bar No. 14419400
dmoran@jw.com
Edwin Buffmire
State Bar No. 24078283
ebuffmire@jw.com
Cody Martinez
State Bar No. 24102146
cmartinez@jw.com
2323 Ross Avenue
Suite 600
Dallas, TX 75201
(214) 953-6000
(214) 953-5822 – Fax

## CERTIFICATE OF SERVICE

On December 8, 2023, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  I hereby certify that I will serve all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Charles L. Babcock*
Charles L. Babcock

24