# Exhibit 3

1 CIT/ESERVE



EXHIBIT 3

FILED
3/3/2022 12:26 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

CAUSE NO. DC-22-02476 _____

| | | |
|---|---|---|
| ALEXANDRA DAVIS, *Plaintiff,* | § § § | IN THE DISTRICT COURT |
| VS. | § § | 192nd ____ JUDICIAL DISTRICT |
| JERRAL W. JONES, *Defendant.* | § § § | DALLAS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Alexandra Davis, ("Plaintiff"), and complains of Jerral W. Jones, ("Defendant Jones"), and for cause of action would respectfully show the Court the following:

### I.
### LEVEL

1. Discovery is intended to be conducted under Level 1 pursuant to Rule 190.1 of the Texas Rules of Civil Procedure.

### II.
### CLAIM OF RELIEF

2. Solely for purposes of Rule 47 of the Texas Rules of Civil Procedure, other than attorneys' fees in the amount of $250,000 or less, Plaintiff seeks only non- monetary relief.

### III.
### PARTIES

3. Plaintiff is a resident of Washington, D.C.

4. Defendant Jerral W. Jones is a resident of Dallas County, Texas and may be served at his residence located at 4400 Preston Road, Highland Park, Dallas County, Texas 75205 or wherever else he may be found.

### IV.
### VENUE

5. Defendant resided in Dallas County, Texas at the time this cause of action accrued and therefore venue is proper in Dallas County under Tex. Civ. Prac. & Rem. Code §15.002(2).

### V.
### JURISDICTION

6. The damages sought by Plaintiff are within the jurisdictional limits of this Court.

### VI.
### FACTUAL BACKGROUND

7. Plaintiff was born in Arkansas on December 16, 1996. Approximately one year previous to Plaintiff's birth, Plaintiff's mother, Cynthia Davis Spencer ("Cynthia"), was married but was estranged and living apart from her husband. Cynthia worked as a ticket counter person for American Airlines at the airport in Little Rock, Arkansas. Around this time, Cynthia met and was pursued romantically by Defendant Jones, the well-known Arkansas native owner and general manager of the Dallas Cowboys' football NFL franchise. After being pursued by Defendant Jones, Cynthia and Defendant Jones began a romantic relationship which included sexual relations.

8. Within a short-period of time after Plaintiff was born, Cynthia and her husband began divorce proceedings in Arkansas. During the divorce proceedings, Cynthia's husband legally challenged whether he was the biological father of Plaintiff. After genetic tests were conducted in accordance with the divorce court's procedures, it was determined and ordered that Cynthia's husband was not the father of Plaintiff. In June of 1998, the divorce court entered a Decree of Divorce which included a judicial finding that Cynthia's husband was not Plaintiff's biological or legal father. As a result, Cynthia's husband was not ordered to pay child support and Plaintiff did not have a legal father.

9. As soon as the genetic testing results came back, Cynthia informed Defendant Jones of the results knowing that Defendant Jones was Plaintiff's biological father despite the fact that Defendant Jones had falsely represented to Cynthia that he was not biologically capable of impregnating a female. Faced with the literal existence of Plaintiff and the public and personal ramifications that would result therefrom, Defendant Jones, forever the deal making entrepreneur that he is, decided to do what he always does, - "make a deal" to assure that he would not be publicly or privately identified and/or declared as Plaintiff's father.

10. Defendant Jones, with the help of lawyers, knowing that Cynthia was now a single mother with a very young child and an uncertain financial future at best, set out to negotiate a "settlement" that would exchange money for silence ("hush money"). In furtherance of this goal, In June of 1996, prior to Cynthia's divorce being final, Defendant Jones had his longtime Arkansas friend and lawyer, Donald Jack, enter into an agreement on his behalf with Cynthia to "facilitate" "negotiations" by advancing the sum of approximately twenty-seven thousand dollars ($27,000) to Cynthia to be used by Cynthia to resolve her divorce litigation with her husband. This agreement also provided an additional thirty thousand dollars to Cynthia as a payment to continue negotiations in "good faith." It was obviously in Defendant Jones' best interest that Cynthia's divorce proceeding end as soon as possible so that paternity not be discovered and/or legally sought identifying and/or declaring him as Plaintiff's father.

11. The negotiations continued and ultimately a "deal" was struck. The essence of the deal was that Defendant Jones would provide, through indirect means and with his personal identity hidden, ongoing financial support for Cynthia and Plaintiff so long as Cynthia remained silent about the fact that he was Plaintiff's father. If Cynthia failed to maintain such silence, the support would end at Defendant Jones' discretion and Cynthia would supposedly be in breach of the deal

and subject to being sued by Defendant Jones and/or by Donald Jack on his behalf. The primary purpose of the arrangement was designed for Defendant Jones to maintain leverage and intimidation over Cynthia to not only not disclose his identity, but to compel Cynthia to train Plaintiff from ever disclosing and/or identifying who her father was.

12.     This deal was memorialized in two written documents (the "Settlement Documents"). The Settlement Documents purported to bind Plaintiff, then a one-year-old child, to confidentiality via her mother's signature. In essence, Plaintiff's biological father and mother entered into an agreement that purportedly would relieve Defendant Jones of support obligations if Cynthia or Plaintiff ever revealed, asserted, or even mentioned that he was Plaintiff's father.

13.     The first of the two documents was an agreement that, among other things, contained the hush money payment and the hush money terms. This document, dated August 14, 1998, was titled "Settlement, Release and Covenant Not to Sue" (the "Settlement Agreement"). The Settlement Agreement was entered into between Cynthia and Donald Jack as the authorized agent of the "putative father" which was Defendant Jones.

14.     The Settlement Agreement contained numerous terms but the essence of it is was that the "Putative Father" (Jones) denied paternity and, in exchange for confidentiality, he would pay money. In addition to a lump sum payment of three hundred seventy-five thousand dollars ($375,000) to be paid to Cynthia upon execution of the Settlement Agreement, the Settlement Agreement provided that two trusts were to be set up and funded by Defendant Jones for the benefit of Plaintiff. One trust was called the "Funding Trust" and the other was to be known as the "Distribution Trust." The Funding Trust was purportedly set up to fund certain monthly, annual and special contributions to the Distribution Trust. In turn, the Distribution Trust was purportedly established "to provide for certain monthly, annual and special funding" until the Plaintiff was to

attain the age of twenty-one years and, after that, to provide for yearly lump sum payments for when Plaintiff reached the ages of 24, 26 and 28. The Grantor of both Trusts was to be Donald Jack so as to hide the identity of Defendant Jones.

15. As mentioned above, the Settlement Agreement required Cynthia to maintain confidentiality as to Defendant Jones being the father of Plaintiff. The Settlement Agreement also purported to bind Plaintiff, a then one year old child, to confidentiality as well as prohibit her from ever seeking to legally establish paternity. In other words, among other outrageous and unconscionable things contained in it, the Settlement Agreement was to act to bar a one-year-old child from **EVER** asserting her legal right to establish the parentage of Defendant Jones and to legally gag her from even speaking about it. At no point was Plaintiff represented by counsel nor were such agreements ever approved by a court and determined to be in Plaintiff's (a minor) best interests.

16. The combined effects of the aforementioned agreements and Cynthia's divorce proceedings resulted in Plaintiff never having a legal father. To add incredible insult to injury, Plaintiff has had to spend her entire life hiding and concealing who her real father is. Defendant Jones' only role in Plaintiff's life to date other than to shun her, has been to coerce her from ever disclosing his identity. To this date, Plaintiff has never even met Defendant Jones despite Plaintiff living in the same area and going to college within a few miles of his house. However, Defendant Jones has continued to have contact with Cynthia over the years but has declined her requests to establish a relationship with, or even meet with, Plaintiff who he knows to be his daughter.

17. Plaintiff is now a twenty-five-year-old woman. She has lived her life fatherless and in secret and in fear that if she should tell anyone who her father was, she and her mother would lose financial support, or worse. Plaintiff grew up in the Dallas area and went to college and graduated

from Southern Methodist University in Dallas. Plaintiff has had to endure the endless public profiles of her father and siblings while forced to remain secret to everyone, including her closest confidants.

18. Despite the material and emotional obstacles of being abandoned and shunned by her father and forced to live in secrecy, Plaintiff has excelled academically and professionally, and presently works for a United States Congressman from Texas in Washington, D.C. after serving in the Trump White House for fourteen months. In fact, the only time that Plaintiff remembers disclosing who her father was when she was questioned under oath by the FBI to gain a security clearance to work in the White House for then President Trump- (of whom Defendant Jones was a large financial supporter). She was sworn under oath and told by the FBI she had to truthfully state the identity of her father. On all forms during her life that have required her to identify her father she has consistently and sadly written "N/A" (Not Applicable). To make things even sadder for Plaintiff is that Cynthia has been recently diagnosed with an aggressive form of cancer which threatens to leave Plaintiff with no acknowledged immediate family members.

19. Defendant Jones does have a daughter that he proudly acknowledges. Her name is Charlotte Jones Anderson. ("Jones Anderson"). Jones Anderson is a high-level prominent executive and owner in Defendant Jones' related businesses including the Dallas Cowboys. Jones Anderson is currently engaged in a divorce proceeding with her husband, Shy Anderson. The divorce litigation between the Andersons is apparently both protracted and contentious. Cynthia, Plaintiff's mother, was recently subpoenaed for a deposition in that divorce

20. After being subpoenaed in the Anderson Jones divorce for deposition, and before the deposition date arrived, Cynthia was contacted by at least one person associated with Defendant Jones. This person informed Cynthia that Defendant Jones would be very displeased if she testified

at her deposition and disclosed that he was Plaintiff's father. Cynthia was told that Defendant Jones could, and perhaps would, terminate the trusts, which currently still stand to benefit Plaintiff with two lump sum payments owing to Plaintiff when she turns 26 and 28, if Cynthia testified to the fact that Defendant Jones is Plaintiff's father.

### FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT NUMBER 1

21. Pursuant to Section 37.002 of the Texas Civil Practice & Remedies Code, Plaintiff seeks a declaration that she is not bound by the confidentiality provisions of the Settlement Agreement. Plaintiff was a one-year-old child when the Settlement Agreement was entered into and had no capacity to contract. Plaintiff wants the ability to seek to establish parentage under the Uniform Parentage Act without being sued for breach of the Settlement Agreement or allowing the trusts from being terminated by Defendant Jones.

22. Paragraph 5 of the Settlement Agreement in part provides as follows:

> **If Mother or Child, or any person on behalf of Child, brings or commences any kind of legal proceeding to establish paternity of Child, ..........., Putative Father may, in his sole discretion, elect to terminate the Agreement and the Funding Trust and the Distribution Trust, or either of them....**

23. The Uniform Parentage Act has no statute of limitation for an adult child to bring a parentage action. By virtue of the language cited above, Defendant Jones, through his agents, has indicated to Plaintiff's mother that he may terminate the Trusts if Plaintiff was to seek parentage.

24. Plaintiff seeks a declaration that she is not bound by the confidentiality provisions of the Settlement Agreement or any other provisions thereof that affect her free right to seek legal parentage with no legally adverse consequences including Defendant Jones' ability to terminate the trusts.

### SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT NUMBER 2

25. Plaintiff further seeks a declaration from this court that the provisions purporting to bind Plaintiff to confidentiality related to Defendant Jones being her father and/or prohibiting her from bringing a parentage action are unenforceable as against the public policy of the State of Texas.

26. The laws of the State of Texas should not legalize, recognize, encourage, or condone fraternal abandonment of a child by enforcing hush money purchased non-disclosure and confidentiality provisions against that child when the contract was entered into by the biological parents when that child was a legally unrepresented minor. Likewise, the laws of the State of Texas should not allow such contractual terms to prevent a child from stating who her father is and/or from seeking legal parentage.

27. One of the expressed written purposes of the Texas family Code is to further the "orderly determination of parentage." The overriding expressed guiding principle of Texas family law as it pertains to children is to do what is "in the best interest of the child." It is hard to imagine what could be less in the best interest of a child than to enforce agreements that leave a child without a father and which prevent or legally punish a child from even stating who her father is.

28. As such, Plaintiff seeks a declaration that such clauses are void as against the public policy of the State of Texas as a matter of law.

### ATTORNEYS' FEES

29. Plaintiff also seeks recovery of her reasonable attorney's fees.

WHEREFORE, upon final trial Plaintiff requests the following relief:

1. Declaratory relief as set forth above;
2. Reasonable attorney's fees;
3. Costs of suit; and
4. Any other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

PLAINTIFF'S ORIGINAL PETITION                                                                 PAGE 8

Respectfully submitted,

**BERGMANGRAY LLP**

*/s/ Andrew A. Bergman*
Andrew A. Bergman
State Bar No. 02196300
Jay K. Gray
State Bar No. 08324050
4514 Travis Street
Travis Walk, Suite 300
Dallas, Texas 75205
214-528-2444
214-599-0602 [fax]
gray@bergmangray.com
bergman@bergmangray.com
**ATTORNEYS FOR PLAINTIFF**

STATE OF TEXAS }
COUNTY OF DALLAS

I, FELICIA PITRE, Clerk of the District of Dallas County, Texas, do hereby certify that I have compared this instrument to be a true and correct copy of the original as appears on record in my office.

GIVEN UNDER MY HAND AND SEAL of said Court, at office in Dallas, Texas, this __12__ day of __May__, A.D., __2022__.

FELICIA PITRE, DISTRICT CLERK
DALLAS COUNTY, TEXAS

By_____ Deputy
Orfa Palacios

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rosemary Sanchez on behalf of Andrew Bergman
Bar No. 02196300
rsanchez@abergmanlaw.com
Envelope ID: 62266447
Status as of 3/7/2022 3:36 PM CST

Associated Case Party: ALEXANDRA DAVIS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rosemary Sanchez | | sanchez@bergmangray.com | 3/3/2022 12:26:50 PM | SENT |
| Jay K.Gray | | gray@bergmangray.com | 3/3/2022 12:26:50 PM | SENT |
| Andrew A.Bergman | | bergman@bergmangray.com | 3/3/2022 12:26:50 PM | SENT |