# Exhibit 9

EXHIBIT 1

CAUSE NO. DC-22-06306

| | | |
|---|---|---|
| *In re:* | § | IN THE DISTRICT COURT OF |
| | § | |
| ALEXANDRA DAVIS | § | DALLAS COUNTY, TEXAS |
| | § | |
| | § | 302nd JUDICIAL DISTRICT |

## AFFIDAVIT OF DONALD T. JACK, JR.

STATE OF ARKANSAS § 
COUNTY OF PULASKI §

BEFORE ME, the undersigned authority, personally appeared Donald T. Jack, Jr., the affiant, an individual personally known to me, who, after being by me duly sworn, testified upon his oath as follows:

1. My name is Donald T. Jack, Jr. I am over the age of 18 years, of sound mind, and am otherwise competent to execute this Affidavit. All of the matters testified to herein are true and correct and within my personal knowledge.

2. I am a licensed attorney in Arkansas and am a member in good standing of the State Bar of Arkansas and the Senior Partner of Jack Nelson Jones, PLLC in Little Rock, Arkansas.

### Paternity Allegations and Settlement

3. Beginning in late 1997 or early 1998, Cynthia Davis-Spencer ("Mother") began alleging that Respondent Jerral W. Jones ("Respondent") was the biological father of her daughter, Petitioner Alexandra Davis ("Petitioner").

4. At the time and thereafter, I served as Respondent's legal counsel in connection with these paternity allegations, which Respondent denied.

5. In order to finally resolve this paternity dispute, on August 14, 1998, Mother, individually and on behalf of Petitioner, and Respondent agreed to a written "Settlement, Release

AFFIDAVIT OF DONALD T. JACK, JR.                                                                                          Page 1

and Covenant Not to Sue" (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 2**. The "Putative Father" referred to in the Settlement Agreement is Respondent Jerral W. Jones. I signed the agreement on behalf of Mr. Jones as his duly authorized agent.

6. The Settlement Agreement was negotiated over a roughly six month period. During this process, Mother, Petitioner, and Respondent were represented by separate and independent legal counsel. Mother and Petitioner were represented by Michael Marcus of Marcus & Levy LLP, while I served as Respondent's counsel.

7. During the negotiation process, Mother was simultaneously involved in divorce proceedings with her then-husband, Norman James Spencer, Jr.

8. The benefits that Petitioner accepted and received pursuant to the Settlement Agreement were substantial and provided her with financial benefits and security and certainty well into adulthood.

9. Specifically, Respondent established two trusts for Petitioner's benefit—the Funding Trust and the Distribution Trust (collectively, the "Trusts"). **Ex. 2** at ¶ 1. A true and correct copy of the Funding Trust and Distribution Trust are attached hereto as **Exhibit 2a** and **Exhibit 2b**, respectively. The Funding Trust provided monthly, annual, and special contributions to the Distribution Trust, for the benefit of Petitioner until she reached the age of 21. **Ex. 2** at ¶ 1. The Settlement Agreement also provided that Petitioner would receive lump-sum payments on her 24th, 26th, and 28th birthdays. **Ex. 2** at ¶ 1. In Arkansas, the age of majority is 18 years of age.

10. Additionally, to reimburse Mother for medical expenses incurred during and after her pregnancy (including the birth and support of Petitioner), to ensure that Petitioner had shelter,

and to provide for Petitioner's well-being, a lump-sum payment of $375,000 was made to Mother by Respondent upon execution of the Settlement Agreement. **Ex. 2** at ¶ 3.

11. In exchange for these payments, the terms and covenants of the Settlement Agreement, and other valuable and acknowledged consideration, Mother, individually and on behalf of Petitioner, agreed to release any and all claims against Respondent, including claims related to Petitioner's paternity. **Ex. 2** at ¶ 4. Further, Mother, individually and on behalf of Petitioner, and Respondent, in order to protect the privacy of Mother, Petitioner, and Respondent, also agreed to abide by confidentiality provisions in which all parties agreed not to disclose the terms of the Settlement Agreement. Mother, individually and on behalf of Petitioner, further agreed that bringing a paternity action would be a breach of the entire Settlement Agreement. **Ex. 2** at ¶ 5.

12. Petitioner was aware of the benefits she was receiving since at least 2010 because Petitioner called me directly to ask for $100,000 to move in to a new house. I have also had conversations with Petitioner about the Settlement Agreement and the obligations under it as early as when she was at least sixteen years of age and thereafter. Petitioner never indicated a desire to disclaim the benefits she was receiving or to violate the confidentiality obligation or agreement not to seek to establish paternity before she first instituted litigation in March 2022. To my knowledge, Petitioner complied with her confidentiality obligations until March 3, 2022 and her agreement not to bring a paternity action until April 20, 2022.

### Trust and Other Payments

13. Mother, on behalf of herself and Petitioner, and Respondent agreed that I would serve as grantor of the Trusts. **Ex. 2** at ¶ 1. In this position I was responsible for making payments on Respondent's behalf to Mother for the benefit of Petitioner and to Petitioner. As a result, I am

---

AFFIDAVIT OF DONALD T. JACK, JR.                                                    Page 3

very familiar with and have personal knowledge regarding the payments made to or for the benefit of Petitioner from the Trusts. I am also very familiar with and have personal knowledge regarding payments made to Mother for the benefit of Petitioner and to Petitioner separate from the Trusts.

14. From execution of the Settlement Agreement until Petitioner's 18th birthday, I, as Respondent's duly authorized agent, oversaw approximately 230 separate payments for the benefit of Petitioner totaling approximately $1.9 million. This amount includes monthly, annual, and special trust payments, and includes payments I sent on Respondent's behalf that were separate from the Trusts. For instance, I oversaw additional payments to Petitioner on Respondent's behalf of $70,457 for a new Range Rover automobile and $33,714.11 for a "Sweet 16" birthday party. As Respondent's duly authorized agent, I also frequently paid for expenses that Mother incurred for Petitioner's benefit, including expenses associated with Petitioner's extracurricular activities, clothing, medical care, and education.

15. When Petitioner attained 18 years of age on December 16, 2014, monthly, annual and special trust distributions continued payable to Petitioner until she attained 21 years of age. During this time, Petitioner continued to honor her obligations under the Settlement Agreement.

16. Indeed, on December 24, 2014, a payment was made, payable to Mother and Petitioner, in the amount of $10,647.50. In 2015, monthly checks of $10,803.46 were made, all payable to Mother and Petitioner. These payments increased to $10,978.71 per month in 2016 and $10,991.74 per month in 2017. The checks were payable to Mother and Petitioner.

17. From Petitioner's 18th birthday to date, I, as Respondent's duly authorized agent, sent Petitioner approximately 140 separate payments totaling approximately $1.2 million. This amount includes the previously mentioned monthly, annual, and special trust payments between the ages of 18 and 21, as well as numerous other payments I sent on Respondent's behalf that were

separate from the Trusts. For instance, Petitioner received approximately: $18,000 for a trip to Paris, France; $270,000 for four full years of undergraduate tuition and expenses at Southern Methodist University; $6,500 for a college graduation party; and $24,000 for a post-college graduation trip to Hong Kong, China, and Japan, among others. Additionally, since at least 2015, at Mother's and Petitioner's requests, I, on Respondent's behalf, have paid various charges on Petitioner's and Mother's American Express credit card account. Since at least 2015, I, again on Respondent's behalf, have also paid for Petitioner's apartment rent, most recently in December 2021 when I made payments for Petitioner's January 2022 and February 2022 rent.

18. To date, Petitioner has received approximately 375 separate payments sent by me on Respondent's behalf totaling approximately $3.2 million. No payment has been refused or rejected.

### November 2017 Meeting

19. On November 16, 2017, shortly before Petitioner's 21st birthday, Petitioner asked me to meet at Al Biernat's, a restaurant in Dallas, Texas. At that time, Petitioner had three other trust payments remaining to be paid; and her monthly trust payments were set to expire on her 21st birthday. In the meeting, Petitioner acknowledged the Settlement Agreement and that she could not establish a paternal relationship with Respondent. However, she requested that Respondent pay her an additional $20 million, and Respondent never agreed to that request.

20. After the meeting, to the best of my knowledge, Petitioner continued to abide by the existing Settlement Agreement until March 3, 2022. Petitioner never said that she wanted to reject or disclaim any of the benefits under the Settlement Agreement at or after the November 16, 2017 meeting. She continued to accept them.

21. In the years following the November 2017 meeting, I, on Respondent's behalf, sent Petitioner approximately 85 payments totaling over approximately $615,000. Petitioner accepted each of these payments.

22. Since attaining 18 years of age, Petitioner contacted me several other times to seek additional money which I have sent and she has accepted. To the best of my knowledge, Petitioner continued to abide by her obligations under the Settlement Agreement, as did Respondent, until March 2022.

FURTHER AFFIANT SAYETH NOT

_____
DONALD T. JACK, JR.

SUBSCRIBED AT SWORN to before me, a notary public, on this 27th day of May, 2022.



_____
NOTARY PUBLIC

My commission expires: 9-10-30

**AFFIDAVIT OF DONALD T. JACK, JR.**              Page 6

32882354v.1