IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| ALEXANDRA DAVIS, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-CV-00032-RWS |
| | § | |
| JERRAL W. JONES, DALLAS COWBOYS | § | |
| FOOTBALL CLUB, LTD., JAMES | § | |
| WILKINSON, TRAILRUNNER | § | |
| INTERNATIONAL, LLC, DONALD JACK, | § | |
| JR., | § | |
| | § | |
| Defendants/Counter-Plaintiffs, | § | |
| & | § | |
| | § | |
| CYNTHIA DAVIS-SPENCER, | § | |
| | § | |
| Third-Party Defendant. | § | |

## <u>ORDER</u>

Before the Court is Defendants Jerral Jones's, Dallas Cowboys Football Club, LTD.'s,

James Wilkinson's, Trailrunner International, LLC's, and Donald Jack, Jr.'s Motion to Dismiss

Plaintiff's First Amended Complaint ("Amended Complaint")[1] for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). Docket No. 59. Plaintiff Alexandra Davis responded

(Docket No. 63) and Defendants replied (Docket No. 67).[2] The Court held a hearing on February

---

[1] Plaintiff's Amended Complaint was filed under seal. Docket No. 52. A redacted, public version
was filed at Docket No. 54. At the hearing, however, the parties agreed that nothing contained in
the briefing or discussed at the hearing was confidential or required sealing. Docket No. 71 at
30:21–32:25. Accordingly, the Court's Order is not filed under seal.

[2] Defendants also filed a Notice of Supplemental Authority on February 20, 2024. Docket No. 72.
Defendants' Notice referred the Court to *Polk Cnty. Publ'g Co. v. Coleman*, No. 22-0103 (Tex.
Feb. 16, 2024), which was published after briefing for Defendants' motion to dismiss was due. *Id.*

7, 2024. Docket Nos. 68, 71. For the reasons set forth below, Defendants' motion (Docket No. 59) is **GRANTED** and Plaintiff's defamation claims are **DISMISSED WITH PREJUDICE**.

## I.     BACKGROUND

### A.  Factual Background

Plaintiff Alexandra Davis filed this lawsuit seeking damages for defamation, and the following allegations are taken from Plaintiff's Amended Complaint. Docket No. 52. Plaintiff alleges that she is the biological daughter of Defendant Jones and Third-Party Defendant Cynthia Davis-Spencer. *Id.* ¶ 13. According to Plaintiff, Jones and Davis-Spencer had an affair while they were married to other people. *Id.* ¶¶ 9–10. Later, Davis-Spencer learned she was pregnant and gave birth to Plaintiff while she was married to her then-husband. *Id.* ¶¶ 10–11. During her divorce proceedings, however, Davis-Spencer learned through a paternity test that her husband was not Plaintiff's father. *Id.* ¶ 12. Davis-Spencer then informed Jones of her belief that he was Plaintiff's biological father. *Id.* ¶ 13. Plaintiff alleges that Jones told Davis-Spencer he would not take a paternity test or have any relationship with the child (Plaintiff). *Id.*

Plaintiff alleges that Jones proposed an agreement to financially support Plaintiff and Davis-Spencer in exchange for confidentiality. *Id.* ¶¶ 14–16. Jones asked Defendant Donald Jack to execute the agreement (the "Settlement Agreement"). *Id.* ¶ 15. The Settlement Agreement provided ongoing monthly payments to Davis-Spencer to support Plaintiff. *Id.* ¶¶ 16, 18. The Settlement Agreement also prohibited Plaintiff from seeking a legal adjudication that Jones was her father and bound both Davis-Spencer and Plaintiff to confidentiality. *Id.* ¶ 18. Plaintiff was one year old when her mother entered into the Settlement Agreement on her behalf. *Id.*

Approximately five years before Plaintiff filed her original complaint in this action, Plaintiff wrote a letter (the "Letter")[3] and read it to Jack at a dinner where Jack was acting as an agent of Jones. *Id.* ¶¶ 45–46. Plaintiff alleges that the Letter was not a demand for money but a therapeutic exercise to "share her anguish about the lack of relationship with her father" and a request of "Jones for a simple meeting of any kind." *Id.* ¶ 45. A few years after her meeting with Jack, Plaintiff decided "to seek legal guidance as to her rights" as "they related to Defendant Jones, parentage, and the so-called Settlement [Agreement]."*Id.* ¶ 24. Plaintiff sought to "confirm biologically who her father was and establish parentage." *Id.* Plaintiff's counsel sent a letter to Jones via Defendant Dallas Cowboys's general counsel asking Jones to participate in a procedure under Texas law to establish parentage.[4] *Id.* ¶¶ 24–28. Plaintiff's counsel also sent a draft of a lawsuit. *Id.* ¶¶ 29–30.

Plaintiff ultimately did not receive a response from Jones or the Dallas Cowboys. *Id.* ¶¶ 27–29. Subsequently, Plaintiff filed a declaratory judgment action in Texas state court (the "First Lawsuit").[5] *Id.* ¶¶ 32–34. Plaintiff filed the First Lawsuit in the public record, and the Dallas Morning News reported on the case before the complaint could be sealed, "attract[ing] local, national, and international attention." *Id.*

---

[3] The Court previously held, and the parties agreed, that the Letter (Docket No. 59-2) could be considered at the motion to dismiss stage. *See* Docket No. 50 at 5–6.

[4] The letter from Plaintiff's counsel to Jones's counsel seeking cooperation regarding parentage is dated January 5, 2021. Docket No. 59-14. Plaintiff's counsel, however, clarified at the hearing that the date should have been 2022, as the letter was sent to Jones's counsel right before the First Lawsuit was filed. Docket No. 71 at 52:21–53:17; *see also* Docket No. 52, ¶ 26.

[5] Plaintiff "eventually nonsuited the declaratory judgment action and brought a paternity suit in Dallas County Family District Court (the 'Second Lawsuit')." Docket No. 52 at 7 n.2. The Second Lawsuit is still pending. *Id.*

Plaintiff alleges that Defendants' defamation began after the filing of the First Lawsuit. *Id.* ¶¶ 35–37. Specifically, Plaintiff alleges that Defendants Wilkinson and Jack made false statements on behalf of the other Defendants in an article published by ESPN that falsely painted her as an "extortionist" trying to "shake down" the Jones family for money. *Id.* ¶¶ 43–44; Docket No. 59-13 ("the Second ESPN Article"). Plaintiff pleads that the individual statements made in the article were false and defamatory because she never made a demand for money in the First Lawsuit. Docket No. 52 ¶¶ 45–49.

### B. Procedural Background

Plaintiff filed her original complaint in March of 2023. Docket No. 1. Defendants filed a motion to dismiss, which the Court granted-in-part with prejudice and granted-in-part without prejudice. Docket No. 50. Specifically, the Court granted Defendants' motion with prejudice as to the Plea, Preservation Letter, First ESPN Article, and Jack Affidavit, holding that these statements were not capable of defamatory meaning. *Id.*[6] The Court granted Defendants' motion without prejudice as to the Second ESPN Article, holding that while the article was capable of defamatory meaning, Plaintiff failed to sufficiently plead actual malice.[7] *Id.* at 30–34. The Court granted Plaintiff leave to amend her complaint and correct the actual malice pleading deficiency. *Id.* Plaintiff filed her Amended Complaint (Docket No. 52) in November of 2023, and Defendants

---

[6] Plaintiff's Amended Complaint still contains allegations regarding the Plea, Preservation Letter, Jack Affidavit, and First ESPN Article. *See generally* Docket No. 52. The Court already dismissed these statements with prejudice. Docket No. 50 at 16–27. Accordingly, the Court's Order focuses solely on whether Plaintiff stated a claim upon which relief can be granted as to the Second ESPN Article.

[7] The Court held that Plaintiff was a limited public figure. *See* Docket No. 50 at 30–34. Accordingly, the fault requirement for a limited public figure asserting defamation is actual malice. *See id.* (citing *Trotter v. Jack Anderson Enter., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987)).

subsequently filed their motion to dismiss Plaintiff's Amended Complaint for failure to state a claim. Docket No. 59.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal where a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219. The complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that they are plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–70 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Federal Rule of Civil Procedure 8). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 673 (quoting *Twombly*, 550 U.S. at 556).

## III.    ANALYSIS

As Defendants indicate in their motion, the only remaining alleged defamatory statements are in the Second ESPN Article. Docket Nos. 50, 59. In the order granting Defendants' original

motion to dismiss, the Court gave Plaintiff leave to correct her pleading deficiency as to actual malice for the Second ESPN Article. *See* Docket No. 50 at 33–36. After Plaintiff filed her Amended Complaint, Defendants attached a new exhibit to their motion to dismiss comprising messages between Plaintiff and Jack (Docket No. 59-4) that Defendants ask the Court to consider under the 12(b)(6) standard. Docket No. 59 at 16–17. Plaintiff argues these messages should not be considered. Docket No. 63 at 6–8. The Court must first determine whether it is proper to consider the messages between Plaintiff and Jack before determining whether Plaintiff sufficiently pleads that Defendants acted with actual malice in the Second ESPN Article.

### A.  The Messages Are Referenced in the Complaint and Central to Plaintiff's Claims.

As stated above, at the motion to dismiss stage, the Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star*, 594 F.3d at 387. In its order granting Defendants' original motion to dismiss, the Court excluded several exhibits to Defendants' motion because they did "not contain alleged defamatory statements and [were] not central to Plaintiff's defamation claims." Docket No. 50 at 6. The Court did, however, consider the Letter that Plaintiff gave to Jack, as well as the articles containing the alleged defamatory statements. The contents of the Letter, specifically, were referenced in the original complaint and were central to the determination of whether Plaintiff asked Defendants for money in 2017. *See id.*

Defendants now ask the Court to consider a new exhibit, which they only recently submitted to the Court for the first time. *See* Docket No. 59-4. The exhibit is a series of communications between Plaintiff and Jack spanning from 2018 to 2021. *Id.*[8] While some of the

---

[8] The parties do not dispute the authenticity of the messages. Docket No. 71 at 47:13–25.

communications may arguably be subject to interpretation, the messages generally indicate that

Plaintiff asked Jones, through Jack, for money or financial assistance on multiple occasions after

she read the Letter to Jack at dinner in 2017. *See id.* at 5, 7, 10, 13. Defendants argue that the

messages are referenced in the complaint and are central to Plaintiff's claims. Specifically,

Defendants refer to Plaintiff's allegations that state:

> Defendant Wilkinson and the other Defendants had copies of all pleadings. *They had copies of all communications between Davis and Defendant Jones* (as evidenced by Defendants leaking those documents to the press). *Nowhere in those communications or court documents does it state Plaintiff was seeking any money* at all, much less $20 million. Defendants ignored all of the actual facts to portray to the press that Plaintiff was a "shakedown artist" and an "extortionist." Again, at a minimum, Defendant Wilkinson and the other Defendants had enough facts such that they would entertain serious doubts as to the truth of their statements.

Docket No. 52, ¶ 73(n) (emphasis added); *see also id.* ¶¶ 61, 73(c), 82(c), 82(n). Defendants state

that Plaintiff's reference to "all communications between Davis and Defendant Jones" necessarily

encompasses the messages between Plaintiff and Jack.[9] Defendants further state that the messages

are central to Plaintiff's defamation claim, particularly as to falsity and actual malice, because it

"indisputably demonstrate[s] that the 2017 Letter was not an isolated event; rather, Plaintiff

continued to demand money year after year." Docket No. 59 at 7. Defendants maintain that they

---

[9] As pleaded, Jack was acting "on behalf of Defendant Jones." *See, e.g.*, Docket No. 52, ¶¶ 44, 68(f). In addition, Plaintiff pleads that "[a]ll Defendants in this suit are closely intertwined with Defendant Jones" and "all the Defendants were involved in continuing and contentious litigation with Plaintiff . . . in the early months of 2022 when the [alleged] defamatory statements were published." *Id.* ¶ 54. Both parties treat the Defendants as "closely intertwined," and Plaintiff's claims appear to rise and fall with the Defendants acting as a unit. For example, Plaintiff alleges that "*Defendants* discussed among *themselves* that *they* knew that the statements *they were making* to ESPN were false." Docket No. 52, ¶ 73(i) (emphasis added). Accordingly, based on Plaintiff's own allegations that the Defendants discussed the alleged falsity of the statements they were making to ESPN among themselves, it is appropriate to resolve Defendants' motion to dismiss as to *all* Defendants together. There has been no suggestion by any party, much less any argument, that the pleadings should be resolved on an individual basis, and the Court addresses the Defendants as a group, as the parties consistently have.

Page **7** of **17**

"could not have made such statements [with] knowledge of falsity," when they had communications with Plaintiff where she repeatedly asked for money. *Id.*

Plaintiff responds by arguing that "the only facts that matter on a motion to dismiss are those matters pleaded by Davis in her [] Amended Complaint." Docket No. 63 at 8. Plaintiff explains that Defendants take her reference to "all communications" out of context because, reading the Amended Complaint as a whole, it is clear that Plaintiff was referencing "all communications . . . regarding the filing of the First Lawsuit," not "all communications for all time between the parties." *Id.* at 6. Plaintiff further asserts that the only document central to Plaintiff's claims, and therefore the only document outside the Amended Complaint that the Court should consider, is the Second ESPN article itself. *See id.* at 8.

Both Plaintiff and Defendants agree that *In Re Katrina Canal Breaches Litigation* provides guidance on when a court may consider documents attached to a motion to dismiss under the 12(b)(6) standard. 495 F.3d 191, 205 (5th Cir. 2007); *see also* Docket Nos. 63 at 5, 71 at 23:2–18. In *Katrina*, the Fifth Circuit found that in an insurance dispute, an insurance contract not attached to the complaints should be considered because it was (1) "attached . . . to their motions to dismiss," (2) "referred to in the complaints," and (3) "central to the plaintiffs' claims." *Id.*[10]

Here, it is undisputed that the messages were attached to Defendants' motion. *See* Docket Nos. 59, 59-4. The Court also finds that these messages were referenced in the complaint, acknowledging Plaintiff's argument that such references were unintentional. The Amended Complaint, however,  references "*all* communications" between Plaintiff and Jones multiple times,

---

[10] Documents referenced in the complaint and central to the plaintiff's claims are "considered part of the pleadings." *Lucky Tunes #3 LLC v. Smith*, No. 6:18-CV-563-JDK, 2019 WL 13436322, at *5 (E.D. Tex. Nov. 18, 2019) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)), *aff'd*, 812 F. App'x 176 (5th Cir. 2020)

and nowhere in those references does Plaintiff limit "all communications" exclusively to the First Lawsuit. *See, e.g.*, Docket No. 52, ¶¶ 73(c), 73(n), 82(c), 82(n).

The closer question is whether the messages are central to Plaintiff's claims. Plaintiff rests her actual malice allegations on the fact that, when the Second ESPN article was published, Defendants allegedly knew that Plaintiff was not seeking money and that Defendants knew their statements that "money ha[d] always been [her] ultimate goal" and "[m]oney was always part of the deal" were false. *See, e.g.*, Docket No. 52, ¶¶ 73(i), 73(m); *see also* Docket No. 59-13. For example, in addition to the previous excerpt, Plaintiff also pleads that:

> Defendants Wilkinson and Trailrunner possessed *all communications* between Davis and Jones, as well as copies of the pleadings and other relevant documents. *The specific evidence possessed by Defendants prior to their defamatory statements establish* not only that the statements issued by Defendants were false, but also *that Defendants knew the statements were false*.

Docket No. 52, ¶ 73(c) (emphasis added).

Plaintiff is correct that a document attached to a motion to dismiss is "not central to a claim" when it is "merely evidence of an element of the pleaded cause of action." Docket No. 63 at 5 (citing *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536–37 (5th Cir. 2003)). But here, the whole of Plaintiff's actual malice allegation is premised on the fact that Defendants *knew* Plaintiff had never asked for money leading up to the First Lawsuit *because* Defendants had all of these messages. *See, e.g.*, Docket No. 52, ¶¶ 61, 73(n), 82(c), 82(n).[11] The messages are central to Plaintiff's allegations of actual malice because Plaintiff's Amended Complaint relies on them as the source of Defendants' subjective knowledge and evidence when they made the alleged defamatory statements to ESPN.

---

[11] In fact, absent these specific factual allegations added by Plaintiff in the Amended Complaint, the Court previously found that Plaintiff had failed to sufficiently plead actual malice. *See generally* Docket Nos. 50, 52.

Defendants also refer the Court to persuasive authority in a case where the Southern District of Georgia contemplated a similar problem regarding documents attached to a motion to dismiss in a defamation suit. *See Amin v. NBCUniversal Media, LLC*, No. 5:21-cv-56, 2022 WL 16964770, at *4 (S.D. Ga. Nov. 16, 2022). In *Amin*, the plaintiff alleged a media defendant falsely reported the contents of a whistleblower letter discussing the plaintiff's medical practice. *Id.* at *1. The court in *Amin* found it was appropriate to consider a statement, in addition to the whistleblower letter and the news reports that allegedly contained defamation, because the plaintiff relied on the statement "to show that [defendant's] accusations about [plaintiff] were false." *Id.* at *4 n.5. In other words, when the plaintiff's allegations relied upon a document beyond just the alleged defamatory statements to establish an element of her defamation claim, that document was properly considered at the motion to dismiss stage. *Id.* Next, Defendants cite *Moore v. Cecil*, where the plaintiff sued defendants for defamation for referring to him as a "child predator." 488 F. Supp. 3d 1144, 1150–51 n.1 (N.D. Ala. 2020). Even while limiting its review of certain documents, the court in *Moore* considered additional articles attached to the motion to dismiss that were "central to his claim (*e.g.*, proving actual malice)." *Id.* (limiting its review of the articles to the plaintiff's interactions with young girls and his interactions at a mall because "only those allegations are central to his claim").

While the specific facts underlying the defamation claims in *Amin* and *Moore* differ from the facts here, *Amin* and *Moore* provide helpful insight into what may be "central" to Plaintiff's defamation claims at the motion to dismiss stage.[12] And, as the courts in *Amin* and *Moore* found,

---

[12] The Court looks to *Amin* and *Moore* as persuasive, out-of-circuit authority. While neither party points to binding case law within our circuit where documents attached to a motion were considered in a defamation case, the Fifth Circuit has frequently affirmed decisions where documents central to the complaint and attached to a motion to dismiss were considered under the 12(b)(6) standard. *See Petersen v. Johnson*, 57 F.4th 225, 228 n.1 (5th Cir. 2023) (considering a

documents—or, in this case, the messages—that Plaintiff refers to or relies upon to plead actual malice are central to her claims. Plaintiff added specific facts referencing Defendants' knowledge of her communications with them and asserts that, with the information in their possession, Defendants discussed and conspired to make the alleged false statements to ESPN. Therefore, the messages were not only referenced in the complaint but are central to the actual malice factor of Plaintiff's defamation claims. Accordingly, the Court overrules Plaintiff's objections to Exhibits 1–4, which include the Letter and messages, along with the accompanying declarations. The Court, however, sustains Plaintiff's objections to the remaining exhibits (Docket Nos. 59-5–59-12, 59-14) attached to Defendants' motion to dismiss because they are not central to Plaintiff's claims.

## B.  Plaintiff Failed to Sufficiently Plead Actual Malice

The Court previously ruled that Plaintiff is a limited purpose public figure who must plead the actual malice fault standard. Docket No. 50 at 31–33. Actual malice requires "that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019). Actual malice "does not mean bad motive or ill will," and the focus of the analysis is "on the defendant's attitude toward the truth, not his attitude toward the plaintiff." *Id.* The Court dismissed Plaintiff's original complaint for failure to "allege specific facts to demonstrate that Defendants knew the statements were false or that they acted with reckless disregard for the truth." Docket No. 50 at 34. Plaintiff needed to plead, for example, "the existence or contents of specific discussions, correspondence, or supporting

---

set of text messages by a decedent leading up to his arrest that served as the basis of plaintiff's wrongful death, false arrest, and § 1983 claims); *Martinez v. New Deal Indep. Sch. Dist.*, 802 F. App'x 98, 101 n.4 (5th Cir. 2020) ("Though it would generally be considered a matter outside of the pleadings, we consider the [document] here because it was attached as an exhibit to New Deal's motion to dismiss, referred to in Martinez's complaint, and is central to Martinez's claim.").

documentation" to show that Defendants *knew* the statements they made to ESPN were false. *Id.* (quoting *Walker*, 938 F.3d at 744).

Defendants argue that, even absent the messages, Plaintiff failed to plead the specificity required for actual malice under *Walker*. Defendants state that Plaintiff's allegations are "conclusory and provide no factual detail as to each Defendant's knowledge or mental state." Docket No. 59 at 19. Defendants also maintain that Plaintiff attempts to rely on these conclusory statements by merely adding the words "with actual malice" or "with reckless disregard for the truth" throughout the Amended Complaint. *Id.* at 19, 21. Defendants further state that Plaintiff attempts to rely on actions taken by Wilkinson after the Second ESPN article was published to establish actual malice, while actual malice must be assessed at the time the statements were made. *Id.* at 20 (citing *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005)).

Plaintiff's attempt to correct her pleading deficiency demonstrates the lack of a claim upon which relief can be granted. For example, messages aside, Plaintiff pleads that at the time of the Second ESPN Article, Defendants knew that money had been paid to Plaintiff for more than 20 years pursuant to the Settlement Agreement, that Plaintiff had asked Jack for money in the Letter in 2017, and that Plaintiff informed Defendants she would take legal action if they did not respond to her letter seeking to establish parentage. *See* Docket 52, ¶¶ 18–21, 25–32, 45–48. Plaintiff further pleads that:

> Upon information and belief, Defendants discussed among themselves that they knew that the statements they were making to ESPN were false and that Defendants were creating a false narrative with the March 31, 2022 article and decided to make the statements to ESPN despite knowing they were false.

Docket No. 52, ¶ 73(i); *see also* Docket No. 63 at 14–16. In accordance with *Walker*, Plaintiff references "the existence or contents of specific discussions" that Defendants had regarding the alleged defamatory statements. Plaintiff also alleges that "[t]he author of the ESPN article (Van

Natta) and Defendant Wilkinson worked closely to ensure Defendant Wilkinson's false narrative was portrayed." Docket No. 52 ¶ 73(k). Plaintiff further asserts that she and Defendants "had a contentious relationship" and therefore Defendants "had a strong motive to lie about" Plaintiff. *Id.* ¶ 73(j). However, merely because Plaintiff pleads more specific facts than in the original complaint does not mean she sufficiently pleads a plausible claim upon which relief can be granted. Here, Plaintiff pleads that when Defendants discussed making the alleged defamatory statements to ESPN, Defendants also knew Plaintiff had previously sought money and threatened legal action if there was no response to her letter concerning parentage. *Id.* ¶ 25–32, 45–46; *see also* Docket No. 59-4. Accordingly, the pleadings do not create a plausible claim that Defendants' statements were made with knowledge of falsity or with reckless disregard for the truth.

At the hearing, Plaintiff narrowed her defamation claims exclusively to the circumstances surrounding the First Lawsuit. Plaintiff argued the focus should be on whether Defendants knew that Plaintiff did not demand money in the First Lawsuit only. Plaintiff does not dispute that she asked for and received multiple monetary payments from Jones between the dinner with Jack in 2017 and the filing of the First Lawsuit. Docket No. 71 at 60:6–10. But Plaintiff contends that "even if she'd had asked for money six months before the lawsuit was filed . . . that still has nothing to do with whether the lawsuit was elevated to a shakedown attempt[.]" *Id.*; *see also id.* at 57:5–23, 59:1–11. Plaintiff now essentially argues that it does not matter when or how often she asked Jones for money because Defendants knew that *the First Lawsuit* did *not* ask for monetary damages.

The Court agrees with Plaintiff that the First Lawsuit was not necessarily a demand for money. But Plaintiff's significantly narrowed argument asks the Court to ignore not only the

messages attached to Defendants' motion[13] but the actual statements made in the Second ESPN Article and the broad, complicated, and lengthy relationship between Plaintiff and Defendants. *See, e.g.*, Docket No. 52, ¶¶ 16, 18, 24, 29–33, 45–46. Indeed, as Plaintiff explains in her response, the Court can consider "(1) the relation of the parties; (2) the circumstances around the publication; (3) the terms of the publication; (4) and a defendant's words or acts before, at, or after the time of the communication." Docket No. 63 at 13 (citing *Dolcefino v. Turner*, 987 S.W.2d 100, 111 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom. Turner v. KTRK Television, Inc.*, 38 S.W.3d 103 (Tex. 2000)); *see also Butowsky v. Folkenflik*, No. 4:18-CV-442, 2019 WL 3712026, at *10 (E.D. Tex. Aug. 7, 2019).

For example, turning to the first alleged statement in the Second ESPN Article, Wilkinson stated that, for Plaintiff, "money has always been the ultimate goal" and that "[s]adly this is just one part of a more broad calculated and concerted effort that has been going on for some time by multiple people with various different agendas." Docket No. 52, ¶ 68(h). Plaintiff argues that Defendants knew their statements were false because Defendants knew the First Lawsuit did not seek monetary damages. Docket No. 71 at 59:1–11. But Wilkinson's statement explicitly references the "broad" effort that "ha[d] been going on for some time" that Defendants were subjectively considering at the time of the Second ESPN Article. And at the time, Defendants

---

[13] The messages, considered for the first time in this Order, also undermine the potential defamatory meaning of Defendants' statements. Plaintiff's original complaint and representations in the first hearing informed the Court that no demands for money had been made aside from the Letter in 2017. Relying on Plaintiff's representations, the Court previously held that "Plaintiff asked for money in 2017, but a $20 million demand was not made, and such a demand was not made in [2022] when Plaintiff initiated the controversy," and as such the " 'gist' of Wilkinson's statement in the Second ESPN Article could paint a defamatory picture of Plaintiff's actions." *Id.* at 30. The gap between the 2017 Letter and the 2022 filing of the First Lawsuit as known to the Court in the first motion to dismiss, however, is now closed, as the messages clearly show that Plaintiff requested money from Jones in 2017, 2018, 2019, and 2021. *See* Docket No. 59-4.

knew that Plaintiff had repeatedly asked for money in the years leading up to the filing of the First Lawsuit. *See* Docket No. 59-4.[14] Defendants knew that Jones was funding Plaintiff's apartment, educational expenses, and international trips. *Id.* at 7, 10; *see also* Docket No. 71 at 57:5–23. Defendants also knew that Plaintiff had explicitly asked for a "rightful position from a portion of [her] biological father's wealth" before she sought to establish parentage with Jones. Docket No. 59-4 at 5.

In the next alleged statement,[15] Wilkinson stated that "[t]he facts clearly show that millions of dollars have been paid, . . . and on top of that, a $20 million shakedown attempt was made. I think this speaks for itself as to the motives." Docket No. 52, ¶ 58(f). Factual specifics aside,[16] Defendants knew that Plaintiff had previously asked for money. After requesting parentage, Plaintiff then filed the First Lawsuit, on the public record, in violation of the Settlement Agreement. Based on these facts alone, or viewed in combination with all the communications within their possession, it is not plausible that Defendants acted with actual malice in characterizing Plaintiff's actions as a "shakedown attempt" that was motivated by money.

---

[14] As explained by Plaintiff's counsel at the hearing:

> If -- she owed college tuition or if she owed books -- she wanted to buy books for college, she would email or text Donald Jack and say, hey, will my dad pay for this? And he would respond back, yeah. I mean, he paid her rent in Washington D.C. Say, will my dad pay for this? He would respond back, yes. So, I mean, there's -- there's all kinds of discussions about money between -- I mean, between somebody who is supporting their daughter and the daughter. Docket No. 71 at 57:5–23.

[15] Plaintiff alleges additional statements in the Second ESPN Article. *See* Docket No. 52, ¶¶ 68(e)–(l). However, the Court's analysis regarding actual malice is the same for each statement, and, therefore, the Court will not conduct a separate analysis for each independent statement.

[16] As the Court previously explained, a "statement is substantially true if it conveys the same 'gist' as the literal truth even if it errs in the details," such as a specific dollar amount. *See* Docket No. 50 at 23 (quoting *Butowsky*, 2019 WL 3712026, at *15); *see also Turner*, 987 S.W.2d at 115.

Based on the pleaded allegations, the Court cannot find that Defendants acted with "knowledge of falsity" or "reckless disregard" for the truth when Plaintiff's assertion that she never asked for money is no longer plausible. In sum, Plaintiff asks the Court to consider an extremely narrow defamation claim, where Defendants allegedly defamed her for shaking them down for money in a lawsuit that did not ask for money. To do so, the Court would be required to ignore the pleaded facts, Defendants' actual statements in the article, and Defendants' subjective understanding of the facts as pleaded, all in favor of Plaintiff's narrow, implausible claim. As such, Plaintiff's assertion that Defendants acted with "reckless disregard for the truth" when making the statements in the Second ESPN Article is not plausible, and Plaintiff therefore failed to sufficiently plead actual malice.

## IV.    CONCLUSION

Plaintiff has not sufficiently pleaded that Defendants acted with actual malice. As the Court previously ruled, because Plaintiff failed to plead an element of a defamation claim, she also failed to state a claim upon which relief can be granted. Based on the Court's previous order and the considered exhibits attached to Defendants' motion to dismiss, the Court believes that amendment would be futile. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 59) is **GRANTED**. Plaintiff's defamation claims are hereby **DISMISSED WITH PREJUDICE** in their entirety. [17]

---

[17] The above-captioned action still has pending counterclaims against Plaintiff and Third-Party Defendant Cynthia Davis-Spencer. *See* Docket Nos. 13, 21, 23.

So ORDERED and SIGNED this 13th day of March, 2024.

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE