IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ALEXANDRA DAVIS,<br>　　*Plaintiff/Counter-Defendant,*<br><br>vs.<br><br>JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC, and DONALD JACK, JR.,<br>　　*Defendants/Cross-Plaintiff,*<br><br>vs.<br><br>CYNTHIA DAVIS-SPENCER,<br>　　*Third-Party Defendant.* | CIVIL ACTION No. 5:23-cv-00032-RWS<br><br>JURY TRIAL DEMANDED |

**JERRAL W. JONES'S RESPONSE IN OPPOSITION TO LISA DUFFEE'S AMENDED MOTION TO QUASH AND AMENDED REQUEST FOR PROTECTION**

Counter-Plaintiff Jerral W. Jones files this Response in Opposition to Lisa Duffee's Amended Motion to Quash and Amended Request for Protection, as follows:

## I.  INTRODUCTION

Lisa Duffee, an attorney representing Shy Anderson in divorce proceedings against Jones's daughter, admits that she possesses relevant communications with Counter-Defendant Alexandra Davis and Third-Party Defendant Cynthia Davis-Spencer (collectively, "Defendants"). These communications relate to the confidential settlement agreement (the "Settlement Agreement") that Defendants indisputably breached, in part, by providing that agreement to Anderson and his lawyers. Yet Duffee now asserts that she need not comply with a subpoena from this Court because Defendants asked Duffee to represent them in their efforts to obtain money from Jones.

1

But Duffee's attempts to conjure an attorney-client relationship with Defendants is insupportable. To begin with, despite holding the privilege, Defendants never objected to Duffee's subpoena. Quite the contrary, Defendants *identified* Duffee as someone possessing relevant evidence. (*See* Ex. 6, App. 36; Ex. 7, App. 46) Further, Defendants did not treat their communications with Duffee as privileged, as evidenced by Davis-Spencer informing Anderson, a third party, that Duffee told Davis she could get a "great payday" if she "threaten[ed]" a paternity lawsuit:



(Ex. 1, App. 5)[1] Duffee also vastly understates her involvement in matters relevant to this lawsuit. In fact, Defendants' had a symbiotic relationship with Duffee and Anderson, with each using their respective lawsuits to exert leverage on Jones.

For example, in June 2021, Davis-Spencer sent Davis's 23andMe login information to Anderson so he could access Davis's "dna profile."[2] (*Id.*, App. 2) Later that month, Davis-Spencer told Anderson "I really want you to win this battle so I'm trying to do my small part to help you." (*Id.*, App. 3) Further, in August 2021, Anderson told Davis-Spencer that he would "reach out to

---

[1] As this Court is aware, Davis took Duffee's advice and "threatened legal action [against Jones] if there was no response to her" parentage demand. Dkt. 75 at 13.

[2] 23andMe is a genetic testing company that provides customers information about their genetic data.

[Davis]." (*Id.*, App. 4) Davis-Spencer then told Anderson that Davis "want[ed] to speak to [Anderson]" and "was going to call [him]."[3] (*Id.*, App. 6)

Duffee was aware of—and involved in—this coordination. Indeed, Davis-Spencer admitted conversing with Duffee regarding Davis's lawsuits. (*See* Ex. 2, App. 7) Duffee also communicated with Davis through Davis' attorney, Andrew Bergman. Specifically, in March 2022, Jones's attorney sent a letter to Anderson c/o Duffee noting Jones's intent to investigate "potential claims . . . for conversion (extortion) and other torts," and requesting that he preserve communications concerning Defendants. (Ex. 4, App. 20) Mere minutes after receiving the letter, Duffee forwarded it to Davis through Bergman. (Ex. 3, App. 18–19) Thereafter, using Davis's attorneys as intermediaries, Duffee continued coordinating with Davis by sending sealed pleadings and other correspondence from the Jones/Anderson divorce proceedings. (*See* Ex. 3, App. 8–19)

Despite being aware of her and Anderson's interactions with Defendants, Duffee now resists discovery of their communications. Jones, however, is entitled to discover the full breadth and facts surrounding Defendants' breaches of the Settlement Agreement. Because Duffee has evidence of those facts—*e.g.*, communications involving Defendants (and their agents) concerning their multiple breaches—her Motion seeking to conceal that evidence should be denied.

## II. JONES'S ATTEMPTS TO RESOLVE THE DISPUTE

On April 1, 2024, Jones served Duffee with subpoenas requesting that she (1) produce communications with Defendants (including their respective agents), and (2) appear for an oral deposition.[4] *See* Dkts. 79-1, 79-2. The document subpoena required compliance by April 8, 2024.

---

[3] These messages confirming Defendants' disclosure of confidential information to Anderson contradict their representations to this Court denying same. *Compare* Dkt. 13 at 7 (alleging in paragraphs 31 and 39 that Davis and Davis-Spencer, respectively, disclosed confidential information to third parties) *with* Dkt. 21 at 4 (denying paragraph 31) *and* Dkt. 23 at 4 (denying paragraph 39).

[4] As Duffee acknowledges, the parties agreed to postpone Duffee's deposition. *See* Dkt. 79-5 at 1.

Dkt. 79-1 at 1. On that date, Duffee requested a "short extension" of the document production deadline, which Jones agreed to extend to April 11, 2024. (Ex. 5, App. 26–27) On the afternoon of April 11th, Duffee requested four more days "to complete an initial privilege log," threatening court intervention if Jones did not "respond immediately." (*Id.*, App. 25) Less than two hours later, and without personally conferring, Duffee filed her first motion to quash wherein she represented that "[c]ounsel could not agree to additional interim relief," and that she "had to file" the motion.[5] Dkt. 76 at 3.

As Duffee was filing, Jones offered a one-day extension explaining that the compromise proposal was based on Duffee's refusal to produce non-privileged documents by the agreed upon date or to explain the need for another extension. (Ex. 5, App. 25) Jones requested additional information regarding the volume of the production to consider further extensions. (*Id.*) The following day, the Court denied Duffee's initial motion to quash without prejudice citing a lack of clarity, among other deficiencies. *See* Dkt. 77.

Thereafter, Duffee did not respond to Jones's requests for additional information, provide any insight into the volume of the production, or explain her need for another extension. Instead, on April 16, 2024, Duffee sent Jones a draft of her amended motion to quash and gave Jones a two-hour window to conference regarding the motion. *See* (Ex. 5, App. 24) During the meet-and-confer, Jones's counsel explained the relevance of the communications. *See supra* Part I. Additionally, Duffee's counsel represented that he created a privilege log (an admission that Duffee possesses relevant—albeit allegedly privileged—communications), but refused to produce it. (Ex. 5, App. 23–24) The Motion was then filed. On April 17, 2024, Jones again attempted to

---

[5] Duffee's failure to confer violated this Court's "Standing Order Regarding 'Meet and Confer' Obligations Relating to Discovery Disputes," which requires parties to "fully comply with the substantive and procedural conference requirements of Local Rule CV-7(h).

4

confer in an effort to avoid burdening the Court, or at minimum narrow the dispute by sending written questions about the scope and basis of Duffee's privilege claims.[6] (*See* Ex. 5, App. 22) On Two days later, as Jones was finalizing this filing, Duffee responded. (*See* Ex. 8, App. 51) Therein she reasserted vague privilege claims, produced a single voicemail from a reporter, and refused to propose any compromise that would avoid Court involvement. (*Id.*)

## II.  ARGUMENT AND AUTHORITIES

### A.  The subpoena seeks relevant documents.

Duffee's communications with Defendants are indisputably relevant to Jones's breach of contract claims. As this Court is aware, Jones, Davis, and Davis-Spencer executed a confidential settlement agreement in 1998 to resolve a paternity dispute (the "Settlement Agreement"). *See* Dkt. 13 at 3. Jones's claims are founded on Defendants' violations of their confidentiality obligations, namely their sending of confidential information concerning the Settlement Agreement to various third parties. *See id.* at 7–8, 10–12.

Although Jones already explained to Duffee the relevance of her communications (*see* Ex. 5, App. 23–24), Duffee now feigns ignorance. *See* Dkt. 79 at 3 (claiming Jones failed to "connect" the requested discovery to his claims). But as the foregoing demonstrates, Defendants' sharing of confidential information with Anderson and Duffee is undisputable. *See supra* Part I. Therefore, Duffee's communications with Defendants (including their agents) are plainly relevant to Jones's breach of contract claims. *See* Fed. R. Civ. P. 26(b)(1).

---

[6] How, after all, would communications between Davis's counsel and Anderson's counsel be privileged, as Duffee claimed during the meet-and-confer?

## B.     Duffee's invocation of the attorney-client privilege fails.

Duffee wrongly presumes that she can withhold evidence simply because she is an attorney and believes that, at some point, Defendants sought her representation in their efforts to get money from Jones.[7] *See* Dkt. 79 at 2. But this is irrelevant, as Duffee admits she "declined" representation. *Id.* Where "no attorney-client relationship exist[s]," the "attorney client privilege does not attach[]."[8] *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3521727, at *3 (E.D. Tex. Aug. 16, 2017). Tellingly, Defendants have never claimed any privilege over their communications with Duffee. *See Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423, 1429–30 (S.D. Tex. 1993) ("the attorney-client privilege belongs to the client"). Instead, they disclosed Duffee as a person "having knowledge of relevant facts." *See* Ex. 6, App. 36; Ex. 7, App. 46.

Even if an attorney-client relationship existed between Duffee and Defendants, Duffee failed to properly invoke the attorney-client privilege. As the party asserting the privilege, Duffee had the "burden of demonstrating [its] applicability." *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). That is, Duffee was required to prove that the information requested was a confidential communication made to an attorney for the purpose of receiving legal advice or assistance in a legal proceeding. *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

Duffee, however, fails to reference a single specific communication with Davis or Davis-Spencer, much less explain how any privilege applies to that communication. *See Sedtal v.*

---

[7] Duffee similarly argues that she is entitled to protection from deposition as a "former opposing counsel." Dkt. 79 at 3. But Duffy is not—nor has she ever been—opposing counsel in this case, rendering her reliance on *Samurai Global*, which concerned depositions of opposing counsel, misplaced. Furthermore, her conclusory request for protection based solely on her status as an attorney is devoid of "a particular and specific demonstration of facts," and thus inadequate to establish entitlement to a protective order. *See In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

[8] In support of her assertion that the attorney-client privilege "attaches to communications even though the attorney is not subsequently hired," Duffee cites *In re Levien*, No. 03-18-00079-CV, 2018 WL 2170825 (Tex. App.—Austin May 11, 2018, orig. proceeding). Dkt. 79 at 3 n.2. *Levien*, however, applied New York—not Texas—privilege law.

*Genuine Parts Co.*, No. CIV.A. 1:08-CV-413-T, 2009 WL 2216593, at *8 (E.D. Tex. July 23, 2009) (failure to identify any specific document as privileged precludes invocation of the attorney-client privilege). As the Fifth Circuit has held, such blanket assertions of the attorney-client privilege are inadequate. *See Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) ("the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents" and must instead be "specifically asserted with respect to particular documents").

Even if an attorney-client relationship existed and Duffee properly asserted privilege, discovery would still be proper because Davis-Spencer waived any privilege as to her communications with Duffee concerning Davis's legal efforts against Jones. Briefly, the attorney-client privilege protects confidential communications between the attorney and her client for the purpose of obtaining legal advice. *AdvoCare Int'l, LLC v. Smith*, No. 4:22-CV-900-SDJ, 2023 WL 8622980, at *7 (E.D. Tex. Dec. 13, 2023). "Disclosure of privileged communications to a third party," however, "generally eliminates the confidentiality and serves to waive the privilege." *SB IP Holdings LLC v. Vivint Smart Home, Inc.*, No. 4:20-CV-00886, 2022 WL 19977100, at *3 (E.D. Tex. Aug. 18, 2022). Thus, the party invoking the privilege "must prove that waiver did not occur." *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-TJW, 2010 WL 4975566, at *3 (E.D. Tex. Dec. 2, 2010).

As explained, Davis-Spencer conveyed Duffee's advice—*i.e.*, that Davis would receive a "great payday" if she "threaten[ed]" Jones with a paternity action—to Anderson, a third party. *See* Ex. 1, App. 5. This disclosure waived privileged as to any statements made between Duffee and Davis-Spencer regarding Davis's legal efforts against Jones. *See In re Pequeno*, 126 F. App'x 158, 164 (5th Cir. 2005) (recognizing that the holder of the privilege "waives the privilege when they

7

disclose the substance of the privileged communication," and holding that client's disclosure of the "substance of his conversations" with counsel "waived whatever privileged he may have held over his statements").

**C.     Duffee must provide her privilege log.**

Duffee's request that she be excused "from having to produce a privilege log," Dkt. 79 at 4, is insupportable. "If [a party] claims that any responsive documents are privileged," as Duffee does here, that party "*must* file a privilege log in accordance with Rule 26(b)(5)." *Dortch v. Wells Fargo Bank, N.A.*, No. 4:18-CV-00452, 2020 WL 1289431, at *8 (E.D. Tex. Mar. 18, 2020) (emphasis added); *see also G.K. v. D.M.*, No. CV 21-2242, 2024 WL 1198349, at *6 (E.D. La. Mar. 20, 2024) (Rule 26(b)(5)'s "use of the word 'must' indicates that production of a privilege log . . . is mandatory"). This Court has thus held that a party's "failure to distinguish withheld or privileged documents on a privilege log . . . [is] an improper discovery tactic." *Whitehead v. United Prop. & Cas. Ins. Co.*, No. 1:20-CV-420, 2022 WL 2920415, at *5 (E.D. Tex. May 16, 2022), *adopted by*, 2022 WL 2918889 (E.D. Tex. July 22, 2022).

Duffee cannot assert privilege as a basis to withhold evidence, while simultaneously refusing to provide information that would allow Jones to vet that privilege. Her request that the Court permit her to do so should be rejected.

**D.     Duffee failed to show compliance with the subpoena would be unreasonable or oppressive.**

As the party seeking to quash or modify a subpoena, Duffee was required to meet "the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003). Duffee, however, fails to even acknowledge this burden and instead merely offers contrived arguments. For example, she complains that searching her emails for "every reference to someone named

8

Alexandra, Cynthia or Davis pulls up thousands of emails to review for privilege." Dkt. 79 at 4. Yet Duffee appears to be burdening herself. She could *easily* narrow the number of hits by searching for Defendants' (and their agents') email addresses, rather than searching for broach terms like "Alexandra," "Cynthia," or "Davis." Regardless, Duffee's representation during the meet-and-confer that she had a privilege log obviates any alleged burden that she now claims. (*See* Ex. 5, App. 23–24)

At bottom, Duffee's minimal burden (if any) is vastly outweighed by Jones's need for all evidence relating to how and when Duffee received confidential information in breach of the Settlement Agreement. Indeed, despite the evidence that Defendants communicated with Duffee regarding relevant matters, neither has produced a single communication with Duffee. Further, as the Court is aware, highly relevant evidence is missing or was deleted from Defendants' devices.[9] Thus, for significant swaths of breach evidence, Duffee may be the only source of that evidence.

### III.  CONCLUSION

For the reasons set forth above, Counter-Plaintiff Jerral W. Jones respectfully requests that Lisa Duffee's Amended Motion to Quash and Amended Request for Protection be denied, that she be ordered to produce all communications involving or concerning Defendants and their agents relating to Jones or the Settlement Agreement, and for such other and further relief, at law or in equity, to which he is justly entitled.

---

[9] The parties are currently working to recover communications that were deleted from Defendants' devices or otherwise uncover facts related to the deletion. Defendants have agreed to have their phones forensically imaged.

| | |
|---|---|
| FOLSOM ADR PLLC | JACKSON WALKER LLP |
| */s/ David Folsom* | */s/Charles L. Babcock* |
| David Folsom | Charles L. Babcock |
| State Bar No. 07210800 | State Bar No. 01479500 |
| david@folsomadr.com | cbabcock@jw.com |
| 6002-B Summerfield Dr. | Nancy W. Hamilton |
| Texarkana, TX 75503 | State Bar No. 11587925 |
| (903) 277-7303 | nhamilton@jw.com |
| | 1401 McKinney Street |
| | Suite 1900 |
| | Houston, TX 77010 |
| | (713) 752-4210 |
| | (713) 752-4221 - Fax |
| | |
| | David T. Moran |
| | State Bar No. 14419400 |
| | dmoran@jw.com |
| | Edwin Buffmire |
| | State Bar No. 24078283 |
| | ebuffmire@jw.com |
| | Cody Martinez |
| | State Bar No. 24102146 |
| | cmartinez@jw.com |
| | 2323 Ross Avenue |
| | Suite 600 |
| | Dallas, TX 75201 |
| | (214) 953-6000 |
| | (214) 953-5822 – Fax |

**ATTORNEYS FOR COUNTER-PLAINTIFF JERRAL W. JONES**

**CERTIFICATE OF SERVICE**

On April 19, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I will serve all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Edwin Buffmire*
Edwin Buffmire