IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| JERRAL W. JONES,<br>    *Plaintiff,*<br><br>vs.<br><br>ALEXANDRA DAVIS and CYNTHIA DAVIS f/k/a CYNTHIA DAVIS-SPENCER,<br>    *Defendants,* | CIVIL ACTION No. 5:23-cv-00032-RWS<br><br>JURY TRIAL DEMANDED |

### JERRAL W. JONES' AMENDED COMPLAINT

Plaintiff Jerral W. Jones files this Amended Complaint against Defendants Alexandra Davis and Cynthia Davis f/k/a Cynthia Davis-Spencer, and would respectfully show the Court:[1]

### I.    BACKGROUND

1. This Complaint arises from the material breaches of a binding Settlement, Release and Covenant Not to Sue (the "Settlement Agreement") between Jerral W. Jones ("Jones"), Alexandra Davis ("Alexandra"), and Cynthia Davis ("Cynthia") (collectively, "Defendants").[2] That Settlement Agreement released and contained promises by Alexandra and Cynthia from suing or supporting any suit to establish paternity. It also obligated Defendants to maintain confidentiality regarding the facts and terms of the Settlement Agreement. In exchange, Alexandra and Cynthia received as consideration millions of dollars from early childhood through adulthood.

2. Jones has abided by and performed his obligations under the Settlement Agreement. Defendants, however, want more than they were entitled to receive. To that end, beginning in at

---

[1] Jones's claims against Alexandra and Cynthia Davis were originally filed as counterclaims and third-party claims, respectively. *See* Dkt. 13. Because Alexandra's claims have been dismissed with prejudice, *see* Dkt. 75, the parties have agreed to a realignment, with Jones as Plaintiff and Alexandra and Cynthia as Defendants.

[2] Alexandra Davis and Cynthia Davis are referred to herein by their first names to avoid confusion.

**PLAINTIFF JERRAL W. JONES' AMENDED COMPLAINT – Page 1**

least 2021 and the years prior, Defendants began a campaign directed at and against Jones. Their strategy centered on threatening to publicly disclose—and actually disclosing—the confidential Settlement Agreement and its terms to various third parties and also threatening (and actually filing) a paternity action they promised to never seek if Plaintiff paid them millions. As the direct—and intended—result of their disclosures, articles discussing the Settlement Agreement and allegations about Jones's private life flooded the Internet. Defendants' actions constitute material breaches of the Settlement Agreement, which necessitated the filing of these claims and entitle Jones to substantial relief and actual and other damages.

## II.   PARTIES

3. Plaintiff Jerral W. Jones is an individual residing in Dallas County, Texas and is a citizen of the State of Texas.

4. Defendant Alexandra Davis is a resident and citizen of the District of Columbia.

5. Defendant Cynthia Davis is a resident of Denton County, Texas, the Eastern District of Texas, and is a citizen of the State of Texas. Upon information and belief, Cynthia can be served at 6777 Parker Creek Place, Frisco, Texas, 75034-0774.

## III.   JURISDICTION

6. This Court has jurisdiction pursuant to 28 USC § 1332(a) because there is complete diversity between Jones and Alexandra. The amount in controversy exceeds $75,000.00, exclusive of interests and costs. The Court also has supplemental jurisdiction over Jones's claims against Cynthia, because they are derived from the same nucleus of operative facts as Alexandra's now-dismissed defamation claims. *See* 28 U.S.C. § 1367.

## IV.    FACTS

**A.    The paternity dispute.**

7. On December 16, 1996, Cynthia gave birth to Alexandra in North Little Rock, Arkansas. Alexandra was thus more than 26 years old when she filed her Original Complaint. *See* Dkt. No. 1 at ¶ 8.

8. At the time of Alexandra's birth, Cynthia was married to Norman James Spencer, Jr. ("Husband"). *See* Dkt. No. 1 at ¶ 8. After Alexandra's birth, Cynthia and Husband were involved in divorce proceedings in Arkansas state court. *Id.* at ¶ 11.

9. During the divorce proceedings, Cynthia and Husband stated under oath that Husband was Alexandra's biological father. Eventually, however, both Cynthia and Husband began claiming that Husband was not Alexandra's father. Cynthia also began contending that Jones was Alexandra's biological father—an allegation Jones denied and continues to deny.

**B.    Alexandra, Cynthia, and Jones execute the Settlement Agreement.**

10. On August 14, 1998, Cynthia, "individually, and on behalf of [Alexandra], as Alexandra's] parent and sole legal guardian," and Jones (as the "Putative Father"), entered a binding contract to resolve the paternity dispute—the Settlement Agreement.

11. In entering into the Settlement Agreement, the parties, all of whom were represented by independent legal counsel, sought to "act fairly, equitably, appropriately, and in [Alexandra's] best interest." They further understood that, while they could seek to establish paternity through legal action, litigation was uncertain and could result in Jones having no obligation to Alexandra. The parties therefore concluded that it was in the best interest of Cynthia, Alexandra, and Jones to forego any legal action, settle the matter, and maintain confidentiality.

12. As a result of examining applicable state laws and other relevant factors through independent counsel, Cynthia and Jones determined that the terms of the Settlement Agreement provided adequate financial support to Alexandra and said payments were "just, fair, and in [Alexandra's] best interest."

13. The security and benefits that Alexandra and Cynthia received from Jones pursuant to the Settlement Agreement were substantial and included future support, maintenance, and education for Alexandra.

14. Specifically, to reimburse Cynthia for medical expenses incurred during and after her pregnancy (including the birth and support of Alexandra), to ensure that Alexandra had shelter, and to provide for Alexandra's well-being, a lump-sum payment of $375,000 was made to Cynthia upon execution of the Settlement Agreement.

15. In addition to this $375,000 payment, Jones established two trusts for Alexandra's care and benefit—the Funding Trust and the Distribution Trust (collectively, the "Trusts"). The Funding Trust provided monthly, annual, and special contributions to the Distribution Trust, which Trust in turn provided the same payment and funding to Alexandra from childhood until she attained 21 years of age. The Settlement Agreement also provided that Alexandra would continue to receive financial support into adulthood when she attained the ages of 24, 26, and 28, provided there was not a material breach of the agreement.

16. During Alexandra's childhood, she received approximately 230 separate payments from Jones totaling approximately $1.9 million. While this amount included monthly, annual, and special trust payments, it also included payments that were separate from the Trusts. For instance, Alexandra also received $70,457 for a new Range Rover automobile and $33,714.11 for a "Sweet 16" birthday party. Jones also frequently paid for expenses that Cynthia incurred for Alexandra's

benefit, including expenses associated with Alexandra's extracurricular activities, clothing, medical care, and education.

17. From the time Alexandra attained the age of majority, that is, 18 years of age, until March 2022 when she filed a lawsuit that materially breached the Settlement Agreement, *see infra* Part IV.C, Alexandra received approximately 140 separate, additional payments from Jones totaling approximately $1.2 million. This amount includes the aforementioned monthly, annual, and special trust payments between the ages of 18 and 21, as well as numerous other payments for Alexandra's education and benefit that were separate from the Trusts. For instance, Alexandra received approximately: $18,000 for a trip to Paris, France; $270,000 for four full years of undergraduate tuition and expenses at Southern Methodist University; $6,500 for a college graduation party; and $24,000 for a post-college graduation trip to Hong Kong, China, and Japan, among others. Additionally, since at least 2015, at Cynthia's and Alexandra's requests, Jones has paid various charges on Defendants' American Express credit card account. Since at least 2015, Jones has also paid for Alexandra's apartment rent. To date, pursuant to the Settlement Agreement, Alexandra has received approximately $3.2 million from Jones.

18. The financial support Alexandra received was explicitly negotiated and contracted for "in consideration of" various obligations. These obligations included settlement and release provisions preventing Alexandra, as "Child" and Cynthia, as "Mother," from instituting any lawsuits against Jones related to, *inter alia*, Alexandra's parentage:

> Mother, individually, and on behalf of Child, as Child's parent and sole guardian, accepts the above stated payment and funding of the Funding Trust and the Distribution Trust **in full compromise, settlement, and satisfaction** of all claims, causes of action, suits, payments, damages and demands of whatever kind that now exists, or hereafter may accrue, in Mother's or Child's favor against Putative Father in any way related to Child, **Child's paternity**, or Child's support, and **releases Putative Father from all such claims and causes of action**.

\* \* \*

Mother agrees and covenants to refrain from making any claim or demand, or commencing any action in law or equity relating to Child, against Putative Father, and further, to use her best efforts ***to prevent Child or any person on behalf of Child from making any claim or demand or commencing any action in law or equity relating to Child against Putative Father***.

\* \* \*

Except for an action for breach of the Agreement, Mother, individually, and on behalf of Child, as Child's parent and sole legal guardian, expressly agrees that the Agreement may forever be treated as a ***complete defense and bar to any action*** that Mother or Child may commence, bring, or institute against Putative Father in any way related to Child.

\* \* \*

If Mother or Child, or any person on behalf of Child, brings or commences ***any kind of legal proceeding seeking to establish the paternity of Child*** . . . , Putative Father may, in his sole discretion, elect to terminate the Agreement and the Funding Trust and the Distribution Trust, or either of them, and enforce any and all remedies available to him at law or in equity. ***A breach of this provision shall be considered a breach of the entire Agreement***.

\* \* \*

The parties acknowledge that they fully understand the terms of the Agreement and that they have entered into the Agreement with the intention that it be a ***full and final compromise and settlement of all claims*** by Mother and Child against Putative Father.

Ex. A, Settlement Agreement at ¶¶ 4, 5, 17 (emphasis added).

19. The Settlement Agreement also included confidentiality obligations whereby the parties promised to refrain from disclosing the facts and terms of the settlement:

> ***The parties agree and covenant not to disclose the terms of the Agreement, or make any future disclosures or statement regarding Mother's belief that Putative Father is father of Child*** . . . . The parties agree further that neither Mother, Child nor Putative Father will act in any manner that might jeopardize the confidentiality of the Agreement and will protect and safeguard with utmost care the privacy of Child, Mother, and Putative Father.

*Id.* at ¶ 5.

20. For about two decades, the parties complied with these terms. Jones paid Alexandra millions of dollars, and Defendants maintained the confidentiality of the agreements, payments, and any allegations that Jones was Alexandra's father, including refraining from filing any lawsuits related to the issues addressed in the agreements. Later, however, it became clear that Defendants wanted more money.

21. Under the Settlement Agreement, Alexandra's monthly trust distributions were scheduled to cease on her 21st birthday—December 16, 2017. One month before that date, Alexandra met with the Grantor of the Trusts (and attorney-in-fact for Jones), Donald Jack, Jr. At that in-person meeting, Alexandra acknowledged that under the Settlement Agreement she could not establish a paternal relationship with Jones. However, she wanted Jones to pay her additional money that Jones was not obligated to pay. Jones did not accede to Alexandra's wrongful demand for additional money. Following this discussion, it is undisputed that Alexandra continued to fulfill her obligations under the existing Settlement Agreement and accepted further support as an adult.

**C.    Defendants repeatedly breach the Settlement Agreement.**

22. In 2021, it was discovered that Defendants (and/or their agents) disclosed confidential information and documents regarding the Settlement Agreement to a third party (and/or his agents). This disclosure was an attempt to provide leverage to that third party in an unrelated lawsuit brought against a member of Jones's family. These actions, disclosure, and statements constitute material breaches of Defendants' confidentiality obligations under the Settlement Agreement.

23. In March 2022, more than seven years after reaching the age of majority, Alexandra again breached the Settlement Agreement by filing a public lawsuit against Jones (the "First Lawsuit"). Therein, Alexandra contended that she was not bound by certain portions of the

Settlement Agreement that imposed obligations on her (including confidentiality obligations and release of paternity claims), and yet sought declarations that she was entitled to the benefits conferred upon her by the Settlement Agreement, *e.g.* the two remaining trust payments. In doing so, Alexandra publicly alleged that Jones is her father and disclosed numerous facts regarding the Settlement Agreement, including its terms, each of which is a material breach.

24.     Shortly after filing the First Lawsuit, Alexandra—through her agents and representatives—released numerous statements to the media wherein she disclosed the confidential facts and terms of the Settlement Agreement and alleged that Jones is her father. These statements were subsequently published in numerous news articles, as Alexandra intended, and Jones was bombarded with negative media attention.[3] This was Alexandra's goal and it was also a breach of the Settlement Agreement. Rather than press her claims, Alexandra dismissed the First Lawsuit less than two months after its filing.

25.     In April 2022, Alexandra filed a second lawsuit against Jones allegedly for the sole purpose of establishing "the parent-child relationship" (the "Second Lawsuit"), despite the fact

---

[3] *See, e.g.*, Don Van Natta, Jr., *Lawyers for woman suing Dallas Cowboys owner Jerry Jones: Client isn't motivated by money*, ESPN (Mar. 10, 2022), *available at* https://www.espn.com/nfl/story?id=33471398&_slug_=lawyers-woman-suing-dallas-cowboys-owner-jerry-jones-client-motivated-money; Nataly Keomoungkhoun, *Lawyers for woman suing Dallas Cowboys owner Jerry Jones say she isn't looking for money*, The Dallas Morning News (Mar. 11, 2022), *available at* https://www.dallasnews.com/news/courts/2022/03/11/lawyers-for-woman-suing-dallas-cowboys-owner-jerry-jones-say-she-isnt-looking-for-money/; Don Van Natta, Jr., *Dallas Cowboys owner Jerry Jones asks judge to dismiss paternity lawsuit, alleges extortion attempts*, ESPN (Mar. 28, 2022); Nataly Keomoungkhoun, *Lawyer for woman suing Jerry Jones denies she tried to extort money from Dallas Cowboys owner*, ESPN (Mar. 29, 2022), *available at* https://www.dallasnews.com/news/courts/2022/03/29/lawyer-for-woman-suing-jerry-jones-denies-she-tried-to-extort-money-from-dallas-cowboys-owner/; Don Van Natta, Jr., *Lawyers for woman who says Dallas Cowboys owner Jerry Jones is her biological father deny 'conspiracy,'* ESPN (Mar. 30, 2022), *available at* https://www.espn.com/nfl/story/_/id/33632161/lawyers-woman-claims-dallas-cowboys-owner-jerry-jones-biological-father-deny-conspiracy; Don Van Natta, Jr., *Dallas Cowboys owner Jerry Jones paid millions to woman who filed paternity lawsuit, lawyer says*, ESPN (Mar. 31, 2022), *available at* https://www.espn.com/nfl/story/_/id/33640873/dallas-cowboys-owner-jerry-jones-gave-millions-woman-filed-paternity-lawsuit-lawyer-says; Nataly Keomoungkhoun, *Dallas Cowboys owner Jerry Jones paid millions to woman who says he is her father, lawyer says*, The Dallas Morning News (Mar. 31, 2022), *available at* https://www.dallasnews.com/news/2022/03/31/dallas-cowboys-owner-jerry-jones-paid-millions-to-woman-who-says-he-is-her-father-lawyer-says/.

that she released this claim. Again, following the filing of the Second Lawsuit, Alexandra—through her agents and representatives—disseminated to the media statements regarding the Settlement Agreement and Jones's alleged paternity.[4] These disclosures and actions were material breaches of the Settlement Agreement.

26.     In the course of the Second Lawsuit, Cynthia materially assisted Alexandra by, among other things, providing an affidavit that publicly alleged that Jones is Alexandra's father and disclosed some terms of the Settlement Agreement, thereby further breaching the Settlement Agreement.

27.     In March 2023, Alexandra filed the instant action (the "Third Lawsuit") and once more materially breached the Settlement Agreements by publicly alleging that Jones is her biological father and disclosing confidential details regarding the Settlement Agreement. In connection with this lawsuit, Alexandra again used her agents and representatives to release statements to the press that disclosed details related to the Settlement Agreement and Jones's alleged paternity.[5]

---

[4] *See, e.g.*, Nataly Keomoungkhoun, *Woman suing Dallas Cowboys owner Jerry Jones drops lawsuit, wants to establish parentage*, The Dallas Morning News (Apr. 20, 2022), *available at* https://www.dallasnews.com/news/courts/2022/04/20/woman-suing-dallas-cowboys-owner-jerry-jones-drops-lawsuit-wants-to-establish-parentage/; Nataly Keomoungkhoun, *Dallas Cowboys owner Jerry Jones asks judge to toss paternity suit against him*, The Dallas Morning News (June 9, 2022), *available at* https://www.dallasnews.com/news/courts/2022/06/09/dallas-cowboys-owner-jerry-jones-asks-judge-to-toss-paternity-suit-against-him/; Nataly Keomoungkhoun, *A judge orders Jerry Jones to take a paternity test, but the lawsuit is far from over*, D Magazine (Dec. 23, 2022), *available at* https://www.dmagazine.com/sports/2022/12/a-judge-orders-jerry-jones-to-take-a-paternity-test-but-the-lawsuit-is-far-from-over/;

[5] *See, e.g.*, Don Van Natta, Jr., *Woman who says Cowboys owner Jerry Jones is her father now accuses him of defamation*, ESPN (Mar. 27, 2023), *available at* https://www.espn.com/nfl/story/_/id/35973302/woman-says-cowboys-owner-jerry-jones-father-now-accuses-defamation; Lana Ferguson, *Woman suing Cowboys owner Jerry Jones alleges 'character assassination attack,'* The Dallas Morning News (Mar. 28, 2023), *available at* https://www.dallasnews.com/news/courts/2023/03/28/woman-suing-cowboys-owner-jerry-jones-alleges-character-assassination-attack/; Paul Livengood, *Texas woman claiming Jerry Jones is her father sues him for defamation*, WFAA (Mar. 28, 2023), *available at* https://www.wfaa.com/article/sports/nfl/cowboys/dallas-cowboys-owner-jerry-jones-paternity-lawsuit-alexandra-davis/287-0ff148eb-ee5b-4809-ae60-640e38238afe.

## V. CLAIMS AGAINST ALEXANDRA DAVIS

**A.  Breach of contract.**

28. Jones incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

29. Alexandra and Jones entered into a valid and binding Settlement Agreement.

30. By executing, ratifying, and/or failing to timely disaffirm the Settlement Agreement, Alexandra: released any claims she had against Jones related to her parentage; agreed that the Settlement Agreement is a complete defense and bars any claims she may have against Jones; and promised to keep confidential the terms of the Settlement Agreement, including Cynthia's belief that Jones is Alexandra's biological father.

31. Although Jones performed his obligations under the Settlement Agreement, including paying Alexandra millions of dollars over her lifetime (including well into her adulthood), Alexandra materially breached her obligations above, including by disclosing confidential information regarding the facts and terms of the Settlement Agreement to various third parties, including media members, with the aim of generating publicity, and/or to obtain additional money or things of value.

32. As a direct and proximate cause of these material breaches, Jones has suffered actual and other damages, including the payment of attorneys' fees and expenses to defend himself against claims that Defendants settled and released over two decades ago.

**B.  Request for declaratory relief.**

33. Jones incorporates by reference the allegation contained in the paragraphs above, as if fully set forth herein.

34. As described herein, Alexandra has repeatedly violated her contractual obligations under the Settlement Agreement. Thus, in an effort to clarify Alexandra's rights and obligations and resolve ongoing and future foreseeable controversies between the parties, Jones asserts a claim for declaratory relief under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

35. Specifically, Jones seeks a declaration by this Court that Alexandra has a continuing duty to perform under and abide by the terms of the Settlement Agreement.

## VI. CLAIMS AGAINST CYNTHIA DAVIS

### A. Breach of contract.

36. Jones incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

37. Cynthia and Jones entered into a valid and binding Settlement Agreement.

38. In doing so, Cynthia agreed that she would keep confidential the terms of the Settlement Agreement, including her belief that Jones is Alexandra's biological father, and use her best efforts to prevent Alexandra from making any claim or demand on Jones.

39. Although Jones performed his obligations under the Settlement Agreement, Cynthia materially breached her obligations by disclosing confidential documents and information relating to the facts and terms of the Settlement Agreement, and by assisting Alexandra in her prosecution of lawsuits against Jones.

40. As a direct and proximate cause of these material breaches, Jones has suffered actual and other damages, including the payment of attorneys' fees and expenses to defend himself against claims that Defendants settled and released over two decades ago.

### B. Request for declaratory relief.

41. Jones incorporates by reference the allegation contained in the paragraphs above, as if fully set forth herein.

42. As described herein, Cynthia has repeatedly violated her contractual obligations under the Settlement Agreement. Thus, in an effort to clarify Cynthia's rights and obligations and resolve ongoing and future foreseeable controversies between the parties, Jones asserts a claim for declaratory relief under 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

43. Specifically, Jones seeks a declaration by this Court that Cynthia has a continuing duty to perform under and abide by the terms of the Settlement Agreement.

## VII. ATTORNEYS' FEES & SANCTIONS

44. Defendants' conduct described in this complaint and the resulting damages and loss have necessitated the retention of the attorneys identified below. Pursuant to paragraph 18 of the Settlement Agreement, as well as section 38.001 of the Texas Civil Practice and Remedies Code, Jones is entitled to recover his costs, reasonable and necessary attorneys' fees, and expenses incurred in prosecuting these claims against Defendants, jointly and severally.

45. Pursuant to the Texas Citizens Participation Act, Jones further is entitled to an award of all of his allowable court costs, reasonable and necessary attorneys' fees, and other expenses incurred successfully defending Alexandra's defamation claims. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1). Additionally, Jones is entitled to an award of sanctions sufficient to deter against Alexandra from bringing similar actions. *Id.* at § 27.009(a)(2).

## VIII. CONDITIONS PRECEDENT

46. All conditions precedent have been performed or have occurred. *See* Fed. R. Civ. P. 9(c).

## IX.     JURY DEMAND

47.     Jones demand a trial by jury on all claims subject to a jury trial.

## PRAYER

Accordingly, Jerral W. Jones respectfully requests that Alexandria Davis and Cynthia Davis be cited to answer and appear, and that upon final trial, Jones have:

a. Judgment against Defendants for actual, special, consequential, and other damages, together with prejudgment interest, as provided by law;

b. Declarations that Defendants have continuing duties to perform under and abide by the terms of the Settlement Agreement.

c. Postjudgment interest, as provided by law;

d. Costs of suit;

e. Reasonable and necessary attorneys' fees;

f. Sanctions against Alexandra; and

g. Such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

FOLSOM ADR PLLC                    JACKSON WALKER LLP

*/s/ David Folsom*                 */s/ Charles L. Babcock*
David Folsom                       Charles L. Babcock
State Bar No. 07210800             State Bar No. 01479500
david@folsomadr.com                cbabcock@jw.com
6002-B Summerfield Dr.             Nancy W. Hamilton
Texarkana, TX 75503                State Bar No. 11587925
(903) 277-7303                     nhamilton@jw.com
                                   1401 McKinney Street
                                   Suite 1900
                                   Houston, TX 77010
                                   (713) 752-4210
                                   (713) 752-4221 - Fax

                                   David T. Moran
                                   State Bar No. 14419400
                                   dmoran@jw.com
                                   Edwin Buffmire
                                   State Bar No. 24078283
                                   ebuffmire@jw.com
                                   Cody Martinez
                                   State Bar No. 24102146
                                   cmartinez@jw.com
                                   2323 Ross Avenue
                                   Suite 600
                                   Dallas, TX 75201
                                   (214) 953-6000
                                   (214) 953-5822 – Fax

**ATTORNEYS FOR PLAINTIFF JERRAL W. JONES**

## CERTIFICATE OF SERVICE

      On April 30, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Eastern District of Texas, using the CM/ECF system. I hereby certify that I have served all counsel of record electronically or by another manner authorized by the Federal Rules of Civil Procedure.

                                              */s/ Edwin Buffmire*
                                              **Edwin Buffmire**