IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ALEXANDRA DAVIS,<br>    *Plaintiff/Counter-Defendant,*<br><br>vs.<br><br>JERRAL W. JONES, DALLAS COWBOYS FOOTBALL CLUB, LTD., JAMES WILKINSON, TRAILRUNNER INTERNATIONAL, LLC, and DONALD JACK, JR.,<br>    *Defendants/Cross-Plaintiff,*<br><br>vs.<br><br>CYNTHIA DAVIS-SPENCER,<br>    *Third-Party Defendant.* | CIVIL ACTION No.  5:23-cv-00032-RWS<br><br>**FILED UNDER SEAL** |

**JERRAL W. JONES'S REPLY IN SUPPORT OF MOTION TO SHOW CAUSE FOR CYNTHIA DAVIS-SPENCER'S SPOLIATED EVIDENCE**

Defendant/Counter-Plaintiff Jerral W. Jones ("Jones") files this reply in support of his Motion to Show Cause for Cynthia Davis-Spencer's Spoliated Evidence (the "Motion"), as follows:

### I.     SUMMARY

Jones moved for an order to show cause for Third-Party Defendant Cynthia Davis-Spencer's ("Spencer's") deletion of evidence, noting her unexplained failure to produce a single communication with her daughter, Plaintiff/Counter-Defendant Alexandra Davis ("Davis"), among others. Rather than provide any explanation, however, Spencer merely responds that she had no obligation to preserve documents prior to being served with Jones's third-party complaint in May 2023 and was "blindsided" by the claims brought against her. *See* Dkt. 94 at 3–4. Spencer's failure to explain or contest the fact of deletion is itself a tacit admission that deletions occurred;

1

her admission that she unsuccessfully attempted to "recover any messages . . . deleted by [her] phone" is an explicit one. Dkt. 94 at 2.

Regardless, the evidence shows that Spencer should have anticipated litigation regarding her breach of the Settlement Agreement much earlier than May 2023. ███

███

███

███. *See infra* Part II.B.

███

███

███. *See id.* A party to the Settlement Agreement, Davis-Spencer was aware that any such claims against Jones had been released and that she was contractually prohibited from assisting Davis in pursuing such claims. *See* Dkt. 83 at 4 (outlining contractual obligations). Spencer therefore should have known by at least this time—in the midst of breaching and planning her and Davis's further breaches of the Settlement Agreement—that any documents pertaining to Jones and the Agreement might be relevant to future litigation.

Despite having a duty to preserve that arose in June 2021, Spencer admits that she failed to take *any* preservation steps until late May 2023 and that messages were deleted. *See* Dkt. 94 at 3–4. ███

███, *see infra* Part II.B–C, there is a high likelihood that these deleted messages contained communications relevant to Jones's claims for breach, among others. And

2

Spencer admits, those messages "could not be recovered." Dkt. 94 at 2. This showing is all that Rule 37(e)(1) requires to impose the requested sanctions.[1]

Spencer's attempt to moot the Motion by belatedly agreeing to submit her phone to forensic imaging *during her deposition* does not suffice. Indeed, in addition to forensic imaging, Jones also seeks as sanctions a spoliation instruction and payment of the attorneys' fees incurred brining the Motion. *See* Dkt. 83 at 11–12. While court-ordered forensic examination is no longer necessary, these additional sanctions are.

Accordingly, for the reasons set forth herein and in the Motion, Jones respectfully requests that that Spencer be ordered to show cause for her spoliation and that Jones have leave to supplement the Motion with findings from the ongoing forensic examination.

## II.     ARGUMENTS & AUTHORITIES

**A.     Spencer ignores the applicable standard for assessing sanctions under Rule 37(e).**

Although Jones clearly moved for sanctions pursuant to Rule 37(e), *see* Dkt. 83 at 8, Spencer cites cases concerning the imposition of sanctions pursuant to courts' inherent authority. *See* Dkt. 94 at 4, 5 (citing *Coastal Bridge* and *Ashton*). In fact, Spencer's motion does not reference, much less apply, Rule 37(e) at all. Yet, as this Court has held, "the availability of sanctions for losing [ESI]," which is what Jones alleges, "is evaluated under Rule 37(e)." *Peals v. QuikTrip Corp.*, No. 4:20-CV-22-KPJ, 2021 WL 2043185, at *4 (E.D. Tex. May 21, 2021); *see also* Rule 37(e), advisory committee's note to 2015 amendment (Rule 37(e) "authorizes and specifies measures a court may employ if information that should have been preserved is lost" and thus "forecloses reliance on inherent authority or state law to determine when certain measures should be used").

---

[1] Despite Davis-Spencer's attempt to confuse the applicable standard, *see infra* Part II.A, Jones need not show that ESI was destroyed intentionally or in bad faith.

As a result of her misapprehension, Spencer's assertions regarding Jones's burden are just wrong. For example, Spencer claims Jones failed to satisfy the requirements to obtain an adverse-inference instruction. *See* Dkt. 94 at 4. Yet Jones merely seeks an instruction under Rule 37(e)(1) that the jury "may consider the circumstances surrounding Spencer's deleted communications," Dkt. 83 at 11, not an adverse-inference instruction, which would be issued under Rule 37(e)(2).[2] *See Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 2699511, at *10 (N.D. Tex. Feb. 15, 2023) (explaining the distinction between the two instructions). Spencer's further assertion that a showing of intentionality or bad faith is required is likewise incorrect because the requested Rule 37(e)(1) sanctions require neither. *See Edwards v. Junior State of Am. Found.*, No. 4:19-CV-140-SDJ, 2021 WL 1600282, at *9, n.10 (E.D. Tex. Apr. 23, 2021).

**B.    Spencer's preservation duty arose by June 25, 2021 at the latest.**

Spencer wrongly asserts that her preservation duty arose when she was served with Jones's third-party complaint on May 30, 2023, and was thus not obligated to preserve any communications prior to that time. *See* Dkt. 94 at 3. Contrary to Spencer's self-serving standard, a party's duty to preserve arises "when the party has notice that the evidence is relevant to litigation or *when a party should have known that the evidence may be relevant to future litigation.*" *Beck v. Access E Forms, LP*, No. 4:16-CV-00985, 2018 WL 3752842, at *1 (E.D. Tex. Aug. 8, 2018) (emphasis added); *see, e.g.*, *Stephenson v. Caterpillar Inc.*, No. 2:16-CV-00071-JRG-RSP, 2018 WL 11351531, at *5 (E.D. Tex. Oct. 30, 2018) (party's preservation duties arose in August 2015 even though lawsuit was filed in April 2016).

---

[2] Jones reserves the right to seek an adverse-inference instruction in the future.

4

Assessing when a litigant's duty to preserve arises is a fact intensive inquiry. *See Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020). And based on the facts presented here, Spencer should have known at least by June 2021 that her communications with Davis (and others) concerning Jones and the Settlement Agreement may be relevant to future litigation.

As explained in the Motion, Spencer told Jones's agent, Jack, in March 2021 that she would be breaching her confidentiality obligations. *See* Dkt. 83 at 4; *see also* Dkt. 83-3 ("I will be speaking my truth."). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. 1, App. 5 at 81:3–23) The Court is further aware of Spencer's subsequent communications with Anderson around June 2021 as she assisted him in his divorce proceedings against Jones's daughter. *See* Dkt. 83 at 4; *see also* Dkt. 83-4 at 3–5.

A privilege log obtained from Duffee confirms that Spencer made first contact on June 25, 2021, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[3] (Ex. 2, App. 17–18; *see also* Ex. 1, App. 3 at 69:9–11) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." (Ex. 1, App. 3 at 68:20–69:4, 69:18–70:3) And as set forth in the Motion, though Duffee declined representation, she told Spencer during their meeting that Davis could get a "great payday" if she hired an attorney to "threaten" Jones with a "paternity filing." Dkt. 83-4 at 6. ▇▇▇▇▇▇

---

[3] Davis-Spencer and Duffee also exchanged a number of purportedly privileged text messages around this time. (Ex. 2, App. 19 [showing multiple messages from June 28–July 13, 2021])

███████████████. (*Id.*, App. 7 at 125:2–15; Ex. 2, App. 20)

In late 2021, after disclosing the Settlement Agreement's existence to Anderson, Spencer testified ████████████████████████████████.[4] (Ex. 1, App. 2 at 36:3–23, 37:10–14) Additionally, as she previously requested, ████████████████████████████ ████████████████████████████████████. (*Id.*, App. 14 at 167:17–21)  In January 2022, after Davis "threatened legal action if there was no response to her letter concerning parentage," Dkt. 75 at 13, Spencer texted Jack that Davis would "drop her [threatened] lawsuit" if Jones met with her. (Ex. 5, App. 29)

As the foregoing demonstrates, Spencer's duty to preserve arose much earlier than May 2023. Indeed, Spencer told Jones's agent in February 2021 that she planned to breach confidentiality. She then spent almost the entirety of the year disclosing confidential information concerning the Settlement Agreement to third parties, ████████████████████████████ ██████████████████████. Because Spencer made no secret of her breaches, Spencer should have anticipated that Jones would sue to enforce the Settlement Agreement. *See, e.g.*, *Calsep, Inc. v. Intellgient Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2021 WL 1729169, at *3 (S.D. Tex. Apr. 29, 2021) (defendant's duty to preserve arguably arose when he left plaintiff's employ taking plaintiff's trade secret software because he "should have anticipated that plaintiffs would protect their trade secrets").

Further, as early as June 25, 2021, Spencer was undeniably involved in (and assisted) Davis's plan to sue Jones when she visited an attorney on Davis's behalf (maintaining communications with that attorney from June 2021 through July 2022). (*See* Ex. 2, App. 17–20)

---

[4] Spencer never produced any such email to Defendants, further evidencing her failure to preserve relevant communications.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and later purported to have authority over Davis's decision to proceed with her lawsuit against Jones. At this time, Spencer was clearly anticipating litigation and should have known that her communications with Davis and others regarding Jones and the Settlement Agreement may be relevant, particularly since she was assisting Davis's efforts to bring a contractually barred lawsuit. *See, e.g.*, *Pable v. Chicago Transit Auth.*, No. 19-CV-7868, 2023 WL 2333414, at *21 (N.D. Ill. Mar. 2, 2023) (plaintiff's "solicit[ation]" of attorneys "about a claim against the [defendant] . . . demonstrates not only that litigation relating to the events precipitating [plaintiff's] leave was reasonably foreseeable, but also that [plaintiff] in fact anticipated such litigation").[5]

The fact that Spencer claims attorney-client and work-product privilege over her communications with Duffee in June–July 2021 (*see* Ex. 2, App. 17–18; Ex. 3, App. 23), is further evidence that she anticipated litigation on that date at the latest. After all, the work-product doctrine only "applies to documents prepared in anticipation of litigation." *Udeowa v. Plus4 Credit Union*, 457 F. App'x 391, 393 (5th Cir. 2012); *see Joseph v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:20-CV-502-TCB, 2021 WL 10319398, at *3 (N.D. Ga. Nov. 22, 2021) (noting same and concluding that litigant's duty to preserve arose no later than June 2018 where privilege log showed her applying work-product privilege to documents during June 2018).

For these reasons, Spencer's duty to preserve arose on June 25, 2021, at the latest.

**C.   Evidence contradicts numerous statements in Spencer's response.**

Spencer makes numerous unfounded and verifiably false statements that must be addressed. To begin with, Spencer claims she has "not refused to explain" her preservation efforts.

---

[5] *See also EBIN New York, Inc. v. SIC Enter., Inc.*, No. 19CV1017PKCTAM, 2022 WL 4451001, at *8 (E.D.N.Y. Sept. 23, 2022) (duty to preserve arose when plaintiff "contacted counsel" to discuss a potential lawsuit); *Compass Chem. Int'l, LLC v. True N. Prod., LLC*, No. 1:09-CV-3491-RLV-WEJ, 2011 WL 13213914, at *23 (N.D. Ga. Feb. 15, 2011) ("seeking legal counsel is indicative of anticipating litigation").

Dkt. 94 at 4. Yet the email chains attached to the Motion (which Spencer ignores) indisputably show that Spencer never responded to Jones's inquiries regarding production and preservation efforts. *See* Dkt. 83-10 at 2–14; Dkt. 83-11 at 2. Nor has she explained the missing evidence since the Motion was filed. And while Spencer states that she purchased a new phone on April 4, 2023 (about one week after Davis filed this lawsuit), she provides no explanation regarding the circumstances of the suspiciously timed purchase or the whereabouts of her prior phone and any communications stored thereon. *See* Dkt. 94 at 2.

Spencer also states that she "appeared for her deposition to answer any related questions" regarding her preservation efforts. Dkt. 94 at 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See, e.g.*, Ex. 1, App. 10 at 138:10–12 ▮▮▮▮▮▮▮▮▮▮ *id.*, App. 10 at 139:18–24 ▮▮▮▮▮▮▮▮▮▮▮▮) Even in her response, Spencer states that she "is not aware of whether she had certain messages, whether messages were deleted or how messages were stored during that time." Dkt. 94 at 3. It is thus unclear what Spencer thinks Jones could have possibly gleaned from her deposition testimony.

Spencer also claims Jones "merely speculate[s]" that communications "have been deleted." Dkt. 94 at 3. This is false. For example: *Spencer has not produced a single communication with Davis*, a fact she does not contest, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Ex. 1, App. 9 at 137:17–18) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see supra* Part II.B. (Ex. 1, App. 11 at 148:17–149:10) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, App. 8 at 127:3–16) As a result, there is ample evidence that Spencer deleted communications. *See Joseph v. Bd. of Regents of Univ. Sys.*

*of Georgia*, No. 1:20-CV-502-TCB, 2021 WL 10319398, at *1, 4–5 (N.D. Ga. Nov. 22, 2021) (concluding that defendant met burden to show "additional text messages existed and [had] been deleted between [plaintiff] and [a co-worker]" based on (i) evidence of plaintiff's close relationship with the co-worker, including the fact they "exchanged regular texts," and (ii) the fact that plaintiff only produced two iMessage and WhatsApp chains with the co-worker).

  Spencer's related assertion that Jones failed to establish that the deleted communications were relevant is also wrong. *See* Dkt. 94 at 3. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1, App. 9 & 13 at 137:17–18, 161:6–7); she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (*id.*, App. 3–4 at 68:20–69:4, 69:19–70:3); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*, App. 10 at 138:1–4) Further, texts produced by Davis—temporally limited as they are—show her discussing Jones and Davis's lawsuits. (*See, e.g.*, Ex. 4, App. 24 [Spencer stating "[Jones] will start paying me again so we can go back to normal"]; *id.*, App. 25 [discussing Davis's plan to file a parentage lawsuit]; *id.*, App. 26–27 [Davis sending draft press release to Spencer]) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see supra* Part II.B, it stands to reason that the deleted communications contained relevant information. *See Joseph*, 2021 WL 10319398, at *1, 6–7 (defendant met burden of showing deleted communications between plaintiff and co-worker were relevant and that deletions were prejudicial by pointing to their "close relationship" and the fact that the co-worker "was helping [plaintiff] prepare for [the] lawsuit").

  Rather than address the Motion, Spencer attempts to discredit Jones's claims against her. She alleges, for example, that Jones "has zero evidence to prove" that she breached the Settlement Agreement, has not provided "one single document substantiating his claims," and his Motion is

a "fishing expedition." Dkt. 94 at 3, 5. The irony of a party deleting evidence of her breach and then attempting to use that lack of evidence to resist sanctions for failing to preserve evidence appears to evade Spencer. Regardless, Spencer's claim of "zero evidence" is false. ▮

▮ ▮ ,

(Ex. 1, App. 2 at 37:10–14); ▮ (*id.*, App. 2 & 12 at 36:3–19, 156:23–157:2); ▮

▮ (*id.*, App. 14 at 167:17–21); and ▮

▮ (*id.*, App. 3 at 67:22–68:1).

Thus, Spencer's further claim that Jones is attempting to "harass" and "financially injure" her is backwards.[6] Dkt. 94 at 5. ▮

▮ (*See* Ex. 1, App. 6 at 83:25 ▮

▮ It was *Spencer* who threatened to "hurt" and "embarrass[]" Jones when that money stopped. Dkt. 83-3 at 6. It was *Spencer* who worked with others, including Anderson, to publicly disclose the Settlement Agreement. *See* Dkt. 83 at 4–6. And it is *Spencer* whose assistance in Davis's lawsuits against Jones has caused Jones to expend substantial sums defending himself against contractually barred claims. Jones's intent in bringing the Motion is merely to seek relief provided by the Federal Rules of Civil Procedure for Spencer's failure to preserve ESI. Spencer's efforts to ascribe any untoward motive are unsupported and scurrilous.

### III.  CONCLUSION

In sum, the evidence establishes that: Spencer's preservation duty arose on June 25, 2021 at the latest; she failed to preserve relevant communications because she failed to take reasonable

---

[6] ▮. (Ex. 1, App. 15 at 202:15–21)

steps to preserve that evidence; and the deleted communications cannot be restored or replaced. Accordingly, Jones respectfully requests that his Motion to Show Cause for Cynthia Davis-Spencer's Spoliated Evidence be granted, that the sanctions requested therein be imposed on Spencer, and that Jones be permitted to supplement this Motion with evidence obtained from the ongoing forensic examination of Spencer's phone.

| | |
|---|---|
| FOLSOM ADR PLLC | JACKSON WALKER LLP |
| | |
| */s/ David Folsom* | */s/Charles L. Babcock* |
| David Folsom | Charles L. Babcock |
| State Bar No. 07210800 | State Bar No. 01479500 |
| david@folsomadr.com | cbabcock@jw.com |
| 6002-B Summerfield Dr. | Nancy W. Hamilton |
| Texarkana, TX 75503 | State Bar No. 11587925 |
| (903) 277-7303 | nhamilton@jw.com |
| | 1401 McKinney Street |
| | Suite 1900 |
| | Houston, TX 77010 |
| | (713) 752-4210 |
| | (713) 752-4221 - Fax |
| | |
| | David T. Moran |
| | State Bar No. 14419400 |
| | dmoran@jw.com |
| | Edwin Buffmire |
| | State Bar No. 24078283 |
| | ebuffmire@jw.com |
| | Cody Martinez |
| | State Bar No. 24102146 |
| | cmartinez@jw.com |
| | 2323 Ross Avenue |
| | Suite 600 |
| | Dallas, TX 75201 |
| | (214) 953-6000 |
| | (214) 953-5822 – Fax |

**ATTORNEYS FOR DEFENDANTS**

12

**CERTIFICATE OF SERVICE**

    On May 10, 2024, I electronically served the foregoing sealed document on all counsel of record via electronic mail, as permitted by Local Rule CV-5(a)(7)(D).

*/s/ Edwin Buffmire*
Edwin Buffmire
