# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| JERRAL W. JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-CV-00032-RWS |
| | § | *SEALED* |
| ALEXANDRA DAVIS, CYNTHIA DAVIS | § | |
| f/k/a CYNTHIA DAVIS, | § | |
| | § | |
| Defendants, | § | |

## ORDER

Before the Court is Plaintiff Jerral W. Jones's and the Dismissed Defendants' Sealed Motion for Sanctions for Destruction of Evidence Against Alexandra Davis and Cynthia Davis. Docket No. 120.[1] The motion was briefed through reply. Docket Nos. 178, 187, 189. The Court held a hearing on the motion, during which Defendant Alexandra Davis testified. Docket No. 193. Having considered the briefing and oral argument, Jones's motion for sanctions (Docket No. 120) is **GRANTED-IN-PART**, as modified, for the reasons stated below.

## BACKGROUND

The parties are familiar with the background of this case.[2] The only remaining claims are Jones's counterclaims for breach of contract against Alexandra and Cynthia Davis. Jones alleges that the Davises violated the "Settlement Agreement," which provided ongoing monthly payments

---

[1] This Order also addresses Cynthia Davis's Opposed Motion to Exclude Expert Witness (Docket No. 141), Cynthia Davis's Opposed Motion to Exclude Evidence (Docket No. 174), Alexandra Davis's Objection to Untimely Designated Expert (Docket No. 187), Cynthia Davis's Motion to Strike Supplemental Declaration of Expert Witness (Docket No. 192), and Alexandra Davis's Motion to Exclude the Testimony of Lance Watson (Docket No. 182).

[2] For a detailed factual background of the case, *see* Docket No. 75 at 2–5.

to Cynthia Davis to support Alexandra Davis. Docket No. 107, ¶¶ 1–2 (Jones's Amended Complaint). According to Jones, the Settlement Agreement prohibited Alexandra Davis from seeking a legal adjudication that Jones was her father and bound both Davises to confidentiality. *Id.* ¶¶ 17–27.

In April 2024, Jones filed a motion to show cause alleging that Cynthia Davis had spoliated evidence and seeking sanctions under Rule 37(e). *See* Docket No. 83. Jones alleged that after reviewing documents produced by third parties, he realized that certain communications between both Defendants and Donald Jack, Lisa Duffee,[3] Andrew Bergman, and/or Shy Anderson discussing the Settlement Agreement and the state court paternity actions were missing from Defendants' productions. *See id.* at 6–8. At the initial hearing on the show cause motion, Jones informed the Court that he believed the spoliation was more widespread than anticipated and involved both Alexandra and Cynthia Davis. *See* Docket No. 140 at 5:1–9:12. Jones explained that his expert had begun reviewing Alexandra Davis's phone and laptop and that the parties were in discussions to have his expert review Cynthia Davis's phone and laptop for potential destruction of evidence. *Id.* Given this new information, the Court ordered the parties to meet and confer to discuss how to proceed. *Id.* at 36:25–37:7. The parties reached an agreement that Jones could review both Defendants' laptops and computers and that, within approximately 10 days, Jones's expert would complete his review and Jones would refile his spoliation motion. Specifically, the parties stated:

> We have an agreement to review the content of the messages exchanged between Ms. Davis-Spencer and Ms. Davis, so mother and daughter, and Ms. Hayes will

---

[3] Lisa Duffee represents (or represented) Shy Anderson in a divorce proceeding against Jones's daughter. In 2021, Cynthia Davis approached Duffee seeking legal advice regarding the Settlement Agreement and state court actions. While Duffee declined to represent Cynthia Davis, the Court previously ruled that some communications between Duffee and Cynthia Davis were protected by the attorney-client privilege. *See* Docket No. 96.

>   send us certain terms for medical information or account numbers or anything that
>   should be excluded from the content of that review. And we'll otherwise review
>   those messages for relevant evidence and provide that relevant evidence to -- that
>   set of relevant evidence to all parties here to review to be sure if there's anything
>   that needs to remain redacted or attorneys' eyes only will remain under seal.

*Id. at* 38:5–15. After the agreed review was completed, Jones filed the present motion, alleging intentional spoliation of electronically stored information ("ESI") under Rule 37(e)(2). Docket No. 120. Jones asks the Court to (1) enter default judgment in Jones's favor, or alternatively, enter an order striking Defendants' defenses to Jones's breach of contract claim, (2) order Defendants to reimburse Jones for costs incurred in uncovering the alleged intentional spoliation, and (3) order Defendants to reimburse Jones for the fees incurred in defending the defamation lawsuit. *Id.* at 25.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) permits a court to sanction a party for failing to preserve ESI. To sanction a party under Rule 37(e), the Court must determine whether "(1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, No. 3:19-CV-2025-K-BN, 2023 WL 2699511, at *8 (N.D. Tex. Feb. 15, 2023) (quoting *Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-184-O, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022)). "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). If these elements are met and the non-spoliating party is prejudiced, a court may impose sanctions under Rule 37(e). *See Adler*, 2023 WL 2699511, at *9. "A party suffers prejudice where it cannot present 'evidence essential to its underlying claim.' " *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 575 (5th Cir. 2020).

Rule 37(e)(1) gives the Court discretion to impose sanctions "no greater than necessary to cure the prejudice," such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist it in its evaluation of such evidence or argument." *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment; *see also Adler*, 2023 WL 2699511, at *12–13 (citing *Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2018 WL 6588586, at *8 (W.D. Tex. Nov. 8, 2018)).

Rule 37(e)(2) requires a finding of bad faith before the Court may dismiss a case due to spoliation of electronic evidence. *United Healthcare Servs., Inc. v. Next Health L.L.C.*, No. 3:17-CV-0243- X-BT, 2023 WL 2589237, at *5 (N.D. Tex. Mar. 21, 2023). In the context of spoliation, "bad faith is a question of fact like any other." *Van Winkle v. Rogers*, 82 F.4th 370, 378 (5th Cir. 2023) (quoting *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013)). "If a genuine dispute of material fact exists as to bad faith, a jury should make that determination." *Id.*

## DISCUSSION

### I. Defendants' Objections and Motions to Exclude Expert Evidence are Meritless

At the show cause hearing on May 16, 2024, Jones explained that he had hired a digital forensic expert to review the Davises' devices after both Defendants agreed to turn over their devices for Jones's expert to review. Docket No. 140 at 5:10–7:14, 10:16–11:3, 39:1–18, 40:22–41:7. Jones attached the report of his expert, Lance Watson, to his motion for sanctions. *See* Docket No. 120-1. The Court then granted Defendants additional time to respond to Jones's sanctions motion so that Defendants could (1) depose Jones's expert, (2) find their own digital forensic expert to review their devices, and (3) disclose their own expert's report. *See* Docket No. 144. Defendants hired their own expert, Steve Watson, to conduct a separate review of their devices. All parties have the expert reports of both Steve Watson and Lance Watson and both experts have

been deposed in this matter. Defendants now seek to (1) exclude Lance Watson as an untimely designated expert, (Docket Nos. 141, 187), (2) exclude the evidence recovered by Lance Watson (Docket Nos. 174, 192), and (3) allege that his report is unreliable under *Daubert* standards (Docket No. 182).

While the Court acknowledges that the designation of both parties' digital forensic experts is far past the date of expert disclosure contemplated in the Docket Control Order, Defendants' request to strike Jones's expert as untimely is meritless. First, had Defendants not deleted text messages from their devices after the litigation began and failed to produce relevant evidence found only in third-party productions, Jones would not have had to hire Lance Watson to review the devices for missing evidence. Second, one cannot spoliate evidence and then avoid the consequences of that spoilation being discovered by moving to exclude the recovered, relevant evidence. Finally, Defendants are not unduly prejudiced because they were able to depose Lance Watson and hire their own expert who served a report and has already himself been deposed. Lance Watson's designation was timely given the facts surrounding this sanctions motion, and he will not be excluded on that basis.

Alexandra Davis also filed a *Daubert* motion as to Lance Watson stating his methods were unreliable. Docket No. 182. Specifically, she states that Watson was not able to recall basic details about his own report, his data was unreliable because someone else in his firm imaged the devices, the underlying information had not been produced to her, and his testimony was inconsistent regarding what information was recovered from each of her devices.[4] *Id.* She also alleges that

---

[4] Davis also explains that paragraphs 63–68 of Watson's report were not correct, and at the time she filed her motion, had not been supplemented. *Id.* Jones responds that the supplemental report has been served and that the minor changes to the initial report did not affect the ultimate conclusions of the report. *See* Docket No. 190.

Watson is not licensed in Texas and therefore does not qualify as an expert. *Id.* Jones responds that Watson has worked in the digital computer forensics industry for years, that being unable to recall minor details does not warrant striking an entire expert report, and that Alexandra Davis was actually provided with *more* data than Jones received from the device imaging. Docket No. 190. In addition, Alexandra Davis's own expert reached the same conclusion as Watson regarding the deletion of and missing text messages from her devices. *Id.*

Alexandra Davis does not raise a sufficient *Daubert* challenge. Lance Watson has worked for decades in the digital device forensics industry and served as vice president and chief operating officer of a digital forensics company. Docket No. 120-1 at 17–18. Despite using different analyses, the fact that both experts concluded that messages had been deleted from both Alexandra and Cynthia Davis's devices is telling of the reliability of Lance Watson's expert report and methodology. *Compare* Docket No. 120-1, ¶¶ 26–38 *with* Docket No. 190-5, ¶¶ 3–4. Any concerns about recollection of details or inconsistency of testimony can be explored on cross-examination at trial.

## II. The Applicable Preservation Date and Defendants' Duty to Preserve.

The parties dispute when the preservation duties in this matter began. "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713. Jones argues that Alexandra and Cynthia Davis's duty to preserve began in June of 2021 when Cynthia Davis first solicited Lisa Duffee for representation for Alexandra Davis with respect to the parentage action and began disclosing confidential information related to the Settlement Agreement to both Duffee and Anderson. Docket No. 120 at 11–12. Jones states that because Alexandra and Cynthia Davis were contemplating legal action in violation of the Settlement Agreement, both Defendants could therefore reasonably anticipate litigation. *Id.* Alexandra Davis

states that her preservation duty as to this matter did not begin until the March of 2022, when the alleged defamatory conduct[5] that served as the basis for filing *this* lawsuit occurred.[6] Docket No. 187 at 11. Cynthia Davis states that she could not have anticipated litigation until she was added to this matter in May or June of 2023. Docket No. 178 at 3–4.

While there are persuasive arguments that an earlier preservation date may be appropriate, Alexandra Davis's duty to preserve evidence undoubtedly began no later than March 3, 2022, when she filed the first paternity action and the alleged defamatory conduct that served as the basis for filing this lawsuit commenced. As to Cynthia Davis, her duty to preserve evidence undoubtedly began no later May 31, 2023, when she was served with a summons in this matter. *See* Docket No. 19. Accordingly, any intentional *or* unintentional destruction of relevant evidence that occurred after these dates—March 3, 2022 for Alexandra Davis and May 31, 2023 for Cynthia Davis—implicates Rule 37(e).

### III. ESI Has Been Lost Due to Defendants' Failure to Reasonably Preserve It.

It is beyond reasonable dispute that ESI has been lost and at least a portion of each Defendants' lost ESI has not been recovered. At the hearing, Alexandra Davis's counsel argued that her ESI is not lost because the experts were able to recover it from her devices. Alexandra Davis further explained that she "searched her phone and previously provided all relevant non-privileged texts" that dated back to March of 2022. Docket No. 187 at 14. Defendants also

---

[5] The Court notes that it previously dismissed all of Alexandra Davis's defamation claims on the pleadings (Docket No. 75) but, for purposes of determining preservation duties for this lawsuit, refers to the events leading up to the filing of this matter as the "alleged defamatory conduct." This characterization has no bearing on the Court's previous order dismissing the defamation claims.

[6] In her response, Alexandra Davis explained that the "earliest" she could have anticipated litigation was August 16, 2021. Docket No. 187 at 12. However, at the hearing her counsel explained that the preservation date for *this* action began when the alleged defamation began.

generally argue that there is no way to tell whether relevant ESI is lost because Jones has not pointed to any specific, relevant, missing evidence. *See* Docket Nos. 178 at 11, 187 at 14.

The Court is not persuaded by these arguments. Both Lance Watson and Steve Watson stated in their reports that messages had been deleted from both Defendants' devices and that some messages were not recoverable. For example, Defendants' own expert, Steve Watson, found "there are no messages on the [Alexandra] Davis iPhone prior to April 9, 2023, in agreement with the Lance Watson Declaration." Docket No. 187-2 at 8, ¶ j. Further, Steve Watson found that "the absence of messages prior to April 9, 2023, is consistent with the [Alexandra] Davis iPhone 'Keep Messages' retention setting being changed from '1 Year' to 'Forever' on April 8, 2024." *Id.* at 8–10, ¶¶ k, p. Intent aside, failure to turn off an auto-delete feature when one's preservation duty has begun may amount to spoliation. *See Adler*, 2023 WL 2699511, at *17.

Although Alexandra Davis represented that she produced screenshots of all relevant text messages, Lance Watson recovered certain chat.db data from her laptop containing clearly relevant messages that had been deleted from her phone after the preservation date and that were not produced in screenshot form during discovery. *See* Docket No. 189-1. But for the forensic examination of Alexandra Davis's devices *after* she was accused of spoliation, these relevant messages would not have been recovered or produced in discovery. In addition, although arguably "minimal" according to her expert, there are still messages missing from Alexandra Davis's phone that were not recoverable through her laptop or forensic examination. *See, e.g.*, Docket Nos. 120-1 at ¶¶ 26–31; 187-2 at 68–79, ¶¶ a–d.

Cynthia Davis also spoliated evidence, whether intentional or unintentional. For example, her own expert agrees with Lance Watson and states that "records associated with the missing ROWIDs in the 'October 20–30' [2023] gap are no longer available on the [Cynthia Davis]

iPhone." Docket No. 178-6 at 10–11, ¶ c. Further, Cynthia Davis admits in her response that she purchased a new phone on August 4, 2023, during which she lost messages that "could not be recovered." *See* Docket No. 178 at 2, 178-2. Although Cynthia Davis states that she suffered memory issues due to chemotherapy treatment, there is no doubt that loss of ESI occurred when she had a duty to preserve, *i.e.*, after May 31, 2023.

Although the extent of Jones's prejudice is unknowable, both parties' experts agreed that potentially relevant ESI is permanently lost.[7] Further, Jones would not have access to much of this relevant evidence had he not brought this motion and arranged for the forensic examination of both Alexandra and Cynthia Davis's devices. Accordingly, Jones has sufficiently established that Defendants spoliated ESI in violation of Rule 37(e)(1).

### IV. Bad Faith or Intent to Destroy Remains a Question of Fact

As discussed above, Rule 37(e)(2) "imposes a bad-faith requirement" when ESI has been spoliated and permits, among other remedies, dismissal of the entire action. *See* FED. R. CIV. P. 37(e)(2); *see also United Healthcare Servs.*, 2023 WL 2589237, at *5. Jones alleges that both Alexandra and Cynthia Davis "engaged in a massive spoliation effort" to conceal "their publicity campaign against Jones and Davis's claims in this Court." Docket No. 120 at 1. Specifically, Jones alleges that thousands of messages were intentionally deleted from both Alexandra Davis and Cynthia Davis's devices. *Id.* at 3-7. Jones points to two specific text messages to support his claim of intentional spoliation:

- A March 18, 2022, text message from Cynthia Davis to Lisa Duffee that states "Just erase everything. You are all getting subpoenaed. By Jerry" to

---

[7] Defendants' position that Jones cannot show relevancy because he cannot show the content of the deleted messages illogically ignores that Defendants' own actions have made it impossible for Jones to show exactly what was destroyed. Jones, however, has shown the relevancy of the recovered messages, which suggests the unrecoverable messages may have also been relevant.

> which Lisa Duffee responded, "I am not erasing anything with you . . . ." Docket No. 120-2.
>
> - A March 22, 2022, text message from Cynthia Davis to Alexandra Davis stating "We cannot txt about the case at all it has to be by phone call. They can subpoena our txt." Docket No. 120-3.

Jones alleges that Alexandra Davis took screenshots of several messages right before "some (if not all)" messages were deleted from her phone on or after October 25, 2023—one day before the document production deadline in this case. Docket No. 120 at 5–6. Jones further states that in April of 2024, Alexandra Davis affirmatively changed her message retention settings from "Keep Forever" to "Keep for 1 Year." Docket No. 189 at 4–5. Jones states this setting change required Alexandra Davis to go into her phone settings and select a different preservation option, which then would have prompted a notice from her iPhone confirming that she wanted to delete any messages, which she had to affirmatively do when she changed her settings. *Id.*

Jones alleges that Cynthia Davis also intentionally deleted thousands of messages right around the document production deadline in this matter, which explains the "gap" of missing messages between October 20 and 30, 2023. *Id.* at 5–6. Jones states there was also a deletion of messages from Cynthia Davis's phone on April 23, 2024, one day before her deposition and the date when Cynthia Davis's counsel agreed to allow Jones to review her device. Docket No. 120 at 6–7. In addition, Jones states that one key screenshot taken in October of 2023—that was then deleted by both Defendants and not produced in discovery—revealed a telling conversation where Cynthia Davis told Alexandra Davis that she wanted "access to jets, houses in New York and Florida, and a yacht, a home for [Cynthia Davis], and to be made an 'heir to [Jones's] estate.' " *Id.* at 2; *see also* Docket No. 120-1 at 35. Jones alleges the deletion of this critical exchange gave Alexandra Davis an "advantage" in her now-dismissed defamation suit, where she alleged that she never wanted or asked for money from Jones and that she was only seeking to establish paternity.

Docket No. 120 at 3. Jones argues that these events, and their timing, demonstrate intentional spoliation of ESI.

While largely circumstantial, Jones's evidence of Alexandra and Cynthia Davis's actions after their preservation duties began is arguably suspicious of intentional spoliation. In her response and at the hearing, Alexandra Davis explained that she produced screenshots that contained all relevant messages. Specifically, Alexandra Davis testified that after searching her phone with key words provided by her attorneys, she took screenshots of all relevant messages to preserve them and later turned them all over to her attorneys. The Court viewed some of these screenshots during the hearing. Alexandra Davis also testified that she accidentally or unknowingly changed the message retention setting on her phone from "Keep for Forever" to "Keep for 1 Year" by plugging her phone into her laptop, which also caused a partial synchronization and change of settings. Alexandra Davis also generally responds that no ESI has been lost because it was contained in the screenshots themselves and recovered by the forensic experts. Docket No. 187 at 12–13.

As discussed above, Cynthia Davis explained that the loss of messages from her device were a result of memory issues due to her chemotherapy treatment, operating system errors, and an unsuccessful attempt to transfer old messages to her new phone. *See, e.g.*, Docket No. 178. While Cynthia Davis's messages that discussed the deletion of evidence are problematic and concerning, these texts hold less weight because they were sent well before her preservation duty began and contain a message from Lisa Duffee instructing her not to delete anything. *See, e.g.*, Docket No. 120-2. More troubling to the Court, however, is the timing and volume of Cynthia Davis's deletions.

In sum, it is beyond reasonable dispute that both Defendants spoliated evidence, as demonstrated by the late recovered and missing messages. Jones's evidence of bad faith or intent to spoliate—again, while largely circumstantial—is concerning to the Court, but there is also some evidence, including Alexandra Davis's earnest testimony at the hearing, which the Court credits, that there was no bad faith or intention to destroy evidence. When "there is sufficient circumstantial evidence to create a genuine dispute of material fact as to whether Defendants destroyed [evidence] in bad faith," the prejudiced party "should be permitted a jury instruction that if jurors find bad faith, they may infer that the destroyed evidence would have been adverse to" Defendants. *Van Winkle*, 82 F.4th at 378–79. The issue of spoliation is proper for jury consideration because the evidence creates a genuine dispute of material fact as to whether Defendants acted in bad faith or intentionally spoliated evidence.

## CONCLUSION

For these reasons, it is

**ORDERED** that Jones's motion for sanctions (Docket No. 120) is **GRANTED-IN-PART**, as modified. At trial, the parties may present evidence and make arguments to the jury regarding bad faith or intentional spoliation of text messages from Alexandra and Cynthia Davis's devices. For judicial efficiency, Jones may renew his request for costs incurred as to this motion post-trial. In addition, should the jury find that Defendants acted in bad faith to intentionally spoliate evidence, Jones may seek any Rule 37(e)(2) relief post-trial. The parties shall meet and confer and provide a proposed instruction on this issue in their Amended Proposed Joint Jury Instructions and Verdict form which, as discussed at the pretrial conference, shall be filed no later than **Wednesday, July 17, 2024**. It is further

**ORDERED** that Cynthia Davis's Opposed Motion to Exclude Expert Witness (Docket No. 141) is **DENIED**. It is further

**ORDERED** that Cynthia Davis's Opposed Motion to Exclude Evidence (Docket No. 174) is **DENIED**. It is further

**ORDERED** that Alexandra Davis's Objection to Untimely Designated Expert (Docket No. 187) is **OVERRULED**. It is further

**ORDERED** that Alexandra Davis's Motion to Exclude the Testimony of Lance Watson (Docket No. 182) is **DENIED**. It is further

**ORDERED** that Cynthia Davis's Motion to Strike Supplemental Declaration of Expert Witness (Docket No. 192) is **DENIED**. It is further

**ORDERED** that, within **seven (7) days** of this Order's entry, the parties **SHALL** jointly move to file a redacted version of this Order. The parties' joint motion **SHALL** provide proposed redactions, describe the confidential information in those proposed redactions, and provide good cause for each redaction. Or, if no redactions are necessary, the parties **SHALL** jointly file an unsealed and unredacted version of the Order with a cover page stating no redactions are needed.

**SIGNED this 9th day of July, 2024.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE